## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CASE NO: 16-cv-12182-FDS

THE UNITED STATES OF AMERICA, *ex rel.*
JULIE LONG,

    *Plaintiffs*,

v.

JANSSEN BIOTECH, INC.,

    *Defendant*.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER LIMITING THE SCOPE OF PLAINTIFF'S FRCP 30(b)(6) DEPOSITION NOTICE

Defendant Janssen Biotech, Inc., has advised Plaintiff and the Court that it intends to move for summary judgment at the close of this phase of fact discovery that is currently in place. Despite the Court admonishing that Plaintiff is entitled to complete discovery before it rules on a motion for summary judgment,[1] Janssen has now moved for a protective order in an attempt to limit Plaintiff's access to such discovery. The Court must deny this motion because the discovery Plaintiff seeks, as set forth in her 30(b)(6) deposition notice, is relevant and proportional to this case and not otherwise protected from discovery.

### I.    Introduction

This qui tam action, brought on behalf of the United States, seeks to hold Janssen accountable for the substantial damages it has caused to the Medicare program and its beneficiaries by engaging in a long-running illegal kickback scheme involving the

_____

[1] *See* ECF No. 186 at 27:2-27:5

provision of free infusion business and practice management consultative services to select physician practices across the United States.

Since approximately 2001, one of Janssen's main strategies for growing sales of Remicade and Simponi ARIA—two drugs administered via infusion—was to promote the infusion business model by persuading rheumatology and gastroenterology practices to open an in-office infusion suite ("IOI") and, after an IOI was open, by influencing the physician practices to perform more infusion procedures. As part of this strategy, Janssen employed a large team of medical practice advisers to serve as the dedicated business partners to physicians who committed to the infusion business model and opened IOIs. Janssen calls this special team of employees "Area Business Specialists," or "ABSs" for short. It advised physician practices that the business support and assistance from these business specialists was free of charge. Each Remicade and Simponi ARIA sales territory had an ABS in addition to the customary sales representatives and medical science liaisons. Janssen also paid business consultants with expertise in medical practice and infusion business management, such as Xcenda and The Lash Group, to assist the physician practices with opening and operating IOIs.

Janssen had ABSs and outside consultants meet with physician practices that did not have an IOI and advise them that they should open an IOI to perform infusion procedures. If a physician practice was interested, Janssen then advised the practice on how to open and set up the IOI and assisted the practice with getting the IOI up and running.

Once an IOI was open, Janssen wanted to make sure that it remained open and that the physician practices grew the number of infusion procedures it performed. Janssen did this in order to induce the physician practices to prescribe, purchase, and

2

infuse more Remicade and Simponi ARIA. To make sure physician practices with IOIs grew their IOI businesses, and in turn prescribed and infused more Remicade and Simponi ARIA, Janssen had ABSs and outside consultants regularly provide the physician practices free practice management and infusion business operations advice and assistance on a wide range of topics. Janssen often referred to these consultative services and the presentations it utilized in providing the free infusion business advisory services as "programs."

These infusion business advisory programs, which helped physicians open, operate, manage, and grow IOIs, where they infused a variety of infusible drugs, not just Remicade and Simponi ARIA, provided broad value to the physicians. Although the programs applied to the overall infusion business and all infusible drugs, Janssen's purpose in providing them was to gain loyalty and induce sales and infusions of its products (Remicade and Simponi ARIA).

Plaintiff alleges that by providing the infusion business advisory programs to physician practices to induce the physicians to prescribe and administer Remicade and Simponi ARIA infusions to their patients, many of whom are covered by Medicare, Janssen violated the Anti-Kickback Statue ("AKS"), 42 U.S.C. § 1320a-7b. In addition, Plaintiff alleges that by providing the free infusion business advisory programs Janssen corrupted and tainted the recipients' decisions to prescribe and infuse Remicade and Simponi ARIA to Medicare beneficiaries and, accordingly, rendered the bills those physicians submitted to Medicare for Remicade and Simponi ARIA and the related infusion procedures false and ineligible for reimbursement. By providing illegal remuneration that resulted in the submission of false claims to Medicare, Janssen violated the False Claims Act, 31 U.S.C. § 3729, *et seq. See* 42 U.S.C. § 1320a-7b(g).

3

To prove her claims, Plaintiff will have to show, among other things, that (1) the free infusion business advisory programs Janssen provided to the physician practices constituted remuneration or kickbacks under the AKS, (2) in providing the free programs Janssen intended to induce use of Remicade and Simponi ARIA for Medicare beneficiaries, and (3) Janssen acted knowingly and willfully in violating the AKS. *See, e.g.,* 42 U.S.C. § 1320a-7b(b)(2)(B). The areas of examination outlined in Plaintiff's 30(b)(6) deposition notice are directly related to the issue of renumeration as well as other elements she must establish. In her 30(b)(6) notice, Plaintiff also specifically identified twenty infusion business advisory programs that were provided in her former territory under Janssen's national strategy and directive that will be the focus of the deposition (hereinafter, the "focus programs").

## II.      Legal Standard

"For good cause shown, the Court may 'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *ClearOne Communications, Inc. v. Chiang*, 276 F.R.D. 402, 403 (D. Mass. 2011) (quoting Fed. R. Civ. P. 26(c)). "The burden of demonstrating good cause rests on the proponent of the protective order." *Id.* (citing *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988)). "A district court has 'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required.'" *Id.* (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993)).

4

### III.    Argument

### A. The Time Periods in Topics One, Two, Four, Six, and Seven of Plaintiff's 30(b)(6) Deposition Notice are Relevant and Should Not be Limited by the Court

In its motion for protective order, Janssen seeks to limit the relevant time period of its corporate representatives' testimony and, thereby, prevent Plaintiff from discovering critical information regarding the focus programs that are the alleged remuneration or kickbacks at the center of this action.

In Topic One, Plaintiff requests testimony from a person with knowledge, relating to the Marketing Department for the years 2000 to the present, on the following subjects about each of the focus programs:

> i.    Who approved the program for use by ABSs and/or outside consultants, including how the approval is evidenced;
>
> ii.   The date when each program was approved;
>
> iii.  Criteria that was applied in determining whether to approve the program and its content;
>
> iv.   If applicable, the approximate date when Janssen stopped having ABSs and/or outside consultants provide the program, and the reason(s) Janssen ended the program;
>
> v.    Janssen's reason(s) and purpose(s) for providing the program;
>
> vi.   Whether the information/assistance provided as part of the program material was applicable to other non-Janssen medications, the infusion model, or the management of the infusion business; and
>
> vii.  Whether the program was considered or designated unbranded.

(ECF No. 184-2 at p. 3).

In Topic Two, Plaintiff requests someone with knowledge to testify regarding the following subjects that relate to Janssen's promotional review committee (PRC)—a committee that reviewed and approved the written presentations Janssen had Plaintiff (and other ABSs) and outside consultants utilize when providing the focus programs to physician practices in Central Pennsylvania as well as across the nation:

    i.    Purpose, role, scope and mission of the PRC;

    ii.    Role and scope the PRC plays in reviewing, suggesting, and approving the initiation, creation, and approval of programs;

    iii.    Organizational structure of the PRC, including all committee makeup of the group and who the PRC reported to;

    iv.    The processes and procedures for how and when the PRC is provided "new programs" to review for authorization and approval to be used by ABSs and/or outside consultants;

    v.    The criteria, processes, and procedures of review and approval/authorizations of the [focus] programs . . . ; and

    vi.    The legal criteria, processes, and reviews applied to each program . . . .

(ECF No. 184-2 at pp. 4-5).

The request in Topic Four is: "Person with knowledge of how Janssen tracks the practice management and infusion business support programing its ABSs and/or outside consultants provide to the IOI accounts in their territories. This includes, but is not limited to, how said programs are tracked, who tracks them, and how the tracking can be seen/monitored and reviewed. If said 'tracking' has changed over the years, the person with knowledge shall provide all tracking methods from when Janssen began providing the program to the present." (ECF No. 184-2 at p. 5).

Topic Six requests: "Person with knowledge as to which group/committee/person approved the use of outside consultants/vendors to provide the [focus] programs . . . to

physician practices, including, but not limited to, programs created by the consultants/vendors. This topic includes, but is not limited to, criteria used to choose/retain a consultant/vendor, costs associated with retaining the consultant/vendor, approvals of all materials created and/or used by the consultant/vendor, and all materials, information and documents that Janssen provided to each consultant/vendor about its Remicade and Simponi ARIA drugs." (ECF No. 184-2 at p. 5).

And, finally, Topic Seven requests: "Person with knowledge as to all computer applications and structured data systems that were or are used to track and monitor ABSs' and/or outside consultants' call activity, including presentations, services, and/or programs provided to physician practices. This includes, but is not limited to, such applications as iConnect, Red Rover, ViewPoint, iReview, VIVA, COGNOS, and VitalSigns. Additionally, the witness should be able to provide information about how programs that are no longer in use stored the data and how the data was transferred to the new application(s) and how such information can be ascertained." (ECF No. 184-2 at p. 6).

Janssen asks this Court to enter a protective order limiting the permissible scope of testimony to October 2006, the start of the applicable statute of limitations on Plaintiff's claims, through February 2016, when Plaintiff left Janssen's employ. But even if the United States cannot recover for Janssen's illegal conduct that occurred prior to October 2006 because such claims are barred by the statute of limitations, this bar does not create a temporal limitation on evidence available through discovery. *See Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002) (holding that defendant's "restricted temporal view of the evidence" was misguided as the statute of limitations does not preclude the introduction of evidence that preceded the statutory period); *Int'l Shoe Mach. Corp. v.*

*United Shoe Mach. Corp.*, 315 F.2d 449, 460 (1st Cir. 1963) ("It is of course true that the statute of limitations does not govern the admissibility of evidence and that this question is controlled by rules independent of a limitations question.") (citations omitted); *Denton v. Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers*, 650 F. Supp. 1151, 1159 (D. Mass. 1986) (holding that, even if events occurred outside the statute of limitations, they constituted relevant background evidence that shed light on plaintiff's cause of action); *Jackson v. Harvard Univ.*, 111 F.R.D. 472, 474-45 (D. Mass. 1986) (reversing magistrate judge's decision limiting scope of discovery to three years in employment discrimination case because the three-year time period was unduly restrictive and contrary to the law governing the scope of permissible discovery).[2]

Plaintiff should be permitted to conduct discovery, including deposing Janssen's corporate representatives, regarding information as far back as 2000 because such information is "relevant to any party's claim or defense and proportional to the needs of the case". Fed. R. Civ. P. 26. Janssen's counsel has acknowledged that Janssen began providing some of the focus programs as early as 2000, which is supported by an employee deposition and documentary evidence.[3] Furthermore, as stated in her complaint, Plaintiff began providing some of the focus programs in 2003. Thus, testimony regarding these focus programs that were provided prior to 2006 will be highly relevant to Plaintiff's claims, particularly with regard to Janssen's (1) development and approval of

---

[2] When ruling on Plaintiff's motion to compel (ECF No. 159), Magistrate Judge Kelley ordered that the relevant time period for discovery should end when Plaintiff left Janssen in February 2016. (ECF No. 194). Plaintiff believes this ruling is legally erroneous and in conflict with the Court's order that Plaintiff is entitled to full discovery and thus intends to file objections to the Magistrate's order pursuant to Rule 72(a).

[3] *See* ECF No. 116 at 14:25-15:10. *See also* Aug. 11, 2021 letter from Janssen's counsel, attached as <u>Exhibit 1</u>, identifying starting dates of the focus programs.

the provision of the focus programs and related presentations to physician practices, (2) assessments and reviews as to the legality of the providing the focus programs, including whether they constituted remuneration or kickbacks under the AKS, and (3) Janssen's intent in providing these alleged kickbacks.

Additionally, restricting Plaintiff's ability to discover information after she left Janssen in February 2016 will deprive her of access to relevant information. In fact, Janssen admits that, as Plaintiff alleged, it continued providing some of the focus programs beyond February 2016. *See* Exhibit 1. Thus, there is no reason to preclude Plaintiff from obtaining highly relevant information concerning the focus programs that Janssen continued providing beyond February 2016. Janssen certainly has not shown that it would be burdensome to produce a corporate representative to testify regarding the provision of certain focus programs within the past five years. Indeed, it is likely that providing such recent evidence will be far easier than providing evidence from earlier in the relevant period.

As information prior to October 2006 and after February 2016 is relevant to Plaintiff's claims as well as Janssen's defenses, the Court should deny Janssen's motion for protective order on this point.

### B. The Scope of Topics One, Two, and Six is Reasonable and Should Not be Limited by the Court

"The duty to prepare a Rule 30(b)(6) designee 'goes beyond matters personally known to that designee or to matters in which the designee was personally involved.'" *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, CV 1:15-13488-FDS, 2017 WL 8236153, at *2 (D. Mass. Oct. 13, 2017) (quoting *Briddell v. Saint Gobain Abrasives, Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005)). "If necessary, the deponent must use documents, past

employees, and other resources in performing the required preparation." *Id.* The fact that a corporate deponent must be taught the relevant information in order to testify on behalf of the corporation does not amount to an undue burden. While "'adequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.'" *Id.* (quoting *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 540 (D. Nev. 2008) (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D .N.C. 1996)); citing *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 37 (D. Mass. 2001) (noting that even if the documents that a designee must review in preparation for Rule 30(b)(6) deposition "'are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.'").

In support of its motion for protective order, Janssen complains that it is impractical to expect Janssen to prepare a witness to cover the volume of material Plaintiff has included in just Topics One, (ECF No. 185 at p. 8), Two (p. 10), and Six (p. 11). Plaintiff does not dispute that she is asking for a lot of information. But Plaintiff does not seek any information that is irrelevant to this case or outside the Court's phased approach. And, Plaintiff has limited her request by asking for testimony only with regard to the 20 focus programs, which represent just a portion of the alleged illegal free infusion business advisory services Janssen provided to prescribers. The fact of the matter is, this is a large case that involves the provision of a large number of free infusion business advisory services over an extended period to physician practices in Central Pennsylvania and nationwide, as set forth in substantial detail in the Second Amended Complaint. Narrowing the scope of permissible discovery in accordance with Janssen's motion will

prevent Plaintiff from fully developing her case and will hamper her in opposing Janssen's motion for summary judgment during this stage.

Janssen also contends that Plaintiff has failed to define the topics in her 30(b)(6) notice with reasonable particularity, making it impossible for Janssen to prepare corporate representatives on these topics, because Plaintiff has included the phrase "including but not limited to" in some parts of its requests.[4] Plaintiff disagrees and believes that when viewing the entirety of the two topics that include this language, Janssen has sufficient notice of the requested subject matter to prepare one or more corporate representatives to testify. For instance, in Topic One, Plaintiff requests deposition testimony regarding the marketing department's process for creating the focus programs, "*including, but not limited to*, who was responsible for creating and formulating the programs." (ECF No. 184-2 at p. 4) (emphasis added). No confusion or uncertainty is created by adding this phrase. It is clear that Janssen needs to prepare one or more representatives to testify regarding the marketing department's process *and* to provide the names of the individuals who created and formulated the focus programs.

---

[4] In Topic One, Plaintiff requests to depose someone with knowledge regarding, "The process by which the marketing department formulated, created, researched, and obtained the content for each of the [focus] programs . . .; *including, but not limited to*, who was responsible for creating and formulating the programs." (ECF No. 184-2 at p. 4) (emphasis added). And, in Topic Six, Plaintiff's request is to depose a "[p]erson with knowledge as to which group/committee/person approved the use of outside consultants/vendors to provide the [focus] programs . . . to physician practices, *including, but not limited to*, programs created by the consultants/vendors. This topic *includes, but is not limited to*, criteria used to choose/retain a consultant/vendor, costs associated with retaining the consultant/vendor, approvals of all materials created and/or used by the consultant/vendor, and all materials, information and documents that Janssen provided to each consultant/vendor about its Remicade and Simponi ARIA drugs." (ECF No. 184-2 at p. 5) (emphasis added).

Furthermore, throughout this litigation, Janssen has been stonewalling and impeding discovery by refusing to substantially comply with Plaintiff's discovery requests, leaving Plaintiff without information that would have enabled her to further refine the wording of the requests in order to eliminate the need to ask for testimony "including, but not limited to" certain aspects of the designated topics. In the event the Court determines the use of the phrase "including, but not limited to" in Topics One and Six was improper, the Court should give Plaintiff the opportunity to amend these requests in order to revise that language.

Janssen is asserting as a defense in this action that its conduct was legal. At the October 1, 2021 hearing, counsel for Janssen stated, with regard to the focus programs Plaintiff has identified in her 30(b)(6) notice: "We don't think they're unlawful. We don't think they're kickbacks. These were programs that were nationwide. They were reviewed and approved by the company's promotional review committee." (ECF No. 186 at 22:2-5). "[T]hese programs went through a top flight, you know, Johnson & Johnson level promotional review committee. . . ." (*Id.* at 24:10-12). In fact, Janssen's counsel believes that the evidence of Janssen's legal review is so strong that it is grounds for final summary judgment, despite the Court warning that "[t]here's no way [it] can decide intent or scienter on summary judgment unless it's really at the extremes…." (*Id.* at 24:10-12).

Despite Janssen's contention that it will obtain summary judgment because Janssen's "top flight" promotional review committee (PRC) reviewed and approved the focus programs, it now seeks a protective order to prevent Plaintiff from obtaining information about this committee's review process and recommendations. In Topic Two, Plaintiff requests testimony regarding the PRC's "legal criteria, processes, and reviews applied to each" of the focus programs. (ECF No. 184-2 at p. 5). This information is

obviously relevant to Plaintiff's claims and Janssen's defenses. Janssen should not be permitted to exclude it from deposition. If, at the time of the deposition, Janssen believes in good faith that a particular question cannot be answered without waiving the attorney-client privilege, it can raise the objection and Plaintiff can later raise the issue with the Court. Janssen should not be permitted to sidestep this normal process and conceal relevant information.

Finally, Janssen argues that because it has produced some non-privileged documents relating to the PRC's review and approval of the programs, it would be unnecessary and duplicative to also provide the testimony of a corporate representative. Of course, the Rules do not limit Plaintiff to either documents or deposition testimony. And, as the Court knows, the documents will help inform the issues and allow for a more productive corporate representative deposition.

Because the information requested in Topics One, Two, and Six is relevant, the requests are made with reasonable particularity, and are not burdensome, unnecessary, or will necessarily require the disclosure of privileged information, the Court must deny Janssen's motion for protective order on this point.

### C. Plaintiff's Request in Topic Three for Testimony regarding Janssen's Communications with the Government Regarding Janssen's Provision of Infusion Business Advisory Services or Product Support for Remicade or Simponi ARIA to Physician Practices is Relevant and Should Not Be Blocked

Topic Three of Plaintiffs' 30(b)(6) Deposition Notice requests: "Person with knowledge regarding all communications to Janssen or made by Janssen regarding Janssen's provision of any ABS or third-party presentations to physician practices with the U.S. Government, including, but not limited to, HHS OIG, CMS, and/or DOJ, concerning its provision of product support for Remicade or Simponi ARIA and/or practice

management and infusion business support to physician practices, including, but not limited to, the [focus] programs . . . ." (ECF No. 184-2 at p. 5). Without elaboration, Janssen claims Plaintiff's request is beyond the scope of Phase One discovery and is premature, and it seeks to limit the testimony of its corporate representative to just Janssen's communications with the U.S. Government concerning the March 27, 2017 Civil Investigative Demand and related investigation. But Janssen has raised as a defense in this action that its alleged AKS and FCA violations were not material to the Government's payment of claims for Remicade and Simponi ARIA. And, as set forth above, Janssen asserts that the free business advisory services, including the focus programs to the physician practices, do not constitute kickbacks and were legal. In fact, Janssen itself has sought substantial discovery from the U.S. Government. As such, Janssen's communications with the U.S. Government are relevant.  Plaintiff is entitled to know what Janssen disclosed to the U.S. Government, including HHS-OIG, Medicare, and DOJ, concerning the free infusion business advisory services it regularly provided to physician practices. Plaintiff is entitled to know whether Janssen ever sought guidance or an Advisory Opinion from HHS-OIG. Likewise, this testimony could reveal that Janssen did not disclose, or fully disclose, that it was providing physician practices ongoing free advice and assistance with opening and operating their IOIs to the Government, undercutting Janssen's defenses.

Janssen seeks to impose a further restriction on Plaintiff's request for 30(b)(6) testimony under Topic Six—that any discovery made by Janssen be reciprocal. Janssen should not be permitted to refuse to provide relevant deposition testimony until its own demands are met. Further, the adversarial relationship between Janssen and the Government is entirely different than the relationship between the Government and

Plaintiff, who is a relator prosecuting this action on behalf of the Government under the FCA. With its inappropriate demand for reciprocity, Janssen appears to be attempting to have Plaintiff waive her privilege objections to Janssen taking discovery regarding her protected communications with the Department of Justice concerning her claims being litigated on behalf of the United States.[5] If Janssen believes it is entitled to discovery of Plaintiff's privileged communications with the Department of Justice it can seek such discovery through the appropriate process. The Court must prohibit Janssen's attempt to make an end run around the Rules and deny its motion for protective order on this point.

### D. Plaintiff's Request in Topic Five for Information Related to Janssen's Efforts to Determine the Legality of the Conduct at Issue in this Action is Directly Relevant to Plaintiff's Claims and Should not be Limited by the Court

In Topic Five, Plaintiff requests: "Person with knowledge as to all actions, conversations, meetings, or other conduct by Janssen to determine if providing the free support services and programming at issue in this case, including the [focus programs] to physician practices was legal. This includes, but is not limited to, all actions by Janssen to determine the legality of said support services and programming, and who was talked to both inside and outside of Janssen." (ECF 184-2 at p. 5). As set forth above, counsel for Janssen has made clear to both Plaintiff and the Court that it believes it is entitled to final summary judgment because the programs "went through a top flight, you know,

---

[5] *See United States ex rel. Univ. Loft Co. v. AGS Enterprises, Inc.*, SA-14-CA-528-OLG, 2016 WL 9462335, at *7 (W.D. Tex. June 29, 2016) ("'Public policy favors the full and frank communication between Relators and the Government concerning the prosecution of the case, and as such, the communications must be protected from disclosure'" as "'at least ordinary work product for the purposes of the work product doctrine.'") (quoting *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.*, 4:12-CV-543, 2015 WL 4609742, at *1 (E.D. Tex. July 31, 2015)); *United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996).

Johnson & Johnson level promotional review committee. . . ." establishing their legality. (ECF No. 186 at 24:10-12). Plaintiff cannot be expected to take Janssen's word for it that the PRC was "top flight" or that these programs were duly considered, much less considered at all. Moreover, Plaintiff is entitled to know what steps Janssen took, if any, to evaluate whether the focus programs constituted kickbacks under the AKS and whether providing them to physician practices would violate the law. Indeed, one would expect that Janssen's legal department and compliance department evaluated whether the focus programs constitute kickbacks under the AKS and whether it was lawful to provide them to physicians. Plaintiffs should be permitted to depose a 30(b)(6) witness on these topics that are central to this action. The witness will be free to assert the attorney-client privilege in good faith when appropriate.[6] The parties can then seek the Court's guidance with regard to the applicable scope of that privilege and whether the privilege applies. The Court should not, however, allow Janssen at the outset to completely avoid having a corporate representative testify regarding these critical issues. It should, therefore, deny Janssen's motion for protective order on this point.

## IV.    CONCLUSION

At Janssen's request, the Court has ordered phased discovery consistent with Janssen's stated intention to move for final summary judgment after the completion of this phase. Despite the Court directing that Plaintiff must have the opportunity to obtain

---

[6] Plaintiff contends that Janssen has waived any privilege objections it may have had by asserting the defense that its provision of the free business advisory services was legal, thereby injecting the issue of its knowledge of the law into the case. *See Barker ex rel. United States v. Columbus Reg'l Healthcare Sys., Inc.*, 4:12-CV-108 CDL, 2014 WL 4287744, at *3 (M.D. Ga. Aug. 29, 2014) ("when a defendant affirmatively asserts a good faith belief that its conduct was lawful, it injects the issue of its knowledge of the law into the case and thereby waives the attorney-client privilege").

full and complete discovery concerning all elements and issues prior to being forced to defend against summary judgment, Janssen is attempting to prevent Plaintiff from doing so by seeking to limit the scope of Plaintiff's 30(b)(6) deposition notice with its motion for protective order. The Court must reject this attempt by Janssen to have its cake and eat it too. Janssen's motion for protective order must be denied so that Plaintiff is able to obtain the testimony from Janssen's corporate representatives that will be critical to supporting her claims and defeating Janssen's forthcoming motion for summary judgment.

Dated: October 22, 2021                    Respectfully submitted,

                                           /s/ Theodore J. Leopold
                                           Theodore J. Leopold (admitted pro hac vice)
                                           Leslie M. Kroeger (admitted pro hac vice)
                                           COHEN MILSTEIN SELLERS & TOLL PLLC
                                           11780 U.S. Highway One, Suite N500
                                           Palm Beach Gardens, FL 33408
                                           (561) 515-1400
                                           tleopold@cohenmilstein.com
                                           lkroeger@cohenmilstein.com

                                           Casey M. Preston (admitted pro hac vice)
                                           Gary L. Azorsky (admitted pro hac vice)
                                           Jeanne A. Markey (admitted pro hac vice)
                                           COHEN MILSTEIN SELLERS & TOLL PLLC
                                           1717 Arch Street, Suite 3610
                                           Philadelphia, PA 19103
                                           (267) 479-5700
                                           cpreston@cohenmilstein.com
                                           gazorsky@cohenmilstein.com
                                           jmarkey@cohenmilstein.com

                                           Jonathan Shapiro (BBO No. 454220)
                                           SHAPIRO & TEITELBAUM LLP
                                           90 Canal Street, Suite 120
                                           Boston, MA 02116
                                           (617) 742-5800
                                           jshapiro@jsmtlegal.com

                                           *Counsel for Plaintiff Relator Julie Long*

17

## CERTIFICATE OF SERVICE

I hereby certify on this 22nd day of October, 2021, that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Theodore J. Leopold
Theodore J. Leopold (admitted pro hac vice)