<pre>
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2


 3


 4       *  *  *  *  *  *  *  *  *  *  *  *  *
      THE UNITED STATES OF           *
 5    AMERICA, ET AL. *EX REL*.       *
      JULIE LONG                     *
 6            Plaintiffs             *
                                     *   CIVIL ACTION
 7            v.                     *   No. 16-12182-FDS
                                     *
 8    JANSSEN BIOTECH INC.           *
              Defendant              *
 9       *  *  *  *  *  *  *  *  *  *  *  *  *


10


11


12             BEFORE THE HONORABLE M. PAGE KELLEY
                 UNITED STATES MAGISTRATE JUDGE
13                      MOTION HEARING
                      January 13, 2022
14


15


16


17


18


19                                   Courtroom No. 24
20                                   (Via Videoconference)
                                     1 Courthouse Way
21                                   Boston, Massachusetts 02210


22                         JAMES P. GIBBONS, RPR/RMR
23                           Official Court Reporter
                         1 Courthouse Way, Suite 7205
24                        Boston, Massachusetts  02210
                           jamesgibbonsrpr@gmail.com
25
</pre>

```
 1    APPEARANCES:

 2           COHEN MILSTEIN SELLERS & TOLL, PLLC, (By Theodore
       J. Leopold, Esq., Diana L. Martin, Esq., and Poorad
 3     Razavi, Esq.), 11780 U.S. Highway One, Suite N500, Palm
       Beach Gardens, Florida, 33408, on behalf of Plaintiffs
 4
              COHEN, MILSTEIN SELLERS & TOLL PLLC, (By Casey M.
 5     Preston, Esq., and Gary L. Azorsky, Esq.), 1717 Arch
       Street, Suite 3610, Philadelphia, Pennsylvania, 19103,
 6     on behalf of Plaintiffs

 7            COVINGTON & BURLING, LLP, (By Ethan M. Posner,
       Esq., Kristen Cobb, Esq., Stacey K. Grigsby, Esq., and
 8     Sarah E. Tremont, Esq.), One CityCenter, 850 Tenth
       Street, NW, Washington, D.C.,  20001, on behalf of
 9     Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                     P R O C E E D I N G S

 2                   (VIA VIDEOCONFERENCE)

 3          THE CLERK:  Today is Thursday, January 13, 2022,

 4   and we are on the record in Civil Case No. 16-12182, the

 5   United States of America versus Janssen Biotech, Inc, the

 6   Honorable M. Page Kelley presiding.

 7      Will counsel please identify themselves for the record.

 8          MR. LEOPOLD:  Good afternoon, again, your Honor.

 9   Ted Leopold, along with my partners, Casey Preston, Gary

10   Azorsky, Diana Martin, and Poorad Razavi.

11          THE COURT:  Okay.  Good afternoon to everyone.

12          MR. POSNER:  For the defendant, your Honor, Ethan

13   Posner, Kristen Cobb, Sarah Tremont and Stacey Grigsby,

14   Covington & Burling.  Good afternoon.

15          THE COURT:  Good afternoon.

16      Anyone else?

17      Okay.  So I presume everyone saw that Judge Saylor

18   referred back to me Janssen's objection.  And I think what

19   we're going to do right now is -- and he also referred

20   another motion that I think just inadvertently had not been

21   referred to me yet, which I think is 233 on the docket.

22      So we had said that today I would like to hear argument

23   on 223 and 235, and that's true, and I'm still happy to hear

24   argument on those two motions.

25      I think these issues are kind of overlapping with some
```

1    that I've already heard and some things in the objection,

2    but, at any rate, I think I am going to treat the objection

3    as a motion to reconsider.  And I've obviously looked at the

4    brief that Janssen filed, which is 252 on the docket, and I

5    think I will just ask you, Mr. Leopold, when are you able to

6    file a response to this?

7             MR. LEOPOLD:  Your Honor, thank you.  We were in

8    the process of drafting our response to provide to

9    Judge Saylor.  I think in terms of the time frame when it

10   was due was -- if I could refer to Casey, I think it's

11   sometime next week.  But, Casey, do you have a feel when we

12   can get our response in?  Early next week sound fair?

13            MR. PRESTON:  I think we're going to need a little

14   bit more time than that.

15            THE COURT:  I'm sorry.  When was it due, do you

16   know?

17            MR. PRESTON:  Your Honor, we were proceeding under

18   the 14-day rule, and I believe the objection was filed on

19   Monday.

20            THE COURT:  Right, the 10th.  So you want 14 days

21   to respond to that?

22            MR. PRESTON:  I guess in light of Judge Saylor's

23   order regarding a clarification, it seemed there was a

24   couple of terms that were used in your December 20 order

25   that Janssen has made issue of in their objection, and we

1    weren't sure if there was going to be a clarification

2    regarding that and then we file our brief, or you want us to

3    file our brief before there's a clarification on those

4    issues?

5           THE COURT:  So I think the most streamlined way to

6    proceed here -- I don't want this to get bogged down and for

7    us to have more delay.  But I do think the simplest thing is

8    for me to rule on all these motions at once and to do so in

9    more detail than I did in the docket entry from the December

10   hearing.  And that way Janssen or relator can take an appeal

11   to Judge Saylor.  He can deal with everything at once and

12   not in a piecemeal fashion.  And I do think there's some

13   overlapping issues here, and it doesn't really make sense to

14   do them one at a time like this.

15      So I don't want to rush you or have you feel that

16   you're at a disadvantage, but I think if you want to respond

17   to Janssen's arguments that they raise in their brief, 252,

18   that would be helpful, and I will consider it as a motion to

19   reconsider, and I'm reconsidering.

20      So we're not starting from zero, but I am going to take

21   all of these motions into account, deal with all of them.  I

22   will issue a written order, and then you can appeal as you

23   wish.

24      So I know you have a status conference with Chief

25   Judge Saylor on the 18th.  I don't think I am going to

1    obviously be able to wrap all this up by then, especially if

2    you haven't filed a response by then.  So if you wanted to

3    file something on the 24th, which would give you your two

4    weeks, I think that's fine.  I am hoping to wrap everything

5    up and get it to you so that you can decide whether and what

6    you want to appeal to Judge Saylor perhaps by the end of

7    that week.

8         So anything to say about that?

9         MR. LEOPOLD:  Your Honor, if I may?  Could I make a

10   suggestion, that if we could have the time that is allowable

11   under the local rule.  We'll do our best to try to get it to

12   you sooner than that if we can, and we'll use our best

13   efforts to do that.

14        And just to clarify, in our, I guess, response to what

15   is now touted as Janssen's motion for reconsideration, we

16   will address all issues that are set forth in there, not

17   only on the issues of clarification or concerns of

18   clarification that they raise, but also responsive arguments

19   of why the court's order should not be reconsidered, or lay

20   out our issues in that regard, I think -- if that makes

21   sense.

22        THE COURT:  Yes.  And I do think you're welcome to

23   refer to your prior briefing because the briefing was quite

24   extensive and you don't need to repeat it all.

25        MR. LEOPOLD:  Right.

```
1              THE COURT:  Okay.

2              MR. LEOPOLD:  That makes sense for us as well, your

3    Honor.

4              THE COURT:  Okay.

5              MR. PRESTON:  Your Honor, if I may?  I'm sorry.

6         Just for scheduling purposes, and I know that there's

7    sort of now been kind of a reset on this matter, now

8    switching it from an objection and appeal to a

9    reconsideration.  If -- so the 24th -- if we could have

10   until the 26th, I think that that would enable us a couple

11   of more days to be able to provide your Honor with a more

12   robust response to their motion.

13             THE COURT:  Okay.  That's fine.  By the 26th,

14   though, and let's get it in by then.

15        And then my hope is that in February, whichever side

16   wants to take appeals, you can take an appeal, and then I'm

17   hoping things will be settled out for you in February and we

18   can move forward.

19        Okay.  So -- and I'm hoping there are no more discovery

20   issues in the pipeline and that this is the universe of it

21   that I have referred to me right now, and I'll take a look

22   at everything and just issue one order on it all.

23        Okay --

24             MR. LEOPOLD:  That's helpful.  Thank you, your

25   Honor.
```

1          THE COURT:  All right.  Now, with regard to 223 and

2     235 -- Mr. Posner, anything else that you wanted to ask

3     before we turn to these two motions?

4          MR. POSNER:  No, I don't think so, your Honor.

5     Thank you.

6          THE COURT:  Okay.  All right.

7          So with regard to 223, this is the oldest of the

8     motions that's pending, and it has to do with relator's

9     request that Janssen be ordered to provide a complete and

10    proper privilege log.

11         And I guess what I really would like to hear from

12    Janssen on this is -- so I do think that relators at the

13    motion for summary judgment stage are going to need to have

14    some -- have had discovery on what we've been referring to

15    as the scienter issue, but whether Janssen knew that what it

16    was doing was unlawful, right?

17         So I just want to make sure that we don't get to

18    summary judgment and there are documents out there that were

19    not -- that you know about but that were not ordered.  And

20    I'm noticing the parties just have these diametrically

21    opposed statements.  You know, they're saying that you've

22    been ordered to produce evaluations concerning the legality

23    of providing the IOI support, and your response is, We did.

24         So I guess I'm just wanting some reassurance that you

25    actually have provided that information and not just that,

1    Oh, we've never been ordered to provide that.

2           MR. POSNER:  Your Honor, my colleagues may address

3    some of these issues.  You know, we have certainly produced,

4    you know, detailed policies.  There are some more we're

5    going to provide.

6        These are very detailed policies that, in our view,

7    essentially cover the items under challenge.

8        You're not -- just to be clear, you're not ordering us

9    to produce sort of otherwise privileged memos, are you?

10          THE COURT:  No.  Absolutely not.

11       I guess the problem is, you know, your position is it's

12   too much trouble to go through all the privileged materials

13   because we're just going to produce reams of privilege logs.

14   And I think relator is saying, Well, that's just what we

15   have to do here.

16       And I know earlier in the case I did say I don't think

17   that one of the custodians ought to be a lawyer because it

18   was just going to be a bunch of privileged documents coming

19   from that custodian.  And that keeps getting quoted in these

20   papers.  But that statement that I made and excluding that

21   custodian really was at a time when I, at least, I don't

22   know about you, but I did not understand we were heading to

23   summary judgment.

24       And so I'm very concerned that we're going to get to

25   summary judgment, information concerning Janssen's

1    scienter -- that's how we're going to refer to it in a

2    shorthand way -- whether they knew that the programs were

3    unlawful, has not been ordered.  It's going to become clear

4    during summary judgment that it wasn't ordered, and then

5    we're going to be right back in the same hamster wheel that

6    we're in now going back to look for that stuff.

7         So I do want to make sure that if there is information

8    not in a central repository, which I also don't really

9    understand what a "central repository" is, but if there's

10   information -- if there's categories of information that are

11   not being turned over because you would have to do a

12   privilege log for them, but there are documents among those

13   that are not privileged that are not being turned over,

14   that's troubling.

15        So I just want to make sure we're covering our bases

16   and what I'm ordering you to produce.

17            MR. POSNER:  It's not so much what you're

18   necessarily ordering us to produce, although that's part of

19   it, and this is one of the appeal issues, it's more that

20   what your order appeared to require is right -- the time

21   period here is sort of two decades plus.  And so you would

22   have had multiple lawyers on these issues.  We've obviously

23   produced materials from the Promotional Review Committee on

24   which a lawyer served.  But there were multiple lawyers over

25   two decades, as you can imagine.

1          And what your order appeared to require was, Well, go

2     back, find all the electronic documents, go review them,

3     figure out which ones -- which emails and other materials

4     relate to, I don't know, 37, 40 programs over two decades,

5     and go log them all, is what your order required.

6          And obviously that's something that we object to.

7          We obviously have done, you know, a diligent search

8     where we can.  But if your question is, Have you gone back

9     over two decades plus, reviewed multiple lawyers' files,

10    present and former, to see what's in there, the answer is

11    we've not done that and we object to doing that.

12          THE COURT:  So let me just ask you as a starting

13    point, we're talking only about the programs in this

14    discrete area of Pennsylvania, and is that 37 to 40

15    programs?

16          MR. POSNER:  Well, it's at least 37.  The relator

17    has answered, and we asked in interrogatory, Okay, tell me

18    what programs you're actually objecting to, okay?  And they

19    said, Well, it's at least these 37, but there could be more.

20          So my answer is always, it's at least 37.

21          And, you know, when you look at some other programs

22    they've put under challenge, it's probably closer to 60.

23          And the relator is essentially correct.  These programs

24    didn't really vary by district.  So they're just challenging

25    the ones in that district, but that's pretty much the

1    national program.

2         So what your order appeared to require, whether you

3    intended to or not, is, Well, go search the lawyers' files

4    going back two decades for, I don't know, 40 to 60 programs,

5    go figure out what's in there, and go log it all.

6         THE COURT:  Well, what I'm concerned about is that

7    you have these programs.  You're obviously having to comply

8    with a lot of regulations and legal rules about, you know,

9    not violating certain statutes, and I just imagine that

10   there is a body of non-privileged documents discussing their

11   legality.

12        You know, if nothing else, you know, guidance sent down

13   to people in Pennsylvania saying, Make sure if you're doing

14   this, don't do this, and don't cross this line.  And, you

15   know, Be careful about this one program because it's right

16   on the line, or that type of thing.

17        Maybe there isn't, but I just think without you

18   searching through every single lawyer's emails for 20 years,

19   you should able to search for and find relevant documents

20   just based on what your client knows.

21        MR. POSNER:  Well, your Honor, we have produced

22   very detailed compliance policies.  There is not a

23   compliance policy that says, Don't violate the Anti-Kickback

24   Act.

25        There are specific policies on -- that really get at

1   these specific kinds of programs, and there's specific

2   guidance issued to the field which obviously is essentially

3   opining on their legality, right?

4          THE COURT:  Right.

5          MR. POSNER:  Like it says here's what you can

6   specifically do you in this specific area, reimbursement

7   support, coating support, in-office infusion support.

8   That's what -- I mean, we've given them dozens.  We're going

9   to give them some more.  But that's what -- that's issued by

10  Healthcare Compliance.  Those are compliance policies.  And

11  we've given them dozens, and we'll continue to give them

12  more.

13         They just recently sent us an email and said, well,

14  you've given us these couple of dozen.  You know, can you go

15  look for these?  And we are going to go look for those, and

16  we're going to complete the production on that.

17         That's opining on -- I mean, that's giving compliance

18  to the field.

19         THE COURT:  Okay.  So that is very reassuring to

20  me.

21         What I am worried about from reading the briefing on

22  this is if it doesn't exist in the custodian's file and it

23  isn't in the central repository, you're not going to look

24  for it.  And that's what is troublesome to me, that somehow

25  just -- I mean, what I'm trying to wrap my mind around in

1       this case is there -- obviously once you get out of central

2       Pennsylvania and, as we've been saying, go up the chain to

3       the national oversight of these programs, I can see it does

4       get very unwieldy for you to try to find a needle in a

5       haystack by looking through, you know, many, many employees

6       over many, many years' emails.

7            But what I'm interested in is just institutionally are

8       there other -- maybe that's what you mean by "central

9       repository."  But institutionally is there information that

10      relators are not specifically targeting that source but that

11      you know it's there and you're not producing it?

12           MR. POSNER:  I mean, not that I'm aware of that

13      otherwise wouldn't be privileged.

14           I mean, I cannot overemphasize the specificity and

15      number of these compliance policies which we've produced and

16      are continuing to produce, okay.  That's from -- you know,

17      that resides in the Healthcare Compliance Unit, and that,

18      obviously, we searched, and we tried to find every policy

19      that could conceivably relate to these issues, okay.

20           I'm not aware as I sit here of some other source -- I

21      mean, there could be legal documents flying back and forth

22      over a 20-year period, but if -- I mean, there's no like

23      file -- centralized file that I'm aware of like legal

24      analyses all in one neat place relating to 40 to 60 policies

25      over 20 years.  I'm not aware of that.  That you would have

1      to go figure out what's in the various lawyer files.

2          But the company has a very sophisticated Healthcare

3      Compliance Unit that issues very specific guidance to the

4      field, including Ms. Long.  Whether she got it or not, I

5      don't know, but we're producing that guidance.  I mean,

6      that's the guidance to the field on these specific issues.

7                  THE COURT:  Okay.

8          So let me hear from your team, Mr. Leopold.

9                  MR. LEOPOLD:  Thank you, your Honor.

10         Your Honor, I think you have focused myopically on the

11     exact core issue, and I think we've heard for the first time

12     after all these hearings that, in fact, Janssen has not

13     looked for the types of documents that we have requested and

14     that your Honor has ordered.

15         I think also -- and I'm not sure if your Honor -- if

16     the transcript has been released or if you have read it from

17     the last hearing with Judge Saylor, which occurred on, I

18     believe, December 22.  Because it was on December 21 wherein

19     Judge Saylor asked and had ordered, or maybe you had ordered

20     and he knew about the order, that Janssen had to set forth

21     its position about the reliance of counsel.

22                  THE COURT:  I did read that, yes.

23                  MR. LEOPOLD:  And at that time, with all due

24     respect, the letter setting forth their position, I don't

25     want to say it was vague, but a little bit open-ended, that,

```
 1    at least for now, they're not relying on advice of counsel
 2    but they may in the future.  And Judge Saylor was candidly
 3    quite dogmatic saying, Don't think you're going to come back
 4    in five, six months or nine months and change your position.
 5    And he wants this issue teed up immediately, and we are in
 6    the process of drafting an appropriate motion specifically
 7    related to that issue that he asked us to do.
 8            THE COURT:  So can I just ask --
 9            MR. LEOPOLD:  Yes.
10            THE COURT:  -- what's that motion?
11            MR. LEOPOLD:  That motion is to set -- to request
12    that Janssen identify or set forth with specificity now, or
13    when this motion is filed, their position on whether or not
14    they are going to rely on the advice of counsel defense.
15        Because in their letter that they provided, again it
16    was quite open-ended, where they -- I don't have it in front
17    of me, but it was something to the effect, right now we
18    don't anticipate doing that, but it may change down the
19    road.
20        And Judge Saylor on his own said, Don't think that
21    you're going to come back six months from now and change
22    your mind or nine months from now that you're going to do
23    that.  That's not going to happen.
24        So he -- when -- in that discussion section, he wanted
25    this issue teed up essentially in finality.
```

1          And so we're making a motion.  We're in the midst of

2     drafting a motion on that particular issue.

3          But the second thing that also transpired at that

4     hearing is Janssen argued that although they're not relying

5     on the advice of counsel, this went through a process of the

6     PRC, and there's a lawyer sitting on the PRC that was

7     involved in those decisions.

8           But we don't know all the lawyers.  We have no clue.

9     And they have refused to provide anybody at this point,

10    providing testimony, and I'm assuming they're going to

11    object at this point based upon their position.

12         What analysis did they do?  Was it just looking at the

13    PowerPoint?  Was it making some comma changes?  Was it

14    making word changes?  Was there an actual legal analysis?

15         But it's a little bit, as we know and we've talked

16    about, and the case law is quite clear on this, a sword and

17    a shield.

18         They're saying, We had lawyers on the PRC that reviewed

19    it, but you don't get to ask them what their review was,

20    what their analysis was.

21         That's number one.

22         And number two, as we heard now affirmatively for the

23    first time, they never went -- have checked at their legal

24    office counsel who else did any review if anyone.

25         And I keep hearing about sort of this 20 years, 20

1    years, 20 years.  Like this is a huge burden.  I mean, I

2    realize 20 years is a lot, but the program, it's not our

3    fault, started 20 years ago.  It is still continuing today.

4    I've never heard of a party saying because it's 20 years

5    long and we've been doing it and we're still doing it, we do

6    not have an obligation to go back and search.  We do not

7    have an obligation to provide a privilege log.  We do not

8    have an obligation to set everything forth in a privilege

9    log.

10        The rules -- I am not aware anywhere in the rules that

11    says you don't have to do that.  I mean, that is just

12    totally contrary to the Rules of Civil Procedure.

13        So here they say, There's somebody on the PRC.  There's

14    a legal person.  We have no clue what that person does other

15    than, from what we can see in the PRC documents, looking at

16    commas and maybe some word changes because there's no

17    analysis.  There's nothing indicating what that lawyer has

18    done, and they're objecting to producing any information

19    about what that lawyer and the PRC has done.

20        They're -- right now we had depositions set.  They're

21    refusing to produce anybody for deposition until all of

22    these issues get resolved because they say they don't want

23    to produce anybody twice.  So we're now off the calendar for

24    any depositions for weeks, if not months, at this point.

25    That was unilaterally done by the defendants, and at this

1    point there's nothing new that is -- that -- that -- that is

2    -- isn't required.

3         The third issue that I think is very important, it's

4    great to have policies and directives, and even though

5    discovery, we have been told, was completed in October, we

6    are still getting documents.  We still have to tell them

7    they still need to find documents.  But policies in and of

8    themselves mean nothing.

9         It's great to have a policy, but what is the analysis

10   behind whether or not these policies were followed?  So you

11   have programs.  The policies say, X, Y, and Z, you can't do

12   this, that, or the other.  That's the policy.

13        What was the rationale analysis of the particular

14   PowerPoint of the 27 or so that we gave them?

15        And we're not talking 60.  We told them, these are the

16   27 or 30, whatever number we've given them, are the ones at

17   issue.  We're not going above that.  We've told them this a

18   number of times.

19        So these are the 20- or 30-so programs.  Where is the

20   analysis of whether or not they complied with the policies?

21   It's great to have the policies.  We expect and suspect that

22   because these programs violate those policies -- from the

23   ones we've seen it's clear they do -- where's the legal

24   analysis?

25        Maybe they didn't do it.  That's fine.  Then the answer

1    is "none."  But we're entitled to know where those documents

2    lie and with whom.

3        And additionally, you know, these people were not in

4    outer space where they don't know who they were.  Clearly

5    over the last 20 years they haven't had that much turnover.

6    They know who was involved in reviewing these programs at

7    the general counsel's office.  It's not like they have to go

8    search a thousand people.  There's somebody there that

9    knows, and they should have to go and... (inaudible) them.

10        THE COURT:  First of all, I'm looking at your brief

11   on page 6, and you say -- what you're actually requesting

12   are, No. 1, The various internal assessments, evaluations,

13   and analyses set forth in certain requests, corporate

14   integrity agreements to which Janssen has been a party,

15   documents concerning governmental investigations, documents

16   concerning complaints submitted to the legal or compliance

17   department.

18        So are these actually the detailed things you're

19   seeking, or is what you were just talking about something

20   else?

21        MR. LEOPOLD:  First, your Honor, if I could just

22   inquire, your Honor?  Are you --

23        THE COURT:  I'm looking now at 235.

24        Because I don't know how realistic it is that Janssen

25   is going to go through every lawyers' communications about

1    this and create a privilege log for every lawyer over a

2    period of time like that.  I mean, I just wonder if there is

3    a more targeted way of requesting this.

4        I am trying to think, What isn't privileged that you're

5    asking for?  What would not be privileged?

6        I know -- okay, here's a business.  They're doing

7    something where they have to be very conscious of complying

8    with the law.  They must be evaluating whether they are

9    complying with the law or not.  But I do think they have an

10   argument that over a long period of time like this for them

11   to just search through all their lawyers' emails, et.

12   cetera, is too much.

13       So what is it you want them to do?

14       And, you know, I'm looking at this list of things which

15   look like they're probably not privileged in the companion

16   motion that we're looking at, just in your request for

17   production.

18            MR. LEOPOLD:  Well, I think Casey wants to --

19   because he's been dealing with this particular issue.

20       Casey, do you want to address that?

21            THE COURT:  Mr. Preston, yes.

22            MR. PRESTON:  Yes.

23       Good afternoon, your Honor.

24       So you're referring to the new requests in the third

25   set.  And, you know, those we sort of take a more targeted

1    approach, as the Court instructed, regarding scienter issues

2    and other issues that came up that we've learned of to this

3    point in the case.

4        And, your Honor, in many cases those documents won't be

5    privileged.  And they should go and retrieve those documents

6    from employees who were involved in this program and who

7    have knowledge and, you know, are known to have discoverable

8    information.

9        But I think, going back to your concern about the

10   actual privilege log, I think it's important to understand

11   that you have the Promotional Review Committee that did have

12   a lawyer involved.  And that lawyer, according to their

13   policies, would have looked at the legality of these

14   programs under state law and federal law.  And they're now

15   using that really as a legal opinion, as Mr. Posner has

16   indicated.

17       But at the same point, you know -- so they've injected

18   into this case their knowledge of the law, and they want to

19   use --

20           THE COURT:  Can I ask you a question?

21       With regard to the PRC materials where there is a

22   lawyer sitting on the committee, as you would expect there

23   to be, are they claiming those materials are privileged?

24           MR. PRESTON:  Your Honor, they have given us the --

25   basically the legal conclusion, approving, rubber stamping,

1    that particular promotional piece as approved.  But what
2    they haven't shared is any legal analysis that might have
3    occurred behind the scenes.
4         And so again they're using this as a sword and a
5    shield, and while they're claiming, No, we're not relying on
6    advice of counsel, in fact, that's exactly what they're
7    doing because they're saying, This is a legal opinion that
8    what we were doing complied with the law, and they're
9    relying upon that.
10        And at the same point, they're shielding us from the
11   other legal opinions from their legal department related to
12   this overall IOI support program and individual
13   presentations.
14        And that's why actually it's extremely important here
15   not just for summary judgment but for this whole issue of
16   what actual legal opinions exist and what they're trying to
17   shield, because we are going to -- in our view, they've
18   actually waived their right to withhold those opinions
19   because they have injected into this case their knowledge of
20   the law, right.  They have asserted a defense that they've
21   acted in a good-faith belief that they were providing these
22   programs lawfully.  And they're relying upon the legal
23   opinion of the Promotional Review Committee.
24        At the same time, they want to shield other legal
25   opinions, which clearly puts us at a disadvantage, right.

1    The defendant can't selectively choose which legal

2    opinions the court and the jury gets to see, when they're

3    going to disclose some legal opinions, and at that point

4    they really have to be compelled to disclose all the legal

5    opinions.

6         MR. LEOPOLD:  Your Honor, if I could just take that

7    one step further, just so we can see how it plays in a trial

8    or summary judgment, primarily in a trial, is what they're

9    doing is, Here's the PRC.  It's rubber stamped that it's

10   approved.  Hey, there's a lawyer on it, so it's okay.  But

11   you don't get to see the legal analysis that was done, if

12   any.  You just have to take our word for it.

13        Well, you can't have it both ways.  You can't have it

14   again.  You can't have your cake and eat it too.

15        They put this up front as a main issue.  They're

16   saying, The PRC, there's a lawyer on it.  It's good to go.

17   We signed of on it.  But you don't get to see what the

18   analysis was.

19        We can't even ask questions about it.  That's their

20   position.  It's all privileged.  But the PRC reviewed it and

21   approved it.

22        THE COURT:  Just with regard to the PRC argument

23   here, Mr. Posner, you want to respond?

24        MR. POSNER:  Well, we're getting really far afield.

25   If they have some brief they want to file about, Because

1    we're claiming the programs were lawful we've waived, they

2    should cite some cases for that proposition.

3            THE COURT:  I agree.  I think this hasn't really

4    been briefed.  But I do still think -- I mean, again, I was

5    hoping we could deal with everything.

6            MR. POSNER:  Right.

7            THE COURT:  And this isn't going to keep going on

8    and on.

9        But, you know, the question of whether you've produced

10   an adequate privilege log for the materials that you've

11   already done the log for, I think is different than, Have

12   you searched far and wide enough for privileged documents,

13   you know, looking through your privileged documents to see

14   are there things in there that are not privileged that

15   should be turned over?  And now this PRC issue I think is

16   another whole can of worms.

17           MR. POSNER:  Well, look, we've certainly searched

18   in a bunch of different -- I'm trying to distinguish between

19   doing a good-faith search in a reasonable number of places

20   and then logging those materials, which we've done.  We've

21   logged materials that go back at least to 2003 and maybe

22   earlier, okay.

23       Where I was having a problem was the idea that we had

24   to do more than that, that we had to go back and, you know,

25   search multiple lawyer files over a long period of time.

1          The rules require a good-faith reasonable search that's

2     proportionate to the case, and obviously we think we've done

3     that.

4          So -- I'm sorry.  What was your question?

5          THE COURT:  So I guess the problem is, you know,

6     you're saying, We have done a good-faith reasonable search

7     proportionate to the case, and relator's position is, No,

8     you haven't.

9          MR. POSNER:  Yes.

10         Relator's position is -- right.  You've got to go back

11    and look at all the lawyer electronic documents, to the

12    extent they exist, and you've got to log everything.  That's

13    their position.

14         MR. PRESTON:  Your Honor, there's also -- what

15    Mr. Posner is saying just isn't true because, your Honor, in

16    their -- they've disclosed one lawyer.  We know there's been

17    several lawyers who have been involved in reviewing the

18    programs and IOS support, but they've identified one, and

19    that is Mr. Jimenez.  And they didn't log any of

20    Mr. Jimenez's documents on their privilege log.

21         They're acting like they are completely excused from

22    having to log legal opinions, and legal opinions are really

23    at the center of this case.

24         And so the current privilege log, that only includes

25    documents from the ESI searches that they performed of the

1   12 custodians, none of whom are in the legal department, and

2   some documents that they obtained from their corporate

3   repositories.

4       But as far as any legal analyses and legal opinions

5   from their legal department, they have completely ignored

6   that.  So we have no idea --

7           THE COURT:  So other than your argument about the

8   sword and shield and that they ought to -- and that they've

9   waived a privilege, why do you think their internal

10  assessments, evaluations, and analyses would not be

11  privileged?  Under what circumstances do you have those kind

12  of things that are not privileged?

13          MR. PRESTON:  Because they're not just denying our

14  claim that they knowingly provided these services in

15  violation of the law.  They are asserting an affirmative

16  defense voluntarily where they are saying they had a

17  good-faith belief that they acted in compliance with the

18  law.

19      And the law is clear.  When you voluntarily inject your

20  knowledge of the law, and then you add to that legal

21  opinions, like they are using these Promotional Review

22  Committees, then they have made an implied or an at issue

23  waiver.

24          THE COURT:  So is this the motion that you still

25  have yet to brief?

1          MR. PRESTON:  We are preparing that motion, your

2     Honor.

3          But I think going back to the privilege log issue, it's

4     essential that we have a privilege log so we know what other

5     legal opinions out there are they trying to shield at the

6     same time they're trying to assert, Oh, well, our policies

7     covered this, and the Promotional Review Committee were

8     relying on those legal opinions.

9          We're entitled to know what other legal opinions exist.

10          MR. LEOPOLD:  And, your Honor, on the privilege log

11     that has been provided, specifically related to the PRC,

12     there's no legal analysis review of documents that are set

13     forth on the privilege log from the PRC.

14          It's just -- the documents they have given us just has

15     who the lawyer is and the signature block, and okay, and

16     stamped good to go.  There's no other -- there's nothing on

17     the privilege log saying, and, in addition, the lawyers did

18     X, Y, Z in terms of analysis or whatever the privilege may

19     be in setting forth appropriate detail as required by the

20     federal rule.  There's nothing on there.

21          So where's the information that should go on the

22     privilege log if what they say is true, that the lawyer and

23     the PRC did an analysis and they were told it's okay?  Why

24     isn't that on the privilege log?

25          Along with the other aspect that Casey was just

1    referencing, what legal counsel's office did in addition to

2    the lawyer, the particular lawyer, on the PRC did.

3              MR. POSNER:  Your Honor, our log has materials from

4    outside counsel.  It has items from in-house lawyers.

5         I don't know where this is going.

6              MR. PRESTON:  That's just not accurate.

7              THE COURT:  Can I just ask you, how long is

8    privilege log?

9              MR. POSNER:  That I'm going to have to defer on.

10             MR. PRESTON:  Fourteen pages, your Honor.

11             THE COURT:  Excuse me?

12             MR. PRESTON:  Fourteen pages, your Honor.

13             THE COURT:  Okay.  That seems very manageable.

14        So why don't you submit -- I mean, there's a lot of

15   back and forth here about just the adequacy of the log, not

16   necessarily all the documents that have been reviewed.

17        But just with regard to the log as it presents itself

18   being adequate, why don't you just submit the log to me

19   under seal, and I'll take a look at the log, especially if

20   it's only 14 pages.

21             MR. PRESTON:  Your Honor, we have done that.  I

22   think you have a copy of the log.

23             THE COURT:  Oh, I do?  Okay.

24        So let me just say, when do you anticipate filing this

25   additional motion, Mr. Leopold?

1        MR. LEOPOLD:  Your Honor, we hope to do that within

2   the next two weeks.  We are drafting it.

3        And I'm assuming Janssen is aware of this.  There is a

4   number of Circuit Court decisions, out of the Eleventh

5   Circuit, out of your Circuit and others, that support our

6   position that you can't have a sword and a shield, and you

7   can't make these statements and then not open it up.  But

8   that's a different issue for down the road.  I get that.

9        All we're seeking now is, A, confirmation that all of

10  the analyses of lawyers on the PRC are set forth in the

11  privilege log.  I don't think that that's been done.

12       Secondly, all other analyses by general counsel's

13  office related to these 27, or approximately 27, programs is

14  on a privilege log.  They have not done that.  Mr. Posner

15  has stated they have not done that today.

16       We are entitled to get that, because at some point in

17  time, and we think we're on very good ground based upon the

18  circuit court opinions around the country, including your

19  circuit, that those documents are going to become available

20  and will need to be produced based upon the position of

21  Janssen in this matter.

22       MR. POSNER:  Your Honor, obviously that -- if

23  they're talking about some sort of waiver argument, they can

24  make that argument.

25       Our point is that we have done a -- we haven't just

1   logged things that were from the custodians.  We've logged a

2   number of items, you know, from outside counsel, from a

3   number of other sources, that we were reasonably able to

4   find.  So where the debate has been is how -- you know, what

5   other lawyers do we -- I mean, we've obviously produced a

6   lot of PRC records.  They can see the names of the lawyers

7   who participated in the PRC.

8        But what we have objected to is the idea that we have

9   to search, you know, through the electronic and other

10  documents of lawyers going back as far as the Court's order

11  appeared to require.

12            THE COURT:  Okay.

13            MR. PRESTON:  Your Honor, just one other point.

14       Janssen has gone through great effort.  They're now

15  going to an outside warehouse to gather all these PRC

16  materials that they want to use as a sword, right.  But what

17  they want to be excused from is just logging all the legal

18  opinions that they want to shield that may undermine their

19  claim that they acted lawfully or knowing -- they had a

20  good-faith belief that they acted lawfully.

21       So they're engaging in the effort to collect documents

22  that they want to use, but they're engaging in no effort to

23  collect documents that actually may undermine their

24  position.

25            MR. POSNER:  Obviously that's not the case.

1           MR. LEOPOLD:  I would like to see -- respectfully,

2      we're talking about the law, and Janssen keeps arguing they

3      haven't seen the law on the sword and the shield and waiver.

4           I would like to see the law where it says they don't

5      have to go and search and put items on a privilege log that

6      relate specifically to the issues in the case.  I haven't

7      seen any case law, other than them arguing, well it's just

8      too burdensome for us to do it.  Where is an affidavit

9      saying that?  I just never heard of that argument before.

10     And I've been involved in cases where products or issues go

11     back longer than 20 years.  I've never heard this argument

12     before.

13          You know, we are entitled to a privilege log,

14     especially when it goes to the core issue in the case that

15     they're relying upon, that everything was reviewed, the

16     lawyers signed off, but, guess what, guys, you don't get to

17     see what they are.

18          That's fine.  Then put it on a privilege log, and when

19     we show them the circuit court opinions from around the

20     country saying they can't do that, then we'll be asking for

21     all those promotional documents to be produced.  They're

22     going to have to produce them at some point, we believe.  At

23     least at a minimum they have to put it on a privilege log.

24          I have just not heard of an argument that, you know,

25     just because we have to go back and ask some people about

1    documents going back 10, 15 years on 27 programs, we don't

2    have to do it.

3        It's just -- respectfully it's just -- you know, it's

4    just they don't want to do it because they know what's

5    there, candidly.

6            THE COURT:  Okay.

7        I will ask you, if you're going to file something about

8    waiver or, more particularly, that the PRC materials are

9    used as a sword and a shield, et cetera, then I'll ask you

10   to do that within around the next two weeks approximately.

11   I won't hold you to 14 days or anything, but I would like

12   that to get teed up.

13           MR. LEOPOLD:  We already have a draft circulating,

14   so it should not be a problem.

15           THE COURT:  Okay.

16       Let's look at 235, which is asking for a lot of

17   particular things, and I think what I was already talking

18   about on page 6 are things that you're requesting.

19       And I think, Mr. Posner, I don't know if someone on

20   your team wants to address these requests.

21       First of all, I do think things have changed over time

22   since the discovery here began.  And I know that this is a

23   third set of requests for production and you have a section

24   objecting to that.  But I am inclined to look at this and to

25   see if any of this should be produced because I do think in

1    my understanding the summary judgment motion was not really

2    clear, you know, that that's where we were headed months and

3    months ago.

4        So, anyway, does someone want to talk about the

5    request?

6            MS. COBB:  Sure, your Honor, I can handle that.

7        So, I mean, you've read our motions and you understand

8    that we think that scienter has always been an issue, and

9    these requests have come really late in discovery and that

10   they're not appropriate at this time.

11       But in terms of these specific requests, we do think

12   that most of them are duplicative or cumulative of topics

13   that were included in relator's previous RFPs, to which we

14   have already responded.

15       Relator specifically says that these are more detailed

16   and targeted than the prior requests, but that's sort of the

17   exact definition of a duplicative and cumulative request.

18   This supposedly more-detailed request would be subsumed

19   within relator's previous broad requests.

20       With specifically the requests on the top of page 6.  I

21   mean, we don't -- we think that they are unrelated to the

22   programs and services at issue here.

23       The corporate integrity agreements for other cases we

24   just don't think is relevant to what's at issue here.

25       Some of their other requests, including RFP 47 and 58,

1    they're requesting things like documents concerning services

2    similar to ones at issue here.  Those are outside the scope

3    of the claims here as well as this phase of discovery.  So

4    we think they're beyond what Rule 26 permits.

5           THE COURT:  So let me just ask relators, what about

6    that, because it does seem pretty broad?

7           MR. PRESTON:  Your Honor, I think that -- again the

8    key issue in the case, or one of the central issues in the

9    case, is Janssen's knowledge of the law, right, whether they

10   knew that providing those services was unlawful.

11      And we know that they were under a corporate integrity

12   agreement related to fraudulent conduct related to other

13   products during the relevant time period.  And, you know,

14   that goes to their knowledge of the Anti-Kickback Statute

15   and what types of conduct violates the Anti-Kickback Statute

16   and what type of conduct violates the False Claims Act.  So

17   that's why we want to know when they were subject to

18   corporate integrity agreements.

19      With regard to --

20         THE COURT:  So -- excuse me.

21      So you want all corporate integrity agreements during

22   this time period related to anything, not necessarily these

23   services?  Anything in the whole company?

24        MR. PRESTON:  Well, with regard to the defendant,

25   Janssen Biotech, and we're aware of -- it's public

1    information that they were subject to a corporate integrity

2    agreement.  That may be the only one.  But there may be

3    additional corporate integrity agreements that we're not

4    aware of.  But that's the information we're seeking.

5         MR. POSNER:  Your Honor, just quickly.

6         Corporate integrity agreements are available on the OIG

7    website.  They can just get it from there.  Obviously, just

8    to be clear, none of the corporate integrity agreements

9    related in any way to this case, but if they want to

10   download corporate integrity agreements, they can do that on

11   the OIG website.

12        MR. LEOPOLD:  Your Honor, I think -- (inaudible) --

13   emphasize what these issues are.

14        There are three categories of documents in this

15   particular docket request, which is Janssen's knowledge

16   concerning the value of these programs, their intent, and

17   whether or not they knew that providing these free support

18   services was unlawful.

19        We have, at the Court's request, been very narrow and

20   focused with these requests for these documents.

21        If the response is, We have produced to you all

22   responsive documents, that's all they need to say.  They

23   don't need to go back and regurgitate or reproduce

24   documents.

25        What I don't want to have happen, which has happened

1   before, is when we're sitting in the courtroom at trial, all

2   of a sudden they say, Well, there are other documents, or,

3   Here are new documents that we didn't provide because we

4   weren't specific.

5       All they have to do, if they've produced everything

6   that they say that they have that are responsive to these

7   particular issues is to say that.  But it's not a game of

8   "gotcha."  So let us know, and if there's anything

9   privileged, provide it.

10      The other thing that they also have said in response to

11  No. 40 and No. 48 is we know that they are in communication

12  with the Department of Justice because they are seeking

13  documents from the government, and there are back-and-forth

14  negotiations with the government and objections by the

15  government.  And they're saying, We're not going to produce

16  you documents for 40 and 48 until we work through all of the

17  objections with the government and we get that all squared

18  away.

19      Well, that's another new area of law that I've never

20  heard of either.

21      We haven't gotten any documents or letters indicating

22  what those objections are.  We haven't received anything

23  what their negotiations are.  I don't know if they're

24  planning to file a motion to compel, but we shouldn't have

25  to wait months and months while they're negotiating with the

1  government about what to get.  And, in the interim, their

2  position is, We're not going to produce anything to you

3  until all those issues with the government are resolved.

4      That's not right.

5          THE COURT:  So Request for Production No. 40 reads,

6  "All documents concerning the assessment, evaluation, or

7  analysis of any guidance or advisory opinion from the OIG

8  related to the types of services that may implicate the AKS,

9  including, but not limited to, product support services."

10         MR. LEOPOLD:  Right.  And the reason for that

11  request is that because on numerous occasions Janssen has

12  argued before your Honor and before Judge Saylor, Oh, well

13  we asked the government if -- and OIG if these are

14  appropriate, et cetera.

15     And they said they've had all these communications.  We

16  can't find anything.  The government can't find anything.

17  But yet their position is, We've communicated with them.

18  We've asked them for that.

19     And so we need something in writing from Janssen

20  indicating what those are.  Produce us those documents.

21     And now they're of the position they're trying to get

22  that evidently or allegedly from the government, that I'm

23  not aware exists, according to the government, but Janssen

24  says it does.  So produce the documents to us.

25         THE COURT:  Okay.

1       And what does Janssen say to this?

2               MR. POSNER:  I'm sorry.  Kristen, why don't you

3       respond.

4               MS. COBB:  Yes.

5               MR. POSNER:  None of what -- if the question is did

6       we get some like explicit go ahead from OIG at the time,

7       we've never argued that.

8               MR. LEOPOLD:  That is not correct.  That is not

9       correct.  They have argued that to Judge Saylor and I

10      believe to your Honor.  They said, We have been in

11      communications and we've gotten sign-off by the government.

12      That is not -- I'm not aware that that's true.  And if that

13      is true, produce the documents.  That's what this request

14      is.

15              MS. COBB:  I would disagree with Mr. Leopold's

16      characterization of what we've said.

17          Janssen's never requested any sort of OIG advisory

18      opinion on these programs, and we've informed them of that.

19          We obviously don't know what the government internally

20      has done, what their analysis -- if they've done analyses of

21      these programs, and that's what we would like to see from

22      the government.  So we don't have the government's obvious

23      internal deliberations or any communications that the

24      government has had on this, and we've never affirmatively

25      sought an OIG advisory opinion on those programs.

1          And I do not believe that we've ever made such a

2     representation to your Honor or to Judge Saylor.

3          THE COURT:  Okay.  So I think you can just answer

4     RFP 40 to them because it sounds like you have an answer to

5     that, and so we can take care of that one.

6          MR. PRESTON:  Your Honor, I think the request

7     goes -- it's broader than that because obviously the

8     decision of whether or not to seek an advisory opinion,

9     right, was a major decision.  And maybe they never even

10    considered it, and so then that would be information that

11    they could respond with.  But in the event that internally

12    there's discussions of whether we should or should not seek

13    and advisory opinion on whether these services we're

14    providing violate the Anti-Kickback Statute, that's what

15    we're also seeking, the internal deliberations, the internal

16    analysis, not just external communications.

17          THE COURT:  So in what world are those kind of

18    analyses not privileged?

19          MR. PRESTON:  Your Honor, that's exactly why we

20    need a privilege log.  Maybe they decide they don't want to

21    share those documents, but we're entitled to know whether,

22    in fact, they undertook that analysis.

23          MR. POSNER:  Yeah, but that's going to require -- I

24    don't even know where I would go to look for something like

25    that.  Like, "File on consideration of filing OIG opinions

1    about product support services?"  I don't even know where

2    I'd look for that.

3              MR. LEOPOLD:  Well, I think, respectfully, all the

4    rules require is a good-faith effort to make inquiries of

5    various departments or groups.  That's what's required.

6        And after that review, if it comes back that there

7    isn't any, it's none.  But there is a good-faith effort to

8    at least inquire, and that's what the rules are set forth

9    for.

10       So the fact that you may not know where to go, there

11   are people at Janssen that can be talked to to find out that

12   information.  That happens all the time.

13       And on the premise that the defendants are arguing that

14   there is no -- there would never be a necessity for a

15   privilege log, because if our position is it should never be

16   produced, why have a privilege log, that's totally contrary

17   to why we have the rules and a privilege log.  That just

18   doesn't, respectfully, make sense.

19       I understand why they're making the argument, but it

20   just doesn't hold water.

21             MR. POSNER:  But look how far afield we're getting.

22   First they want to know, Did you seek one?  Okay.  We can

23   answer that.  Then they want to know, Did you think about

24   seeking one, and I want you to go do some big search to find

25   out whether you thought about seeking one.

1          MR. PRESTON:  I just don't see how it's disputable

2     that whether their internal deliberation as to whether or

3     not they were going to seek an advisory opinion -- it's just

4     not disputable that it's relevant and, in fact, like

5     extremely relevant to the scienter issues in this case.

6          MS. COBB:  Your Honor, I think some of this also is

7     dealt with in our appeal now, our motion for reconsideration

8     before you.  There are limits to discovery, and the burden

9     that Janssen has already undertaken in this case is

10    significant in terms of the number of documents we've

11    already reviewed and the amount of time and money we have

12    spent.  And it seems like at this point we're being asked to

13    uncover every single stone to look for every single whim

14    that relator has, and that is not required under the federal

15    rules.

16         THE COURT:  Okay.

17    What else can we cover that is in 235?

18    I see Request 40 there at the end, but I think we just

19    covered that.

20    Let me just ask Janssen, you have produced what you've

21    received from the government?

22         MS. COBB:  We have not yet received anything from

23    the government, but we will produce it to relator when we

24    receive any production from the government.

25         THE COURT:  And you can do that on a rolling basis?

1    You won't wait until you're sure you have everything from

2    the government.  As you receive things, you will turn them

3    over?

4            MS. COBB:  Yes.

5        And we produced what we've already produced to the

6    government, but...

7            THE COURT:  You mean what you've already received

8    from the government?

9            MS. COBB:  Yes.

10           THE COURT:  I don't know who was trying to speak.

11           MR. PRESTON:  Your Honor?

12           THE COURT:  Yes.

13           MR. PRESTON:  I just wanted to make the point,

14   right, that pursuant to other document requests, and, in

15   fact, you know, one of the document requests that are at

16   issue in the pending motion, covered within that is

17   Janssen's communications with the Department of Justice

18   concerning this action, not just discovery post declination,

19   but their communications with the government during the

20   government's investigation.

21       And all of that has been withheld.  We asked for that a

22   year ago.  We've received the actual CID requests.  But

23   other than that, all of Janssen's correspondence and

24   communications with the Department of Justice have been

25   withheld.

1          And, in fact, Judge Saylor recently denied Janssen's
2     motion for a protective order where they tried to block us
3     from being able to ask questions about their communications
4     with the Department of Justice during its investigation
5     during the 30(b)(6), and Judge Saylor denied that.
6          So when they say they've produced all the documents
7     regarding communications with the government, that's not
8     true.  They have really produced very little of them.
9               THE COURT:  Okay.
10          And what's the basis for not producing Janssen's -- I'm
11     addressing Janssen here -- not producing Janssen's
12     communications with the government about the government's
13     investigation?
14               MR. POSNER:  Well, your Honor, obviously we've
15     asked that -- I mean, if you want to require both sides to
16     produce the communications back and forth with the
17     government --
18               THE COURT:  They say they have with the government
19     and put it on a privilege log in their pleadings here,
20     right?
21               MR. POSNER:  Well, yeah, they've logged it as
22     privileged.  They haven't produced it, right.
23               THE COURT:  Mr. Preston, have you produced any of
24     your communications with the government that are not on a
25     privilege log?

1          MR. PRESTON:  Your Honor, I'm glad you've raised

2    this because it shows how they're talking out of both sides

3    of their mouth.

4          All of our communications with the Department of

5    Justice are clearly protected under the work-product

6    privilege and common-interest privilege and, you know, other

7    privileges.

8          We went through a great deal of effort.  I'll tell you,

9    we gave to them a much longer privilege log then they gave

10   us.  Even those communications are clearly privileged.  And,

11   in fact, we went through a lot of effort to redact and give

12   them other communications that didn't contain privileged

13   information.

14         And so it's kind of apples and oranges here.  Here

15   they're trying to say they shouldn't have to provide

16   communications that aren't protected by any privilege.

17   These are communications between Janssen and a third party.

18   There's no privilege that applies.  And now they're saying

19   they shouldn't have to do that because we asserted a

20   privilege with regard to our protected communications with

21   the Department of Justice.

22         It just seems their -- they clearly have no basis to

23   withhold these communications that they're withholding.

24         MR. POSNER:  Your Honor, I'm not sure this is teed

25   up, but obviously our principal objection is one of

1    relevance, right.  I mean, our back and forth with DOJ years

2    after the conduct in question is obviously, you know, one

3    significant issue.

4              THE COURT:  Okay.

5         Let me just ask, Mr. Preston, can you just -- I think

6    this is in the briefing, but, Mr. Preston, do you want to

7    address the relevancy?

8              MR. PRESTON:  First of all, I think Judge Saylor

9    already ruled they're relevant.  He denied their protective

10   order.

11        But it's hard to imagine Janssen's communications with

12   as investigative body concerning the relator's claims, how

13   could that not be relevant?  I mean, we're entitled to see

14   what Janssen was telling the Department of Justice, you

15   know, what memos, what communications they may have provided

16   as the Department of Justice was investigating these claims.

17        So it's just -- I can't imagine them not being

18   relevant.

19             MR. LEOPOLD:  And, your Honor, for purposes of

20   discovery, I cannot imagine it's not relevant.  It's a

21   different issue for trial, but for discovery?  Clearly it's

22   relevant and can lead to the discovery of admissible

23   evidence.  I mean, that's fundamental 101 black law.

24             MR. POSNER:  Your Honor, we are prepared to

25   consider the communications with DOJ, but I will want a lot

1    of latitude with respect to the internal DOJ documents and

2    the communications with relator.  We're not going to have a

3    one-sided production here.  Their view is, Well, tell me

4    what you really told DOJ.

5        It's all going to be helpful to us, obviously.

6        But I will want a lot of latitude on their

7    communications.  That is a qualified privilege, and I will

8    want a lot of latitude on internal DOJ stuff because we're

9    not going to do this in my view in a one-sided way.

10       So we are prepared to make a production, which is going

11   to be helpful to us, on our communications with DOJ, but

12   we're going to ask for a lot of latitude on the other side.

13            MR. LEOPOLD:  Your Honor, he can ask for whatever

14   he wants.

15       We'll follow the law, and we think we're on very good

16   grounds with the law.  He can make whatever motion.  We're

17   happy to address it.  They have not addressed anything in

18   our privilege log that they've had for well over a month, if

19   not more.  Tee it up.  We're happy to address it.

20       But, you know, I don't know what -- you know, "We want

21   a lot of latitude."  I think what we all want to do is

22   follow the law, whatever the law is, and there is no law

23   that protects them from their privilege that they're

24   arguing.  There's none.  They have no privilege on that

25   issue.

1          So everything should be produced.  And why it has to

2     take, you know, months and month to get a court hearing and

3     we have to argue this when they had no basis to withhold it

4     to begin with, just shows the difficulty we're having in

5     trying to get this case to conclusion.  Because every

6     corner, every step, there's a, you know, a stop sign that

7     says, You have to go through us, Janssen, to get to the next

8     level.  And, you know, it is what it is.  That's the nature

9     of discovery.  I get that.

10          But this is not even a well-founded argument.  They

11    have no privilege.  They should have produced this

12    information.

13          So we would ask for an order, when your Honor writes

14    this order, that within five, ten days all documents are

15    produced.  And if Mr. Posner wants some, quote/unquote,

16    latitude, tee up our privilege log, and we're happy to

17    address it with the Court.  Whatever the law is, the law is.

18    That's fine.

19               MR. POSNER:  Our principal argument was, as we set

20    forth, that sort of production cover letters in 2018 doesn't

21    bear on the legality of the programs in 2016.  That's our

22    principal argument, your Honor.

23               THE COURT:  Okay.  All right.  I think I understand

24    the parties' positions.  And, yes, I would encourage Janssen

25    to take a look at the privilege log and see what you think

1    of that.

2          Okay.  Mr. Preston, or I don't know who else, anything

3    else in 236 you want to raise?

4          MR. LEOPOLD:  We stand by our brief.

5          I'm sorry, Casey.  I didn't mean to interrupt.

6          MR. PRESTON:  It's okay.

7          MR. LEOPOLD:  I was going to say we stand by our

8    papers on the rest of it.

9          There is, if I may, your Honor, one other issue.

10         As your Honor may recall, you had ordered that by

11   January 10 the parties submit a status report to your Honor,

12   which we have provided.  And that was related to the

13   pre-October Promotional Review Committee materials that

14   we've been told, now for over a month, they're producing,

15   they're looking, they have them, they're now docketing the

16   documents or something, scanning them.

17         We would just like to get a date certain, which they

18   have not been able to provide us, when we're going to get

19   all of the documents.  I realize it was the holidays.  They

20   had -- somebody had to go to a warehouse.  I know they had

21   to scan them, but we're now in the middle of January.

22         You know, is it next week?  Is it at the end of January

23   at the latest that we are going to get the documents?  I

24   just think we need a date certain.

25         And if, you know, they say -- call us the day before,

1   We need another few days, that's fine.  But absent a date

2   certain, it's difficult.  We can't have open-ended dates.

3   It's just not fair.

4        And that goes also for the mid 2013 to February 2016

5   PRC materials, documents related to Request 34 and No.4.

6   All of those four things they said they are providing, but

7   they refuse to, respectfully, give us a date when they're

8   going to be due or produced, and I think we're entitled to

9   that.

10            MS. COBB:  We have --

11            THE COURT:  Okay, yes?

12            MS. COBB:  So, yeah.  We have -- a few associates

13   went to New Jersey, and we had to review.  There were

14   hundreds of boxes that we had to go through, and then all of

15   the documents we found had to be scanned, which, given the

16   holidays, the scanning was finally complete last week.  And

17   now they're loaded in the database.  But we have to review

18   them before we can produce them.  And we told relator's

19   counsel that we would start production on a rolling basis

20   next week, which we are prepared to do.  But there are a lot

21   of documents.  And so it's not clear that we'll be -- I

22   don't think we can provide an exact date certain when we

23   know we'll be done, but we're aiming to be finish as quickly

24   as possible.

25            THE COURT:  Do you have a ballpark on how many

1   documents you're talking about?

2           MS. COBB:  Yeah.  It's about 15,000 documents that

3   we have to review.

4           THE COURT:  And so they need to be reviewed now.

5           MS. COBB:  We're in the process of reviewing them

6   now, yes.

7           THE COURT:  Okay.

8       Well, why don't we just set a date two weeks from today

9   for your finishing reviewing them.  And if at the end of two

10  weeks you're not done, you can tell relator that you're not

11  done and give them a date.  I mean, by then you ought to

12  know how many you're able to work through every day.

13          MS. COBB:  Yes.

14          THE COURT:  And let's produce them on a rolling

15  basis.

16          MS. COBB:  Yes.

17          THE COURT:  Meaning every other day produce the

18  ones that you're ready to produce.

19          MS. COBB:  I'm not sure we can do every other day,

20  just because our vendor takes a couple of days, but if maybe

21  we can agree on two productions a week, that might be

22  doable.

23          THE COURT:  Great.  All right.  So let's give that

24  a shot and see.  And does that include everything that

25  Mr. Leopold was just talking about?

—

```
1              MS. COBB:  Yes.

2              THE COURT:  Yes?

3         Okay.

4              MR. LEOPOLD:  And, your Honor, just for

5    clarification for our response to the motion for

6    reconsideration, are the issues that we addressed today --

7    essentially is the Court taking under advisement at this

8    point, such as privilege log issues, and where to search,

9    and all those things?  Could we reargue them or readdress

10   them, I guess, in the motion for reconsideration?  How would

11   the Court like to do this?

12             THE COURT:  I'm taking what we argued about today

13   under advisement, and I think you may want to focus on what

14   Janssen objected to.  So I think -- I mean, if anyone wants

15   to file something -- anything further after today, like a

16   follow-up memo to any of this that we've been arguing about

17   today, you just must do that, I would say, at the two-week

18   mark, by the 24th.  I don't want to see a bunch of filings

19   after that because I just really want to collect everything

20   and get all this to Judge Saylor.  He can sort out any

21   objections, and you will have your marching orders in

22   February.

23             MR. LEOPOLD:  But absent doing anything further,

24   for example, you will consider, just as an example, the

25   correspondence between Janssen and the government, things of
```

1    that sort?  We don't need -- unless we file something in

2    addition, which I doubt, you're taking that under

3    advisement, and you'll include that in an order, for

4    example?

5             THE COURT:  Yes.

6             MR. LEOPOLD:  Okay.  Thank you.

7             THE COURT:  Okay.

8        Also, the sooner you can get in your "sword-and-shield"

9    brief, as we'll call it, the better.

10        And I will just say with regard to the argument on that

11   today, I don't really understand what Janssen is arguing is

12   the import of that committee's work.  I don't know what the

13   committee produces, and I don't know what effect it has.

14   And if they're arguing that means they thought it was

15   lawful, that's one thing.  I mean -- I would like to focus

16   on this scienter requirement and what type of proof relators

17   hope to have about that.

18        I mean, I don't think you're ever going to get your

19   hands on every privileged document that Janssen has.

20             MR. LEOPOLD:  I agree with your Honor, but -- and I

21   wish we had some way to share a document with you, just to

22   give you an understanding of the type of PRC documents that

23   we are provided.

24        But, for example, when the PRC reviews a particular

25   program, they have a document that says "Copy Review

1    Approval Form."  And on the form it has various departments

2    that reviewed the PRC program that is at issue. For example,

3    there's Advertising and Promotion, and there's a committee

4    member.  And then it has the person's signature that he or

5    she is signing off on.  And there's Healthcare Compliance.

6    And there's Legal.  And there's Medical Communications.  And

7    there's -- basically everybody is signing off on it.

8         On the legal, and just one document, I'm looking at it,

9    a guy -- a gentleman by the name of John Vaughan [ph.] is

10   there.  It has his signature, and it has the date that he

11   signed it.  That's it.  There's no backup information about

12   what John Vaughan did to tell or inform the PRC, or

13   whomever, that this is good to go.  It was reviewed, and

14   it's all kosher.  This is just a one-page document with his

15   signature.

16        Where's -- what did he do?  What analysis did he do?

17        It's -- it is Janssen's position we don't get to ask

18   him that question.  We don't get to depose him.  We have to

19   take their word for it that there was analysis done, and

20   this one-page sign off by everybody is the Bible, that it's

21   okay.

22        There is nothing on the privilege log indicating that

23   John Vaughan did any analysis, or did any -- so they're

24   saying, okay, we're not relying on advice of counsel, but

25   here's the PRC.  There is a lawyer on it.  They approved it.

1    So it's okay.  We didn't do anything wrong.

2        If we can't depose them and ask them and we can't get

3    behind the curtain and find out what kind of analysis he

4    did, I guess we have to rely on the truthfulness, with all

5    due respect, of Janssen to say, Oh, yeah, John Vaughan did

6    this whole analysis, this whole dissertation, on why this

7    program was okay.  See, there's this one-page thing.  He

8    just has his signature on it and the date that he signed it.

9    And it says, you know, it's okay.  It's okay.  Everybody

10   signed off on it.  It's okay to use it.

11       That's where we're at, and that -- again, we'll brief

12   this.  But there are a number of Federal Circuit Court cases

13   on this particular issue.  You can't do that.

14       And if they do rely on that, we are entitled to inquire

15   about the backup.

16           MR. POSNER:  Yeah, I mean, look.  He's

17   mischaracterized our position.  We will respond and answer

18   your Honor's question about the PRC when they file this

19   brief they haven't filed yet.

20           THE COURT:  Okay.

21       All right.  So I think that's all for today.  Anyone

22   else want to raise anything else?

23           MR. PRESTON:  Your Honor, if I just may, just to

24   have a -- there have been different dates that have been

25   sort of mentioned, and I just want to make sure we're clear

1   on sort of the schedule and we now have sort of two

2   important briefs that are going to be worked on at the same

3   time.

4       Would it be permissible to have a due date for both

5   briefs of January 28?

6           THE COURT:  Okay.  So I have previously said that

7   your opposition to Janssen's motion, which I'm calling it a

8   motion to reconsider but it was an appeal of my order, was

9   due on the 26th.  But now you want to file that on the 28th,

10  plus --

11          MR. PRESTON:  Well, I think there may be overlap,

12  and to the extent that there's a uniform date, it may be

13  helpful.

14          THE COURT:  Okay.  You can have until the 28th for

15  the opposition to the motion that Janssen filed with

16  Judge Saylor, and then you're also going to file a motion

17  concerning waiver, I think, right?

18          MR. PRESTON:  Yes, your Honor.

19      Thank you.

20          THE COURT:  All right.  And then Janssen will want

21  to respond to that, correct?

22          MR. POSNER:  Yup.

23          THE COURT:  Okay.  And when do think you might want

24  to respond to that?

25          MR. POSNER:  Well, I mean, their original response

1   to our appeal, if it was going before the District Court,

2   would have been due the 24th, but they're getting four more

3   days.  I mean, obviously we're going to want -- you know,

4   it's hard for -- we're going to want two weeks to respond to

5   this brief they haven't filed yet.  But I'm sure we may

6   want a short -- we'll combine it, but there may be some

7   things we'll quickly say in reply on the reconsideration.

8   But I guess two weeks, your Honor.

9           THE COURT:  So why don't we say you'll file

10  whatever you want to file on the 11th, okay?

11          MR. POSNER:  Okay.  Thank's, your Honor.

12          THE COURT:  All right.  And, Mr. Preston, any other

13  dates you wanted to go over?

14          MR. PRESTON:  Your Honor, I think those are the

15  dates at issue right now.  I appreciate the clarification on

16  that.

17          THE COURT:  Okay.

18     All right.  So anything else, anyone?

19          MR. LEOPOLD:  Thank you for your time, your Honor.

20  We appreciate it very much.

21          MR. POSNER:  Thank you, your Honor.

22          THE COURT:  Well, thank you.  Thank you very much.

23          MR. PRESTON:  Thank you.

24          MR. POSNER:  Stay well, everyone.  Thanks.

25          (Proceedings adjourned.)

## C E R T I F I C A T E

I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/James P. Gibbons          February 11, 2022
    James P. Gibbons

JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
jamesgibbonsrpr@gmail.com