## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* JULIE LONG, <br><br> *Plaintiffs,* <br><br> v. <br><br> JANSSEN BIOTECH, INC., <br><br> *Defendant.* | Civil Action No. 16-CV-12182-FDS |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL RELATOR TO AMEND INTERROGATORY RESPONSES SO THEY ARE CONSISTENT WITH STATEMENTS MADE TO THE COURT IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

At its core, Janssen's Motion to Compel seeks the answer to a simple question: does Relator contend that a kickback took place each and every time a Janssen representative delivered one of the 36 presentations, using the corresponding approved talking points, that Relator identified in her interrogatory responses?  Relator's opposition to this motion seems to indicate the answer is "no."  However, Relator's interrogatory responses indicate the answer is "yes."  Which is it?

This has real—not hypothetical—significance.  Janssen is entitled to a clear answer to this question in order to know what, precisely, Relator alleges constituted an illegal kickback so it can defend itself.  Moreover, eliminating ambiguity on this central question will facilitate the Court's efficient management of the case moving forward.

Although Relator claims "there is no ambiguity" to her position, *see* ECF No. 400 ("Opp'n") at 17, Relator has never answered this question, and her 17-page opposition brief only creates more confusion.  As Relator has made abundantly clear, this is not a traditional kickback case alleging that Janssen paid money to physicians to induce them to write prescriptions.  *See* Opp'n at 5 ("Relator is not alleging AKS and FCA violations predicated on any other conduct, such as giving written materials to doctors or paying them cash and disguising it as preceptorship fees.").  Instead, Relator claims that Janssen provided something else—information—to physicians to induce them to prescribe its products Remicade and Simponi ARIA.  That leads to the fundamental question of <u>what</u> information she contends constituted the alleged kickbacks.

Relator has confirmed that she does not allege that "the slide decks and other visual aids" Janssen used to provide presentations to practices were kickbacks.  *See* Opp'n at 12 ("Relator does not allege that the slide decks and other visual aids themselves were the Services or presentations that constitute the remuneration/kickbacks.").  Instead, Relator says the alleged

1

remuneration involved "Services." *See id.* at 5. But, according to Relator, those "Services" were comprised of the very same "presentations and programs" she contends were not kickbacks when provided in written form. *See id.* at 12. Her position is circular and does nothing to help Janssen or the Court understand what allegedly transforms information into an illegal kickback.

In her opposition brief, Relator lists the same 36 presentations that are identified in her interrogatory responses as the illegal remuneration. *Compare* Opp'n at 8-9 *with* Ex. 1 (Pl.'s 4th Supp. Objs. & Resp. to Def.'s Interrog. No. 2) at 9-11. The names of those presentations correspond directly to the titles of PowerPoint presentations produced by Janssen in its document production. For example, the first presentation Relator identifies is "Becoming an Alternative Site of Care for Therapy with Remicade in Your Community." *See* Opp'n at 8; Ex. 1 at 9. That is the title that appears on the face of a PowerPoint presentation produced in discovery by Janssen. *See* Ex. 8 (JANSSENBIO-012-00009784). It was a 37-slide presentation with written information and approved talking points that area business specialists ("ABSs") presented to healthcare providers. *See, e.g., id.* at 2 (instructing presenter to "[r]ead slide"). Relator's interrogatory responses expressly state that a kickback occurred each and every time an ABS presented this presentation to a Phase One Account, and that every claim submitted by a Phase One Account after receiving the presentation violated the FCA.[1]

---

[1] *See* Ex. 3 (Pl.'s Supp. Objs. & Resps. to Interrogs. 6-18) at 14 ("The services <u>and related presentations</u> and programs identified in the responses to Interrogatories 2 and 10 constitute 'remuneration' as that term is used in the Anti-Kickback Statute." (emphasis added)); *id.* at 12 ("Plaintiff alleges that Defendant's offering and provision . . . of <u>each form of remuneration</u> identified in Plaintiff's response to Interrogatory 2 to the Phase 1 Accounts violated the Anti-Kickback Statute." (emphasis added)); *id.* at 19 ("Plaintiff alleges that all claims for payment for Remicade, Simponi ARIA, and related infusion procedures that health care providers associated with the Phase 1 Accounts submitted to Medicare on or after October 28, 2010 and after the

However, Relator has steadfastly refused to either (1) explain how the very same information identified in the "slide deck" became an illegal kickback when delivered orally, or (2) explain what information was communicated through the "Services" (which she says was an illegal kickback) that was not in the written "slide deck" and accompanying talking points (which she says was not an illegal kickback).  Janssen simply asks: if an ABS orally presented the presentation titled "Becoming an Alternative Site of Care for Therapy with Remicade in Your Community" (or any of the other presentations Relator has identified) using the accompanying approved talking points, and did no more, would Relator contend that a kickback took place?

This simple question has significant ramifications both for Janssen's ability to defend itself and ongoing case management.  Because Relator continues to obfuscate regarding this crucial question, Janssen respectfully asks the Court to compel her to supplement her interrogatory responses to clearly answer the question posed.

---

Phase 1 Account received <u>one or more of the</u> services, <u>presentations</u>, or programs identified in Plaintiff's response to Interrogatory 2 constitute claims that were false or fraudulent in violation of 31 U.S.C. § 3729(a)(1)(A) & (B)." (emphasis added)).

| | |
|---|---|
| Dated: August 30, 2023 | */s/ Jason C. Raofield* <br> Jason C. Raofield (BBO No. 641744) <br> Ethan M. Posner (admitted *pro hac vice*) <br> Matthew F. Dunn (admitted *pro hac vice*) <br> Kristin M. Cobb (admitted *pro hac vice*) <br> Nicholas O. Pastan (admitted *pro hac vice*) <br> Covington & Burling LLP <br> One CityCenter <br> 850 Tenth Street, NW <br> Washington, DC  20001 <br> (202) 662-6000 <br> jraofield@cov.com <br> eposner@cov.com <br> mdunn@cov.com <br> kcobb@cov.com <br> npastan@cov.com <br><br> *Attorneys for Defendant Janssen Biotech, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify on this 30th day of August, 2023, that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Jason C. Raofield*
Jason C. Raofield (BBO No. 641744)

4