# EXHIBIT 7

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------x

UNITED STATES OF AMERICA
ex rel. JULIE LONG,
    Plaintiffs,
vs.
JANSSEN BIOTECH, INC.,
    Defendant.

Civil Action No.: 16-12182-FDS

-------------------------------x

VIDEOTAPED DEPOSITION OF THOMAS CORNELY
Friday, December 15, 2023
Conducted Remotely

REPORTED BY:
Christina Diaz, CRC, CRR, RMR, CSR-NY/NJ, CLR
HUDOSN COURT REPORTING & VIDEO  (800) 310-1769

Page 2

December 15, 2023
8:39 A.M. E.S.T.

Videotaped deposition of THOMAS CORNELY, taken by plaintiffs, pursuant to notice dated November 29, 2023, conducted remotely, before Christina Diaz, a Certified Realtime Captioner, Certified Realtime and Registered Merit Reporter and Notary Public within and for the State of New York.

Page 3

  1
  2       A P P E A R A N C E S
  3
  4   COHEN, MILSTEIN, SELLERS & TOLL, PLLC
  5   Attorneys for Plaintiff Relator Julie Long:
  6       11780 U.S. Highway One, Suite N500
  7       Palm Beach Gardens, FL 33408
  8       561.515.1400
  9       prazavi@cohenmilstein.com
 10       tleopold@cohenmilstein.com
 11   BY:   POORAD RAZAVI, ESQUIRE
 12         THEODORE J. LEOPOLD, ESQUIRE
 13         - and -
 14       3 Logan Square
 15       1717 Arch Street, Suite 36
 16       Philadelphia, PA 19103
 17       267.479.5700
 18       cpreston@cohenmilstein.com
 19   BY:   CASEY M. PRESTON, ESQUIRE
 20         - and -
 21       Two Logan Square
 22       100-120N 18th Street, Suite 1820
 23       Philadelphia, PA 19103
 24       atoric@cohenmilstein.com
 25   BY:   ADNAN TORIC, ESQUIRE

Page 4

  1
  2       A P P E A R A N C E S (Cont'd.)
  3
  4   COVINGTON & BURLING, LLP
  5   Attorneys for Defendants and
  6   Witness Thomas Cornely
  7       One City Center
  8       850 Tenth Street, N.W.
  9       Washington, D.C. 20001-4956
 10       202.662.6000
 11       jraofield@cov.com
 12       mdunn@cov.com
 13       adiciurcio@cov.com
 14   BY:   JASON C. RAOFIELD, ESQUIRE
 15         MATTHEW F. DUNN, ESQUIRE
 16         ALISON DiCIURCIO, ESQUIRE
 17
 18   ALSO PRESENT:
 19       EDWIN MENDEZ, Videographer

Page 105

T. Cornely

obviously off label is something that's not provided by our reps, yes.

Q. Going back to the issue of how you would evaluate further, if there was a concern about value or monetary value, would you go and confer with anybody else in that evaluation, or was that something you did on your own?

MR. RAOFIELD: Objection to the form of the question.

A. Hard to say whether it was black and white. It would be something -- if there was ever questions, we could discuss it with my director. But the number one thing we'd look at is the policy, and then if it became something that was evaluated against the policy and it was anything that we needed -- further evaluation or more experience or general consulting, I could absolutely talk to my director or other HCC officers.

It wasn't done in a vacuum. It was looked at, first, the policy, and then what did the policy say. And if there was

Page 106

T. Cornely

any sort of discussion about that particular document, we would -- you could talk about it with others. But without being too specific, I don't know what would -- and not remembering what exact documents we talked more about.

Q. Was there ever a time where the box was checked, yes, regarding potential value or monetary value being a concern for a service where you went and conferred with the legal department?

MR. RAOFIELD: Hold on one second.

A. Can you repeat that?

MR. RAOFIELD: Yes, just give me one second.

THE WITNESS: Okay.

MR. RAOFIELD: I think I'll allow the witness -- you might want to ask it again or read the question back, but I think the witness can answer, yes or no, whether he remembers that situation, a yes-or-no question.

MR. RAZAVI: Sure.

Page 107

T. Cornely

BY MR. RAZAVI:

Q. So going back to the same issue we've been talking about on page 7 of Exhibit 126 -- and I guess let me define. So this category, where it says, "Does the submission contain reimbursement/value proposition, access, consulting services and training or have any monetary value (HCC)?"

What did you generally refer to that as when it's checked, yes? What did you call that in your own head, or if you're talking to Angela Wood, what was that box referring to?

MR. RAOFIELD: Objection to form.

Do you understand the question?

A. I am trying to understand it. If this box was checked, it means that I have to check the content of this submission versus HCC policy and making sure it complies.

BY MR. RAZAVI:

Q. So this box is a triggering -- if it's checked, yes, is triggering a further

Page 108

T. Cornely

investigation by you as to whether the program or service is in compliance with HCC guidelines, correct?

A. I wouldn't use the word "investigation." I would -- further review. It's part of the PRC review process.

Q. Gotcha. Okay. Was there ever a time where your further review of this HCC compliance-type of issue led you to seek advice from the legal department, just yes or no?

MR. RAOFIELD: Object to the form of the question.

Instruct the witness not to disclose any communications that you may or may not have had with counsel. But you can answer, yes or no, whether you remember that particular situation happening, yes or no.

A. Yes.

BY MR. RAZAVI:

Q. Was that something you would choose to do or something that either

Pages 105 to 108

New York  
212-273-9911

Hudson Court Reporting & Video  
1-800-310-1769

New Jersey  
732-906-2078

Page 109

1  T. Cornely
2  Angela or Erin would direct you to do?
3      MR. RAOFIELD: Objection to form.
4      A. Generally, to the best of my
5  knowledge, I would do that.
6  BY MR. RAZAVI:
7      Q. Was this something you did with
8  some frequency?
9      MR. RAOFIELD: Hold on one
10  second.
11      So I think that you can answer
12  that one still, but we, again, are
13  getting very close to the line. And I
14  want to emphasize that we are not
15  asserting advice of counsel. We are
16  not relying on advice of counsel. You
17  understand our position. We're not
18  asking the questions, you are. We're
19  not putting anything into evidence.
20  I'm just drawing the line now about
21  what's an appropriate question to
22  protect privilege versus what you're
23  entitled to ask.
24      And with all of that said, I
25  think that that is still a question

Page 110

1  T. Cornely
2  that would be consistent with something
3  that would appear on a privileged log.
4  And, on that basis, I will allow the
5  witness to answer, yes or no.
6  BY MR. RAZAVI:
7      Q. Do you want me to re-ask it,
8  Mr. Cornely?
9      A. If you could, I appreciate it.
10      MR. RAZAVI: Respectfully, we
11  disagree with that objection.
12  BY MR. RAZAVI:
13      Q. You just testified that as part
14  of the PRC process, when there was a
15  concern raised about a program or service
16  being in violation of HCC guidelines, as
17  part of your further review, you would go
18  and reach out to the legal department.
19      Do you remember that question?
20      MR. RAOFIELD: Objection to the
21  form. Misstates prior testimony.
22      THE WITNESS: I agree with that.
23  BY MR. RAZAVI:
24      Q. Do you recall that question?
25      A. I would rephrase that.

Page 111

1  T. Cornely
2      Q. Sure. Tell me the correct way.
3      A. I could -- if there was a
4  situation, not necessarily regarding HCC
5  policy but a situation where legal -- more
6  in the legal space required input, I would
7  talk to the attorney that is on PRC.
8      Q. Okay. So I want to limit it just
9  to the HCC issues for the moment.
10      A. Okay.
11      Q. Again, looking at Exhibit 126,
12  page 7, we talked about this box being
13  checked regarding value and monetary value.
14  And I asked how you would describe it, and
15  you said that is a box that means you need
16  to do further review to see if the program
17  or service is in violation, or does it
18  match up with HCC guidelines. Am I correct
19  so far?
20      A. "Complies with HCC policy," is
21  the way I would put it.
22      Q. Then I asked, would you go, as
23  part of your further review of a concern of
24  a program being in compliance with HCC
25  guidelines, confer with your supervisor

Page 112

1  T. Cornely
2  Angela or Erin at the time, and you said,
3  yes, you would do that from time to time?
4      A. From time to time.
5      Q. And then I asked, Would you ever
6  go and seek the advice of the legal
7  department from time to time.
8      Is that answer also, yes?
9      MR. RAOFIELD: You can answer
10  that, yes or no.
11      A. I am just trying to think of the
12  way it was phrased. Generally, yes.
13  BY MR. RAZAVI:
14      Q. Was this something -- I know it's
15  going to be hard to quantify, but is this
16  something you did with some frequency? Was
17  it something that only happened once in
18  your three years on the PRC? Was it
19  something that happened every time? Can
20  you give me some idea of the frequency by
21  which you would confer with legal to
22  address concerns you may have had with HCC
23  compliance or services while you were a
24  member of the PRC?
25      MR. RAOFIELD: Objection to the

Pages 109 to 112

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Page 121

```
 1                T. Cornely
 2         That's a yes?
 3      A.  Yes.
 4      Q.  So my question to you is, was
 5   there ever a time where you reached out to
 6   the legal department to address a PRC
 7   compliance concern or question, and you
 8   disagreed with the response you received
 9   from the legal department?
10         MR. RAOFIELD:  I think I will --
11      again, getting very close to the line
12      here, but I think I will allow the
13      witness to answer that question, yes or
14      no.  Let me just double-check by
15      reading it.
16         I think he can answer that one --
17      again, we're -- I don't understand why
18      we're dancing this dance with these
19      difficult issues, but I think that one,
20      my judgment is that he can say, yes or
21      no.
22      A.  Okay.  So you were asking, did I
23   ever disagree with legal when during a
24   discussion or consultation regarding a PRC
25   material?  Is that the question you're
```

Page 122

```
 1                T. Cornely
 2   asking?
 3   BY MR. RAZAVI:
 4      Q.  Yes.
 5      A.  Okay.  To the best of my
 6   knowledge or recollection as always,
 7   because it was a long time ago, I cannot
 8   recall disagreeing with legal.
 9      Q.  Okay.  If during a PRC
10   evaluation, the medical affairs member
11   disagreed with you or the legal member on
12   the PRC about antikickback implications for
13   a program or service, was their decision
14   ever permitted to trump your own evaluation
15   of whether that program was indeed in
16   compliance?
17         Do you understand my question?
18         MR. RAOFIELD:  Objection to the
19      form of the question.
20         MR. RAZAVI:  Let me rephrase it.
21   BY MR. RAZAVI:
22      Q.  If during a PRC meeting, the
23   medical affairs personnel believed that a
24   program was in compliance with HCC
25   guidelines but the legal member or the HCC
```

Page 123

```
 1                T. Cornely
 2   compliance member believed it was not in
 3   compliance with HCC guidelines, who got the
 4   final say?
 5         MR. RAOFIELD:  Objection to the
 6      form of the question.
 7      A.  From what I recall -- it sounds
 8   like, honestly, a hypothetical question to
 9   me, but I will tell you that I was
10   responsible for reviewing and approving
11   materials and making sure that they were in
12   compliance with HCC policy; not any other
13   function.
14   BY MR. RAZAVI:
15      Q.  Okay.  So now stepping back to
16   when you would go and reach out to the
17   legal department, were they the final say
18   for any questions that you had regarding
19   HCC compliance issues?
20         MR. RAOFIELD:  Objection to the
21      form of the question, and caution the
22      witness not to disclose any
23      conversations with counsel.
24      A.  In that scenario, I honestly -- I
25   don't recall if there was a situation where
```

Page 124

```
 1                T. Cornely
 2   that came up.
 3   BY MR. RAZAVI:
 4      Q.  In other words, it goes back to
 5   the last question we had about you
 6   disagreeing with counsel.
 7         So, for example, in the PRC
 8   meeting, if the medical affairs personnel
 9   said, Mr. Cornely, I disagree with your
10   assessment of whether this program is in
11   compliance with HCC guidelines, you would,
12   I am sure, respectfully, say, well, look,
13   this is my specialty.  I am the one that
14   makes the final determination.  Correct?
15         MR. RAOFIELD:  Objection to the
16      form of the question.
17      A.  There was never a discussion like
18   that.  This is very hypothetical at this
19   point.
20         We didn't sit over a table
21   and argue whether -- the medical person
22   did argue with me whether there is a
23   violation of HCC policy.  We all reviewed
24   documents within our subject matter
25   expertise.
```

Pages 121 to 124

New York  
212-273-9911

Hudson Court Reporting & Video  
1-800-310-1769

New Jersey  
732-906-2078

Page 125

T. Cornely

1 BY MR. RAZAVI:
2 Q. And the expertise that you had
3 was compliance with HCC guidelines,
4 correct?
5 A. I reviewed documents to make sure
6 they were in accordance with HCC policy.
7 Q. And when you had concerns about
8 -- strike that.
9 When you had questions about
10 whether they were in compliance with HCC
11 policy, and you would occasionally go to
12 the legal department, were they the final
13 say on that issue, or did you have the
14 ability to deviate from whatever answer
15 they gave back to you? And I don't want to
16 know any specifics.
17 Just yes or no?
18 A. Yes.
19 MR. RAOFIELD: Objection.
20 Misstates his prior testimony again.
21 A. In a scenario where I am having a
22 discussion with legal, it's -- which I've
23 said happened before, it was more for point
24 of view. But ultimately --

Page 126

T. Cornely

1 MR. RAOFIELD: I am just going to
2 caution the witness not to get into
3 communications with counsel.
4 THE WITNESS: Point of view.
5 BY MR. RAZAVI:
6 Q. Did you always follow point of
7 view provided by legal counsel is all I am
8 getting at.
9 MR. RAOFIELD: Hold on a second.
10 BY MR. RAZAVI:
11 Q. I don't want to know what the
12 point of view was. I just want to know in
13 those circumstances where you would reach
14 out to legal to question whether a program
15 or service was HCC compliant, did you
16 always follow the point of view provided to
17 you by counsel?
18 MR. RAOFIELD: I am going to
19 object to form. And I have got to read
20 this question carefully.
21 And we have been going like an
22 hour and twenty minutes. So I do want
23 at some point to have a break here,
24 but...

Page 127

T. Cornely

1 I am objecting. Once again, I
2 think you have for the third time
3 misstated his prior testimony. And you
4 are now getting into very specific
5 questions.
6 MR. RAZAVI: Are you instructing
7 him not to answer?
8 MR. RAOFIELD: I am reading your
9 question to try to figure out how I can
10 allow him to answer something without
11 getting any privilege.
12 So I will allow the witness to
13 answer -- and, again, this is just --
14 it's absurd to me that we are spending
15 so much time on this. I will allow the
16 witness to answer whether he recalls
17 that ever even happening, whether he
18 recalls any such situation, yes or no.
19 BY MR. RAZAVI:
20 Q. In circumstances where you would
21 reach out to legal to follow up as to
22 whether a program or service was HCC
23 compliant as part of your PRC process, did
24 you always follow the point of view

Page 128

T. Cornely

1 provided to you by the legal department?
2 Just yes or no?
3 MR. RAOFIELD: And I am again
4 going to say that that misstates his
5 prior testimony pretty clearly.
6 You can answer the question
7 whether you recall any such thing ever
8 happening.
9 A. I can't recall.
10 BY MR. RAZAVI:
11 Q. Okay. Have I misstated your
12 testimony?
13 MR. RAOFIELD: Do you want to
14 tell him what the --
15 MR. RAZAVI: I will read back the
16 question. I want to make sure I got it
17 correctly.
18 In circumstances where you would
19 reach out to legal to follow up as to
20 whether a program or service was HCC
21 compliant as part of your PRC process,
22 did you always follow the point of view
23 provided to you by the legal
24 department.

Pages 125 to 128

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Page 217

1    T. Cornely
2    PRC, is looked at to be sure it's in
3    accordance with HCC policy.
4    BY MR. RAZAVI:
5        Q.   So it's your testimony -- well,
6    do you recall ever looking at a program or
7    service while on the PRC that you were
8    particularly concerned might be a violation
9    of HCC guidelines?
10           MR. RAOFIELD:  Objection to form.
11       A.   I don't recall.
12   BY MR. RAZAVI:
13       Q.   What would cause you to seek out
14   -- strike that.
15           What would cause you to refer
16   back to the HCC guidelines while conducting
17   a PRC review?  What's an example?
18           MR. RAOFIELD:  Objection to form.
19       A.   Do you want to know how I would
20   review something?
21   BY MR. RAZAVI:
22       Q.   No.  Earlier we asked what
23   resource would you go to if you had
24   questions about whether something was in
25   compliance, and you said I would look at

Page 218

1    T. Cornely
2    the guidelines, right?
3        A.   Yes, HCC policy, absolutely.
4        Q.   So did you look at the HCC policy
5    every single Tuesday you were having a PRC
6    meeting?
7        A.   I can't definitively say it was
8    every single Tuesday or every single PRC
9    document, but I would say -- in general, in
10   my job, for six years of being an HCC
11   officer, I would say that regardless of
12   whether it was PRC review or not, I opened
13   those policies probably anywhere from 90
14   percent plus at the time to review them on
15   a daily basis to make sure what everyone
16   was talking about, whether it was PRC or
17   whether it was a discussion -- or some
18   other area, I reviewed those policies all
19   the time.
20       Q.   So if there was a proposed
21   program in front of you as a member of the
22   PRC regarding providing advice to
23   physicians about how to improve
24   profitability, would you ask the legal
25   member on the PRC their opinion about

Page 219

1    T. Cornely
2    whether that program is compliant with the
3    applicable guidelines?
4            MR. RAOFIELD:  Objection to the
5    form of the question.  And I think I
6    have to instruct the witness not to
7    answer because you are now getting into
8    conversations with counsel.
9            MR. RAZAVI:  I don't want to go
10   too far down this rabbit hole.  Jason,
11   you can correct me if I am wrong, but I
12   thought in Zalesky's depo when we had
13   the back and forth, it was Janssen's
14   position that they were not waiving
15   attorney-client privilege outside of
16   the PRC, but they are permitting us to
17   discuss it within the PRC.  So I am
18   trying to find out, is it just waiving
19   5 percent of the PRC attorney
20   privilege, or what's the position being
21   taken by Janssen?
22           MR. RAOFIELD:  No.  The position
23   -- I think what you are thinking of,
24   Poorad, was you were asking -- even
25   though you hadn't marked the SOPs,

Page 220

1    T. Cornely
2    which would give you the information
3    that's not privileged, you were asking
4    about the function of the legal
5    reviewer on the PRC.  And that was the
6    line I was attempting to draw was to
7    allow you to do that even though you
8    could have marked the exhibit and it
9    would have just told you, but the
10   actual conversations and the legal
11   advice that involves the legal members
12   of the PRC is privileged.  So if that
13   wasn't clear, I hope it's clear now.
14           And I think earlier today, you
15   have asked questions that I have
16   asserted privilege over regarding
17   communications with PRC legal member.
18           MR. RAZAVI:  Maybe this is an
19   off-line conversation.  I guess I am
20   struggling to understand how Janssen
21   can rely on the approval of the PRC
22   without allowing us to examine
23   everything the PRC did.
24           MR. RAOFIELD:  Because that's
25   what Judge Saylor found in an order

Page 221

T. Cornely

1  T. Cornely
2  that merely relying on a PRC process
3  does not waive privilege, so that's our
4  position.
5      MR. RAZAVI:  Okay.  Agree to
6  disagree.  Okay.
7      MR. RAOFIELD:  As I have said
8  many times, we are not putting in any
9  of this.  You keep asking all these
10 questions.  That's your choice to ask
11 what you want.  We are not putting in
12 anything relating to reliance on
13 counsel.
14     MR. RAZAVI:  I guess for the
15 record, that's exactly what Janssen is
16 doing, because their affirmative
17 defense of good faith reliance on the
18 PRC involves the advice of counsel that
19 PRC legal member provided.  I will let
20 Janssen sell that to the court at the
21 appropriate time, but agree to
22 disagree.
23     MR. RAOFIELD:  Sure.  I think
24 what you just said was probably in your
25 brief to Judge Saylor and he didn't

Page 222

1  T. Cornely
2  agree, but, again, I don't think we
3  need to waste any of your time on this.
4  BY MR. RAZAVI:
5      Q.   As a compliance officer, did you
6  ever do an analysis about what the term
7  "practice management" meant?
8      A.   I don't recall if we ever did
9  that.
10     Q.   Do you recall reviewing services
11 involving practice management or the site
12 of care programs from 2013 to 2016?
13     A.   I recall reviewing training and
14 educational materials regarding site of
15 care for ABSes to present promotionally.
16     Q.   Do you remember any of those
17 involving practice management?
18     MR. RAOFIELD:  Objection to the
19 form of the question.
20     A.   I do think there were some
21 educational materials regarding practice
22 management that were reviewed as part of
23 the PRC process.
24 BY MR. RAZAVI:
25     Q.   Do you recall ever rejecting any

Page 223

1  T. Cornely
2  of those types of materials?
3      A.   I don't recall outright
4  rejecting.  I just don't.  It was a while
5  ago.
6      Q.   Do you recall if the legal member
7  on the PRC ever rejected any practice
8  management materials or SOC?
9      MR. RAOFIELD:  Objection to the
10 form of the question, and instruct the
11 witness not to answer on the basis of
12 privilege.
13 BY MR. RAZAVI:
14     Q.   Are you familiar with the phrase,
15 "establishing a filtering process for the
16 law department review of proposed
17 product-related items and service
18 offerings"?
19     A.   I am not.
20     Q.   The concept of filtering process,
21 have you heard that in any way, shape, or
22 form in the context of PRC or legal review?
23     A.   Not that I can recall.
24     MR. RAZAVI:  Let me show you
25 Exhibit 119.

Page 224

1  T. Cornely
2      (Exhibit 119 was referenced for
3  identification)
4  BY MR. RAZAVI:
5      Q.   This is Bates stamped JANSSENBIO
6  64-482.  Just take a look at this and let
7  me know when you have had a topical review
8  of it.
9      A.   Okay.  Give me a minute.
10     Q.   Sure.
11     A.   (Witness reviewing document).
12     MR. RAOFIELD:  Poorad, do you
13 have any reason, metadata or otherwise
14 to think that this was a document the
15 witness saw, or are you just going to
16 ask him if he ever saw it?
17     MR. RAZAVI:  Correct.  Well.  I
18 am assuming he would have seen it, but
19 maybe not.  Maybe they don't share.
20     MR. RAOFIELD:  I just mean like
21 his name on the document or in the
22 metadata or some basis other than --
23 because I didn't see it.  I just wanted
24 to make sure that there wasn't
25 something you were aware of.

Pages 221 to 224