# EXHIBIT 8

## Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
--------------------------X
THE UNITED STATES OF      )
AMERICA ex rel. JULIE     )
LONG,                     )
                          )
          Plaintiffs,     )   Civil Action No.
                          )
vs.                       )   16-12182-FDS
                          )
JANSSEN BIOTECH, INC.,    )
                          )
          Defendant.      )
--------------------------X


REMOTE VIDEOTAPED DEPOSITION OF THAO MARZULLO
Tuesday, November 28, 2023; 10:31 a.m. EDT


Reported by:  Cindy L. Sebo, RMR, CRR, RPR, CSR,
CCR, CCR, CLR, RSA, NYRCR, NYACR, CA CSR 14409, NJ
CCR 30XI00244600, NJ CRT 30XR00019500, Washington
State CSR 23005926, Oregon CSR 230105, TN CSR 998,
NM CSR 589, Remote Counsel Reporter, LiveLitigation
Authorized Reporter, Notary Public
HUDSON COURT REPORTING & VIDEO   (800) 310-1769

## Page 3

```
 1        A P P E A R A N C E S:
 2      (All via Zoom Video Communications)
 3   Attorneys for Plaintiff:
 4      COHEN, MILSTEIN, SELLERS & TOLL, PLLC
 5      CASEY M. PRESTON, ESQUIRE
 6      ADNAN TORIC, ESQUIRE
 7      1717 Arch Street, Suite 3610
 8      Philadelphia, Pennsylvania 19103
 9      267.479.5700
10      cpreston@cohenmilstein.com
11      atoric@cohenmilstein.com
12
     Attorneys for Defendants and the witness:
13
        COVINGTON & BURLING LLP
14
        JASON RAOFIELD, ESQUIRE
15
        MATTHEW F. DUNN, ESQUIRE
16
        LAURA WILK, ESQUIRE
17
        One CityCenter, 850 Tenth Street, Northwest
18
        Washington, D.C. 20001-4956
19
        202.662.5072
20
        jraofield@cov.com
21
        mdunn@cov.com
22
        lwilk@cov.com
23
     ALSO PRESENT:
24
        EDWIN MENDEZ, Videographer
25
```

## Page 2

```
 1        Remote Videotaped Deposition of
 2   THAO MARZULLO, held remotely before Cindy L. Sebo,
 3   Registered Merit Court Reporter, Certified Real-Time
 4   Reporter, Registered Professional Reporter,
 5   Certified Shorthand Reporter, Certified Court
 6   Reporter, Certified LiveNote Reporter, Real-Time
 7   Systems Administrator, California Shorthand Reporter
 8   14409, New Jersey Certified Court Reporter
 9   30XI00244600, New Jersey Certified Realtime Reporter
10   30XR00019500, New York Realtime Certified Reporter,
11   New York Association Certified Reporter, Washington
12   State CSR 23005926, Oregon CSR 230105, Tennessee CSR
13   998, New Mexico CSR 589, Remote Counsel Reporter,
14   LiveLitigation Authorized Reporter and Notary
15   Public, beginning at approximately 10:31 a.m. EDT,
16   when were present on behalf of the respective
17   parties:
18
19
20
21
22
23
24
25
```

## Page 4

```
 1              --oOo--
 2         INDEX OF EXAMINATION
 3            THAO MARZULLO
 4   U.S. ex rel. Long v. Janssen Biotech, Inc.
 5        Tuesday, November 28, 2023
 6              --oOo--
 7   EXAMINATION BY                 PAGE
 8   Mr. Preston                   18, 145
 9
10
11
12
13   STIPULATIONS                      15
14   CERTIFICATE OF REPORTER              321
15   INSTRUCTIONS TO WITNESS              322
16   ERRATA                      323
17   ACKNOWLEDGMENT OF WITNESS            325
18
19
20
21
22
23
24
25
```

Pages 1 to 4

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

1  consequence if I use this word or that word?
2       So they may -- and most good
3  agencies would provide that type of guidance and
4  support to say, like, This might be a better word.
5  This -- what do you mean by that?  There's not a
6  lot of clarity with that word.  Try this word
7  instead.
8       So that would -- that would be some
9  of the support that they would provide.
10      Q.   So I guess, other than wordsmithing,
11  were they -- were they actively involved in the
12  creation of a strategy?  Were they telling you,
13  This is a good strategy?
14      Were they telling you, This strategy
15  would be more impactful than another strategy?
16      What -- what was their role in the
17  creation of the strategy?
18      MR. RAOFIELD:  Objection to form.
19      THE WITNESS:  So there was
20  definitely a lot of wordsmithing, but there
21  was also recommendations and dialogue on,
22  you know, Is that strategy based on an
23  insight?  Did it come from research?  Did it
24  come from a customer engagement?  Like -- so
25  they would challenge some of our thinking.

1  They would add to our thinking.  They would
2  help us think through, like, Is that a sound
3  strategy, even?
4       And then we could debate it and,
5  ultimately, make the decision and then,
6  ultimately, run it through CAC to see if
7  it's an approvable, appropriate strategic
8  objective.
9  BY MR. PRESTON:
10      Q.   And so CAC would review your
11  objectives and strategies, not just written
12  materials?
13      A.   So CAC would review all of our
14  internal documents as well to make sure that we
15  were clear in our communication to our field teams
16  and that we were, you know, appropriately balanced
17  and all the things that we were supposed to do to
18  be able to have approved materials to our
19  field-facing teams.
20      Q.   Okay.  So they only look at what's on
21  paper; they don't -- do you have to review a
22  conceptual strategy with PRC?
23      MR. RAOFIELD:  Objection to form.
24      THE WITNESS:  It would be based on
25  the actual project.  So they may have

1  reviewed concepts before it ever went into
2  the official review process.
3       I -- I could have set up a meeting
4  with individual members of CAC and asked
5  their respective guidance on what are
6  some -- what are some possible challenges
7  that they see or, you know, pathway forward
8  with certain projects or initiatives or
9  assets.
10  BY MR. PRESTON:
11      Q.   Would -- would you review a -- a
12  strategy with the legal department?
13      MR. RAOFIELD:  Objection to form.
14      I instruct the witness not to
15  answer -- not -- not to disclose to any
16  answer any communications with counsel; but,
17  otherwise, you can answer the question.
18      THE WITNESS:  So without giving
19  specifics, I -- I would talk to the legal
20  reviewer.
21  BY MR. PRESTON:
22      Q.   Who was the legal reviewer?
23      The legal reviewer on the PRC?
24      A.   Yes.
25      Q.   What about just generally, the legal

1  department separate and apart from a PRC review?
2       MR. RAOFIELD:  So hold on one
3  second, Casey.  I need to see this.  I need
4  to go back and see this specific question.
5  I'm trying to be careful here for obvious
6  reasons.
7  BY MR. PRESTON:
8       Q.   Again, Ms. Marzullo, we're not
9  asking -- we don't want you to disclose any
10  information that your counsel asserts is
11  privileged.  We're -- we're simply seeking what
12  was the process for reviewing these strategies and
13  the lawfulness of these strategies.
14      MR. RAOFIELD:  Let me see here.
15      Do you mind -- the thing has just
16  finished loading for me.
17      What was the particular question?
18  I'm just trying to be careful.
19  BY MR. PRESTON:
20      Q.   Separate and apart from a member of
21  the PRC, were the strategies reviewed with
22  Janssen's legal department?
23      MR. RAOFIELD:  Hold -- hold on one
24  second.
25      Should we take a break?

1   MR. DUNN:  I think we should take a
2   break.
3   MR. RAOFIELD:  Yeah, I -- I think
4   we need to take a break because this is so
5   close to the line that I -- I just need to
6   be judicious.  As you know, we're not
7   waiving privilege, and so we want to make
8   sure we're getting it right.
9   So I won't talk to counsel.
10  Do you mind if we take a break, go
11  off the record for a minute, Casey?
12  MR. PRESTON:  Yeah, we'll -- we'll
13  take a break.
14  MR. RAOFIELD:  Okay.
15  THE VIDEOGRAPHER:  The time is
16  2:29 p.m., and we are off the record.
17  --oOo--
18  (Whereupon, a recess was taken from
19  2:29 p.m. EST to 2:32 p.m. EST.)
20  --oOo--
21  THE VIDEOGRAPHER:  The time is
22  2:32 p.m., and we are back on the record.
23  MR. RAOFIELD:  So, Casey, I'm going
24  to let the -- the witness go ahead and
25  answer, and we're going to just take it one

1   question at a time.
2   As you know, we're not waiving
3   privilege.  I know you're not trying to get
4   into privileged areas.  I think the question
5   you asked is yes or no and would only
6   disclose information that would be disclosed
7   on a privilege log.  So on that basis, I'll
8   allow the witness to answer.
9   I apologize if we need to take
10  another break again similar.  We just want
11  to step -- step lightly here.
12  THE WITNESS:  Can you repeat the
13  question, Casey?
14  MR. PRESTON:  Cindy?
15  THE WITNESS:  Can you repeat the
16  question?
17  MR. RAOFIELD:  He asked the court
18  reporter to.
19  THE WITNESS:  Oh, sorry.
20  --oOo--
21  (Whereupon, the certified
22  stenographer read back the pertinent
23  part of the record.)
24  --oOo--
25  THE WITNESS:  Not that I can recall

1   specifically.
2   BY MR. PRESTON:
3   Q.   And I know we're -- we're -- we're
4   looking at this slide deck in front of us that is
5   for the 2015 business plan, but while you were
6   serving as the product manager for the site of
7   care marketing department -- throughout that
8   period, right -- you have the -- you have the PRC,
9   which we're -- we're aware that you've testified
10  that there were some reviews or partnering with
11  the PRC, but I'm talking about, again, the legal
12  department.
13  Did you review your strategies and
14  objectives for the site of care marketing team
15  with the legal department?
16  MR. RAOFIELD:  I'm going to object
17  again.  I think we're getting very close to
18  the line here.  I think, as that first
19  question is worded, she can answer it yes or
20  no whether she recalls and would be
21  consistent with what we put on the logs.
22  On that basis, I'll allow the
23  witness to answer.
24  THE WITNESS:  Not that I can recall
25  specifically.

1   BY MR. PRESTON:
2   Q.   And -- and so when you -- I think you
3   testified earlier that you've had conversations
4   with Chris Guiton or that Chris Guiton may have
5   attended some meetings.
6   Did you review strategies and
7   objectives with Chris Guiton?
8   MR. RAOFIELD:  Okay.  So I'm going
9   to object and instruct the witness not to
10  answer at this point on the basis of
11  privilege.
12  MR. PRESTON:  I guess I'm just
13  asking what's the difference there, Jason,
14  from the legal department and Chris Guiton,
15  who is a member of the legal department?
16  MR. RAOFIELD:  Well, you're now
17  asking the witness if she discussed a
18  particular subject with a particular lawyer,
19  and I -- I just -- it -- you're -- you're --
20  it -- it's getting very close to privileged
21  conversations.  And I'm not sure exactly
22  what you're asking that wouldn't be
23  privileged.
24  MR. PRESTON:  I guess we're not
25  looking for any information that wouldn't be

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

1    on a privilege log.
2         MR. RAOFIELD:  Well, why don't --
3    why don't we -- why don't we take it one
4    step at a time?  Because it may be an
5    argument we don't have to have.  Maybe the
6    witness could just answer whether she
7    remembers -- yes or no whether she remembers
8    any such conversation, and then we can go
9    from there.
10   BY MR. PRESTON:
11        Q.   I'm not asking for a conversation.
12   It's -- it's -- it's a review of the objectives
13   and strategies for the site of care marketing
14   team.
15             Were those reviewed with
16   Chris Guiton?
17        MR. RAOFIELD:  So you can answer
18   yes or no whether you recall.
19        THE WITNESS:  I don't recall
20   exactly.
21   BY MR. PRESTON:
22        Q.   Ms. Marzullo, I'm going to have you
23   take a look at the -- excuse me -- the ninth page
24   of Exhibit 93.  And I believe it's the slide that
25   the title is Gastroenterology 2015 Business Plan,

1    Summary of Strategic imperatives and Tactics.
2             Do you see that?
3        A.   Yes.
4        Q.   Okay.  And Strategic Imperative
5    Number 1 states, Improve service offerings to
6    drive brand choice.
7             Do you see that?
8        A.   Yes.
9        Q.   Okay.  And then below that, are those
10   the tactics that would have been deployed in order
11   to try to achieve Strategic Imperative Number 1?
12        MR. RAOFIELD:  Objection to form.
13        THE WITNESS:  Not necessarily
14   deployed because this is only the business
15   planning process.  So sometimes ideas are
16   presented or considered or debated through
17   business plan, but they may never actually
18   come to fruition.
19             So I don't -- I couldn't tell you
20   at this moment in time which ones were
21   actually deployed, but this is just the
22   consideration of tactics.
23   BY MR. PRESTON:
24        Q.   And then on the next page, where it
25   says, Rheumatology 2015 Business Plan, Summary of

1    Strategic Imperatives and Tactics, Strategic
2    Imperatives Number 1, Win at treatment-choice
3    level with IVs -- do you see that?
4        A.   Yes.
5        Q.   And then below that, at this time --
6    at least what was being considered at that time --
7    those would have been the tactics to achieve that
8    strategic imperative?
9        MR. RAOFIELD:  Objection to form.
10        THE WITNESS:  Yes.
11   BY MR. PRESTON:
12        Q.   Okay.  And so there would have been a
13   different business plan for GI IOIs than for the
14   rheumatology IOIs?
15        A.   So no.  What -- and pardon me.  Let
16   me clarify.
17             So GI marketing has its own business
18   plan; rheumatology marketing has its own business
19   plan; site of care marketing has its own business
20   plan.
21             And I normally would put air quotes
22   around that because that site of care business
23   plan, I don't think, was ever officially presented
24   anywhere.
25             And so IOI per se did not have its

1    own business plan.  So GI did not have a GI IOI
2    business plan; rheumatology did not have a
3    rheumatology IOI business plan; and site of care
4    did not have a site of care IOI business plan.  It
5    is the overarching site of care business plan,
6    rheumatology business plan, GI business plan --
7        Q.   Just going back --
8        A.   -- so to include IOI or HOPD or
9    alternate sites of care.
10        Q.   Going back to those two slides, in
11   the -- in the -- the header, there's -- right --
12   they break it down, gastroenterology and
13   rheumatology.
14             And this is all within the site of
15   care business plan, correct?
16        A.   No.
17             So, again, this document was 2014, so
18   it was over nine years ago.  I believe it is a
19   draft.  I don't -- and there were many, many
20   different versions of this.
21             So from what I can recall and from
22   how I'm interpreting as I look at this, site of
23   care marketing on Slide 8 within the document
24   talks to the site of care/institutional, which
25   refers to hospital marketing of 2015 Business