UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* JULIE LONG, <br><br> Plaintiff, <br><br> v. <br><br> JANSSEN BIOTECH, INC., <br><br> Defendant. | Civil Action No. <br> 16-CV-12182-FDS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD**
**ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE**

Plaintiff-relator Julie Long submits this memorandum of law in support of her motion for an *in camera* review of documents redacted or withheld by Janssen on the basis of the attorney-client privilege. This motion is necessary because it is not clear from Janssen's privilege log that each of the identified materials is subject to the privilege and because Janssen's conduct demonstrates it has asserted the privilege in an inconsistent and overbroad manner. Plaintiff respectfully requests that the Court conduct an *in camera* review of a limited subset of documents in the categories set forth herein so that it may consider and rule on Janssen's privilege assertions and provide guidance to the parties to be applied to the remaining redacted or withheld documents. In the alternative, Plaintiff respectfully requests the Court to appoint a special master to review the documents and determine the applicability of the attorney-client privilege with regard to each document listed on Janssen's privilege log.

Plaintiff attempted in good faith to resolve this discovery dispute before seeking the Court's intervention. On June 25, 2025, the parties had a meet and confer by telephone. After discussing the issues raised in this motion, Janssen agreed to withdraw its claim of privilege in whole or in part as to some documents, but the parties were unable to reach an agreement on all issues.

## I. Factual Background

In this action, Relator, on behalf of the United States, seeks to hold Janssen accountable for defrauding the Medicare program. Relator alleges Janssen did this by engaging in a scheme to induce doctors to prescribe and administer two infusion drugs, Remicade and Simponi ARIA, to Medicare beneficiaries by providing the physicians with illegal remuneration in the form of free infusion business support and consultative services (collectively, "IOI Support"). Janssen provided this IOI Support through its team of Area Business Specialists as well as through outside consultants, such as Xcenda, to select physician practices on an ongoing basis, by helping them open, operate, and grow their in-office infusion suite businesses ("IOIs"). Because the free IOI Support applied broadly to the physicians' overall infusion businesses, where the doctors infused a variety of drugs in addition to Remicade and Simponi ARIA, these free services provided significant value to the recipients.

By providing this valuable remuneration to physicians to induce prescriptions of its drugs to Medicare beneficiaries, conduct Relator alleges Janssen knew was unlawful, Janssen violated the AKS. Because Medicare does not cover items or services resulting from a violation of the AKS, the bills for reimbursement for Remicade and Simponi ARIA submitted to Medicare by physicians who received the IOI Support constituted false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729. And because Janssen, through this kickback scheme, caused the submission of the false bills, which Medicare subsequently paid, it violated the FCA.

## II. Procedural Background

Janssen has either redacted or withheld from production thousands of documents on the basis of the attorney-client privilege.[1] After multiple orders directing it to disclose and produce documents possessed by "current and former employees who had significant involvement in the development, review, approval, monitoring, and/or delivery of the support services at issue in this case," see Dec. 20, 2021 Order (ECF No. 237); Feb. 17, 2022 Order (ECF No. 282) at 15 (denying Janssen's motion to reconsider the Dec. 20, 2021 Order); Sep. 9, 2022 Order (ECF No. 320) (affirming in part the Feb. 17, 2022 Order); Mar. 9, 2023 Order (ECF No. 375) at 6-9 (ordering compliance with the prior orders), in March 2023, Janssen finally identified more than 40 witnesses who had "significant involvement" and began producing their documents on a rolling basis. It is still in the process of producing responsive documents to Plaintiff. Janssen's most recent privilege log is dated May 13, 2024.

Janssen has made clear that it intends to challenge Plaintiff's claims in a motion for summary judgment. As the Court has recognized, Plaintiff is entitled to "'complete discovery' on her claims, so that the summary judgment process is meaningful." Feb. 17, 2022 Order (ECF No. 282) at 5. "This means, for example, that with regard to the programs at issue in relator's territory, she is entitled to receive robust discovery concerning Janssen's knowledge of the lawfulness of the programs, including at the highest levels of the company." *Id*. Such discovery is necessary because, as the Court held, "proving Janssen's knowledge is critical to relator's claims and in

---

[1] The vast majority of items listed on Janssen's privilege log were completely withheld rather than redacted. Out of the 4,380 log entries, only 384 entries are identified in Column E as being redacted. *See* Janssen's May 13, 2024 Privilege Log, which Plaintiff will submit under seal as <u>Exhibit 1</u>.

3

addition, Janssen has asserted an affirmative defense that any false claims were not submitted knowingly." *Id.* at 16.

Given her need to defend against the upcoming motion for summary judgment and the fact that Janssen has either redacted or withheld over 4,300 documents on the basis of attorney-client privilege, it is crucial that Plaintiff be able to ascertain the legitimacy of Janssen's privilege claims. The Court has already recognized as much on multiple occasions. *See* ECF No. 237 (ordering Janssen to provide privilege log of withheld legal advice received and legal reviews or analyses Janssen performed or received); ECF No. 284 at 3-4 (ordering Janssen to provide an updated privilege log including a description of "who the parties are in each communication and what their roles were in the company"); ECF No. 375 at 15 (recognizing it is "important for relator to know who the parties were to a particular communication to assess the validity of the claim of privilege" and directing Janssen to include email addresses associated with each entry on privilege log to "assist the parties in identifying persons and their roles"). The Court has also indicated a willingness to perform an *in camera* review in order to assess Janssen's privilege claims. *See* Jan. 23, 2022 Hearing, ECF No. 367 at 35 (Chief Magistrate Kelley: "I don't mind doing an in-camera review….").

As set forth below, it is not clear from Janssen's privilege log that the documents it has redacted or withheld are protected from discovery by the attorney-client privilege. In order to guide the parties with regard to the merit of Janssen's privilege objections, Plaintiff respectfully requests that the Court conduct an *in camera* review of a limited subset of documents in the categories set forth below. In an effort to minimize the burden on the Court, Plaintiff does not ask the Court to review each of the more than 4,300 documents redacted or withheld by Janssen. In the event the Court determines that further *in camera* review is required, or opts against performing such review

itself, Plaintiff respectfully requests that a special master be appointed to review the documents listed on Janssen's privilege log and determine the applicability of the attorney-client privilege with regard to each document listed in the log.

### III. Argument

#### A. Governing Law

The attorney-client "privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (citations omitted). "[T]he privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *Id.* (citing *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 571 (1st Cir. 2001)). "In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id.* (citing *United States v. Nixon*, 418 U.S. 683, 709–10 (1974)).

"For the attorney-client privilege to attach to a communication, it must have been made in confidence and for the purpose of securing or conveying legal advice." *Id.* at 23 (citing *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002); 8 John Henry Wigmore, Evidence § 2292, at 554 (John T. McNaughton ed. 1961)). "The privilege evaporates the moment that confidentiality ceases to exist." *Id.* The First Circuit[2] has defined the following as the essential elements of the attorney-client privilege:

---

[2] Federal common law governs Janssen's claims of attorney-client privilege because the federal questions raised by Plaintiff give rise to the Court's jurisdiction in this case. *See Gallardo v. Bd. of County Com'rs*, 881 F. Supp. 525, 529 (D. Kan. 1995) ("in a federal question case the court must apply federal common law, rather than state law, regarding evidentiary privileges") (citing Fed. R. Evid. 501; *E.E.O.C. v. Illinois Dep't of Employment Security*, 995 F.2d 106 (7th Cir. 1993)).

5

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (citing 8 Wigmore, Evidence § 2292, at 554, quoted in *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997)).

"A party that withholds otherwise responsive documents under a claim of privilege must expressly assert the privilege claimed and produce a privilege log that describes 'the nature of the documents, communications, or tangible things not produced or disclosed' and provides enough information for 'other parties to assess the claim.'" *Echavarria v. Roach*, 16-CV-11118-ADB, 2018 WL 6788525, at *2 (D. Mass. Dec. 26, 2018) (quoting Fed. R. Civ. P. 26(b)(5)(A)). "'Privilege logs do not need to be precise to the point of pedantry,' but 'a party who asserts a claim of privilege' is required 'to do the best that he reasonably can to describe the materials to which his claim adheres.'" *Id.* (quoting *In re Grand Jury Subpoena*, 274 F.3d at 576). Merely demonstrating that a document was the product of an attorney-client relationship is not enough to meet the withholding party's burden—the party must also "demonstrate the confidentiality of the information on which they are based." *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 71-72 (1st Cir. 2002) (citing *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977)). *See also Echavarria* at *2 ("'The party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that the privilege has not been waived.'") (quoting *In re Keeper of Records*, 348 F.3d at 22). "Determining whether documents are privileged demands a highly fact-specific analysis—one that most often requires the party seeking to validate a claim of privilege to do so document by document." *In re Grand Jury*

6

*Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) (citing *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *In re Grand Jury Matters*, 751 F.2d 13, 17 n.4 (1st Cir. 1984).

"[*I*]*n camera* review provides a prudential means to discern the applicability of a privilege claim." *Sec. & Exch. Comm'n v. Navellier & Associates, Inc.*, CV 17-11633-DJC, 2019 WL 285957, at *4 (D. Mass. Jan. 22, 2019). "Given this prudential purpose, in camera reviews should be encouraged, not discouraged. In that spirit, federal courts commonly—and appropriately—conduct such reviews to determine whether particular documents are or are not privileged." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011) (citing *United States v. Zolin*, 491 U.S. 554, 569 (1989) ("noting that the Court 'has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection, and' this 'practice is well established in the federal courts'" (internal citations omitted)); *cf. In re Grand Jury Subpoenas*, 123 F.3d 695, 699–700 (1st Cir. 1997) (remanding for failure to conduct an in camera review)). Further, when "the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened." 662 F.3d at 70 (citing *United States v. Smith*, 123 F.3d 140, 151 (3d Cir. 1997)). In fact, the First Circuit has counseled that "[e]ven if the parties do not explicitly request such a step, a district court may be well advised to conduct an in camera review." *Id*.

### B. The Court Should Employ *In Camera* Review to Assess Janssen's Claims of Attorney-Client Privilege

For the reasons set forth below, Plaintiff is unable to determine from a review of Janssen's privilege log whether the thousands of documents it has redacted or withheld on the basis of the attorney-client privilege are actually protected. Janssen's failure to provide a log that demonstrates the confidentiality of the information within the documents amounts to a failure to meet its burden of demonstrating the logged documents are protected from production by the attorney-client

7

privilege. Furthermore, Janssen's conduct demonstrates it has applied the attorney-client privilege in an inconsistent and overbroad manner, undermining the representations it makes on its privilege log. But rather than moving to compel a better privilege log, Plaintiff believes the more expeditious procedure will be for the Court to conduct a limited *in camera* review in order to assess the adequacy of Janssen's claims of privilege and advise the parties accordingly.

Plaintiff has identified the following deficiencies with Janssen's privilege log, which make it impossible for her to determine whether the redacted and withheld documents contain confidential information subject to the attorney-client privilege:

### 1. Many log entries fail to identify who sought or provided legal advice.

As set forth by the First Circuit, the elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) **from a professional legal adviser in his capacity as such**, (3) the communications relating to that purpose, (4) made in confidence (5) **by the client**, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro*, 284 F.3d at 245 (emphasis added) (citing 8 Wigmore, Evidence § 2292, at 554, quoted in *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997)). Thus, Janssen must demonstrate it, as the client, sought legal advice from a professional legal adviser in his or her capacity as a legal adviser. Janssen fails to do so in many of its log entries. For instance:

a) Janssen's Privilege Log shows redactions made to email communications or documents on the basis of the attorney-client privilege without identifying any participating attorney, much less demonstrating that legal advice was sought from or provided by an attorney in his or her capacity as a legal adviser.[3] While many of these documents were

---

[3] *See* Exhibit 1 at Rows 2, 61-62, 111, 126, 129, 238, 1465, 1501, 1503, 1751, 1961, 2624, 2630, 2786, 2864, 3565, 4300-4302, and 4377.

internal company communications, that does not protect them under the attorney-client privilege. *See Szulik vs. State St. Bank & Tr. Co.*, No. CIV.A. 12-10018-NMG, 2014 WL 3942934, *4 (D. Mass. Aug. 11, 2014) (holding emails among party's own employees were not protected by the attorney-client privilege); *Columbia Data Products, Inc. vs. Autonomy Corp.*, No. CIV.A. 11-12077-NMG, 2012 WL 6212898, *14 (D. Mass. Dec. 12, 2012) (holding party failed to demonstrate emails among its own employees met "any of the elements of the attorney-client privilege").

b) Janssen's Log also shows documents withheld on the basis of the attorney-client privilege without identifying any attorney who is part of the communication, much less demonstrating that legal advice was sought from an attorney in his or her capacity as a legal adviser.[4] Again, the fact that many of these documents may contain solely internal company communications does not make them fall within the attorney-client privilege. *See Szulik* at *4; *Columbia Data Products* at *14.

Because Janssen's privilege log fails to identify any attorney who was a party to the communications that were redacted or withheld from production, Plaintiff respectfully requests that the Court review the communications and documents identified in footnotes 3 and 4 *in camera* to determine whether such materials are protected by the attorney-client privilege.[5]

---

[4] *See* Exhibit 1 at Rows 853, 866-867, 2119-2120, 2125, 2763-2778 (The Log identifies this series of rows as an email with several attachments. The email does not involve any attorney participants and the only attachment that has any purported relationship to an attorney is on row 2775, which lists the entire law firm of Sidley Austin LLP as the document's author.), 2895, 3081-3087, 3156, and 3617.

[5] After the parties' meet and confer, Janssen agreed to produce approximately 50 documents and revise its privilege log to identify the name of the privilege actor and the names of attorneys present in lower email chains. While Plaintiff appreciates Janssen's agreement in this regard, it has not yet provided Plaintiff with these documents or this additional information, and it is not clear to Plaintiff that her dispute will be fully resolved on this issue once she receives this information. As the discovery deadline of September 30, 2024 is rapidly approaching, Plaintiff believes it necessary to

9

## 2. Many log entries fail to provide adequate descriptions of the individuals who authored, sent, or received the withheld documents.

As the Court recognized, "Relator is entitled to know who the parties are in each communication and what their roles were in the company." Feb. 17, 2022 Order (ECF No. 284) at 4; Mar. 9, 2023 Order (ECF No. 375) at 14 ("the identity of the lawyers on the communications is only one part of the information that must be included on a privilege log, where one of the questions relator must answer is whether a third party, typically a non-lawyer, was privy to a communication and destroyed the privilege.") The reason for this is two-fold. First, as set forth above, "[t]he privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). Second, "[w]hen otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *Id*. Even disclosure of privileged information to Janssen employees without a need to know the information can destroy the privilege:

> Communications by corporate employees with their employer's in-house counsel concerning matters within the scope of an employee's corporate duties and made for the purpose of securing legal advice from in-house counsel are protected by the attorney-client privilege. *See Upjohn v. United States*, 449 U.S. 338, 394 (1981). Communications among [a party's] employees "that discuss or relay counsel's legal advice ... are privileged to the extent that the employees are in a 'need to know' position or bear some responsibility for the subject matter underlying the consultation." *In re Prograf Antitrust Litig.*, No. 1:11-md-02242-RWZ, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013) (citing *Se. Pa. Transp. Auth. v. Caremarkpcs Health L.P.*, 254 F.R.D. 253, 262 (E.D. Pa. 2008); *Bank Brussels Lambert [v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 442 (S.D.N.Y. 1995)] ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.")). A communication from one corporate employee to another may be privileged even though it does not reflect counsel's legal advice if the communication was about

---

bring this matter to the Court's attention now. If appropriate, Plaintiff will withdraw this argument upon receipt of Janssen's updated log. Moreover, the fact that Janssen agreed to produce an additional 50 documents bolsters Plaintiff's argument that Janssen's inconsistent and overbroad assertion of the attorney-client privilege makes *in camera* review necessary.

matters within the scope of the employee's duties and responsibilities, and "the employee was aware that the communication was made in order to enable' [the corporation's] attorneys to provide legal advice to the corporation and understood that the' matter 'to which the communication related was to be treated as confidential." *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 444 (N.D. Ca. 2010) (evaluating claims of attorney-client privilege and work product protection for documents related to FLSA audit).

*Davine v. Golub Corp.*, CV 3:14-30136-MGM, 2017 WL 517749, at *2 (D. Mass. Feb. 8, 2017).

Most of the entries on Janssen's privilege log fail to provide sufficient information regarding the individuals who authored, sent, or received redacted or withheld documents. For instance:

a) Many of the entries on Janssen's log list more than a dozen recipients and/or participants.[6] While attorneys are identified on the log by the inclusion of a "^" after their names, and individuals can be identified as working for Defendant Janssen or its parent company Johnson & Johnson by the inclusion of an email address ending in "jnj.com," there is no way for Plaintiff to determine whether employees had a need to know the "privileged" communications or understood such information was required to be treated as confidential. Indeed, the log demonstrates that these requirements were not met with regard to at least those communications sent to employee Michael Ziskind at both his work email address and his private email address, which, according to the address, is apparently shared with his wife.[7]

b) Several log entries list attorneys as participants in privileged communications, but fail to demonstrate the attorneys were actually acting in legal roles.[8] "A key component of

---

[6] *See* Exhibit 1 at Rows 8 – 22, 61, 113-117, 329-331, 340, 344, 1497-1499, 1780-1793, 2503-2508, and 2965-3011.
[7] *See* Exhibit 1 at Rows 857-861, 1136-1137 (emails sent to "Michael Ziskind" at mziskind@cntus.jnj.com and to "Ziskind Family" at mikeingrid@verizon.net).
[8] *See* Exhibit 1 at Row 329 (attorney Freddy Jimenez sending email on which sidleynews@sidley.com, which appears to be the media team at Sidley Austin LLP, is listed as a

11

the privilege is that communications with the attorney must call upon the attorney in his or her capacity as a professional legal adviser." *Am.'s Growth Capital, LLC v. PFIP, LLC*, CIV.A. 12-12088-RGS, 2014 WL 1207128, at *2 (D. Mass. Mar. 24, 2014) (citing *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) ("The attorney-client privilege attaches only when the attorney acts in that capacity.")). While the privilege "protects communications between corporate officers and in-house counsel," *United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981), "the privilege does not apply when in-house counsel is engaged in 'nonlegal work.'" *Id*. (citing *Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 33 (D. Md. 1974)). "An 'in-house lawyer may wear several other hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney-client privilege may be questionable in many instances.'" *Id*. (citing *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000)).

In instances where "in-house counsel has other nonlegal responsibilities, the party invoking the privilege has the burden of producing evidence in support of its contention that in-house counsel was engaged in giving legal advice and not in some other capacity at the time of the disputed conversations." *Borase v. M/A COM, Inc.*, 171 F.R.D. 10, 14 (D. Mass. 1997) (citing *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46 (N.D. Cal. 1971)).

---

participant, to dozens of recipients); Row 840 (email communication sent to over a dozen recipients, including attorneys, regarding principles to be taught in organization-wide training sessions); Row 1497 (attorney Shane Freedman sending email to dozens of recipients, including edwin_hemwall@*merck*.com); Row 3605 (attorney Kathleen Hamill emailing multiple people at healthcare marketing firm Sudler and Hennessey); and Rows 3951, 3956 (attorneys Freddy Jimenez and Jeniffer De Camara sending emails where one of the participants was smithjs1@*wyeth*.com).


the privilege is that communications with the attorney must call upon the attorney in his or her capacity as a professional legal adviser." *Am.'s Growth Capital, LLC v. PFIP, LLC*, CIV.A. 12-12088-RGS, 2014 WL 1207128, at *2 (D. Mass. Mar. 24, 2014) (citing *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) ("The attorney-client privilege attaches only when the attorney acts in that capacity.")). While the privilege "protects communications between corporate officers and in-house counsel," *United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981), "the privilege does not apply when in-house counsel is engaged in 'nonlegal work.'" *Id*. (citing *Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 33 (D. Md. 1974))). "An 'in-house lawyer may wear several other hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney-client privilege may be questionable in many instances.'" *Id*. (citing *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000)).

In instances where "in-house counsel has other nonlegal responsibilities, the party invoking the privilege has the burden of producing evidence in support of its contention that in-house counsel was engaged in giving legal advice and not in some other capacity at the time of the disputed conversations." *Borase v. M/A COM, Inc.*, 171 F.R.D. 10, 14 (D. Mass. 1997) (citing *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46 (N.D. Cal. 1971)).

---

participant, to dozens of recipients); Row 840 (email communication sent to over a dozen recipients, including attorneys, regarding principles to be taught in organization-wide training sessions); Row 1497 (attorney Shane Freedman sending email to dozens of recipients, including edwin_hemwall@*merck*.com); Row 3605 (attorney Kathleen Hamill emailing multiple people at healthcare marketing firm Sudler and Hennessey); and Rows 3951, 3956 (attorneys Freddy Jimenez and Jeniffer De Camara sending emails where one of the participants was smithjs1@*wyeth*.com).

Because Plaintiff is unable to determine the legitimacy of Janssen's attorney-client privilege claims with regard to these and other similarly logged documents, Plaintiff respectfully requests that the Court review the communications and documents identified in footnotes 6, 7, and 8 *in camera* to determine whether such materials are protected by the attorney-client privilege.

### 3. Many log entries fail to establish the confidentiality of information that was sent outside the company to third-parties.

Generally, disclosure of privileged communications to a third party destroys the privilege. *See XYZ Corp.*, 348 F.3d at 22. This Court has explained, however:

> [An] exception to the rule that disclosing attorney-client communications to a third party destroys the privilege is when an expert, such as an accountant or, as in this case, an investment banker, is employed to assist a lawyer in rendering legal advice. In *Cavallaro*, 284 F.3d at 247, the First Circuit approvingly cited *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961), where the Second Circuit applied the exception to communications involving an accountant who was assisting an attorney in preparing a client's case. In *Kovel*, the court found that since "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others," the attorney-client privilege includes persons who act as attorneys' agents. *Id*.
>
> The court in *Cavallaro*, however, stressed that the third-party's assistance must be nearly indispensable or serve some specialized purpose in facilitating attorney-client communications. *Cavallaro*, 284 F.3d at 249; *see Dahl v. Bain Capital Partners*, 714 F.Supp.2d 225, 227–28 (D. Mass. 2010) (third-party's assistance must be "nearly indispensable," must "play an interpretive role," and must be made for purpose of rendering legal advice); *Conway v. Licata*, 104 F.Supp.3d 104, 125 (D. Mass. 2015) (Sorokin, J.) (community of interest doctrine did not protect communications where third party merely "introduced" plaintiffs to counsel and "assisted" in conversations with counsel and negotiations, and no showing was made that his assistance was "nearly indispensable").

*Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 17 (D. Mass. 2017) (Kelley, M.J.). *See also Columbia Data Products, Inc. v. Autonomy Corp. Ltd*., CIV.A. 11-12077-NMG, 2012 WL 6212898, at *15 (D. Mass. Dec. 12, 2012) ("the third party must play 'an interpretive role. In other words, the third party's communication must serve to translate information between the client and the attorney.' The exception does not apply where the lawyer merely obtains

13

information from the third party in order to give advice to the client.") (quoting *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 228 (D. Mass. 2010)).

While many entries on Janssen's amended privilege log include individuals outside the company, Janssen makes no effort to establish these individuals provided "nearly indispensable" services for the purpose of rendering legal advice or that the third parties played an interpretive role in those communications. For instance, items Janssen claims are protected by the attorney-client privilege were created by or shared with:

a) Marketing firms;[9]

b) Consultants and various third-party professionals;[10] and even

c) Competitors.[11]

Because Plaintiff is unable to determine the legitimacy of Janssen's attorney-client privilege claims with regard to these and other similarly logged documents, Plaintiff respectfully

---

[9] *See* Exhibit 1 at Rows 61-62, 1465, 1957, 1986-1988, 4322, 4335, 4352 (listing withheld or redacted documents and communications that were provided to or created by third parties with email addresses at the domain thomasjpaul.com. Thomas J. Paul, Inc., provides creative advertising and marketing services.); Rows 2119-2120, 4285 (same with regard to sudler.com and sudlerdigital.com. Sudler and Hennessey was a healthcare marketing firm that is now part of VMLY&Rx.); Rows 3664-3665 (Ipsos.com - Ipsos is a global marketing firm); Row 4284 (draftfcb.com - Draft FCB is an advertising agency now known as FCB.); Rows 211, 761, 2630, 3565 (xillix.co – Xillix LLC is a marketing agency); and Rows 329-331 (sidleynews@sidley.com).

[10] *See* Rows 61-62, 201-206, 1524-1529, 1955, 3754-3759, 4300-4302 (listing withheld or redacted documents and communications that were created by or provided to third parties with email addresses at the domain xcenda.com); Rows 372, 4070-4071 (same with regard to amerisourcebergen.com and absg.com); Row 238 (proferogroup.com); Row 111 (mc3.com); ; Row 1658 (kzgrp.com, a domain belonging to the Kaufman Zita Group - a lobbying and public affairs firm); Row 451 (buckmedia.com); Row 3617 (thelhtgroup.com); Rows 658, 3779 (ethnographic-solutions.com); Row 2232 (crowell.com); Row 853 (vrtx.com); Rows 156-157 (health-union.com); Row 939 (precisionformedicine.com); Row 1465 (contemporarygraphics.com); Rows 4102, 4118 (accredohealth.com); Rows 2125, 2895, 3156 (dpicsk@aol.com); Row 2584 (rgltd.com); and Rows 857-861, 1136-1137, 1310-1311, 2585-2595, 2968-3011 (consultresourcegroup.com).

[11] *See* Exhibit 1 at Rows 340-341, 1497-1499, 1745, 2183, 2186, 2188, 2962 (Merck.com); Rows 1954, 1987, 1990, 1992, 1994 (Pfizer.com); Rows 3951-3953, 3956-3957 (Wyeth.com).

requests that the Court review the communications and documents identified in footnotes 9, 10, and 11 *in camera* to determine whether such materials are protected by the attorney-client privilege.

### 4. Most log entries fail to set forth any basis for withholding attachments to email communications as privileged.

"[D]ocuments do not become privileged simply because they are requested by or sent to an attorney in connection with litigation." *In re Intuniv Antitrust Litig.*, 16-CV-12396-ADB, 2018 WL 6492747, at *6 (D. Mass. Dec. 10, 2018) (citing *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 511 (D.N.H. 1996) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney."). Because Janssen's privilege log does not provide any descriptions with regard to attachments to emails, Plaintiff is unable to determine whether there is any basis to treat the attachments as attorney-client privileged.[12] Plaintiff, therefore, respectfully requests that the Court review the document attachments identified in footnote 12 *in camera* to determine whether such materials are protected by the attorney-client privilege.[13]

---

[12] *See* Exhibit 1 at Rows 8-22, 340-341, 342-344, 371-376, 450-452, 857-861, 866-867, 1136-1137, 1310-1311, 1497-1499, 1522-1531, 1656-1658, 1743-1748, 1780-1793, 1953-1955, 1986-1988, 1989-1990, 2064-2068, 2503-2508, 2583-2595, 2763-2778, 2965-3011, 3661-3665, 3775-3779, 4069-4071, 4101-4116, and 4117-4132.

[13] Plaintiff previously moved to compel Janssen to provide a complete privilege log by, *inter alia*, providing descriptions on its log for email attachments that explain the basis for asserting attorney-client privilege with regard to those documents. *See* ECF No. 224 at 11. Plaintiff's motion was denied on this issue. *See* ECF No. 284 at 3-4. Plaintiff is not asking the Court to reconsider that ruling. Instead, Plaintiff is asking the Court to conduct an *in camera* review of such email attachments in order to assess the applicability of the privilege because Plaintiff should not have to merely take Janssen at its word that such documents are privileged, particularly where Janssen has engaged in conduct that demonstrates, at best, an inconsistent and overbroad use of the attorney-client privilege.

### 5. Janssen's Use of the Attorney-Client Privilege has been Inconsistent and Overbroad

Janssen's use of the attorney-client privilege in this litigation has been inconsistent and overbroad. As demonstrated above, Janssen has claimed privilege with regard to documents that do not even have any apparent attorney involvement. On numerous occasions, it has produced documents only to later claw them back and substitute them with redacted versions. And, on multiple occasions after being challenged by Plaintiff, Janssen has acknowledged it incorrectly withheld or redacted documents as attorney-client privileged by agreeing to produce such documents.

For instance, Janssen produced Bates numbered document JANSSENBIO-61-6909, which it later clawed back and replaced with a redacted version. See Exhibit 1 at Row 4251. Because Plaintiff's counsel had the benefit of reviewing the document prior to its redaction, they are aware that the only information redacted was related to Janssen's intention to review an issue with legal counsel, not actual legal communications or advice. This overinclusive use of the attorney-client privilege is clearly improper given that Janssen itself has taken the position in this litigation that such material is not privileged. *See* ECF No. 272 at 13 (asserting "[p]rivileged communications are those made for the purpose of seeking or receiving legal advice," not merely those revealing topics of discussion between a client and attorney) (internal quotations omitted). Plaintiff also had the benefit of reviewing an unredacted version of JANSSENBIO-011-00009459 before Janssen clawed it back and substituted a redacted version. *See* Exhibit 1 at Row 4281. It is Plaintiff's view that the newly redacted information in this document is not protected by the attorney-client privilege, again demonstrating Janssen is being overbroad in the use of its application of the privilege.

Janssen's misuse of the attorney-client privilege is further demonstrated by its decision to unredact or produce many documents once it is challenged by Plaintiff, leading Plaintiff to conclude that Janssen has been asserting the attorney-client privilege improperly, which itself warrants the Court conducting an *in camera* review of the documents Janssen has withheld or redacted. Thus, Plaintiff respectfully requests that the Court review *in camera* not only the documents identified in the paragraph above, but all the documents identified herein in order to determine whether the documents redacted or withheld by Janssen are actually subject to protection under the attorney-client privilege.

### 6. Janssen has Redacted Documents that were Created by Plaintiff

Janssen has redacted email communications that were sent by Plaintiff during her employment with the company.[14] As Plaintiff was a party to these communications, Janssen does not have the same interest in withholding them that it would have with regard to communications that Plaintiff was not already privy to. Plaintiff, therefore, respectfully requests that the Court review the communications and documents identified in footnote 14 *in camera* to determine whether such materials are protected by the attorney-client privilege.

### IV.     Conclusion

As demonstrated above, Plaintiff is unable to determine from Janssen's privilege log that the documents it has redacted or withheld from production on the basis of the attorney-client privilege are actually protected by the privilege. Plaintiff's lack of confidence in Janssen's log is further compounded by Janssen's conduct in asserting the privilege in an inconsistent and overbroad manner. Plaintiff, therefore, respectfully requests that the Court conduct an *in camera* review of the limited subset of documents identified herein so that it may consider and rule on

---

[14] *See* Exhibit 1 at Rows 2, and 4-7.

Janssen's privilege assertions and provide guidance to the parties to be applied to the remaining documents identified as privileged by Janssen. In the alternative, Plaintiff respectfully requests the Court to appoint a special master to review all the redacted and withheld documents and determine the applicability of the attorney-client privilege with regard to each document listed in Janssen's privilege log.

Dated: July 17, 2024

Respectfully submitted,

/s/ Diana L. Martin
Theodore J. Leopold (admitted pro hac vice)
Leslie M. Kroeger (admitted pro hac vice)
Diana L. Martin (admitted pro hac vice)
Poorad Razavi (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com
dmartin@cohenmilstein.com
prazavi@cohenmilstein.com

Casey M. Preston (admitted pro hac vice)
Gary L. Azorsky (admitted pro hac vice)
Jeanne A. Markey (admitted pro hac vice)
Adnan Toric (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
100-120 N. 18th Street, Suite 1820
Philadelphia, PA 19103
(267) 479-5700
cpreston@cohenmilstein.com
gazorsky@cohenmilstein.com
jmarkey@cohenmilstein.com
atoric@cohenmilstein.com

Jonathan Shapiro (BBO No. 454220)
SHAPIRO & TEITELBAUM LLP
55 Union Street, 4th Floor
Boston, MA 02108
(617) 742-5800
jshapiro@jsmtlegal.com

***Counsel for Plaintiff-Relator Julie Long***

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on July 17, 2024.

<div style="text-align:right">

/s/ Diana L. Martin
Diana L. Martin (admitted pro hac vice)

</div>