**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE UNITED STATES OF AMERICA, *ex rel.*
JULIE LONG,

|  |  |
|---|---|
| *Plaintiffs,* | Civil Action No. 16-CV-12182-FDS |
| v. | |
| JANSSEN BIOTECH, INC., | |
| *Defendant.* | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE

# INTRODUCTION

Over two years ago, in response to a discovery motion by Relator concerning Janssen's privilege log, Magistrate Judge Kelley considered many of the same objections that Relator raises now and reviewed an earlier (and less detailed) version of Janssen's privilege log. After briefing and oral argument, she determined that **"the privilege log that Janssen has already supplied is sufficient."** Mem. & Order at 3, ECF No. 284.

Now, nearly three years after receiving Janssen's initial privilege log and two failed attempts to discover all of Janssen's privileged communications, Relator has filed this motion seeking *in camera* review of hundreds of documents. In support of her motion, which Relator filed even as Janssen was re-reviewing nearly one thousand entries in an effort to avoid unnecessary motion practice, Relator offers arguments rejected by this Court years ago, coupled with baseless accusations that do not come close to meeting the standard for *in camera* review.

This is nothing new. Relator has been attempting to obtain Janssen's privileged documents since the beginning of discovery. She has launched repeated, but unsuccessful, attacks on Janssen's privilege assertions—ranging from challenges to the sufficiency of descriptions on Janssen's privilege log, to demands for information about the roles of individuals on the log, to contentions that Janssen had waived privilege entirely. She has tried but failed to overturn rulings about Janssen's privilege assertions by both Judge Saylor and Magistrate Judge Kelley. In short, when Janssen has produced non-privileged documents, Relator has filed motions claiming they were privileged and insisted Janssen had thereby waived privilege; meanwhile, when Janssen has withheld documents as privileged, Relator has claimed they are not privileged and must be produced. This is just another attempt to get what the Court already refused to give her.

Janssen has acted in good faith.  It has diligently reviewed millions of documents from 84 current and former employees and logged all privileged documents that were responsive to Relator's 61 document requests.  Each time Relator has had a concern about Janssen's privilege log, Janssen has addressed it.  Most recently, Janssen spent days reviewing more than 900 documents challenged by Relator to confirm they are privileged.  During that process, Janssen revised its privilege descriptions to more specifically identify the attorneys providing the legal advice where possible.  Janssen also removed certain documents from the log and produced them.  Yet, nothing that Janssen has done or will do—except maybe waive the privilege altogether—is good enough for Relator.  Relator made that explicitly clear before filing this motion, stating that she would file this motion "irrespective" of how Janssen responded to her inquiries.

Despite Janssen's efforts to address issues without Court intervention, Relator now argues that the Court should review hundreds of documents *in camera* because, in effect, Relator does not trust Janssen's assertion that they are privileged.  But such accusations do not justify a request for *in camera* review.  Because Relator cannot meet her burden to provide a factual basis supporting a need for *in camera* review, her motion fails.

## BACKGROUND

I. **Janssen Complied with Its Obligation To Produce an Appropriate Privilege Log With a Separate Entry for Each Privileged Communication Withheld.**

In the three years since discovery began, Relator has sought an enormous amount of discovery.  To date, Relator has requested documents responsive to 61 document requests from 84 current and former employees.  In response, Janssen has produced 236,526 documents, consisting of 3,415,068 pages.  Relator has issued 25 regular interrogatories and 22 interrogatories in the place of 30(b)(6) depositions, and Janssen has responded to each of them

and updated its responses as necessary.  Thus far, Relator has taken 15 depositions, and Janssen

is in the process of responding to Relator's recently noticed 30(b)(6) deposition on 50 unique

topics.

With respect to its privilege log, Janssen served the first iteration on October 31, 2021.

As the document review expanded and Relator sought additional documents, Janssen served

supplemental privilege logs on February 22, 2022, February 24, 2023, March 3, 2023, October

12, 2023, and May 13, 2024.  Finally, to address Relator's recent challenges, Janssen served an

amended privilege log with revised descriptions for hundreds of entries on July 23, 2024.  *See*

Ex. A (July 23, 2024 Privilege Log).

It is not surprising that Janssen's privilege log includes over 4,300 entries (spanning a 22

year period), particularly given Relator's demands for discovery regarding Janssen's legal

assessment of the lawfulness of its programs.  Relator intentionally propounded numerous

requests for documents explicitly implicating Janssen's legal analyses, including requests for

"[d]ocuments concerning the lawfulness of providing IOI Support or any other management and

advisory services to physicians" (RFP No. 33) and "documents concerning advice requested

and/or received from attorneys or regulatory experts related to the lawfulness of providing any of

the various types of IOI Support" (RFP No. 43).  Relator also demanded that Janssen review and

produce documents from three attorneys who served as Assistant General Counsel in Johnson &

Johnson's Law Department.  In fact, Janssen's privilege log includes well over 1,000 documents

from the custodial files of Janssen attorneys.

## II.    The Court Considered and Rejected Relator's Challenges to Janssen's Privilege Log Descriptions in 2022.

Relator has previously made the exact same arguments that she makes now, and the

Court has already rejected them.  In December 2021, less than two months after Janssen served

the first iteration of its privilege log, Relator filed a motion challenging the sufficiency of the

information on the privilege log.  Pl.'s Mem. of Law in Supp. of Mot. to Compel at 5-11, ECF

No. 224.  In that motion, Relator argued, like she does now, that:

- The absence of separate descriptions for attachments on Janssen's log was "insufficient."  *Id.* at 8;

- Janssen "should be required to provide more detail to support its claim of privilege" for entries that did not indicate they were written by, received by, or copied to an attorney.  *Id.* at 9;

- Documents that were sent to "employees without a need to know" are presumptively not privileged.  *Id.*; and

- Documents disclosed to a third party are presumptively not privileged.  *Id.*

On February 18, 2022, Magistrate Judge Kelley denied Relator's privilege log challenges.

ECF No. 284.  After considering Relator's arguments concerning each of these issues and

viewing Janssen's privilege log (which had been filed with the motion), Magistrate Judge Kelley

concluded that "the privilege log that Janssen has already supplied is sufficient."  *Id.* at 3.  She

held that the descriptions on the privilege log "allow[ed] relator to know that the contents of the

communications reflect legal advice" and "[n]o more is needed."  *Id.* at 3-4.

## III.    Relator Seeks Court Intervention Despite Janssen's Willingness to Address Its Concerns.

In light of and in reliance on Magistrate Judge Kelley's decision, Janssen continued to

prepare and update its privilege log using the same underlying methodology for the next 1.5

years.  Then, in October 2023, Relator again raised questions.  Specifically, Relator asked

Janssen to provide more detail about the dates and/or recipients for certain entries, and to

confirm that certain emails sent to "a large number of recipients" contained legal advice.  Relator

also requested that Janssen state its position on whether the descriptions complied with the

requirements of Federal Rule of Civil Procedure 26(b)(5).  Janssen responded to each of

4

Relator's questions and provided a revised privilege log containing the details she requested. Relator did not raise any further issues at that time.

Eight months later, Relator suddenly notified Janssen that she intended to file a motion requesting *in camera* review of unspecified entries on Janssen's privilege log. *See* Ex. B (June 14 to July 16, 2024 Emails re Privilege Log Meet and Confer) at 9-10. Janssen requested that Relator provide a list of the entries she sought to challenge so that Janssen could meaningfully assess Relator's position and engage in a productive meet and confer. Ex. B at 9. Although Relator initially refused, Relator ultimately provided a list of 66 challenged entries (of the 4,379 entries on Janssen's privilege log) on June 19. *See* Ex. C (June 18, 2024 Emails Between T. Leopold and M. Dunn) at 2; Ex. B at 7-9. Janssen reviewed each of the underlying documents to assess its claim of privilege. On June 25, Janssen had an hour-long meet and confer with Relator during which Janssen explained its position on each document Relator had challenged. Janssen agreed to downgrade and produce 12 of the challenged documents, and it promptly produced them.

The following day, on June 26, Relator sent an email challenging 915 entries (of the 4,379 entries on Janssen's privilege log) and demanding a response to various questions within four business days. Ex. B at 4-6. Relator stated that she planned to file a motion for *in camera* review no matter how Janssen responded to her inquiry. *Id.* at 6.

In a showing of good faith, on July 3, Janssen set forth its positions on Relator's challenges in a detailed letter. Ex. D (July 3, 2024 Letter to T. Leopold et al.). Janssen explained that it had reviewed hundreds of entries Relator had challenged, and it would agree to downgrade and produce the documents underlying approximately 50 challenged entries, many of which were duplicative of one another. *Id.* at 2. Janssen also explained that, in an effort to

resolve the dispute without burdening the Court, Janssen would edit challenged entries on the log to identify the specific name of the privilege actor (where that was not already apparent) and provide new information about attorneys involved in the lower portion of email chains whose names were not automatically populated into the privilege log. *Id.*

On July 15, Relator demanded that Janssen provide a firm date by which it would provide the documents it had agreed to produce, an updated privilege log with the revised descriptions, and Janssen's response on one final category of challenges. Ex. B at 2-3. Relator made clear that "[i]rrespective of what will and will not be provided to us, we will be filing our motion for *in camera* review on Wednesday." *Id.* at 3.

On July 16, Janssen informed Relator that it had finished reviewing the final category of challenges and would agree to downgrade and produce the documents underlying 39 additional entries (of the 4,379 entries on Janssen's privilege log), which included many duplicates. Ex. B at 1-2. Janssen advised Relator it would produce all downgraded documents and provide an updated privilege log, which it did just one week later, on July 23. *Id.*; Ex. A.

Despite Janssen's willingness to review Relator's challenges, downgrade documents, revise its privilege log, and address Relator's concerns through the meet and confer process, Relator rushed ahead and filed this motion on July 17.

Relator's motion is an unjustified attempt to bypass the meet and confer process and overturn Janssen's good faith assertion of privilege. In fact, 102 of the 302 entries she challenges in her motion were not raised or identified for Janssen before Relator filed her motion, so Janssen had no opportunity to assess Relator's arguments and attempt to resolve the dispute on those entries amicably. Janssen has already addressed Relator's challenges to the other 200 entries Relator identified in her motion by reviewing the underlying documents,

providing amended descriptions for certain entries, and even producing one of the documents. Relator's request for *in camera* review is unjustified.

## LEGAL STANDARD

The attorney client privilege is "the most venerable of the safeguards afforded to confidential communications." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011). The Supreme Court has made clear that *in camera* review of documents identified on a privilege log entails a limited "intrusion upon the confidentiality of the attorney-client relationship," and that while *in camera* review is appropriate in some circumstances, parties opposing the privilege assertion must not be allowed to "engage in groundless fishing expeditions" with district courts as their "unwitting" agents. *United States v. Zolin*, 491 U.S. 554, 571-72 (1989).

For this reason, courts do not treat requests for *in camera* review lightly, particularly where (as here) the party asserting the privilege has provided an appropriate privilege log with an entry for each of the privileged communications it has withheld. To justify *in camera* review, the party opposing the privilege assertion must "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992); s*ee also Nationwide Payment Sols., LLC v. Plunkett*, 831 F. Supp. 2d 337, 338 (D. Me. 2011) (requiring "a sufficient evidentiary showing to create a legitimate issue as to the application of the privilege or protection asserted"). Neither a movant's wish "to uncover additional evidence" nor its "second guess[ing]" of an appropriate privilege log is sufficient. *Cue, Inc., v. Gen. Motors LLC*, No. 13-12647-IT, 2015 WL 4750844, at *10 (D. Mass. Aug. 10, 2015). Rather, where the privilege log is "adequate" and the movant "has not made a sufficient evidentiary showing of the need to justify *in camera* review," the request should be denied. *6340*

*NB LLC v. Cap. One, N.A.*, No. 20-CV-02500 (OEM) (JMW), 2023 WL 7924176, at *5 (E.D.N.Y. Nov. 16, 2023).

## ARGUMENT

**I.   Relator Fails to Meet the Burden of Proof Required for *In Camera* Review.**

Relator's motion is premised on the notion that the Court should conduct an *in camera* review of hundreds of privileged documents merely because Relator "is unable to determine from a review of Janssen's privilege log whether the thousands of documents it has redacted or withheld on the basis of the attorney-client privilege are actually protected." Pl.'s Mem. of Law in Supp. of Mot. for *In Camera* Review ("Relator's Motion") at 7, ECF No. 446. But, as Judge Saylor has held, *in camera* review is appropriate "where there are substantial factual issues as to the existence or waiver of a privilege." *Fid. Int'l Currency Advisor A Fund, L.L.C., ex rel. Tax Matters Partner v. United States*, No. 05-40151-FDS, 2008 WL 4809032, at *12 (D. Mass. Apr. 18, 2008). Since "*in camera* review is generally disfavored," a party can justify *in camera* review only by making "a sufficient evidentiary showing to create a legitimate issue as to the application of the privilege or protection asserted." *Plunkett*, 831 F. Supp. 2d at 338. The party requesting review should "show a factual basis" for doubting the privilege assertion, *In re Grand Jury Investigation*, 974 F.2d at 1075; "an adequate request for *in camera* review requires more than speculative guesswork." *Marquez-Marin v. Lynch*, No. 3:16-CV-01706-JAW, 2018 WL 1358214, at *4 (D.P.R. Mar. 15, 2018).

Since Janssen has provided an appropriate privilege log, Relator has not shown that *in camera* review is appropriate by raising a "legitimate dispute" as to the assertion of privilege. By contrast, Relator cites *In re Grand Jury Subpoena* (Mr. S.), 662 F.3d at 70. In that case, the defendant had voluntarily permitted his attorney to produce documents in response to a grand jury subpoena before changing his mind and asserting that they were in fact privileged. *Id.* at 68.

The government, which had already reviewed the documents, submitted them to the court for *in camera* review, and the court then determined they were not privileged. *Id.* On appeal, the defendant did not argue that the documents were actually privileged, yet he nevertheless argued that the court should not have conducted an *in camera* review. *Id.* at 69. The court affirmed the district court's *in camera* review, where "the essential elements of the attorney-client privilege itself [were] lacking" in light of the defendant's "blanket assertion of privilege" over documents that were "not confidential in nature." *Id.* at 70-72. The circumstances here are markedly different, as Janssen has provided a comprehensive privilege log justifying its assertion of privilege over each of the documents Relator challenges.[1]

## II.    Relator Has Presented No Evidence That *In Camera* Review is Justified.

Janssen has produced an appropriate privilege log, and Relator has not established that *in camera* review is warranted in this case. Relator provides no factual basis to support a belief that the 302 documents she challenges are not actually privileged. Instead, she catalogues various aspects of Janssen's privilege log that she claims are deficient (despite the Court's prior rulings) and then simply speculates about the privileged nature of large swathes of documents that fall within certain categories. As discussed below, that is insufficient to justify *in camera* review. Relator's motion is nothing more than an improper attempt to "second guess" Janssen's privilege assertions, which are identified on an appropriate privilege log. *See Cue,* 2015 WL 4750844, at *10.

---

[1] Relator also cites *In re Grand Jury Subpoenas*, 123 F.3d 695, 699-700 (1st Cir. 1997), as "remanding for failure to conduct an in camera review." Relator's Motion at 7. There, a subpoena sought a law firm's billing records for a client under criminal investigation, and the district court made a blanket determination that law firm billing records "are not sufficiently specific" to be privileged. *Id.* at 696. The First Circuit agreed that at least some of the billing records were not privileged, but disagreed with the finding that billing records are "per se non-privileged," and it remanded for *in camera* review before production could be ordered. *Id.* at 699-700.

### A.   As the Court Previously Ruled, Janssen Has Sufficiently Identified the Individuals Who Provided Legal Advice.

Relator first argues that certain entries fail to adequately identify who sought or provided legal advice.  Relator's Motion at 8-9.  But the Court has already rejected that argument.  In her December 2021 motion, Relator argued that "Janssen should be required to provide more detail to support its claim of privilege" for communications not written or received by an attorney.  ECF No. 224 at 9.  The Court rejected this argument, finding that the information provided in Janssen's privilege log was "sufficient."  ECF No. 284 at 3.  As the Court recognized, each entry on Janssen's privilege log lists the date of the communication, the individuals involved in the communication, and the nature of the privilege asserted, and "[i]t is not clear . . . what further 'fact-specific' information Janssen is to produce."  *Id.*  The Court ruled that Janssen's description of documents as "reflecting legal advice regarding preparation/review of internal training or internal guidance concerning practice management or IOI support"—which is used to describe many of the challenged entries here—"allow[ed] relator to know that the contents of the communications reflect legal advice about training or guidance concerning IOI support."  *Id.* at 3-4.  As the Court clearly stated, "No more is needed."  *Id.* at 4.

Moreover, as Relator acknowledges, weeks before Relator filed this motion, Janssen agreed to revise its privilege log to identify the name of the privilege actor in the descriptions of challenged entries, and to add a new column with the names of attorneys present in lower email chains.  *See* Relator's Motion at 9 n.5.  On July 23, 2024, Janssen provided an updated privilege log that did just that.  *See* Ex. A.

Since the Court previously ruled that the privilege log entries were sufficient (and especially given that Janssen voluntarily provided additional information about the challenged entries after Relator filed this motion), the request for *in camera* review should be denied.

**B.      Janssen Has Provided Sufficient Information About Individuals on Its Privilege Log and Relator's Desire for More Information Does Not Justify *In Camera* Review.**

Relator next asserts that *in camera* review is appropriate because certain privilege log entries "fail to provide adequate descriptions of the individuals who authored, sent, or received the documents." Relator's Motion at 10. Relator asks the court to review the documents underlying three sets of privilege log entries: (i) those listing more than a dozen recipients; (ii) those sent to Janssen employee Michael Ziskind's personal email address; and (iii) those for which Relator speculates in-house counsel may have been acting in a non-legal role. *Id.* at 11. These requests should be denied.

As an initial matter, it is not clear how Janssen's privilege log entries for these documents are claimed to be inadequate, or what additional information Relator seeks to enable her to assess the privilege. Janssen's privilege log includes the email address for every participant in a privileged communication and identifies all attorneys with a "^". As Relator admits, this is enough information to discern whether a participant is an in-house attorney for the Defendant. *See* Relator's Motion at 11. Indeed, Janssen added this identifying mark at Relator's request.

**1.      There Is No Basis to Review Janssen's Privileged Communications Simply Because They Involve More Than a Dozen Recipients.**

Relator challenges entries on Janssen's privilege log on the basis that they "list more than a dozen recipients and/or participants." Relator's Motion at 11. Relator suggests these communications cannot be privileged because they involved more than a dozen individuals. But Relator provides no authority in support of this argument, nor could she, as there is no rule that limits the number of participants in a privileged communication.

The very entries that Relator challenges demonstrate why such a rule does not exist. For example, Row 329 is an email from Freddy Jimenez, J&J Assistant General Counsel, to

regulatory attorneys in the J&J Law Department requesting legal review and comment on draft guidance documents (Rows 330-31).  Similarly, Row 113 is an email to a select group of J&J employees, including regulatory attorneys in the J&J Law Department, seeking review of other draft guidance documents regarding interaction with customers that included attorney edits (Rows 114-17).

Notably, other entries Relator challenges do not actually involve a large number of recipients.  For example, Rows 1780-93 reflect an email with attachments from Christopher Zalesky (then Executive Director, World Wide Office of Health Care Compliance and Policy) to only two recipients, in-house attorneys Christopher Guiton (Assistant General Counsel) and Sue Seferian (Assistant General Counsel).  Rows 8-22 reflect an email with attachments from Louis Zambelli (Regional Business Manager) to only one recipient, Elizabeth Carew (Attorney – Claims Specialist).  As Janssen explained during the meet and confer and in its July 3, 2024 letter to Relator, the recipients of emails on Janssen's privilege log are listed in the To, CC, and BCC columns, not the All Participants field.  The All Participants field includes information about participants in lesser included threads of the email and about participants in attachments to the email.  Thus, that field, which is computer generated, identifies individuals who were not participants in the privileged conversation itself.

To be clear, Janssen agrees that emails sent to a large group of employees are often not privileged.  It is for that reason that Janssen paid particular attention to communications involving large numbers of recipients during its privilege review (and then re-reviewed every document in this category that Relator challenged).  That is precisely why Janssen produced thousands of such emails without asserting privilege.

### 2. The Privilege Protects Communications to an Employee's Personal Email Account.

Relator's motion then challenges Janssen's assertion of privilege over seven documents sent to the personal email address of Janssen employee Michael Ziskind.  Relator's Motion at 11. At the time these emails were sent, Michael Ziskind was the Director for Public Policy and Strategy at Janssen.  The documents at issue are emails with attachments from attorney John Siracusa to Michael Ziskind and another Janssen employee regarding draft presentations on Medicare reimbursement rules.  While John Siracusa sent the email to Michael Ziskind's personal email address in addition to Mr. Ziskind's work email address, there is no indication that he did not intend for the email to be confidential.  Thus, the transmittal of legal advice to Michael Ziskind's personal email did not break the privilege.

### 3. There Is No Evidence that the Lawyers in Janssen's Privileged Communications Worked in a Non-Legal Capacity.

Relator also challenges entries on Janssen's privilege log on the basis that they "fail to demonstrate the attorneys were actually acting in legal roles."  Relator's Motion at 11.  But a simple allegation that lawyers may not have been acting as lawyers does not justify *in camera* review.  To the contrary, the party challenging the privilege assertion "must do more than simply 'allege[ ] that the lawyers were acting not as lawyers, but as decision-makers on the business side.'"  *Marquez-Marin*, 2018 WL 1358214, at *4.

Relator has no basis to suggest the attorneys involved in the challenged communications acted in a non-legal capacity because they did not.  The attorneys in question—Freddy Jimenez, Shane Freedman, Kathleen Hamill, and Jennifer De Camara—all held the title of Assistant General Counsel for Johnson & Johnson and performed all work in the capacity as counsel to the company.  In fact, when Relator deposed Mr. Jimenez last week (after filing this motion), he

made clear he played an exclusively legal role at Janssen, and Relator made no attempt to suggest otherwise.

Notably, Relator's motion does not actually assert that the attorneys had a non-legal role, let alone that they were acting in a non-legal capacity when they sent or received the challenged communications.  And they were not.  As noted above, Row 329 is an email from Freddy Jimenez (Assistant General Counsel) to regulatory attorneys in the J&J Law Department requesting legal review and comment on draft guidance documents.  Row 3605 is an email from Kathleen Hamill (Assistant General Counsel) providing legal advice on a draft promotional resource.  These communications are clearly privileged, and Relator has no basis to suggest that any of the attorneys were serving in a non-legal role.

> ### C. Privileged Communications with Third-Party Marketing Firms and Consultants Do Not Warrant Review Since the Third Parties Acted as Functional Equivalents of Employees.

Relator next asserts that certain Janssen communications involving third parties are unlikely to be privileged and should be reviewed *in camera*.  Relator's Motion at 13-15.  She first challenges communications with marketing firms, including Thomas J. Paul and Xillix LLC.  She then challenges communications with consultants to Janssen and other third-party professionals, including Xcenda and the Resource Group.

While it is generally true that disclosing privileged communications to a third party breaks the attorney-client privilege, as this Court has recognized, there are circumstances in which communications with third parties may remain privileged.  *See* Hearing Tr. (Jan. 23, 2023) at 36:24-37:4 ("THE COURT: So with the consultant issue, I don't know if you're correct about that.  I mean, it seems to me if you have a consultant providing these services, it could very well be that you would want to pass onto them legal restrictions and things.  As they're developing the program, they need to keep in mind they can't violate certain tenets."); *id.* at 43:12-24 (citing

*Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10 (D. Mass. 2017), and noting that "in a business context, you just need to share privileged information with [consultants] so you can consult with them").  One such circumstance is where the third parties acted as "functional equivalents" to the party's employees.  Under the functional equivalent doctrine, "certain third-party agents of corporate entities, such as consultants, can be considered the 'functional equivalent' of corporate employees by virtue of their close connection to the corporate entity," which allows their communications with company counsel to remain privileged.  *Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, No. 15-12297-GAO, 2018 WL 1532614, at *2 (D. Mass. Mar. 28, 2018).  Courts view third-party agents to be functional equivalents when they have a "longstanding relationship with the company," "interact[] with the principals on a daily basis," are "intimately involved in the single objective for which the company was created," or there is "no principled basis to distinguish [the consultant's] role from that of an employee."  *Id.* (citing *In re Bieter Co.*, 16 F.3d 929, 934, 938 (8th Cir. 1994)).

The third-party marketing agents and consultants here were functional equivalents of Janssen employees because they played the same role as Janssen marketing and sales employees and worked toward accomplishing the same objectives.  They were tasked with, for instance, assisting Janssen with the development of marketing materials and strategies in the highly regulated health care space, and the provision of legal guidance from Janssen attorneys to external partners was essential for them to accomplish the tasks they had been hired to do on behalf of Janssen.  Janssen's decision to use outside consultants to perform these functions rather than employees does not vitiate the privilege.

The equivalence of their roles is apparent through Janssen witness testimony.  For example, Janssen witness Michael Wolfe (Product Director, Site of Care Marketing) referred to

Xcenda, Thomas J. Paul, and the Resource Group as the Janssen marketing team's "external partners" in the creation of educational materials.  Ex. E (Wolfe Dep.) at 47:17-48:17.  Janssen witness Thao Marzullo (Product Manager, Site of Care Marketing) explained that Xillix was the Site of Care marketing team's "agency of record," or "the most consistent agency/vendor that [they] work[ed] with to provide [] strategic support and tactical support" to Janssen's marketing team.  Ex. F (Marzullo Dep.) at 151:15-152:7.  Witness Marti Heckman (Vice President, Immunology Sales) described Xcenda Gastro Business Specialist employees as "an extension of our ABS team using the same PRC-approved materials and programs."  Ex. G (Heckman Dep.) at 126:20-25.[2]  Relator herself has even alleged that the third parties served as functional equivalents to Janssen employees, noting that Xcenda, Lash, MCV, The Resource Group, and other firms "serve[d] as a complement to [Janssen's] own team" and "assisted and advised Janssen accounts on many of the same business operations and practice management topics that the ABSs addressed with their accounts."  Second Amended Compl. ¶ 135, ECF No. 55.  Since agents of the third-party marketing and consulting firms acted as functional equivalents to Janssen employees, communications between Janssen counsel and the third parties is privileged.

As part of this section of her motion, Relator also challenges a few privilege log entries on the basis that the documents were shared with competitors.  Relator's Motion at 14.  These challenges have no merit.  As the To, CC, and BCC columns of the privilege log convey, nearly

---

[2] Janssen's contracts with Xcenda confirmed this view.  The 2006 Master Consulting Agreement between Janssen and Xcenda made clear that all work created by Xcenda was Johnson & Johnson property and required Xcenda employees to use Johnson & Johnson computing devices and comply with the Johnson & Johnson Common Expense Reporting Policy.  JANSSEN.016.0000656 at 661, 665, 670.  And the 2009 Centocor-Xcenda work order stated that Xcenda Gastro Business Specialist employees would "follow the same activity guidelines, receive the same compliance training and utilize the same resources available to the current GI Area Business Specialist ('ABS') team."  XCE CID 0023584 at 586.

all of the entries challenged in this section were internal emails or attachments to internal emails, and were not sent to third parties at all. The few entries that were sent to individuals with third-party competitor email addresses (Rows 340-41 and 1497-99) were two emails from Janssen in-house attorneys to Janssen employees attaching draft legal guidance documents for review, which suggests the inclusion of a competitor's employee was inadvertent.

**D.      Janssen's Descriptions of Attachments Were Approved By this Court and Do Not Justify *In Camera* Review.**

Relator next requests *in camera* review on the grounds that certain entries set forth no basis for withholding email attachments as privileged. Relator's Motion at 15. As Relator admits, the Court has already rejected Relator's prior challenge on that very basis. *Id.* at 15 n.13; ECF No. 284 at 3. Oddly, however, Relator argues that the Court's prior ruling that Janssen was not required to provide this additional detail on its privilege log now requires an *in camera* review. Relator's Motion at 15 n.13. To the contrary, where, as here, Relator has set forth no factual basis for questioning the privilege, Relator must "take Janssen at its word." *Id.* Moreover, if Relator thought the Court got it wrong in early 2022, she could have moved for reconsideration. She did not, and Janssen has since logged thousands of entries based on its prior practices and the Court's prior ruling rejecting Relator's position. Relator offers no explanation for her failure to act sooner or why it would be fair to subject Janssen to even further expense beyond what it already incurred logging documents according to this convention.

**E.      Janssen's Claw Backs and Downgrades Do Not Warrant *In Camera* Review.**

Relator next asserts that *in camera* review is appropriate because Janssen's assertion of privilege has been "inconsistent and overbroad." Relator's Motion at 16. Her primary support for this contention is the fact that Janssen clawed back inadvertently produced documents and

demonstrated a willingness to review its privilege determinations and, in some instances, produce documents in response to Relator's challenges.

Relator's use of claw backs and downgrades as evidence of Janssen's "inconsistency" is inappropriate. Claw backs are reasonable and legitimate assertions of privilege, contemplated by the Protective Order entered in this case. Protective Order Ex. B § III, ECF No. 103. They are common in a litigation of this size, and especially common where, as here, the plaintiff is scouring the defendant's productions for evidence that the defendant waived privilege.

Contrary to Relator's claims, the documents that Janssen has clawed back are privileged. The first claw back that Relator challenges, Row 4251 (JANSSENBIO-061-00006909), is an email from Roger Kung to John Vaughan (Attorney, J&J Law Department) and two Health Care Compliance colleagues with a redacted paragraph requesting legal advice. The second claw back that Relator challenges, Row 4281 (JANSSENBIO-011-00009459), is a document memorializing Site of Care meeting minutes with a redacted bullet point regarding a request for legal advice from Freddy Jimenez (Assistant General Counsel).

Similarly, a willingness to re-review documents on a privilege log in response to challenges and release privilege over certain documents is not a sign of inconsistency. It is how a good faith privilege review and discovery process is supposed to work. Janssen should not be penalized for its attempt to claw back privileged material or its willingness to engage in good faith efforts to address Relator's challenges.

### F. Relator's Involvement in Privileged Communications Does Not Justify *In Camera* Review.

The last category of documents that Relator challenges are redacted email communications that were sent by Relator herself while she was an employee at Janssen. Relator's Motion at 17. Relator suggests that these emails may not be privileged because Relator

18

is a party in this case.  The absurdity of this argument demonstrates a severe misunderstanding of the attorney-client privilege.  It is a basic tenet of the attorney-client privilege that confidential communications between corporate employees and the company's counsel relating to legal advice are protected by the privilege.  The challenged entries are just that: records of communications between Relator, a Janssen employee, and her employer's counsel, the J&J Law Department, in which legal advice is either sought or provided.

## CONCLUSION

The theme of Relator's motion is that she simply does not believe the descriptions set forth in Janssen's privilege log.  But with nothing more than speculation to support this disbelief, Relator should not be permitted to enlist the Court in a limited intrusion of the attorney-client privilege in the form of an *in camera* review.  Janssen respectfully requests that the Court deny Relator's motion.

Dated:  July 31, 2024                                        Respectfully Submitted,

                                                            */s/ Jason C. Raofield*
                                                            Jason C. Raofield (BBO No. 641744)
                                                            Matthew F. Dunn (admitted *pro hac vice*)
                                                            Nicholas O. Pastan (admitted *pro hac vice*)
                                                            Alison S. DiCiurcio (admitted *pro hac vice*)
                                                            Covington & Burling LLP
                                                            One CityCenter
                                                            850 Tenth Street, NW
                                                            Washington, DC  20001
                                                            (202) 662-6000
                                                            jraofield@cov.com
                                                            mdunn@cov.com
                                                            npastan@cov.com
                                                            adiciurcio@cov.com

                                                            *Attorneys for Defendant Janssen Biotech, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 31st day of July, 2024, that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Jason C. Raofield*

Jason C. Raofield (BBO No. 641744)
