# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* JULIE LONG, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 16-CV-12182-FDS |
| v. | ) ) | |
| JANSSEN BIOTECH, INC., | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE

In opposition to Plaintiff's motion for *in camera* review, Janssen appears to argue that as long as it has listed a document on its privilege log, the burden shifts to Plaintiff to persuade the Court that the document is not subject to the privilege before the Court can or should review the document *in camera*. This is not the law. Janssen has the initial burden to demonstrate that the documents it is withholding as attorney-client privileged are indeed privileged, which it has failed to do. Even if this were the law, however, Plaintiff has met this burden of persuasion by demonstrating not only that Janssen's log fails in many instances to even make a *prima facie* case for the privilege, but that Janssen has a history of improperly designating documents as attorney-client privileged, thereby undercutting all representations Janssen makes in its log. Furthermore, as the First Circuit recognized, because "the very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged[,] in camera reviews should be encouraged, not discouraged," *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011), as Janssen claims. Plaintiff contends *in camera* review is both necessary and appropriate in this case and respectfully requests the Court grant Plaintiff's motion to conduct such a review.

## I.     Legal Standard

Janssen, as the party asserting the attorney-client privilege, "'must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived.'" *Cue, Inc. v. Gen. Motors LLC*, CV 13-12647-IT, 2015 WL 4750844, at *7 (D. Mass. Aug. 10, 2015) (quoting *In re Grand Jury Subpoena (Mr. S)*, 662 F.3d at 71). Janssen argues that it satisfied this burden by producing an "appropriate privilege log" and that in order for the Court to conduct an *in camera* review (which Janssen claims is disfavored), Plaintiff must make an evidentiary showing that creates a legitimate issue as to the application of the privilege. Janssen is wrong on both counts.

As demonstrated by the authority cited by *Janssen*, merely producing a privilege log is not necessarily sufficient to satisfy its initial burden of demonstrating the applicability of the attorney-client privilege. In *In re Grand Jury Investigation*, 974 F.2d 1068, 1071, 1075 (9th Cir. 1992), for instance, the defendant submitted "affidavits of the attorneys responsible for preparing the documents" it withheld as privileged in order to meet its burden. And in *Fidelity International Currency Advisor A Fund, L.L.C., ex rel. Tax Matters Partner v. United States*, CIV. A. 05-40151-FDS, 2008 WL 4809032, at *10, *12 (D. Mass. Apr. 18, 2008) (Saylor, J.), this Court found a privilege log supplemented by deposition testimony was still insufficient to demonstrate withheld documents were protected by the attorney-client privilege.

Furthermore, First Circuit authority makes clear that *in camera* reviews are not disfavored.[1] In fact, they may be appropriate even in situations where no party has requested such a review:

> [I]mportant[ly], the very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged. Given this prudential purpose, in camera reviews should be encouraged, not discouraged. In that spirit, federal courts commonly—and appropriately—conduct such reviews to determine whether particular documents are or are not privileged. *See* [*United States v. Zolin*, 491 U.S. 554, 569 (1989)] (noting that the Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection, and" this "practice is well established in the federal courts" (internal citations omitted)); *cf. In re Grand Jury Subpoenas*, 123 F.3d 695, 699–700 (1st Cir. 1997) (remanding for failure to conduct an in camera review).
>
> When . . . the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened. *See United States v. Smith*, 123 F.3d 140, 151 (3d Cir. 1997). Even if the parties do not explicitly request such a step, a district court may be well advised to conduct an in camera review.

---

[1] The case Janssen cites to the contrary is not precedential and has never even been cited by a court in this district. *See Nationwide Payment Sols., LLC v. Plunkett*, 831 F. Supp. 2d 337, 338 (D. Me. 2011) (noting "*in camera* review is generally disfavored") (citing *PHE, Inc. v. DOJ*, 983 F.2d 248, 252–53 (D.C.Cir.1993)).

*In re Grand Jury Subpoena (Mr. S)*, 662 F.3d at 70. *See also Logue v. Rand Corp.*, 610 F. Supp. 3d 399, 401-02 (D. Mass. 2022) (ordering *in camera* review where court was unable to determine applicability of privilege without reviewing email, recognizing such reviews are encouraged).

Ultimately, if, after reviewing the privilege log, it is unclear to the Court whether a document is privileged, the Court should review that document *in camera*. *Marquez-Marin v. Lynch*, 3:16-CV-01706-JAW, 2018 WL 1358214 (D.P.R. Mar. 15, 2018), cited by Janssen, illustrates this point. There, the defendant produced a privilege log in which it identified the documents it was withholding under the attorney-client privilege. *Id.* at * 3. In order to rule on plaintiff's motion for *in camera* review, the court reviewed the items as listed on the privilege log, considered the parties' arguments and evidence for and against application of the privilege, and, in each instance where the court was unable to determine whether the privilege applied to a particular document, the court agreed to review the document *in camera*. *Id.* at *10-13. If the Court undergoes such an analysis here, it will realize it must conduct an *in camera* review of the documents listed on Janssen's privilege log in order to determine whether the withheld documents are subject to the attorney-client privilege.

## II.     The Court's Prior Rulings Do Not Preclude Plaintiff from Seeking *In Camera* Review

Janssen contends that because the Court denied a motion Plaintiff filed nearly three years ago that challenged the adequacy of Janssen's October 31, 2021 privilege log, *see* Exhibit 3 to ECF No. 224, Plaintiff is now precluded from seeking *in camera* review of any documents Janssen is withholding under the attorney-client privilege. Of course, in 2021, it would not have even been possible for Plaintiff to challenge the vast majority of Janssen's privilege designations as the 2021 log had less than 300 entries, *see* Exhibit 3 to ECF No. 224, while the current log has over 4,300

entries.[2] *See* ECF No. 449-1. And a review of the hearing transcript on Plaintiff's earlier motion demonstrates the Court recognized that *in camera* review may be necessary to determine the propriety of Janssen's claims of attorney-client privilege, and it indicated a willingness to perform such a review. When Plaintiff's counsel advised the Court that Plaintiff was "going to have to ask for an in-camera review of many of [the logged] documents" if Janssen did not provide more detailed information on its log, the Court responded, "I don't mind doing an in-camera review...." *See* ECF No. 367 at 35:14-19. Plaintiff contends that now is an appropriate time to conduct such a review and that such a review is necessary in order for the Court to determine which, if any, of the documents listed on Janssen's log are subject to the privilege. *See In re Grand Jury Subpoena (Mr. S)*, 662 F.3d at 70.

### III.    The Parties Met and Conferred in Accordance with the Local Rules and Were Able to Narrow, But Not Resolve, the Issues

Janssen chides Plaintiff for filing her motion for *in camera* review despite Janssen's willingness to address Plaintiff's concerns. The parties met and conferred and were able to narrow, but not resolve, the issues. Although Janssen agreed to review and make some revisions to its privilege log, it was clear that all issues would not be resolved as a result. Given that the discovery deadline of September 30, 2024 is rapidly approaching, Plaintiff opted to file her motion for *in camera* review rather than wait for Janssen's updated privilege log. Plaintiff stands by her choice

---

[2] Janssen attests the size of its privilege log is due to "Relator's demands for discovery regarding Janssen's legal assessment of the lawfulness of its programs." *See* Janssen Opp., ECF No. 449 at 4. As this Court has recognized, "proving Janssen's knowledge is critical to relator's claims," not only because it is an element of Plaintiff's claims, but because "Janssen has asserted an affirmative defense that any false claims were not submitted knowingly." *See* ECF No. 282 at 5. Janssen has acknowledged that it had lawyers conduct analyses regarding the lawfulness of its provision of IOI Services. Plaintiff is entitled to ask for these analyses and hold Janssen to its burden of demonstrating they are protected by the attorney-client privilege.

as Janssen's revised log, which was produced after Plaintiff filed her motion, did not eliminate the need for Plaintiff's motion.

Additionally, Janssen complains that some of the documents Plaintiff has asked the Court to review *in camera* were not expressly flagged for Janssen prior to the filing of Plaintiff's motion. But Plaintiff explained in detail the categories of documents she was challenging and has asked the Court to review only a minor subset of documents in each category in order to guide the parties regarding the applicability of Janssen's asserted privilege as to those categories. The parties thoroughly conferred regarding each category of documents being challenged and were unable to reach an agreement that resolved all issues. Now is the appropriate time for the Court to direct the parties regarding the applicability of the attorney-client privilege to the documents listed on Janssen's voluminous privilege log.

## IV.   Even if Plaintiff has a Burden of Persuasion, it has Been Satisfied

By merely reviewing the privilege log entries Plaintiff challenges in this motion, the Court will see that it is not possible to ascertain whether the attorney-client privilege protects the logged documents without reviewing the documents *in camera*. As "the very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged," *In re Grand Jury Subpoena*, 662 F.3d at 70, such a finding by this Court would warrant conducting an *in camera* review.

Additionally, Janssen's own conduct in mislabeling documents as attorney-client privileged forms an independent basis for conducting such a review. On at least three occasions, after being challenged by Plaintiff, Janssen has downgraded dozens of its privilege designations and agreed to produce documents it had withheld on the basis of the attorney-client privilege. *See* Janssen Opp., ECF No. 449 at 6 ("Janssen agreed to downgrade and produce 12" challenged

5

documents, and later "agree[d] to downgrade and produce the documents underlying approximately 50 challenged entries"); ECF No. 449 at 7 (Janssen agreed to "downgrade and produce the documents underlying 39 additional entries"). Considering this pattern of over-designating documents as attorney-client privileged and requiring Plaintiff to identify these failures and engage in multiple meet and confers before agreeing to correct its improper designations, along with Janssen's history of clawing back produced documents that appear not to be subject to the privilege, *see* Plaintiff's Memo., ECF No. 446 at 16, Plaintiff has a reasonable and good faith basis for asking the Court to conduct an *in camera* review. *See Logue v. Rand Corp.*, 610 F. Supp. 3d 399, 401-02 (D. Mass. 2022) (ordering *in camera* review where defendant amended its privilege log in response to plaintiff challenging its privilege claim).

### V.   Plaintiff Withdraws Her Request for *In Camera* Review of Documents Listed in Log Entries that Fail to Identify Who Sought or Provided Legal Advice

After the parties met and conferred, Janssen agreed to revise its privilege log to address Plaintiff's argument that the log entries failed in many cases to identify who sought or provided legal advice. After reviewing Janssen's amended privilege log, Plaintiff withdraws her request that the Court review the documents identified in footnotes 3 and 4 of her memorandum.[3]

### VI.   Log Entries that Fail to Provide Adequate Descriptions of Individuals Who Authored, Sent, or Received Withheld Documents

Janssen recognizes that "emails sent to a large group of employees are often not privileged." *See* Janssen Opp., ECF No. 449, at 13. For that reason, it claims it paid particular attention to communications involving large numbers of recipients during its privilege review. But there is nothing on Janssen's log that establishes that communications sent to a large number of

---

[3] Plaintiff also withdraws her request that the document listed at Row 129 be reviewed as Janssen has produced that document.

recipients,[4] who were not always limited to Janssen employees, were provided only to those with a need to know the information, *see In re Prograf Antitrust Litig.*, No. 1:11-md-02242-RWZ, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013) (stating communications between "employees that discuss or relay counsel's legal advice . . . are privileged to the extent that the employees are in a 'need to know' position or bear some responsibility for the subject matter underlying the consultation"), or provided only to agents of Janssen, *see Fidelity International Currency Advisor A Fund, L.L.C., ex rel. Tax Matters Partner v. United States*, CIV. A. 05-40151-FDS, 2008 WL 4809032, at *8 (D. Mass. Apr. 18, 2008) (Saylor, J.) (explaining waiver of privilege that occurs when privileged information is voluntarily disclosed to a third-party does not occur where disclosure was made to an agent of the claimant's attorney). "'Where privilege is claimed and the opponent alleges a specific disclosure [as Plaintiff has done here], the burden of proof is upon the claimant to show nondisclosure wherever that is material to the disposition of the claim.'" *Id.* (quoting *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997)). Nor is it apparent from the log that the privileged information was provided in such a manner as to make sure each of the numerous recipients knew it was to be kept confidential. *See id.* at 11 (viewing failure to mark letter "anywhere on its face as 'attorney-client privileged'" was evidence "that the authors of the letter either (1) did not believe that the document was privileged or (2) consciously

---

[4] Janssen points out that sometimes its log lists numerous "participants" rather than "recipients." It claims the distinction is that the "all participants" field on its log "includes information about participants in lesser included threads of the email and about participants in attachments to the email." Janssen Opp., ECF No. 449 at 13. Janssen fails, however, to explain why information that was known to such participants would become privileged because it was forwarded to a recipient through which Janssen claims the attorney-client privilege. *See In re Intuniv Antitrust Litig.*, 16-CV-12396-ADB, 2018 WL 6492747, at *6 (D. Mass. Dec. 10, 2018) (explaining forwarding a document to an attorney does not make it privileged).

chose not to label it 'privileged'"). An *in camera* review is necessary for the Court to rule on Janssen's claims of privilege with regard to these documents.

Janssen admits that emails it is withholding as privileged were sent to Janssen employee Michael Ziskind using his personal email address: mikeingrid@verizon.net. Without citing to any evidence or authority, Janssen rejects the idea that such transmittal waived the attorney-client privilege. As indicated by the email address, mike*ingrid*@verizon.net, it appears this was not a personal email account, but a joint email account he shares with his wife. While Plaintiff believes this is enough to demonstrate waiver and require production of the withheld documents, she requests an *in camera* review to allow the Court to carefully consider the matter.

Finally, Janssen argues Plaintiff has no basis for her argument that *in camera* review is necessary to determine whether attorneys sending purportedly privileged communications were actually acting in legal roles. But Plaintiff explained her reasoning for each of the documents she asks the Court to review on this basis:

- Row 329 – email from attorney Freddy Jimenez on which sidleynews@sidley.com, which appears to be the media team at Sidley Austin LLP, is listed as a participant, to dozens of recipients;

- Row 840 – email communication sent to over a dozen recipients, including attorneys, regarding principles to be taught in organization-wide training sessions;

- Row 1497 – attorney Shane Freedman sending email to dozens of recipients, including edwin_hemwall@merck.com at Merck, a Janssen competitor;[5]

---

[5] Janssen responds that the emails sent to third-party competitors were likely inadvertent disclosures (but fails to actually demonstrate as much). *See* Janssen Opp., ECF No. 449 at 17. However, Janssen provides no authority that shows it can maintain its privilege despite such inadvertent disclosures. Furthermore, Janssen has failed to demonstrate it took any action to clawback or otherwise mitigate these purportedly inadvertent disclosures of attorney-client

- Row 3605 – attorney Kathleen Hamill emailing multiple people at healthcare marketing firm Sudler and Hennessey; and

- Rows 3951, 3956 – attorneys Freddy Jimenez and Jeniffer De Camara sending emails where one of the participants was smithjs1@wyeth.com at Wyeth, another Janssen competitor.

These privilege log entries call into question Janssen's claims of privilege, warranting review of the documents *in camera*.

### VII.    Log Entries that Fail to Establish the Confidentiality of Information that was Sent to Third-Parties

Janssen's privilege log is rife with entries demonstrating the company is withholding under the attorney-client privilege materials and communications it shared with third-parties, including consultants and marketing firms. Janssen claims such materials are obviously privileged and need not be reviewed *in camera* because the "third-party marketing agents and consultants . . . were functional equivalents of Janssen employees because they played the same role as Janssen marketing and sales employees and worked toward accomplishing the same objectives." Janssen Opp., ECF No. 449 at 16.

Janssen relies on *Lynx System Developers, Inc. v. Zebra Enterprise Solutions Corp.*, CV 15-12297-GAO, 2018 WL 1532614 (D. Mass. Mar. 28, 2018), to argue these third parties were the functional equivalent of Janssen employees. The Court recognized, however, that the functional equivalent "doctrine has not been adopted within this Circuit or applied within this District." *Id.* at *4. More recently, the Court made the same observation in *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 68 (D. Mass. 2020). In each case,

---

privileged information to its competitors. Accordingly, these disclosures amount to the waiver of any privilege.

the Court found the claimant failed to satisfy the stringent requirements of the doctrine as established in *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994), which "'considered that the consultant had a longstanding relationship with the company, interacted with the principals on a daily basis, was intimately involved in the single objective for which the company was created, worked from the company office, was paid a monthly wage, and appeared at public meetings as its sole representative. . . .'" before ruling the third-party was the functional equivalent of an employee. *Wollman*, 475 F.Supp.3d at 68 (quoting *Lynx* at \*2).

Janssen attempts to satisfy this difficult standard by reference to deposition testimony in which Janssen employees generically refer to third-party marketers as "external partners," "strategic support and tactical support," and "an extension of [Janssen's] ABS team." Janssen Opp., ECF No. 449 at 17. This fails to satisfy the requirements of the functional equivalent doctrine for the same reasons the evidence in *Lynx* and *Wollman* failed: there is no evidence of a longstanding relationship between each of the consultants/marketing firms and Janssen; there is no evidence that they were paid a salary as opposed to hourly; there is no evidence they worked from Janssen's offices, rather than out of their own offices; there is no evidence they were obligated to work exclusively for Janssen to the exclusion of any other clients; and there is no evidence they acted as Janssen's sole representatives (in fact, Janssen relied on a host of representatives, as demonstrated by the sheer number of consultants and third-parties listed on its privilege log). *See Lynx* at \*4; *Wollman* at 68. Thus, Janssen has not demonstrated anything special about its relationship with these third parties that would take them "out of a consulting/contractual relationship to become the functional equivalent of [a Janssen] employee." *Wollman* at 68. As Janssen has failed to show the functional equivalent doctrine is applicable here, the Court should

review the purportedly privileged documents Janssen shared with third parties to determine the applicability of the attorney-client privilege.

Janssen also fails to provide an adequate explanation for how it can claim attorney-client privilege with regard to documents and communications received from or sent to its competitors. *See supra* at n.5. Without reference to any factual explanation or evidence at all, Janssen claims that the purportedly attorney-client privileged emails sent to employees of its competitors must have been sent inadvertently. *See id*. Rather than accept Janssen's speculation as true, the Court should review the documents *in camera* in order to consider and rule on Janssen's claims of attorney-client privilege.

### VIII.  Log Entries that Fail to Establish the Basis for Withholding Attachments to Email Communications as Privileged

When Janssen lists an email with attachments on its privilege log, it does not provide any description for the attachments. For instance, Row 1522 lists a withheld email, JANSSENBIO-PL_2-0001266, which is described as, "Email chain with attachment(s) reflecting request for legal advice from Legal Department regarding preparation/review of customer-facing practice management or IOI support material." *See* <u>Exhibit 1</u> to Plaintiff's Memo (filed under seal). The next nine rows, 1523-1531, which are presumably the attachments to the email listed in Row 1522, contain no description whatsoever. Plaintiff is unable, therefore, to analyze whether the email attachments are subject to the attorney-client privilege. This problem is compounded when the log contains other red flags indicating an attachment is not protected by the attorney-client privilege. Some of the attachments to the email described above were last authored by Jessica Higgins with Xcenda – one of Janssen's many third-party consultants. Plaintiff's ability to challenge these attachments as improperly withheld is hampered by the lack of any description for the attachments.

This problem is even further compounded when one of the participants to an email attachment is the employee of a third party. *See*, *e.g.*, Exhibit 1, Rows 4117 – 4132. The description of the document listed on Row 4117 is, "Email chain with attachment(s) providing information to counsel for the purpose of receiving legal advice regarding preparation/review of internal training or internal guidance concerning practice management or IOI support." In the "all participants" field of the log, employees from Accredo Health and Proherant are listed on what are presumably the attachments to that email. *See* Exhibit 1, Rows 4118 – 4132. Janssen describes the "all participants" field as "includ[ing] information about participants in lesser included threads of the email and about participants in attachments to the email." Janssen Opp., ECF No. 449 at 13. Thus, neither a particular participant's connection with an attachment nor the very nature of the attachment is made clear in Janssen's log. Because Janssen's log makes it impossible to analyze whether any attachment to an email or document is subject to the attorney-client privilege, there is no option other than *in camera* review to determine whether these attachments are properly withheld from production.[6]

## IX.    Conclusion

Plaintiff respectfully requests that the Court grant her motion and conduct an *in camera* review of a limited subset of documents in order to rule on Janssen's privilege assertions and provide guidance to the parties.

---

[6] Janssen appears to argue that Plaintiff is seeking untimely reconsideration of the Court's prior ruling denying her motion to compel a better privilege log by requiring Janssen to include descriptions of the attachments. Plaintiff is not asking the Court to change its ruling. Plaintiff is asking the Court to review the attachments *in camera* to determine whether they are privileged. There is simply no other alternative to verify Janssen's privilege claims.

Dated: August 9, 2024                    Respectfully submitted,

/s/ Diana L. Martin
Theodore J. Leopold (admitted pro hac vice)
Leslie M. Kroeger (admitted pro hac vice)
Diana L. Martin (admitted pro hac vice)
Poorad Razavi (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com
dmartin@cohenmilstein.com
prazavi@cohenmilstein.com

Casey M. Preston (admitted pro hac vice)
Gary L. Azorsky (admitted pro hac vice)
Jeanne A. Markey (admitted pro hac vice)
Adnan Toric (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
100-120 N. 18th Street, Suite 1820
Philadelphia, PA 19103
(267) 479-5700
cpreston@cohenmilstein.com
gazorsky@cohenmilstein.com
jmarkey@cohenmilstein.com
atoric@cohenmilstein.com

Jonathan Shapiro (BBO No. 454220)
SHAPIRO & TEITELBAUM LLP
55 Union Street, 4th Floor
Boston, MA 02108
(617) 742-5800
jshapiro@jsmtlegal.com

***Counsel for Plaintiff-Relator Julie Long***

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on August 9, 2024.

/s/ Diana L. Martin
Diana L. Martin (admitted pro hac vice)