**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| THE UNITED STATES OF AMERICA *et al.* ) | |
| *ex rel.* JULIE LONG, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 16-CV-12182-FDS |
| ) | |
| v. ) | |
| ) | |
| JANSSEN BIOTECH, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFF-RELATOR'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER
<u>CONCERNING DEFENDANT'S RULE 30(b)(6) DEPOSITION</u>**

**Table of Contents**

I.    FACTUAL BACKGROUND……………………………………………...    1

II.    PROCEDURAL BACKGROUND …………………………………………..    4

    A.    In Preparation For Janssen's Deposition, Plaintiff Complied With Fed. R. Civ. P. 30(b)(6)'s Notice And Meet And Confer Requirements …………………..…    4

    B.    Janssen Did Not Confer With Plaintiff Regarding The Issues Raised In This Motion For Protective Order …………………………………………………    7

III.    LEGAL STANDARD …………………………………………………………..    8

IV.    ARGUMENT ………………………………………………………………...    9

    A.    To Reduce The Information Sought, Plaintiff Withdraws Three Topics Janssen Claims Would Require An Extreme Level Of Effort To Be Able To Answer Questions About ………………………………………………………….....    10

    B.    Janssen Has Not Demonstrated That There Is Good Cause To Protect It From Having To Answer Questions Related To Topics That Might Involve Information That Janssen May Consider To Be Privileged…………………………………..    10

    C.    Janssen Has Not Demonstrated That There Is Good Cause To Protect It From Having To Answer Questions About Each Of The Different IOI Support Programs It Provided To The Targeted Physician Practices …………………....    13

    D.    Janssen Has Not Demonstrated That There Is Good Cause For It To Be Permitted To Merely Provide "General" Answers And Information To Deposition Questions…………………………………………………………………    17

V.    CONCLUSION ………………………………………………………………    20

Plaintiff-relator Julie Long submits this memorandum of law in opposition to defendant Janssen Biotech's motion for a protective order concerning certain matters for examination set forth in the notice for Janssen's Rule 30(b)(6) deposition (ECF 450). Janssen was dilatory in filing this motion and also failed to comply with Local Rule 37.1(a) and Fed. R. Civ. P. 30(c)(1) by refusing to meet and confer with Plaintiff concerning the motion before filing it. In this motion, Janssen asks the Court to impose protections that would downgrade Janssen's Rule 30(b)(6) deposition to a question and answer session in which the company's designees would not have to answer (a) questions where the responsive information might include information that Janssen considers to be privileged, or (b) questions concerning the various practice management and infusion business consultative and educational programs that Janssen provided to targeted physician practices free of charge and that are at the center of this action brought on behalf of the United States alleging that Janssen violated the Anti-Kickback Statute and defrauded the Medicare program. Additionally, Janssen requests that, for the limited questions that it would be required to answer, it be permitted to merely provide "general" answers, rather than full, complete and unevasive answers, as the law requires.

Because Janssen has not demonstrated that there is good cause for any of the prejudicial protections it seeks, the motion should be denied in its entirety.

## I.  FACTUAL BACKGROUND

Relator is pursuing this qui tam action on behalf of the United States to hold Janssen accountable for the significant damages it has caused to Medicare and its beneficiaries by engaging in a scheme through which it provided valuable business services and support to select physician practices for free to induce them to prescribe two of its drugs to patients. Since the early 2000s, one of Janssen's main strategies for growing sales of Remicade and Simponi

ARIA—two drugs administered by infusion—was to promote the infusion business model[1] by helping rheumatology and gastroenterology practices open an in-office infusion suite ("IOI") and, after the IOI was open, by influencing the physician practices to perform more infusion procedures by helping the practices optimize their IOIs and operate these ancillary businesses more efficiently and therefore more profitably. As part of this strategy, Janssen employed a large team of business advisers to regularly furnish operational support and essentially serve as business partners to doctors who committed to the infusion business model were high-volume infusers of Remicade and Simponi ARIA. *See* Second Am. Compl. ("SAC") (ECF 55) at ¶122. Janssen called this special team of employees "Area Business Specialists," or "ABSs" for short. *See id*. Each Remicade and Simponi ARIA sales territory had an ABS in addition to customary sales representatives and medical science liaisons. *See id.* at ¶¶124-25. Janssen also paid outside consultants, such as Xcenda and Akin Gump, to advise doctors on opening IOIs, optimizing the operation of the IOIs, and/or legislative changes that affected their practices and IOI businesses. *See id.* at ¶¶123, 135.

Janssen provided the free practice management and infusion business advice and support on a wide range of topics on an ongoing basis for several years to the targeted high-volume IOI customers and IOI accounts identified as having the potential to become high-volume Remicade and Simponi ARIA customers to make sure that the physician stakeholders continued operating the IOIs and in turn maintained and/or grew the number of infusion procedures they performed

---

[1]  Infusible drugs, such as Remicade and Simponi ARIA, create a revenue opportunity for physician practices because when doctors infuse drugs in their offices they can earn a profit or spread on each vial of medication infused (*i.e.*, the difference between the price the doctors pay to buy the drug and the amount they charge patients and insurers, including Medicare, for the drugs) and the physicians can also charge patients and their insurers a fee for the infusion service. When physicians prescribe similar drugs that patients self-administer or take at home, the physicians earn no spread and cannot charge a service fee for administering the drugs.

of Janssen's drugs. *See id.* at ¶¶145-66. Most of these services were delivered through live meetings conducted in person, by teleconference, or by webinar during which the ABSs, including Plaintiff, and the outside consultants advised or educated the doctors, their practice managers, and other office staff on a full range of practice management and IOI operational issues. Janssen referred to these meetings as "programs."  The free services and programs through which the services were furnished are collectively referred to herein as "IOI Support."

Below is a list of the practice management and infusion business programs that are at issue in the case. Janssen provided written testimony acknowledging that it provided each of these programs to IOI customers.

- Becoming an Alternative Site of Care for Therapy with Remicade in Your Community
- Billing and Coding for Infusions
- Checkpoints for Infusion Center Optimization
- Considerations for Proactive Practice Management
- Considerations for Standard Operating Procedures in the Infusion Suite
- Considerations for Working with a Specialty Pharmacy
- Electronic Health Records and Meaningful Use (Part 1 and Part 2)
- Emerging Trends in Health Care
- Enhancing Patient Care and Access
- Exceptions and Appeals
- Hot Buttons
- ICD-10
- In-Office Infusion Drug Procurement Models
- Infusion Optimization Modeler
- Infusion Referrals: Improving the Continuity of Care
- Infusion Services Review (a/k/a iBiz; Infusion Business Review)
- IV Therapy: An Important Option for Your Patients
- Managing Biologics in the Physician Office
- Medicare Audits
- Medicare Quality Payment Program: A Focus on MIPS
- Patient Experience in the Infusion Suite
- Payer Relationship Management
- Practice Compliance for Remicade
- Private Payer Contracting Considerations (Part 1 and Part 2)
- Quality of Care in the Infusion Suite
- Raising the Infusion Suite Experience
- Remicade Account Review
- Setting Up In-Office Infusions of Remicade
- Specialty Drug Market Dynamics
- Successful Implementation of a New Infusion Suite
- Successful Implementation of a New Infusion Suite for Gastroenterology Practices
- Successful Infusion Site Management for Gastroenterology

- Infusion Suite Scheduling and Staffing
- Infusion Therapy Services Provided in Converted ASC Space
- Inventory and Supply Management

- Akin Gump teleconferences, including, but not limited to: Medicare Physician Payment Update; Healthcare Reform Update; and Medicare Shared Savings Program and Accountable Care Organization Proposed Rule Update

*See* Exhibit 2 at 9-12.

Because the IOI Support helped doctors open, maintain, optimize, and grow their IOIs, where they infused a variety of infusible drugs, not just Remicade and Simponi ARIA, these services and programs provided significant value to the physicians that extended well beyond Janssen's products. *See id.* at ¶¶8, 165-66, 173, 177-85. Although the IOI Support applied to the recipients' overall infusion business and all infusible drugs, Janssen's purpose in providing it was to influence doctors to prescribe and infuse Remicade and Simponi ARIA to their patients, including Medicare beneficiaries. *See id.* at ¶¶186-88.

By providing this remuneration to induce prescriptions of Remicade and Simponi ARIA to patients, including Medicare beneficiaries, conduct Plaintiff alleges Janssen knew was unlawful, Janssen violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b. The claims for reimbursement for Remicade and Simponi ARIA and the related infusion services that the doctors submitted to Medicare on or after October 28, 2010, after receiving the alleged illegal remuneration/kickbacks, constitute false claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729. By causing these false claims to be submitted to Medicare, Janssen violated the FCA.

## II.  PROCEDURAL BACKGROUND

### A.  In Preparation For Janssen's Deposition, Plaintiff Complied With Fed. R. Civ. P. 30(b)(6)'s Notice And Meet And Confer Requirements

On May 6, 2024, Plaintiff served Janssen a notice for its deposition setting forth, in accordance with Rule 30(b)(6), a scrupulously detailed description of 17 specific topics about

which Plaintiff plans to question Janssen. For certain topics, Plaintiff identified several subtopics to fully apprise Janssen of the particular information Plaintiff will be seeking.

On May 24, the parties conferred regarding these matters for examination. During the meeting, Plaintiff's advised that, because of the long period Janssen engaged in the alleged scheme and the large number of different IOI Support programs Janssen furnished to the select IOI accounts, Plaintiff is willing to consider other approaches to obtaining the information she is seeking, including addressing many of the topics and subtopics through a deposition by written question process, requests for admission[2], and/or stipulations. Plaintiff subsequently proposed that the parties address several topics through deposition by written questions and asked Janssen to schedule the oral deposition for the remaining topics.

A few weeks later, Janssen requested a second meet and confer concerning the matters for examination. On June 20, Plaintiff again conferred with Janssen, answering all questions concerning the topics. Plaintiff again advised that, because of the long period Janssen engaged in the alleged scheme and large number of different programs at issue, Plaintiff would be agreeable to addressing many of the topics through a deposition by written question process, requests for admission, and/or stipulations. At Janssen's request, following the second meeting, Plaintiff reevaluated topics 13, 14 and 17 with an eye toward making them even more specific and provided Janssen revised versions of the three topics. *See* Exhibit 3. Plaintiff also again requested that Janssen schedule the oral portion of its deposition. *See* Exhibit 3.

On June 26, Janssen advised it would accept Plaintiff's offer and would address topics 1(a), 1(b), 1(c), 1(d), 1(f), 1(g), 1(h), 1(k), 2(a), 2(d), 2(e) and 16 through a written deposition

---

[2]  During the Court's original scheduling conference, it disallowed the parties from serving requests for admission. *See* Tr. of Dec. 14, 2021 Sched. Conf. (ECF 90) at 6:24-7:10

process. *See* Exhibit 3. Janssen also reported that it did not believe topics 13, 14, and 17 "have been meaningfully narrowed, … [h]owever, subject to our forthcoming objections and responses to Relator's May 6, 2024 30(b)(6) notice, we will designate a witness on [topics 13, 14 and 17]." *See* Exhibit 3.

On June 27, Plaintiff, yet again, asked Janssen to schedule the oral portion of the deposition. *See* Exhibit 3. Additionally, Plaintiff inquired as to the purpose of the "forthcoming objections and responses" to the topics given how much time—51 days—had already passed since Janssen was provided the topics and that the parties had already conducted two hour-long meetings to review the topics, during which Plaintiff answered Janssen's questions and provided the explanations Janssen sought. *See* Exhibit 3. Plaintiff also questioned the purpose of the "forthcoming objections" because, beyond its acceptance of Plaintiff's proposal to address certain topics through a written question and answer process, Janssen offered no proposals concerning changes to any topics or alternative approaches to providing the information Plaintiff is seeking. And so, Plaintiff again advised "[s]hould [Janssen] require other clarifications, wish to propose the narrowing of a topic/subtopic, or wish to propose an alternative approach to providing the information sought in a topic/subtopic, we will consider it." *See* Exhibit 3.

Thereafter, on July 2, Janssen advised that it was working on securing deposition dates for two designees and "we are hoping for the weeks of August 12 or 19." *See* Exhibit 3. Then, on July 15, Janssen again wrote, stating it is "still trying to nail down potential dates [in the weeks of August 12 or August 19]." *See* Exhibit 3.

On July 22—77 days after it was provided the topics and 32 days after the meet and confer process had been completed—Janssen served highly broad and vague objections that lacked merit, while at the same time stating that it would designate representatives to answer

questions related to each topic, subject to the objections. On July 25, Plaintiff advised Janssen that she will examine Janssen's designees on all topics as they are stated and again asked Janssen to schedule the deposition. *See* Exhibit 3.

On July 26, Janssen finally provided specific dates when the two employees it designated to provide deposition testimony on its behalf were available to be deposed – August 22 and 28. *See* Exhibit 3. However, a few days later, on July 31, Janssen said that it was delaying the deposition and will be moving for a protective order to resolve disagreements on "what a witness could reasonably testify about." *See* Exhibit 3.

The following day, Plaintiff requested Janssen to "set forth for us the specific relief you are going to seek from the Court and the legal support for such requests so that we can consider any asserted issues and determine whether they can be resolved without further delaying the deposition." *See* Exhibit 3. Apparently more interested in continuing to delay its deposition than resolving any purported issues concerning Plaintiff's topics, on August 2, Janssen rejected Plaintiff's request for it to identify the relief it planned to seek from the Court and the support for such relief. *See* Exhibit 3. Shortly thereafter, Janssen filed this motion.

**B.    Janssen Did Not Confer With Plaintiff Regarding The Issues Raised In This Motion For Protective Order**

Contrary to the certification to the Court appended to Janssen's motion, Janssen's counsel did not comply with Local Rule 37.1(a)'s requirement that, "[b]efore filing any discovery motion, including any motion … for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference." *See also* Fed. R. Civ. P. 30(c)(1) (requiring that a motion for protective order include a certification that "the

movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action").

### III.  LEGAL STANDARD

Rule 30(b)(6) requires a corporation to provide a designee to testify "about information known or reasonably available to the organization." The designee presents the corporation's positions, not his or her personal opinions. *See Marti v. Schreiber/Cohen, LLC*, Civ. No. 18-40164-TSH, 2020 WL 3412748, at *1 (D. Mass. Mar. 17, 2020) (citing *United States v. Massachusetts Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995)). "[T]he designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions." *Marti,* 2020 WL 3412748, at *1 (citing *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 37 (D. Mass. 2001)); *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) (citing *Lapenna v. Upjohn Co*., 110 F.R.D. 15, 20 (E.D. Pa. 1986)).

"[A] defendant has a duty to 'make a conscientious good-faith effort to prepare its [Rule 30(b)(6)] designee(s) in order that they can answer fully, completely, and unevasively.'" *Goguen v. Textron*, Civ. No. 02-40245-FDS, 2006 WL 8462418 at *4 (D. Mass. Mar. 8, 2006) (Saylor, C.J.) (quoting *Mitsui & Co. (U.S.A.) v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981) and *Briddell v. Saint Gobain Abrasives, Inc*., 233 F.R.D. 57, 60 (D. Mass. 2005)); *In re General Elec. Co.*, Civ. No. 22-91125-IT, 2022 WL 16720425, at *11 (D. Mass. Nov. 4, 2022) (citing *Briddell*, 233 F.R.D. at 60). "Although adequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.'" *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, Civ. No. 15-13488-FDS, 2017 WL 8236153, at *2 (D. Mass. Oct. 13, 2017) (quoting *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 540 (D. Nev. 2008)

(quoting *Taylor*, 166 F.R.D. at 362)); *Calzaturficio*, 201 F.R.D. at 37 (quoting *Taylor*, 166 F.R.D. at 362).

A party seeking a protective order Fed. R. Civ. P. 26(c)(1) bears the burden of demonstrating that there is good cause for the requested order. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7-8 (1st Cir. 1986) (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (the burden is on the movant to make specific demonstration of necessity for protective order)). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Id.*

## IV.  ARGUMENT

In the Rule 30(b)(6) notice for Janssen's deposition, Plaintiff set forth with substantial particularity 17 topics as the matters for examination. To provide specific explanations of the areas about which Plaintiff plans to ask questions and seek information, Plaintiff included several subtopics for topics 1, 2 and 3. On August 2, Janssen provided written answers to topics 1(a)-1(d), 1(f)-1(h), 1(k), 2(a), 2(d)-2(e) and 16. Accordingly, there are no pending issues before the Court concerning those topics. Additionally, Janssen did not mention or request any relief in its motion concerning subtopics 2(f)-2(i) or topics 3, 6-10, 12 and 15.

However, for several other topics—1(e), 1(i), 1(j), 1(l)-1(r), 2(b), 2(c), 2(j)-2(l), 4-5, 11, 13-14, 17—Janssen asks the Court to protect it from having to answer (a) questions where the responsive information might include information that Janssen considers to be privileged, or (b) questions concerning the various IOI Support programs at issue. And, for the limited questions Janssen would be required to answer concerning these topics, it asks the Court that it be allowed to merely provide "general" answers to the questions. More specifically, Janssen requests that the Court impose the following rules for Plaintiff's deposition of the company:

(A) Plaintiff cannot seek information that may be protected by the attorney-client privilege. That is, Janssen is excused from having to answer any scienter-related questions.

(B) Plaintiff cannot seek information about individual IOI Support programs. That is, Janssen is only obligated to answer questions concerning the entire collection of programs it provided.

(C) Plaintiff is not entitled to full, complete, and unevasive answers to those questions she is permitted to ask. That is, Janssen is allowed to provide "general" answers and information.

Because Janssen has not demonstrated there is good cause for these prejudicial limitations that would vitiate the deposition and truth-seeking process, the motion should be denied.

## A.   To Reduce The Information Sought, Plaintiff Withdraws Three Topics Janssen Claims Would Require An Extreme Level Of Effort To Be Able To Answer Questions About

Although Plaintiff disagrees with Janssen's conclusory and exaggerated contentions concerning topics 1(e), 2(b) and 11, she hereby withdraws them. Had Janssen met and conferred with Plaintiff concerning this motion, Plaintiff would have offered to withdraw these topics in an effort to avoid Janssen further delaying its deposition and burdening the Court with a motion.

Plaintiff submits as Exhibit 1 a table summarizing the current status of each topic from her Rule 30(b)(6) notice.

## B.   Janssen Has Not Demonstrated That There Is Good Cause To Protect It From Having To Answer Questions Related To Topics That Might Involve Information That Janssen May Consider To Be Privileged

To prove that Janssen violated the AKS, Plaintiff will have to show that it acted "willfully" in providing the alleged illegal remuneration to IOI customers. *See* 42 U.S.C. § 1320a-7b(b)(2). Acting willfully means "do[ing] something purposely, with the intent to violate the law ... do[ing] something purposely that law forbids." *See United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 33 (1st Cir. 1989).

Janssen's knowledge of the illegality of providing the IOI Support services and programs is one of the main factual issues in the case and, correspondingly, has been an area of significant

focus during discovery. At Janssen's deposition, Plaintiff plans to examine the company regarding, among other scienter-related issues, its knowledge of the relevant laws (topic 4), the actions it took before and while engaging in the alleged AKS violations and Medicare fraud to determine whether providing the IOI Support to physician practices violated the law (topics 1(p)-1(q) and 2(j)-2(k)), and whether it knew that the conduct violated the law (topic 1(r) and 2(l)).

Janssen has not presented any facts, much less demonstrated, that there is good cause for barring Plaintiff from asking questions concerning these or other scienter-related topics merely because Janssen may have information that is responsive to such questions that the company may believe is privileged and may withhold under a claim of privilege. Discovery in this case strongly indicates that Janssen received analyses and information concerning whether providing the IOI Support to select IOI customers complied with the law and its internal policies from non-lawyers in addition to lawyers. Consequently, the topics relevant to the willfulness element encompass information that is not privileged, such as advice, evaluations, or information Janssen received from employees who were not acting in the capacity of corporate counsel, including, for instance, compliance and regulatory personnel or other employees who may have been involved in evaluating, monitoring, or advising the company on the legality or illegality of providing the IOI Support to selected IOI customers. The requested protection would prevent Plaintiff from obtaining highly relevant discovery of information concerning these topics that is not privileged.

Additionally, Plaintiff is entitled to obtain discovery regarding how Janssen evaluated the legality of providing the IOI Support. Plaintiff is similarly entitled to know how Janssen reached its understanding of the law and its decision to provide the alleged illegal remuneration – was its understanding obtained from or influenced by its attorneys or was it based on information and advice from non-attorneys. While Janssen may assert the privilege to avoid disclosure of any

11

protected information and advice received from its attorneys, it would be required to disclose any information and advice received from non-attorneys.

It bears emphasis that Plaintiff does not contend that Janssen is required to disclose information responsive to any deposition questions that is privileged. In accordance with the normal deposition process and Fed. R. Civ. P. 30(c)(2), if, at the time of the deposition, Janssen's counsel believes in good faith that certain information responsive to question related to any topic is privileged and the company does not want the information to be disclosed, Janssen's counsel is able to lodge an objection and instruct the designee not to disclose the information. Should Plaintiff disagree with the objection, she can later raise it with the Court. This normal deposition process, which has worked fine for all other depositions in the case, affords Janssen all the protection it needs to prevent disclosure of any privileged information.[3]

Janssen does not cite any case in which a court has issued a blanket order blocking a plaintiff or the Government from asking deposition questions concerning scienter-related issues.

Contrary to the insinuations in Janssen's brief, this Court has not precluded Plaintiff from seeking discovery concerning scienter-related issues simply because the information responsive to the discovery requests and inquiries may include privileged advice or communications.[4] In fact, the Court has done just the opposite. The Court has ruled on multiple occasions that Plaintiff is entitled to seek discovery concerning Janssen's review of the legality of the IOI

---

[3]  As Plaintiff has previously reported to the Court, even though Janssen states that it is not going to rely upon any legal advice in this action, Janssen has selectively disclosed certain legal advice it received. *See* Pl.'s Jan. 24, 2024 Mot. to Compel (ECF 426); Pl.'s Jan. 28 2022 Mot. to Compel (ECF 263).

[4]  In the two decisions where Chief Judge Saylor decided not to impose an implied waiver as a result of Janssen's selective disclosures of information that Plaintiff contends is legal advice from Janssen's attorneys, *see* Feb. 29, 2024 Order (ECF 435); Apr. 7, 2022 Order (ECF 303), the Court imposed no restrictions on Plaintiff's ability to seek discovery of information concerning Janssen's knowledge of the law and the illegality of the alleged conduct at issue.

Support strategy and that any unprivileged documents and information must be disclosed. *See, e.g.*, Mar. 9, 2023 Order (ECF 375) at 9-14; Dec. 20, 2021 Order (ECF 282) at 16 (*aff'd in relevant part* Sept. 9, 2022 Order (ECF 320)); Feb. 17, 2022 Order (ECF 283) at 5-10 (*aff'd in relevant part* Sept. 9, 2022 Order (ECF 320)); Dec. 20, 2021 Order (ECF 237) (*aff'd in relevant part* Dec. 20, 2021 Order (ECF 282) at 16 and Sept. 9, 2022 Order (ECF 320)). What's more the Court previously ruled that Plaintiff could ask Janssen deposition questions concerning how it evaluated the legality of the strategy to provide the IOI Support services and programs as well as questions concerning the actions Janssen undertook to determine the legality. *See* Dec. 1, 2021 Order (ECF 221).[5] In conjunction with that ruling, the Court did make clear that Janssen was not required to reveal any privileged information pending further order. *See id.*

Janssen has not demonstrated that there is good cause for a protective order that would prejudicially block Plaintiff from asking questions or seeking information concerning topics 1(p)-1(r), 2(j)-2(l) and 4, or any other topic, that Janssen might consider to be a privileged.

**C.   Janssen Has Not Demonstrated That There Is Good Cause To Protect It From Having To Answer Questions About Each Of The Different IOI Support Programs It Provided To The Targeted Physician Practices**

The illegal remuneration at issue are consultative services and support concerning a variety of practice management and infusion suite business issues that Janssen provided free of charge to select IOI accounts. Janssen referred to the consultative and educational sessions through which it provided many of the business services as "programs." Over the long period that Janssen provided the IOI Support services and programs, Janssen added new programs, retired certain programs, updated programs, and changed the names of programs. Thus, Janssen's

---

[5]   The deposition of Janssen that was the subject of the earlier motion for protective order (ECF 184) was ultimately postponed and did not occur. The matters for examination for Janssen's deposition have since been revised and updated.

provision of a wide range of valuable programs discussed in Part I above to IOI accounts over many years are the facts and conduct at the center of this actions.

Many of the programs appear to have been developed, evaluated, and approved separately rather than all at once. In view of these facts, throughout discovery Plaintiff has sought relevant information concerning each of the various programs Janssen provided in Plaintiff's territory, all of which were also provided nationally. Understanding that the IOI Support programs lie at the heart of Plaintiff's AKS claims, the Court has issued multiple orders directing that Janssen must provide discovery concerning, among other issues, the development, evaluation of the legality, and approval of each of the IOI Support programs at issue.

Plaintiff included topic 1 and its more precise subtopics to ensure Janssen's designee(s) would be prepared to answer her highly relevant questions about each IOI Support program. Plaintiff acknowledges that because Janssen provided so many different programs the topics 1(i)-1(j) and 1(l)-1(r) seek a large amount of information. However, that Janssen provided select IOI accounts a large number of different IOI Support programs are the facts and allegations of the case. And the discovery sought is certainly proportional to the needs of the case. To be clear, Plaintiff is not seeking information that is not relevant or that is "extremely detailed." Nor is she seeking information concerning decisions ABSs made about which specific IOI Support programs were provided to particular accounts or the specific occasions or meetings during which she or other ABSs and outside consultants delivered the programs and services to select IOI customers. She is also not seeking information about each separate iteration or version of written materials Janssen used as visual aids or to present practice management and infusion business information during the programs, as Janssen feigns. Plaintiff made this clear during the two hour-long meetings with Janssen concerning the topics. As summarized in Exhibit 1, the

information Plaintiff seeks is highly relevant to the key elements of her claims. Some topics, such as 1(i), merely require a "yes" or "no" answer. Because this information is "known or reasonably available" to Janssen, Rule 30(b)(6) requires that Janssen provide testimony concerning the information.

Similarly, there is nothing "extreme" about this fundamental information Plaintiff seeks; Janssen's repeated use of the adjective is hyperbole. Tellingly, Janssen has *never* proposed any change or modification to a topic or alternative approach that would allow Janssen to provide the information sought in topics 1(i)-1(j) and 1(l)-1(r) in a less burdensome manner.

Janssen incredibly also contends that it should not have to answer questions about each of the different IOI Support programs because it provided them over a long period of time. This argument is meritless. <u>*First*</u>, Janssen exaggerates that it would have to "provide fine details from 25 years ago about dozens of programs." This is untrue. As Janssen's own answers to written deposition questions 1(a) and 1(b) show, none of the IOI Support programs at issue were provided 25 years ago, and, according to Janssen's written testimony, it began providing most of the IOI Support programs at issue after 2010. *See* Exhibit 2 at 9-12. <u>*Second*</u>, the purpose of the deposition is to discover the truth. And so, to the extent that Janssen is aware of relevant non-privileged information that originated several years ago, it is obligated to disclose it. Janssen has been aware of Plaintiff's allegations for more than four years and, under the rules of discovery, has been required to collect and provide responsive documents and information concerning the various programs. Given that this discovery phase has been taking place for more than 3½ years, by now, assuming Janssen has been complying with its discovery obligations, Janssen should have already compiled and refreshed its memory concerning the information Plaintiff seeks concerning topics 1(i)-1(j) and 1(l)-1(r). <u>*Third*</u>, the Court has already rejected similar attempts by

Janssen to evade discovery of information concerning the development and approval of the IOI

Support strategy and programs and how Janssen evaluated the legality of the strategy and

programs. For example, in deciding Janssen's earlier motion for a protective order, the Court

ruled that, with regard to information concerning the development and approval of the IOI

Support strategy and programs and how Janssen evaluated the legality of the strategy and

programs, discovery is permitted going back to January 2000. *See* Dec. 1, 2021 Order (ECF

221). In other discovery orders, the Court likewise ordered that "Defendant shall produce

documents concerning the development of the program in question, including defendant's

evaluation of the legality of the program, back to the time that the program was devised." Apr.

23, 2021 Order (ECF 120); *see also* Dec. 1, 2021 Order (ECF 221).

Janssen will be moving for summary judgment at the end of this first phase of discovery,

which is set to conclude on September 30. Accordingly, Plaintiff must be afforded the ability to

take full discovery of the various programs at issue, which includes questioning Janssen

regarding each program concerning topics 1(i)-1(j) and 1(l)-1(r), as well to topic 13. While it is

true that there are a large number of IOI Support programs at issue, to accomplish this task, the

company is free to divide the programs up among multiple corporate representatives and/or

multiple deposition sessions.

Janssen presents no evidence that the burden of prepare designees to answer questions

concerning relevant issues regarding the different programs Janssen provided to IOI accounts is

disproportionate to the needs of the case or well beyond the general obligations of a corporation

that is a party to a large complex litigation. Janssen's bare assertion that it would need to spend

"hundreds of thousands of dollars" to prepare witnesses to address the topics should not be given

any weight. Janssen presents no evidentiary to support for this vague forecast or that whatever it will actually spend preparing its designee(s) for the deposition is unjustified.[6]

Janssen has not demonstrated that there is any support, much less good cause, for its request that Plaintiff be barred from asking questions concerning issues related to each of the different IOI Support programs Janssen provided to the IOI customers.

**D.   Janssen Has Not Demonstrated That There Is Good Cause For It To Be Permitted To Merely Provide "General" Answers And Information To Deposition Questions**

It is a fundamental requirement that corporate defendants, like individuals, must answer relevant questions concerning the matters for examination "fully, completely, and unevasively." *Goguen*, 2006 WL 8462418 at *4. Were a deponent permitted to merely provide "general" answers to deposition questions, it would be free to provide incomplete or evasive answers, thereby evade and impede the discovery process.

Here, Plaintiff does not seek minute details, as Janssen's posits. Plaintiff simply seeks the level of detail that answers the questions "fully, completely, [and] unevasively," as the law requires. *See id*. Janssen makes a conclusory assertion that topics 1(i)-1(j), 1(l)-1(r), 2(c), 5, 13, 14 and 17 are framed too broadly to enable it to fully prepare a designee. Janssen's assertion lacks merit. During the two lengthy meet and confer sessions concerning the matters for examination, Janssen's counsel did not communicate that it would be "impossible" to fully prepare a representative to testify concerning issues related to topics 1(i)-1(j), 1(l)-1(r), 2(c), 5, 13, 14, and 17. As shown in Exhibit 1, each topic is described with "reasonable particularity," in

---

[6] It bears mention that Janssen has spared no expense when it comes to preparing witnesses for their depositions. Janssen has decided to have its sizeable legal team represent each current and former employee who has been deposed. As each witness testified, Janssen's legal team spent numerous hours over multiple days preparing them for their deposition in addition to representing them during their deposition.

accordance with Rule 30(b)(6), to seek discovery from Janssen that is relevant to the claims of this case. The fact that Janssen provided a large number of different IOI Support programs to select IOI customers in Central Pennsylvania and other territories across the country, combined with the fact that Janssen provided the IOI Support programs over a long of period time, combined with the fact that Janssen devoted substantial resources and manpower to developing and executing this strategy, makes it unavoidable that Janssen's designee(s) must be prepared to provide a significant amount of information. However, that Plaintiff is seeking a significant amount of information, all of which is highly relevant, does not render topics 1(i)-1(j), 1(l)-1(r), 2(c), 5, 13, 14, and 17 overly broad or make it impossible to provide full, complete, and unevasive answers to questions related to these topics. That this case is comprised of a large number of facts and allegations is not a justification to merely provide "general" answers to relevant deposition questions.

Likewise, Janssen's contention that it should be allowed to merely give "general" answers to questions because certain topics cover issues that are discussed in documents that have been produced or have been the subject of questions asked during depositions of Janssen's employees also lacks merit. Plaintiff is not taking Janssen's deposition to simply present or summarize evidence that has already been provided. Nor has Janssen demonstrated, for any topic, that the company has already fully provided all information that is responsive to the topic. Even if certain information responsive to a topic might overlap with other discovery provided in the case, depositions, including depositions of corporate defendants, are not considered to be duplicative of prior written discovery. *See Marti,* 2020 WL 3412748, at *2 (citing *Doe v. Trump*, 329 F.R.D. 262, 274 (W.D. Wash. 2018)).

The cases Janssen claims support its request that it be allowed to merely provide "general" answers are all inapposite and did not involve facts or matters for examination that are similar to those at issue here. For example, Janssen's reliance on *W Holding Co. v. Chartis Ins. Co. of Puerto Rico*, 300 F.R.D. 43 (D.P.R. 2014) is misplaced. There the court struck a limitless topic that was included in a Rule 30(b)(6) notice directed to the Federal Deposit Insurance Corporation (FDIC) seeking testimony on all "policies and regulations governing the FDIC in relation to FDIC-insured financial institutions." 300 F.R.D. at 46. None of Plaintiff's topics seek a limitless quantum of information.

Janssen's citation to *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001) is also off the mark. In *Ameristar*, the First Circuit affirmed the district court's decision to quash deposition subpoenas issued to three employees of a non-party corporate witness long after the non-party corporate witness had been deposed and after summary judgment had been entered against the party seeking the depositions. The First Circuit found that the party that sought to depose the three employees of the non-party corporate witness had failed to show that, if it was permitted to take the three employees' depositions, it would obtain new, relevant information that was different from information their employer provided in its earlier Rule 30(b)(6) deposition. *See Ameristar* at 191-93. *Ameristar* is clearly inapposite and does not lend any support to Janssen's request to be able to merely provide "general" answers during its deposition.

Because Janssen has not demonstrated that there is good cause to relieve it from its obligation to provide full, complete, and unevasive answers to Plaintiff's deposition questions, Janssen request for this prejudicial relief should be denied.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Janssen's motion in its entirety.


Dated:  August 16, 2024                              Respectfully submitted,

                                                     /s/ Casey M. Preston
                                                     Casey M. Preston (admitted pro hac vice)
                                                     Gary L. Azorsky (admitted pro hac vice)
                                                     Jeanne A. Markey (admitted pro hac vice)
                                                     Adnan Toric (admitted pro hac vice)
                                                     COHEN MILSTEIN SELLERS & TOLL PLLC
                                                     100-120 N. 18th Street, Suite 1820
                                                     Philadelphia, PA 19103
                                                     (267) 479-5700
                                                     cpreston@cohenmilstein.com
                                                     gazorsky@cohenmilstein.com
                                                     jmarkey@cohenmilstein.com
                                                     atoric@cohenmilstein.com

                                                     Theodore J. Leopold (admitted pro hac vice)
                                                     Leslie M. Kroeger (admitted pro hac vice)
                                                     Diana L. Martin (admitted pro hac vice)
                                                     Poorad Razavi (admitted pro hac vice)
                                                     COHEN MILSTEIN SELLERS & TOLL PLLC
                                                     11780 U.S. Highway One, Suite N500
                                                     Palm Beach Gardens, FL 33408
                                                     (561) 515-1400
                                                     tleopold@cohenmilstein.com
                                                     lkroeger@cohenmilstein.com
                                                     dmartin@cohenmilstein.com
                                                     prazavi@cohenmilstein.com

                                                     Jonathan Shapiro (BBO No. 454220)
                                                     SHAPIRO & TEITELBAUM LLP
                                                     55 Union Street, 4th Floor
                                                     Boston, MA 02108
                                                     (617) 742-5800
                                                     jshapiro@jsmtlegal.com

                                                     **_Counsel for Plaintiff-Relator Julie Long_**

**Certificate of Service**

I hereby certify on this 16th day of August, 2024, that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Casey M. Preston
Casey M. Preston (admitted pro hac vice)