**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* JULIE LONG, <br><br>                  *Relator,* <br><br> v. <br><br> JANSSEN BIOTECH, INC., <br><br>                  *Defendant.* | Civil Action No. 16-CV-12182-FDS |

## DEFENDANT JANSSEN BIOTECH, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF-RELATOR JULIE LONG'S DEPOSITION QUESTIONS TO BE ANSWERED IN WRITING

Pursuant to the parties' stipulation, Defendant Janssen Biotech, Inc. ("Janssen" or "Defendant") hereby submits these Objections and Responses to Plaintiff-Relator Julie Long's ("Relator's") Deposition Questions served on July 3, 2024.  Janssen is providing these Objections and Responses in place of oral deposition testimony on topics 1(a), 1(b), 1(c), 1(d), 1(f), 1(g), 1(h), 1(k), 2(a), 2(d), 2(e), and 16 of Relator's May 6, 2024 Notice of Rule 30(b)(6) Deposition.

## GENERAL OBJECTIONS

Janssen makes each of the following general objections, which it incorporates in its response to each of the Deposition Questions:

1.     Janssen objects to the Deposition Questions and corresponding Definitions to the extent they seek to impose obligations or requirements on Janssen which are greater than, or different from, those imposed by the Federal Rules of Civil Procedure and/or any other applicable law, rule, or regulation.

2.     Janssen objects to the Deposition Questions to the extent they seek documents or information that are not relevant to the subject matter of this action or any party's claims or defenses.

3.     Janssen objects to the Deposition Questions to the extent they are vague, ambiguous, or fail to state the questions with "reasonable particularity" as required by Rule 30(b)(6) of the Federal Rules of Civil Procedure.

4.     Janssen objects to the Deposition Questions to the extent they are overly broad, unduly burdensome, or not proportional to the needs of the case, and thus exceed the scope of discoverable matters under Federal Rule of Civil Procedure 26.

5.     Janssen objects to the Deposition Questions to the extent they seek documents or information not within the control of Janssen.  Janssen's responses are based on information reasonably available to it, and Janssen will respond to these Deposition Questions only on its own behalf.

6.     Janssen objects to the Deposition Questions to the extent they seek documents and information that already have been provided to Relator, are publicly available or otherwise equally available to Relator, or would be more appropriately sought from third parties to whom subpoenas or requests could be directed, or through means that are more convenient, more efficient, more practical, less burdensome, or less expensive.  Janssen specifically objects that Deposition Questions 1(a) and 1(b) seek information that is duplicative of information that was provided in response to Relator's past discovery requests.

7.     Janssen objects to the Deposition Questions to the extent they seek documents or information that would require Janssen to disclose trade secret, proprietary, or confidential information, except as provided for in the Protective Order agreed to by the parties.

2

8.      Janssen objects to the Deposition Questions to the extent they incorporate incorrect assertions of fact or law.  Janssen's responses are not a concession that any incorporated assertions or conclusions of fact or law are correct.

9.      Janssen objects to the Deposition Questions to the extent they seek documents or information outside of the scope authorized by the Court in the Phased Discovery Order, including to the extent they seek discovery unrelated to activities conducted by Relator during her employment as an Area Business Specialist ("ABS") at Janssen to the physician practices specifically alleged in the Second Amended Complaint ("SAC").  *See* SAC ¶¶ 175–76, 191–93, ECF No. 55.  While Janssen agrees that documents and information beyond the scope authorized by the Court in the Phased Discovery Order may fall within the scope of subsequent discovery, requests for such documents and information are outside of the scope of the Court's guidance for the discovery that was to be the subject of Relator's immediate requests.  As such, Janssen objects to each Deposition Question to the extent that it seeks documents or information beyond the scope of the Phased Discovery Order.

10.     Janssen objects to the Deposition Questions to the extent they seek information from before October 28, 2006 as outside of the scope of this phase of discovery under the Phased Discovery Order.

11.     Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Outside Consultants," "Phase 1 Accounts," "Programs," "Services," "You," and "Your" as vague, ambiguous, overbroad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and beyond the scope authorized in the Phased Discovery Order.  For avoidance of doubt, Janssen specifically objects that the definitions of "IOI Customers," "IOI Support," "Outside Consultants," "Programs," and "Services" mischaracterize Janssen's activities and do

not accurately reflect the facts concerning what ABS or any supplemental third-party contractors for Janssen actually did.  Nothing in these responses may be construed as any admission that Janssen adopts, agrees with, or admits to Relator's characterization of the facts in Relator's Definitions.

12.     Janssen objects to the Definitions of "You" and "Your" to the extent they seek to impose obligations on entities that are distinct from Janssen, including, but not limited to, Janssen's parents, U.S. and non-U.S. subsidiaries, divisions, affiliates, predecessors, successors, agents, partners, limited partners, and independent contractors.  By defining "You" and "Your" to include entities that are distinct from Janssen and not parties to this action, Relator improperly conflates Janssen with distinct entities that are third parties.  Therefore, Janssen construes "You" and "Your" to refer to Janssen and its employees.  Janssen will respond to the Deposition Questions based on a reasonable inquiry of individuals expected to possess the requested information.

13.     Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent they imply that Area Business Specialists or trained third-party contractors were providing consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational information beyond the information contained in the educational presentations approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

14.     Janssen objects to the Deposition Questions to the extent they seek documents or information subject to and protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or protection.  As previously stated, Janssen has not asserted and does not intend to assert the advice of counsel defense.  *See* Order on Relator's Second Mot. to Compel Disclosure of Legal Ops., ECF No. 435.  For avoidance of doubt, by responding to these Deposition Questions, Janssen is not disclosing or intending to imply anything about what legal advice may or may not have been provided, it is not asserting the advice of counsel defense, and it has not waived, and has no intention of waiving, any applicable privilege.

15.     Janssen's responses are made without waiving or intending to waive in any way (a) any objections as to competency, relevancy, materiality, privilege and/or admissibility in any subsequent proceeding in this or any other action; (b) the right to object on any ground to the use of these responses, or the subject matter thereof, in any subsequent proceeding in this or any other action; (c) the right to object to a demand for further responses to these or any other discovery involving or related to the subject matter of these topics; and (d) the right to object on any ground to these or any other or future discovery requests.

**SPECIFIC OBJECTIONS AND RESPONSES**

DEPOSITION QUESTION NO. 1

**DEPOSITION QUESTION 1(a):** For each Program (or its substantive equivalent), provide the following information: When did You start providing the Program to IOI Customers?

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**DEPOSITION QUESTION 1(b):** For each Program (or its substantive equivalent), provide the following information: When did You stop providing the Program to IOI Customers?

*Relevant time period*: From the creation of the Program to until the present.

5

**RESPONSE TO DEPOSITION QUESTIONS 1(a) and 1(b):**

In addition to the foregoing General Objections, Janssen objects to these Deposition

Questions as outside the scope of this phase of discovery under the Phased Discovery Order to

the extent they seek information from before October 28, 2006.  Janssen further objects to these

Deposition Questions as vague and ambiguous in their use of the terms "substantive equivalent,"

"start providing," and "stop providing."  Janssen also objects to these Deposition Questions as

cumulative and duplicative of prior requests that Janssen has responded to in this case.  Janssen

previously provided the dates that it started and stopped providing the Educational Presentations

in its October 7, 2022 discovery letter and October 7, 2022 response to Relator's Interrogatory

No. 18.  Janssen also objects to these Deposition Questions as overly broad, unduly burdensome,

and not proportional to the needs of the case, as they seek detailed information about Janssen's

activities related to more than 36 unique Educational Presentations over a 20-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to

the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent

they imply that Area Business Specialists or trained third-party contractors were providing

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to

the extent the Definitions imply that Janssen provided educational presentations beyond the

information contained in the educational resources approved by Janssen's Promotional Review

Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of

care, or other places in which infusions occurred ("Educational Presentations").  Janssen

construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker

programs in which an ABS or third-party contractor presented one or more of the PRC-approved

resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that, based on a reasonable and diligent inquiry, Janssen does not possess or maintain a centralized database or resource that provides information about the dates on which Janssen started providing and stopped providing the 36 Educational Presentations to any customer, let alone the dates on which Janssen started and stopped providing the Educational Presentations to IOI Customers specifically.[1]   Nevertheless, as Janssen has stated in previous interrogatory responses, Janssen is aware of various sources that contain information relevant to these Deposition Questions.

Janssen's Promotional Review Committee approval records are one source of information about the dates that Educational Presentations were available for use with Janssen's customers. As Janssen has previously stated, Educational Presentations went through a review and approval process by Janssen's PRC before they could be provided to customers in any site of care.  While the PRC records do not identify the exact dates on which Educational Presentations were first used or stopped being used with particular customers, they nonetheless provide an approximate timeline for when the presentations were available for use.  Janssen refers Relator to Janssen's July 19, 2024 response to Relator's Interrogatory No. 3, which identifies PRC records produced by Janssen that reveal available information on the approval dates of each presentation.[2]

---

[1] As Relator knows, Janssen provided Educational Presentations to all sites of care, including physician offices, hospitals, infusion therapy providers, and alternative sites of care.

[2] Records concerning the PRC's review of Educational Presentations were produced to Relator between October 26, 2021 and March 20, 2023 at JANSSENBIO-017-00010193 to JANSSENBIO-017-00065716; JANSSENBIO-020-00000335 to JANSSENBIO-020-00004284; JANSSENBIO-021-00002173 to JANSSENBIO-021-00003972; JANSSENBIO-026-00000001 to JANSSENBIO-026-00010277; JANSSENBIO-027-00000001 to JANSSENBIO-027-00003873; JANSSENBIO-028-00000001 to JANSSENBIO-028-00008478; JANSSENBIO-029-00000001 to JANSSENBIO-029-00000706; JANSSENBIO-030-00000001 to JANSSENBIO-030-00011151; JANSSENBIO-031-00000001 to JANSSENBIO-031-00016297; JANSSENBIO-032-00000001 to JANSSENBIO-032-00002274; and JANSSENBIO-049-00000001 to JANSSENBIO-049-00022408.

Another source of information on the time period the Educational Presentations were in use are the FDA 2253 forms that Janssen submitted to the Food and Drug Administration.  The 2253 forms indicated when Janssen made an Educational Presentation available for use with customers.  Janssen produced FDA 2253 forms to Relator on April 15, 2024 at JANSSENBIO-066-00000001 to JANSSENBIO-066-00020851.

Further information about the time frame during which Janssen provided the Educational Presentations is available in other sources, including Janssen's Customer Relationship Management ("CRM") databases, which memorialized Janssen employees' interactions with physician accounts; RBM Rollup Reports, which tracked ABSs' provision of certain Educational Presentations in a given month; and gXRS, DOME, and Totality, which tracked ABS expense data and records of meals provided in connection with speaker programs.  Janssen's May 13, 2024 response to Relator's Interrogatory No. 23 sets forth data and documents that Janssen has produced from these sources.

Even though the burden of identifying the requested information is substantially the same for Janssen as it is for Relator, Janssen compiled approximate start dates and end dates for Educational Presentations identified by Relator in its October 7, 2022 discovery letter and its October 7, 2022 supplemental response to Relator's Interrogatory No. 18.

Relator now seeks virtually the same information that Janssen has previously compiled, except Relator now seeks information about "Exceptions and Appeals" and "Akin Gump teleconferences, including but not limited to: Medicare Physician Payment Update; Healthcare Reform Update; and Medicare Shared Savings Program and Accountable Care Organization Proposed Rule Update."  Although Janssen has already provided responsive information in its October 7, 2022 discovery letter and response to Relator's Interrogatory No. 18, for the sake of

completeness, Janssen has prepared a table listing the approximate start date, approximate end date, and Bates number of each Educational Presentation identified by Relator.[3]  The table is based on documents from custodial files, PRC approval forms, and documents submitted to the FDA regarding approval of Janssen Educational Presentations.

The table below reflects Janssen's best estimates of the dates that Janssen started and stopped using the Educational Presentations based on a reasonable search of its records.  It is not possible to say with certainty the precise start and end date for each Educational Presentation identified by Relator.  Furthermore, the end date indicated for Educational Presentations marked with a * is the date the Educational Presentation was last approved by the PRC.  As Janssen's PRC Standard Operating Procedures indicate, "approved promotional materials require re-review every 12 months from the PRC approval date prior to continued use, unless otherwise communicated by the PRC."  JANSSENBIO-018-00001266 at 1270; *see also* JANSSENBIO-018-00001292 at 1294; JANSSENBIO-018-00001305 at 1308.  Accordingly, while the precise end date of these Educational Presentations is not attainable from PRC records, Janssen's best estimate is that the expiration date of these Educational Presentations most likely occurred within 12 months of the last PRC approval date.

| No. | Educational Presentation | Bates Number | Time Frame |
|-----|--------------------------|--------------|------------|
| 1 | Becoming an Alternative Site of Care for Therapy with Remicade in Your Community | JANSSENBIO-066-00001519 | November 2006 – April 2011 |
| 2 | Billing and Coding for Infusions | JANSSENBIO-051-00003096 | August 2015 – October 2018* |
| 3 | Checkpoints for Infusion Center Optimization | JANSSENBIO-066-00007834 | February 2009 – July 2015 |
| 4 | Considerations for Proactive Practice Management (a/k/a Current Considerations for | JANSSENBIO-066-00004434 | February 2008 – November 2016* |

---

[3] Janssen provides the start and end dates for the Educational Presentations specifically named in Relator's definition of "Programs."

| | | | |
|---|---|---|---|
| | Proactive Practice Management; Proactive Practice Management) | | |
| 5 | Considerations for Standard Operating Procedures in the Infusion Suite | JANSSENBIO-003-00008297 | September 2015 – November 2016* |
| 6 | Considerations for Working With a Specialty Pharmacy (a/k/a Specialty Pharmacy Considerations) | JANSSENBIO-066-00004337 | September 2004 – January 2012 |
| 7 | Electronic Health Records and Meaningful Use (Part 1 and/or Part 2) | JANSSENBIO-017-00003816 JANSSENBIO-008-00007048 | April 2014 – June 2016* |
| 8 | Emerging Trends in Health Care | JANSSENBIO-002-00003168 | November 2008 – September 2018 |
| 9 | Enhancing Patient Care and Access | JANSSENBIO-066-00002012 | October 2006 – January 2011 |
| 10 | Exceptions and Appeals | JANSSENBIO-064-00007867 | June 2011 – September 2015 |
| 11 | Hot Buttons | JANSSENBIO-003-00008471 | June 2015 – June 2017 |
| 12 | ICD-10 | XCE-CID 0011484 | June 2015 – December 2017* |
| 13 | In-Office Infusion Drug Procurement Models | JANSSENBIO-051-00003047 | July 2016 – June 2017* |
| 14 | Infusion Optimization Modeler (a/k/a IOM) | JANSSENBIO-066-00006523 | January 2004 – February 2014[4] |
| 15 | Infusion Referrals: Improving the Continuity of Care (a/k/a Coordinating the Continuity of Care with Infusion Referrals; Quality Improvements in Coordinating the Continuity of Care With Infusion Referrals) | JANSSENBIO-002-00002205 | April 2014 – July 2020* |
| 16 | Infusion Services Review (a/k/a iBiz; Infusion Business Review)[5] | JANSSENBIO-066-00015418 | January 2013 – June 2019 |
| 17 | Infusion Suite Scheduling and Staffing | JANSSENBIO-049-00015292 | October 2015 – June 2018 |
| 18 | Infusion Therapy Services Provided in Converted ASC Space (a/k/a Infusion Services and Ambulatory Surgical Centers (ASCs) – Planning | JANSSENBIO-012-00008608 | July 2003 – April 2015 |

---

[4] IOM was later incorporated into iBiz.

[5] Janssen understands that "Infusion Services Review" was in use from January 2013 to April 2014.  In April 2014, Janssen combined the IOM and Infusion Services Review into a new resource called iBiz, in use from April 2014 to June 2019.

| | Considerations; ASC Space Reclassification for Infusion Therapy) | | |
|---|---|---|---|
| 19 | Inventory and Supply Management | JANSSENBIO-047-00006587 | July 2016 – July 2017* |
| 20 | IV Therapy: An Important Option for Your Patients (a/k/a Why IV) | JANSSENBIO-003-00009893 | December 2012 – December 2018* |
| 21 | Managing Biologics in the Physician Office (a/k/a MBPO) | JANSSENBIO-066-00003455 | May 2007 – May 2012* |
| 22 | Medicare Audits | JANSSENBIO-011-00003010 | November 2009 – April 2011 |
| 23 | Medicare Quality Payment Program: A Focus on MIPS | JANSSENBIO-048-00001905 | March 2017 – May 2021* |
| 24 | Patient Experience in the Infusion Suite | JANSSENBIO-058-00003044 | October 2016 – July 2020* |
| 25 | Payer Relationship Management | JANSSENBIO-047-00006584 | July 2015 – June 2017* |
| 26 | Practice Compliance for Remicade | JANSSENBIO-066-00002316 | February 2004 – Nov. 2011* |
| 27 | Private Payer Contracting Considerations – Part 1 and Part 2 (a/k/a Private Payer Contracting Considerations for Therapy with Remicade) | JANSSENBIO-066-00001174 XCE-CID 0003776 | April 2002 – October 2012* |
| 28 | Quality of Care in the Infusion Suite | JANSSENBIO-047-00006585 | August 2015 – July 2017* |
| 29 | Raising the Infusion Suite Experience (a/k/a RISE) | JANSSENBIO-005-00000323 | February 2013 – June 2020* |
| 30 | Remicade Account Review (a/k/a Physician Office Account Review for Remicade) | JANSSENBIO-066-00000600 | May 2004 – June 2007 |
| 31 | Setting Up In-Office Infusions of Remicade | JANSSENBIO-066-00002209 | April 2003 – August 2010 |
| 32 | Specialty Drug Market Dynamics | JANSSENBIO-058-00001346 | August 2016 – June 2020* |
| 33 | Successful Implementation of a New Infusion Suite | JANSSENBIO-066-00013331 | April 2010 – August 2012* |
| 34 | Successful Implementation of a New Infusion Suite for Gastroenterology Practices | JANSSENBIO-066-00009638 | October 2010 – May 2012* |
| 35 | Successful Infusion Site Management for Gastroenterology (a/k/a Successful Infusion Suite Management for Gastroenterology) | JANSSENBIO-066-00013789 | January 2011 – May 2012* |

| 36 | Akin Gump teleconferences, including, but not limited to: | | November 2007 – December 2020[6] |
| | • Medicare Physician Payment Update | JANSSENBIO-066-00004239 | November 2007 – December 2020 |
| | • Healthcare Reform Update | JANSSENBIO-012-00001861 | November 2007 – December 2020 |
| | • Medicare Shared Savings Program and Accountable Care Organization Proposed Rule Update | JANSSENBIO-053-00008163 | November 2007 – December 2020 |

**DEPOSITION QUESTION 1(c):** For each Program (or its substantive equivalent), provide the following information: Was the Program unbranded or branded?  If the Program was unbranded for a portion of the relevant period, state the dates when the Program was unbranded.

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 1(c):**

In addition to the foregoing General Objections, Janssen objects to this Deposition

Question as outside the scope of this phase of discovery under the Phased Discovery Order to the

extent it seeks information from before October 28, 2006.  Janssen further objects to this

Deposition Question as vague and ambiguous in its use of the term "substantive equivalent."

Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not

proportional to the needs of the case, as it seeks detailed information about Janssen's activities

related to more than 36 unique Educational Presentations over a 15-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to

the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent

they imply that Area Business Specialists or trained third-party contractors were providing

---

[6] Janssen is aware that a variety of Akin Gump teleconferences were provided to customers between approximately November 2007 and December 2020.  This approximate timeline is based upon Janssen's review of custodial files as well as contracts with Akin Gump, which Janssen produced to Relator on March 23, 2023 at JANSSENBIO-050-00000001 to JANSSENBIO-050-00000188.

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Janssen further objects that the Deposition Question does not define the terms "branded" or "unbranded," and Relator refused to provide a definition when asked to do so during the meet and confer process.  Therefore, Janssen responds to this Deposition Question based on its understanding of the terms "branded" and "unbranded," noting that all branded and unbranded Educational Presentations were related to Remicade and/or Simponi ARIA and approved by the PRC in accordance with the company's policies.

Subject to and without waiving the foregoing objections, Janssen responds that the following table indicates whether each Educational Presentation was branded or unbranded:

| No. | Educational Presentation | Bates Number | Branded or Unbranded |
|-----|--------------------------|--------------|----------------------|
| 1 | Becoming an Alternative Site of Care for Therapy with Remicade in Your Community | JANSSENBIO-066-00001519 | Branded |
| 2 | Billing and Coding for Infusions | JANSSENBIO-051-00003096 | Unbranded |
| 3 | Checkpoints for Infusion Center Optimization | JANSSENBIO-066-00007834 | Unbranded |
| 4 | Considerations for Proactive Practice Management (a/k/a Current Considerations for Proactive Practice Management; Proactive Practice Management) | JANSSENBIO-066-00004434 | Unbranded |

| 5 | Considerations for Standard Operating Procedures in the Infusion Suite | JANSSENBIO-003-00008297 | Unbranded |
|---|---|---|---|
| 6 | Considerations for Working With a Specialty Pharmacy (a/k/a Specialty Pharmacy Considerations) | JANSSENBIO-066-00004337 | Branded |
| 7 | Electronic Health Records and Meaningful Use (Part 1 and/or Part 2) | JANSSENBIO-017-00003816 JANSSENBIO-008-00007048 | Unbranded |
| 8 | Emerging Trends in Health Care | JANSSENBIO-002-00003168 | Unbranded |
| 9 | Enhancing Patient Care and Access | JANSSENBIO-066-00002012 | Branded |
| 10 | Exceptions and Appeals | JANSSENBIO-064-00007867 | Unbranded |
| 11 | Hot Buttons | JANSSENBIO-003-00008471 | Unbranded |
| 12 | ICD-10 | XCE-CID 0011484 | Unbranded |
| 13 | In-Office Infusion Drug Procurement Models | JANSSENBIO-051-00003047 | Unbranded |
| 14 | Infusion Optimization Modeler (a/k/a IOM) | JANSSENBIO-066-00006523 | Branded |
| 15 | Infusion Referrals: Improving the Continuity of Care (a/k/a Coordinating the Continuity of Care with Infusion Referrals; Quality Improvements in Coordinating the Continuity of Care With Infusion Referrals) | JANSSENBIO-002-00002205 | Unbranded |
| 16 | Infusion Services Review (a/k/a iBiz; Infusion Business Review) | JANSSENBIO-066-00015418 | Branded |
| 17 | Infusion Suite Scheduling and Staffing | JANSSENBIO-049-00015292 | Unbranded |
| 18 | Infusion Therapy Services Provided in Converted ASC Space (a/k/a Infusion Services and Ambulatory Surgical Centers (ASCs) – Planning Considerations; ASC Space Reclassification for Infusion Therapy) | JANSSENBIO-012-00008608 | Unbranded |
| 19 | Inventory and Supply Management | JANSSENBIO-047-00006587 | Unbranded |
| 20 | IV Therapy: An Important Option for Your Patients (a/k/a Why IV) | JANSSENBIO-003-00009893 | Unbranded |
| 21 | Managing Biologics in the Physician Office (a/k/a MBPO) | JANSSENBIO-066-00003455 | Branded |
| 22 | Medicare Audits | JANSSENBIO-011-00003010 | Unbranded |
| 23 | Medicare Quality Payment Program: A Focus on MIPS | JANSSENBIO-048-00001905 | Unbranded |
| 24 | Patient Experience in the Infusion Suite | JANSSENBIO-058-00003044 | Unbranded |
| 25 | Payer Relationship Management | JANSSENBIO-047-00006584 | Unbranded |
| 26 | Practice Compliance for Remicade | JANSSENBIO-066-00002316 | Branded |
| 27 | Private Payer Contracting Considerations – Part 1 and Part 2 (a/k/a Private Payer Contracting | JANSSENBIO-066-00001174 XCE-CID 0003776 | Branded |

| | Considerations for Therapy with Remicade) | | |
|---|---|---|---|
| 28 | Quality of Care in the Infusion Suite | JANSSENBIO-047-00006585 | Unbranded |
| 29 | Raising the Infusion Suite Experience (a/k/a RISE) | JANSSENBIO-005-00000323 | Unbranded |
| 30 | Remicade Account Review (a/k/a Physician Office Account Review for Remicade) | JANSSENBIO-066-00000600 | Branded |
| 31 | Setting Up In-Office Infusions of Remicade | JANSSENBIO-066-00002209 | Branded |
| 32 | Specialty Drug Market Dynamics | JANSSENBIO-058-00001346 | Unbranded |
| 33 | Successful Implementation of a New Infusion Suite | JANSSENBIO-066-00013331 | Branded |
| 34 | Successful Implementation of a New Infusion Suite for Gastroenterology Practices | JANSSENBIO-066-00009638 | Branded |
| 35 | Successful Infusion Site Management for Gastroenterology (a/k/a Successful Infusion Suite Management for Gastroenterology) | JANSSENBIO-066-00013789 | Unbranded |
| 36 | Akin Gump teleconferences, including, but not limited to: | | |
| | • Medicare Physician Payment Update | JANSSENBIO-066-00004239 | Branded |
| | • Healthcare Reform Update | JANSSENBIO-012-00001861 | Unbranded |
| | • Medicare Shared Savings Program and Accountable Care Organization Proposed Rule Update | JANSSENBIO-053-00008163 | Unbranded |

**DEPOSITION QUESTION 1(d):** For each Program (or its substantive equivalent), provide the following information: Focusing on the IOI Customers to which You provided the Program, did You provide the Program to all rheumatology and gastroenterology physician practices with an IOI that prescribed Remicade and/or Simponi ARIA to patients?  Or did You provide the Program to targeted and/or selected physician practices with an IOI that prescribed Remicade and/or Simponi ARIA to patients?

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 1(d):**

In addition to the foregoing General Objections, Janssen objects to this Deposition

Question as outside the scope of this phase of discovery under the Phased Discovery Order to the

extent it seeks information from before October 28, 2006.  Janssen further objects to this

15

Deposition Question as vague and ambiguous in its use of the term "substantive equivalent." Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not proportional to the needs of the case, as it seeks detailed information about Janssen's activities related to more than 36 unique Educational Presentations over a 15-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent they imply that Area Business Specialists or trained third-party contractors were providing consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that, as Relator knows, Janssen ABSs did not provide each of the Educational Presentations to every rheumatologist or gastroenterologist in the United States who prescribed or infused Remicade. Rather, consistent with Janssen policies, industry standards, and the practical realities of having limited resources available to provide the Educational Presentations, Janssen developed target lists identifying the accounts ABSs were to call on during a given period.  Janssen's policy on Consulting Services Provided to Customers required that Educational Presentations be offered

16

"to all customers in a particular class (*e.g.*, all customer hospitals with over 100 beds)."
JANSSENBIO-018-000000696 at 4.

As the documents produced by Janssen show, consistent with this policy, Janssen developed target lists through a process of deciling Remicade vial sales for all accounts for each account type (*e.g.*, HOPD, IOI, non-IOI) and then selecting which types of accounts and which deciles to target based on marketing and sales strategies for a given period. *See, e.g.*, JANSSENBIO-047-00001940 at 3 (discussing approach to targeting for ABS franchise). This could include large swathes of deciles and account types. For instance, an overall target plan from 2013 indicated that the target plans should include hospitals in the 20-90 deciles, IOIs in the 40-90 deciles, and Infusion Therapy Providers and New IOIs. *See, e.g.*, JANSSENBIO-021-00001835 (Heckman Dep. Ex. 23) at slide 12. That same plan also detailed the targeted frequency and duration of ABS calls to each account type. It showed, for instance, that for 70-90 decile hospitals, the expected ABS call frequency was one three-hour visit every two weeks, whereas for 70-90 decile IOIs, the expected ABS call frequency was one two-hour visit per month. *Id.* at slide 15. At the individual ABS level, call plans could be further refined as appropriate, consistent with Janssen's policies.

Janssen's approach also incorporated flexibility to provide Educational Presentations to non-targeted accounts. Specifically, if a physician practice requested an Educational Presentation or an ABS believed an Educational Presentation might be of interest to a customer that was not on the target list, an ABS was permitted to present the Educational Presentation to that customer, regardless of whether the customer was considered a target account. *See, e.g.*, JANSSENBIO-013-00014388 at 8 (noting process to deliver Educational Presentations to non-

target "Ad-Hoc" accounts).  Such flexibility thus allowed the provision of Educational

Presentations to a broader set of customers in addition to the target list.

Finally, Janssen responds that the best record of the rheumatology and gastroenterology

physician practices that received the Educational Presentations is the CRM data produced to

Relator on May 3, 2021; September 15, 2021; and January 20, 2023.  *See* JANSSENBIO-005-

00000045 to JANSSENBIO-005-00000051; JANSSENBIO-016-00000240 to JANSSENBIO-

016-00000241; JANSSENBIO-045-00001335 to JANSSENBIO-45-00001340; *see also*

Janssen's May 13, 2024 response to Relator's Interrogatory No. 23 (discussing CRM databases

and produced CRM data).

**DEPOSITION QUESTION 1(f):** For each Program (or its substantive equivalent), provide the
following information: Did You pay vendors or Outside Consultants to develop the Program?  If
so, identify the vendor(s) or Outside Consultant(s), the approximate amount that You paid the
vendor(s) or Outside Consultant(s) to develop the Program, and the approximate date(s) of Your
contract(s) with the vendor(s) or Outside Consultant(s) to develop the Program.

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 1(f):**

In addition to the foregoing General Objections, Janssen objects to this Deposition

Question as outside the scope of this phase of discovery under the Phased Discovery Order to the

extent it seeks information from before October 28, 2006.  Janssen also objects to this Deposition

Question as overly broad, unduly burdensome, and not proportional to the needs of the case, as it

seeks detailed information about Janssen's activities related to more than 36 unique Educational

Presentations over a 15-year period of time and has no legal relevance to this case.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to

the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent

they imply that Area Business Specialists or trained third-party contractors were providing

18

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Janssen further notes that the Deposition Notice defines "Outside Consultants" as "any person not employed by You that You paid to provide and/or develop certain Services and/or Programs such as Xcenda and Akin Gump."  As the Deposition Notice makes clear, to the extent any of these entities could be considered "consultants," they were third-party contractors working for Janssen, doing work and being paid pursuant to agreements with Janssen.  They were not "consultants" for any Janssen customer—such as physician offices, hospitals, infusion therapy providers, or alternative sites of care—and nothing in this answer should be construed otherwise.

Subject to and without waiving the foregoing objections, Janssen responds that it contracted with third-party vendors to develop some of the content that supported the PRC-approved Educational Presentations provided to physician offices, hospitals, alternative sites of care, or other places in which infusions occurred.  There is no database or central repository that identifies the third-party vendors that developed content for the Educational Presentations and the amounts that Janssen paid the third-party vendors to develop that content.  However, information responsive to this Deposition Question can be found in materials produced by

Janssen in this litigation.  Specifically, Janssen has produced all available, relevant contracts with these third-party vendors in its possession, custody, or control.  For convenience, Janssen provides three tables below that describe the information contained in these contracts related to the development of Educational Presentations.

The tables below summarize Janssen's current understanding of (1) the vendors Janssen worked with to develop content for the Educational Presentations; (2) the contracts that Janssen had with these vendors to develop such content; and (3) the contracts with Xcenda, LLC, related to content development.  While Janssen has attempted to identify all contracts containing information about the amounts Janssen agreed to pay third-party vendors for development of content for the Educational Presentations, it is not feasible to provide the precise amount paid for the development of each Educational Presentation, as the relevant contracts typically wrap several services into a single description or price and do not always identify a specific Educational Presentation that is to be developed.  Therefore, the fee amounts reflected in contracts may have represented fees for a breadth of activity, some of which may not have been relevant to the development of the Educational Presentations.

The first table identifies the third-party vendors that were involved in development of the at-issue Educational Presentations according to PRC records.  These vendors were named on PRC records for the identified Educational Presentation during the relevant time period.

| No. | Educational Presentation | Vendor Name | Bates Number of PRC Record Showing Vendor Involvement |
|---|---|---|---|
| 1 | Becoming an Alternative Site of Care for Therapy with Remicade in Your Community | Thomas J. Paul | JANSSENBIO-017-00024209; JANSSENBIO-017-00024076; JANSSENBIO-032-00000959 |
| 2 | Billing and Coding for Infusions | Xillix, LLC | JANSSENBIO-049-00011894; JANSSENBIO-049-00012235; JANSSENBIO-049-00021155; JANSSENBIO-049-00021222 |

| 3 | Checkpoints for Infusion Center Optimization | Thomas J. Paul | JANSSENBIO-017-00045202 |
|---|---|---|---|
| 4 | Considerations for Proactive Practice Management (a/k/a Current Considerations for Proactive Practice Management; Proactive Practice Management) | Falk Group | JANSSENBIO-017-00065251 |
| | | Thomas J. Paul | JANSSENBIO-017-00016268; JANSSENBIO-017-00022081, JANSSENBIO-017-00022331, JANSSENBIO-017-00002546, JANSSENBIO-017-00032936, JANSSENBIO-017-00032939; JANSSENBIO-017-00034423; JANSSENBIO-017-00044699 |
| | | Xillix, LLC | JANSSENBIO-049-00012683 |
| 5 | Considerations for Standard Operating Procedures in the Infusion Suite | Xillix, LLC | JANSSENBIO-049-00012397 |
| 6 | Considerations for Working With a Specialty Pharmacy (a/k/a Specialty Pharmacy Considerations) | Group 360 | JANSSENBIO-021-00002245 |
| | | Profero Group | JANSSENBIO-021-00002173 |
| | | Thomas J. Paul | JANSSENBIO-021-00002404; JANSSENBIO-021-00002476; JANSSENBIO-021-00003740 |
| 7 | Electronic Health Records and Meaningful Use (Part 1 and Part 2) | N/A | |
| 8 | Emerging Trends in Health Care | Group360 | JANSSENBIO-017-00014458 |
| | | Thomas J. Paul | JANSSENBIO-017-00013538; JANSSENBIO-020-00001384; JANSSENBIO-017-00024656; JANSSENBIO-017-00027179 |
| 9 | Enhancing Patient Care and Access | Thomas J. Paul | JANSSENBIO-031-00007888 |
| 10 | Exceptions and Appeals | N/A | |
| 11 | Hot Buttons | N/A | |
| 12 | ICD-10 (a/k/a Implementing ICD-10) | Xillix, LLC | JANSSENBIO-049-00012527; JANSSENBIO-049-00011918; JANSSENBIO-049-00013233; JANSSENBIO-049-00012520 |
| 13 | In-Office Infusion Drug Procurement Models | Xillix, LLC | JANSSENBIO-049-00012113 |
| 14 | Infusion Optimization Modeler (a/k/a IOM) | Analysis Group, Inc. | JANSSENBIO-031-00013903; JANSSENBIO-031-00013889; JANSSENBIO-032-00000756 |

| | | Justin Works (Analysis Group) | JANSSENBIO-032-00000720; JANSSENBIO-053-00000138 |
|---|---|---|---|
| | | MCV & Associates | JANSSENBIO-031-00013130 |
| | | Thomas J. Paul | JANSSENBIO-017-00014558; JANSSENBIO-017-00028294; JANSSENBIO-017-00039859; JANSSENBIO-017-00028293; JANSSENBIO-017-00039779 |
| 15 | Infusion Referrals: Improving the Continuity of Care (a/k/a Quality Improvements in Coordinating the Continuity of Care With Infusion Referrals) | Xillix, LLC | JANSSENBIO-049-00012631 |
| 16 | Infusion Services Review (a/k/a iBiz; Infusion Business Review) | Falk Group | JANSSENBIO-017-00053158 |
| 17 | Infusion Suite Scheduling and Staffing | Xillix, LLC | JANSSENBIO-026-00001834; JANSSENBIO-032-00001373; JANSSENBIO-049-00012503; JANSSENBIO-049-00012223 |
| 18 | Infusion Therapy Services Provided in Converted ASC Space (a/k/a Infusion Services and Ambulatory Surgical Centers (ASCs) – Planning Considerations; ASC Space Reclassification for Infusion Therapy) | Group360 | JANSSENBIO-017-00048285 |
| | | The Resource Group | JANSSENBIO-030-00011065; JANSSENBIO-031-00012626 |
| | | Thomas J. Paul | JANSSENBIO-017-00048156 |
| 19 | Inventory and Supply Management | Xillix, LLC | JANSSENBIO-049-00012132 |
| 20 | IV Therapy: An Important Option for Your Patients (a/k/a Why IV) | Thomas J. Paul | JANSSENBIO-017-00059670 |
| | | Victory Marketing Group | JANSSENBIO-017-00061656 |
| 21 | Managing Biologics in the Physician Office (a/k/a MBPO) | Group360 | JANSSENBIO-017-00035206 |
| | | Thomas J. Paul | JANSSENBIO-017-00022411; JANSSENBIO-017-00022337; JANSSENBIO-017-00022438; JANSSENBIO-017-00028252; JANSSENBIO-017-00026643; JANSSENBIO-017-00026876; JANSSENBIO-017-00028968; JANSSENBIO-017-00039410; |

| | | | JANSSENBIO-017-00034425; JANSSENBIO-017-00044680; JANSSENBIO-017-00044688 |
|---|---|---|---|
| 22 | Medicare Audits | N/A | |
| 23 | Medicare Quality Payment Program: A Focus on MIPS | N/A | |
| 24 | Patient Experience in the Infusion Suite | N/A | |
| 25 | Payer Relationship Management | N/A | |
| 26 | Practice Compliance for Remicade | Thomas J. Paul | JANSSENBIO-021-00002909; JANSSENBIO-021-00002742; JANSSENBIO-021-00003381; JANSSENBIO-032-00000828; |
| 27 | Private Payer Contracting Considerations – Part 1 and Part 2 (a/k/a Private Payer Contracting Considerations for Therapy With Remicade) | Lash Group, Inc. | JANSSENBIO-031-00002451; JANSSENBIO-031-00002399; JANSSENBIO-031-00002397 |
| | | Thomas J. Paul | JANSSENBIO-017-00022576; JANSSENBIO-017-00044963; JANSSENBIO-032-00000766; JANSSENBIO-017-00029905 |
| 28 | Quality of Care in the Infusion Suite | Xillix, LLC | JANSSENBIO-049-00012298 |
| 29 | Raising the Infusion Suite Experience (a/k/a RISE) | Draft FBC | JANSSENBIO-017-00051781; JANSSENBIO-017-00052117; JANSSENBIO-017-00052347; JANSSENBIO-049-00012713 |
| 30 | Remicade Account Review (a/k/a Physician Office Account Review for Remicade) | N/A | |
| 31 | Setting Up In-Office Infusions of Remicade: Informational Resources | Lash Group, Inc. | JANSSENBIO-031-00001863 |
| | | TJ Paul | JANSSENBIO-032-00000865; JANSSENBIO-031-00006188 |
| 32 | Specialty Drug Market Dynamics | Xillix, LLC | JANSSENBIO-049-00012616 |
| 33 | Successful Implementation of a New Infusion Suite | Thomas J. Paul | JANSSENBIO-017-00032822; JANSSEN-BIO-017-00035898; JANSSENBIO-017-00047622 |
| 34 | Successful Implementation of a New Infusion Suite for Gastroenterology Practices | Group 360 | JANSSENBIO-017-00015804; JANSSENBIO-017-00027174 |
| | | Thomas J. Paul | JANSSENBIO-017-00026023; JANSSENBIO-017-00026025 |
| 35 | Successful Infusion Site Management for Gastroenterology (a/k/a | Thomas J. Paul | JANSSENBIO-017-00047751; JANSSENBIO-017-00047759; JANSSENBIO-017-00047755; |

| | | | |
|---|---|---|---|
| | Successful Infusion Suite Management for Gastroenterology) | | JANSSENBIO-017-00047777; JANSSENBIO-017-00047769; JANSSENBIO-017-00047772; JANSSENBIO-017-00047960; JANSSENBIO-017-00047961 |
| | | Victory Marketing Group | JANSSENBIO-017-00035319; JANSSENBIO-017-00045740; JANSSENBIO-017-00040226; JANSSENBIO-017-00035409; JANSSENBIO-017-00045787; JANSSENBIO-017-00035247 |
| 36 | Akin Gump teleconferences, including, but not limited to: | Akin Gump Strauss Hauer & Feld LLP | |
| | • Medicare Physician Payment Update | Akin Gump Strauss Hauer & Feld LLP | JANSSENBIO-063-00002399 |
| | • Healthcare Reform Update | Akin Gump Strauss Hauer & Feld LLP | JANSSEN.011.0058987 |
| | | The Resource Group | JANSSEN.011.0058987 |
| | • Medicare Physician Payment Update | Akin Gump Strauss Hauer & Feld LLP | JANSSENBIO-053-000007931 |

The second table identifies contracts that Janssen entered into with the third-party vendors listed above to develop the at-issue Educational Presentations.  For each contract, the table displays the contract name or relevant project, the contract date, the total fee for the work performed, and the Bates number of the contract.  The contracts are those that Janssen could identify based on a reasonable search that show a connection to development of a PRC-approved, at-issue Educational Presentation based on name or description.

| Vendor | Contract Name | Contract Date | Fee | Contract Bates Number |
|---|---|---|---|---|
| Falk Group | SOC-Site of Care Tools | 02/01/2013 | $18,000/ module | JANSSENBIO-047-00003695 |
| | Modification and Updating of Janssen's IOM Application | 09/09/2013 | $8,730 | JANSSENBIO-060-000008371 |
| The Lash Group, Inc. | 2006 Practice Support Programs 360 | 02/07/2006 | $18,000/ module | JANSSENBIO-064-00002986 |
| MCV & Associates | SOC 360 Programs 2011 | 01/01/2011 | $8,000/ program | JANSSENBIO-063-00001668 |
| | Additional SOC 360 Programs 2011 for GI Franchise | 08/02/2011 | $74,316.76 | JANSSENBIO-053-00007043 |

| | | | | |
|---|---|---|---|---|
| | Amendment to Work Order dated January 1, 2012 – Decrease in Services and Compensation | 01/01/2012 | Decrease of $50,000 | JANSSENBIO-016-00000175 |
| | SOC 360 Programs 2013 | 01/01/2013 | $100,000 | JANSSENBIO-016-00000164 |
| Thomas J. Paul | SOC "Pull through" Program | 06/03/2010 | $30,000 | JANSSENBIO-058-00003730 |
| | GI-Focused SOC 360 Practice Support Programs | 10/07/2010 | $25,000 | JANSSENBIO-058-00000135 |
| | 2012 Site of Care Marketing Projects | 01/01/2012 | $314,800 | JANSSENBIO-072-00000478 |
| | #39715 – IV Therapy – An Important Option for Your Patients | 01/07/2013 | $35,000 | JANSSENBIO-034-00000311 |
| | #40373 – Field Force Learning Module – IV Therapy iPad Asset | 01/14/2013 | $34,000 | JANSSENBIO-034-00000299 |
| | #41714 – Business Review/IOM SOC Education/Workshop | 01/24/2014 | $66,500 | JANSSENBIO-034-00000361 |
| | Work Order No. 683437 To Master Services Agreement No. 364856 (Assistance Developing Flashcard Related to iBiz 2.0 App) | 02/28/2014 | $12,000 | JANSSENBIO-034-00000369 |
| | #42212 – Rheumatology Patient Education – Medication Affordability Support Brochure | 09/15/2014 | $60,000 | JANSSENBIO-034-00000424 |
| | #42963 – Establishing Infusion Services Kit | 02/04/2015 | $20,000 | JANSSENBIO-034-00000471 |
| The Resource Group | 2011 Billing Guide for REMICADE | 12/22/2010 | $30,500 | JANSSENBIO-039-00000043 |
| | Support for Policy & Reimbursement Initiatives for 2011 | 01/01/2011 | $205,000 | JANSSENBIO-039-00000032 |
| | Support for Payer/SOC Marketing | 02/10/2012 | $15,000 | JANSSENBIO-039-00000066 |
| | Support for Site of Care Team | 02/11/2013 | $24,500 | JANSSENBIO-047-00005366 |
| | Support for Payer/SOC Marketing | 02/13/2012 | $34,000 | JANSSENBIO-039-00000074 |
| | Payer Marketing Support | 07/24/2012 | $34,000 | JANSSENBIO-039-00000083 |

| | 2014 Billing Guides – Immunology | 10/16/2013 | $45,000 | JANSSENBIO-039-00000101 |
|---|---|---|---|---|
| | 2015 Remicade and Infusibles Billing Guides | 10/29/2014 | $47,250 | JANSSENBIO-051-00005969 |
| | 2016 Remicade and Infusibles Billing Guides | 11/03/2015 | $49,612 | JANSSENBIO-035-00024605 |
| Xillix, LLC | Rheumatology Why IV Strategic Assessment | 11/26/2013 | $20,800 | JANSSENBIO-034-00000005 |
| | Site of Care Value of IV Strategic Assessment | 01/06/2014 | $115,200 | JANSSENBIO-035-00025133 |
| | Site of Care Base Business Strategy and Tactics | 01/06/2014 | $315,200 | JANSSENBIO-035-00024924 |
| | Practice Managers: What You Need to Know About | 01/28/2014 | $30,400 | JANSSENBIO-034-00000031 |
| | EHR & MU | 01/28/2014 | $28,000 | JANSSENBIO-035-00024947 |
| | Practice Managers: Strategic Consulting | 03/08/2014 | $23,040 | JANSSENBIO-034-00000079 |
| | SOC Strategic Consulting | 01/15/2015 | $96,000 | JANSSENBIO-035-00025023 |
| | Innovate SOC Program | 01/15/2015 | $243,200 | JANSSENBIO-034-00000158 |
| | Infusing Practices Tool Kit | 03/15/2015 | $147,200 | JANSSENBIO-034-00000202 |

Janssen is aware that Xcenda, LLC, was also involved in the development of Educational Presentations, even though its name did not appear on PRC records.  The final table identifies contracts that Janssen entered into with Xcenda, LLC, that relate to development of Educational Presentations.  For each contract, the table displays the contract name or relevant project, the contract date, the total fee for the work performed, and the Bates number of the contract.  The contracts are those that Janssen could identify based on a reasonable search that show a connection to development of a PRC-approved, at-issue Educational Presentation based on name or description.

| Vendor | Contract Name | Contract Date | Fee | Contract Bates Number |
|---|---|---|---|---|
| Xcenda, LLC | Program Delivery and Logistics Management for 360 programs | 12/01/2007 | $30,000 | XCE-CID 0000895 |

| | | | | |
|---|---|---|---|---|
| Xcenda, LLC | 2009 SOC 360 Programs for Account Management Team, Rheumatology, Gastroenterology and Dermatology Franchises | 01/01/2009 | $30,000/module | JANSSENBIO-021-00001544 |
| Xcenda, LLC | Billing and Coding Module for SOC 360 | 10/22/2009 | $30,000 | XCE-CID 0000866 |
| Xcenda, LLC | 2010 SOC 360 Program Delivery and Content Development for Centocor Ortho Biotech Inc. | 02/03/2010 | $30,000/module | XCE-CID 0000958 |
| Xcenda, LLC | Work Order | 11/30/2010 | $30,000 | XCE-CID 0001033 |
| Xcenda, LLC | Change Order | 09/06/2011 | $30,000 | XCE-CID 0001016 |
| Xcenda, LLC | SOC Marketing | 09/12/2011 | $30,000 | XCE-CID 0001010 |
| Xcenda, LLC | Work Order | 11/21/2011 | $30,000/module | XCE-CID 0001352 |
| Xcenda, LLC | Work Order | 03/25/2012 | $15,000/module | JANSSENBIO-058-00003162 |
| Xcenda, LLC | Work Order | 10/15/2012 | $30,000/module | XCE-CID 0027784 |
| Xcenda, LLC | 2013 SOC Programs | 01/01/2013 | $30,000/module | XCE-CID 0001620 |
| Xcenda, LLC | Work Order | 11/12/2013 | $30,000/module | XCE-CID 0027661 |
| Xcenda, LLC | Work Order | 01/01/2014 | $30,000/module | JANSSENBIO-053-00008391 |
| Xcenda, LLC | Site of Care Programs (Content, Delivery, and Management) and Strategic Site of Care Strategy Implementation | 11/20/2015 | $1,000 per slide and $5,000 for updates to modules | XCE-CID 0002407 |

**DEPOSITION QUESTION 1(g):** For each Program (or its substantive equivalent), provide the following information: Was the Program provided to IOI Customers in person, by teleconference, by webinar and/or by some other method?  If the Program was provided to IOI Customers by multiple methods, state the approximate dates that the Program was provided by each method.

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 1(g):**

In addition to the foregoing General Objections, Janssen objects to this Deposition

Question as outside the scope of this phase of discovery under the Phased Discovery Order to the

extent it seeks information from before October 28, 2006.  Janssen further objects to this

Deposition Question as vague and ambiguous in its use of the term "substantive equivalent."

Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not

proportional to the needs of the case, as it seeks detailed information about Janssen's activities

related to more than 36 unique Educational Presentations over a 15-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to

the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent

they imply that Area Business Specialists or trained third-party contractors were providing

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to

the extent the Definitions imply that Janssen provided educational presentations beyond the

information contained in the educational resources approved by Janssen's Promotional Review

Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of

care, or other places in which infusions occurred ("Educational Presentations").  Janssen

construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker

programs in which an ABS or third-party contractor presented one or more of the PRC-approved

resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that the

Educational Presentations given by ABSs were typically presented to customers in person.  The

in-person Educational Presentations were either provided at the site of care or off-site at another

location, such as a restaurant.  Information about the locations at which ABSs presented the

Educational Presentations to Phase 1 Accounts can be found in RBM Rollup Reports, which tracked ABSs' provision of certain Educational Presentations in a given month.  *See, e.g.*, JANSSENBIO-011-00011724.  Janssen produced RBM Rollup Reports reflecting ABSs' provision of Educational Presentations to Phase 1 Accounts from the files of various custodians, including Susan Turner, Louis Zambelli, Paul Wickmann, and Karen Trahan.

Information about the locations at which ABSs presented the Educational Presentations to Phase 1 Accounts can also be found in CRM data memorializing ABS interactions with Phase 1 Accounts.  *See* JANSSENBIO-005-00000045 to JANSSENBIO-005-00000051; JANSSENBIO-016-00000240 to JANSSENBIO-016-00000241; and JANSSENBIO-045-00001335 to JANSSENBIO-045-00001340.  The CRM data includes the dates on which Janssen ABSs provided Educational Presentations to Phase 1 Accounts, the specific Educational Presentations provided, and often, the office address or other specific location of the ABS interaction with the Phase 1 Account.[7]

Further information about the locations at which ABSs presented the Educational Presentations to Phase 1 Accounts is available in the data from Janssen's DOME portal related to meals provided in connection with Educational Presentations, which was produced to Relator at Appendix B to Production Volume JANSSENBIO-035.  The DOME data contains specific fields for programming "Location" and "Venue Address."

The Educational Presentations given by Xcenda speakers were presented to customers in person, by teleconference, or by WebEx/webcast.  Information about the locations at which Xcenda speakers provided Educational Presentations to Phase 1 Accounts can be found in the

---

[7] Since the data reflects information recorded by ABSs, such as Julie Long, it may contain inaccuracies or gaps to the extent an ABS neglected to record any calls or associated details.

data from Janssen's Totality database, which was produced to Relator at JANSSENBIO-069-00000001.  The Totality data contains specific fields for "Venue Location Name" and "Venue Location Address."

The "Akin Gump teleconferences," including, but not limited to, Medicare Physician Payment Update, Healthcare Reform Update, and Medicare Shared Savings Program and Accountable Care Organization Proposed Rule Update, were presented to customers by teleconference.  *See, e.g.*, JANSSENBIO-012-00001859.

**DEPOSITION QUESTION 1(h):** For each Program (or its substantive equivalent), provide the following information: Did You pay an Outside Consultant to provide the Program to IOI Customers?  If so, identify the Outside Consultant, the approximate amount that You paid the Outside Consultant to provide the Program, the method through which the Outside Consultant provided the Program (in person, by teleconference, by webinar, and/or by some other method), and the approximate dates the Program was provided by each method.

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 1(h):**

In addition to the foregoing General Objections, Janssen objects to this Deposition Question as outside the scope of this phase of discovery under the Phased Discovery Order to the extent it seeks information from before October 28, 2006.  Janssen further objects to this Deposition Question as vague and ambiguous in its use of the term "substantive equivalent." Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not proportional to the needs of the case, as it seeks detailed information about the compensation provided to every Outside Consultant each time they provided one of more than 36 unique Educational Presentations over a 15-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent they imply that Area Business Specialists or trained third-party contractors were providing

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Janssen further notes that the Deposition Notice defines "Outside Consultants" as "any person not employed by You that You paid to provide and/or develop certain Services and/or Programs such as Xcenda and Akin Gump."  As the Deposition Notice makes clear, to the extent any of these entities could be considered "consultants," they were third-party contractors working for Janssen, doing work and being paid pursuant to agreements with Janssen.  They were not "consultants" for any Janssen customer—such as physician offices, hospitals, alternative sites of care, or other places in which infusions occurred—and nothing in this answer should be construed otherwise.

Subject to and without waiving the foregoing objections, Janssen responds that, as Relator is aware, Janssen contracted with Xcenda, LLC to provide Educational Presentations to customers.  Xcenda could present nearly all of the Educational Presentations identified by Relator.  However, Xcenda was not authorized to present the Infusion Optimization Modeler, Managing Biologics in the Physician's Office, or the Akin Gump teleconferences.

Information on the amounts that Janssen paid Xcenda can be found in work orders executed with Xcenda for the delivery of Educational Presentations.  For Relator's convenience,

Janssen has summarized relevant work orders below.  The work orders set forth the amounts that

Janssen agreed to pay Xcenda for delivery of Educational Presentations.  As the table notes, the

fees were based on the number of Educational Presentations provided in a day and the format in

which the Educational Presentations were provided.  Since the Educational Presentations were

available to all customers, including physician offices, hospitals, alternative sites of care, and

other settings in which infusions occurred, it is not possible to determine the precise amount paid

for the provision of Educational Presentations to IOI Customers specifically.

| Work Order Title/Services | Date | Speaker Fee | Bates |
|---|---|---|---|
| Program Delivery and Logistics Management for 360 Programs | 01/01/2008 | Live: $2,500 for one program; $2,850 for 2 or more programs in a day<br>Telecon/WebEx: $525 per program | XCE-CID 0000895 |
| 2009 SOC 360 Programs for Account Management Team, Rheumatology, Gastroenterology and Dermatology Franchises | 01/01/2009 | Live: $2,750 for one program; $3,100 for 2 or more programs in a day<br>Telecon/WebEx: $525 per program<br>Weekend/Society: $3,495 per day per speaker | JANSSENBIO-021-00001544 |
| 2009 SOC Programs for Account Management Team, Rheumatology, Gastroenterology and Dermatology Franchises | 02/24/2009 | Live: $2,750 for one program; $3,100 for 2 or more programs in a day<br>Telecon/WebEx: $525 per program<br>Weekend/Society: $3,495 per day per speaker | XCE-CID 0000852 |
| 2010 SOC 360 Program Delivery and Content Development for Centocor Ortho Biotech Inc. | 12/22/2009 | Live: $2,750 for one program; $3,100 for 2 or more programs in a day<br>Telecon/WebEx: $525 per program<br>Weekend/Society: $3,495 per day per speaker | XCD-CID 0000981 |
| Site of Care Programs, Content and Delivery Logistics | 11/30/2010 | Live: $2,925 for one program; $3,200 for 2 or more programs in a day | XCE-CID 0001033 |

| | | Telecon/WebEx: $550 per program<br>Weekend/Society: $3,595 per day per speaker | |
|---|---|---|---|
| Webinar Services and Content Development for GI Practice Management | 3/25/2012 | $550 per Webinar ($9,900 total for 18 webinars) | JANSSENBIO-058-00003162 |
| Site of Care Programs (Content, Delivery, and Management) and Strategic Site of Care Strategy Implementation | 1/1/2013 | Live: $2,925 for one program; $3,200 for up to 4 programs in a day<br>Telecon/Webcast: $550 per program<br>Weekend/Society: $3,595 per day per speaker | XCE-CID 0001620 |
| Site of Care Programs (Delivery, and Management) and Strategic Site of Care Strategy Implementation | 01/01/2014 | Live: $2,925 for one program; $3,200 for up to 4 programs in a day<br>Telecon/Webcast: $550 per program<br>Weekend/Society: $3,595 per day per speaker | XCE-CID 0001552 |
| Site of Care Programs (Delivery, and Management) and Strategic Site of Care Strategy Implementation | 10/20/2014 | Live: $2,925 for one program; $3,200 for up to 4 programs in a day<br>Telecon/Webcast: $550 per program<br>Weekend/Society: $3,595 per day per speaker | JANSSENBIO-061-00004219 |
| Rheumatology Practice Programs (Content, Delivery, and Management) and Rheumatology Practice Strategy Implementation | 11/24/2014 | Live: $2,925 for one program; $3,200 for up to 4 programs in a day<br>Telecon/Webcast: $550 per program<br>Weekend/Society: $3,595 per day per speaker | JANSSENBIO-060-00005112 |
| Site of Care Programs (Delivery, and Management) and Strategic Site of Care Strategy Implementation | 01/08/2015 | Live: $2,925 for one program; $3,200 for up to 4 programs in a day<br>Telecon/Webcast: $550 per program<br>Weekend/Society: $3,595 per day per speaker | XCE-CID 0006169 |

The Educational Presentations given by Xcenda were presented to customers in person, by teleconference, or by WebEx/webcast.  As noted above, information about the dates that Xcenda speakers provided Educational Presentations to Phase 1 Accounts and the locations at which the Educational Presentations were provided can be found in the data from Janssen's Totality database, which was produced to Relator at JANSSENBIO-069-00000001.

Separately, in 2010, Janssen engaged Xcenda to provide a team of 13 Xcenda employees to be deployed in the field to provide Gastroenterology practices with education related to Remicade.  *See* XCE-CID 0023584.  These Xcenda employees, called GI Franchise Gastro Business Specialists, were authorized to provide almost all of the Educational Presentations provided by ABSs, except for the Infusion Optimization Modeler and Managing Biologics in the Physician's Office.  The amounts that Janssen agreed to pay Xcenda to supply the Gastro Business Specialists is noted in the relevant work order executed by Janssen and Xcenda.  *See id.* at 23614.

Janssen further responds that Janssen contracted with Akin Gump Straus Hauer & Feld LLP ("Akin Gump") to host the "Akin Gump teleconferences," including, but not limited to, Medicare Physician Payment Update, Healthcare Reform Update, and Medicare Shared Savings Program and Accountable Care Organization Proposed Rule Update.  As their name suggests, these Educational Presentations were provided via teleconference.  *See, e.g.*, JANSSENBIO-053-00004164.

Information on the amounts that Janssen paid to Akin Gump can be found in the contracts between Janssen and Akin Gump produced at JANSSENBIO-050-00000001 to JANSSENBIO-050-00000181.  While the contracts provide the total amount that Janssen agreed to pay Akin Gump to perform various tasks, they often wrap several services into a single description or

price.  *See, e.g.*, JANSSENBIO-050-00000009 (setting forth one fee for Akin Gump to both

prepare and present a slide deck); JANSSENBIO-050-0000020 (providing the estimated monthly

cost for Akin Gump to do a range of work, which included hosting teleconferences, analyzing

legislative/regulatory developments, and reviewing field documents and other materials).  It is

therefore not feasible to discern the precise amount paid to Akin Gump specifically for the

provision of Educational Presentations.  Further, since the Educational Presentations provided by

Akin Gump were available to all customers, including physician offices, hospitals, alternative

sites of care, and other settings in which infusions occurred, it is not possible to determine the

precise amount paid for the provision of Educational Presentations to IOI Customers specifically.

**DEPOSITION QUESTION 1(k):** For each Program (or its substantive equivalent), provide the following information: Did You provide the Program to IOI Customers for free?  If You charged IOI Customers for the Program, how much did you charge?  And if You charged IOI Customers for the Program, was the fee for the Program paid by IOI Customers separately from the amount paid for Remicade and/or Simponi ARIA, or was the fee You charged for the Program included in the price of Remicade and/or Simponi ARIA?  If the fee You charged for the Program was included in the price of Remicade and/or Simponi ARIA, was that fee disclosed to patients, health care providers, and patients' insurers including Medicare and where and how was the fee disclosed?

*Relevant time period*: From the creation of the Program to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 1(k):**

In addition to the foregoing General Objections, Janssen objects to this Deposition

Question as outside the scope of this phase of discovery under the Phased Discovery Order to the

extent it seeks information from before October 28, 2006.  Janssen further objects to this

Deposition Question as vague and ambiguous in its use of the term "substantive equivalent."

Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not

proportional to the needs of the case, as it seeks detailed information about Janssen's activities

related to more than 36 unique Educational Presentations over a 15-year period of time.

35

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent they imply that Area Business Specialists or trained third-party contractors were providing consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that it did not "charge[] IOI Customers for the Program."  Rather, Janssen provided the Educational Presentations relating to Remicade and Simponi ARIA at no cost to the customers.  The Educational Presentations relating to Remicade and Simponi ARIA were provided for free to all customers at all sites of care, including hospital outpatient departments and IOIs at rheumatology and gastroenterology physician practices.

DEPOSITION QUESTION NO. 2

**DEPOSITION QUESTION 2(a):** For the IOI Support as a whole, provide the following information: Focusing on the IOI Customers to which You provided the IOI Support, did You provide the IOI Support to all rheumatology and gastroenterology physician practices with an IOI that prescribed Remicade and/or Simponi ARIA to patients?  Or did You provide the IOI Support to targeted and/or selected physicians practices with an IOI that prescribed Remicade and/or Simponi ARIA to patients?

*Relevant time period*: From the creation of the strategy to provide the IOI Support to IOI Customers to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 2(a):**

In addition to the foregoing General Objections, Janssen objects to this Deposition Question as outside the scope of this phase of discovery under the Phased Discovery Order to the extent it seeks information from before October 28, 2006.  Janssen further objects to this Deposition Question as vague and ambiguous in its use of the term "substantive equivalent." Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not proportional to the needs of the case, as it seeks detailed information about Janssen's activities related to more than 36 unique Educational Presentations over a 15-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent they imply that Area Business Specialists or trained third-party contractors were providing consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that, as Relator knows, Janssen ABSs did not provide each of the Educational Presentations to every rheumatologist or gastroenterologist in the United States who prescribed or infused Remicade. Rather, consistent with Janssen policies, industry standards, and the practical realities of having

limited resources available to provide the Educational Presentations, Janssen developed target lists identifying the accounts ABSs were to call on during a given period.  Janssen's policy on Consulting Services Provided to Customers required that Educational Presentations be offered "to all customers in a particular class (*e.g.*, all customer hospitals with over 100 beds)." JANSSENBIO-018-000000696 at 4.

As the documents produced by Janssen show, consistent with this policy, Janssen developed target lists through a process of deciling Remicade vial sales for all accounts for each account type (*e.g.*, HOPD, IOI, non-IOI) and then selecting which type of accounts and which deciles to target based on marketing and sales strategies for a given period.  *See, e.g.*, JANSSENBIO-047-00001940 at 3 (discussing approach to targeting for ABS franchise).  This could include large swathes of deciles and account types.  For instance, an overall target plan from 2013 indicated that the target plans should include hospitals in the 20-90 deciles, IOIs in the 40-90 deciles, and Infusion Therapy Providers and New IOIs.  *See, e.g.*, JANSSENBIO-021-00001835 (Heckman Dep. Ex. 23) at slide 12.  That same plan also detailed the targeted frequency and duration of ABS calls to each account type.  It showed, for instance, that for 70-90 decile hospitals, the expected ABS call frequency was one three-hour visit every two weeks, whereas for 70-90 decile IOIs, the expected ABS call frequency was one two-hour visit per month.  *Id.* at slide 15.  At the individual ABS level, call plans could be further refined as appropriate, consistent with Janssen's policies.

Janssen's approach also incorporated flexibility to provide Educational Presentations to non-targeted accounts.  Specifically, if a physician practice requested an Educational Presentation or an ABS believed an Educational Presentation might be of interest to a customer that was not on the target list, an ABS was permitted to present the Educational Presentation to

that customer, regardless of whether the customer was considered a target account.  *See, e.g.*, JANSSENBIO-013-00014388 at 8 (noting process to deliver Educational Presentations to non-target "Ad-Hoc" accounts).  Such flexibility thus allowed the provision of Educational Presentations to a broader set of customers in addition to the target list.

Finally, Janssen responds that the best record of the rheumatology and gastroenterology physician practices that received the Educational Presentations is the CRM data produced to Relator on May 3, 2021; September 15, 2021; and January 20, 2023.  *See* JANSSENBIO-005-00000045 to JANSSENBIO-005-00000051; JANSSENBIO-016-00000240 to JANSSENBIO-016-00000241; JANSSENBIO-045-00001335 to JANSSENBIO-45-00001340; *see also* Janssen's May 13, 2024 response to Relator's Interrogatory No. 23 (discussing CRM databases and produced CRM data).

**DEPOSITION QUESTION 2(d):** For the IOI Support as a whole, provide the following information: What was the approximate amount You spent each year providing the IOI Support to IOI Customers (through ABSs and/or Outside Consultants)?  This amount shall include the cost of employee salaries and bonuses, as well as fees paid to Outside Consultants, to provide the IOI Support to IOI Customers.  What was Your return on investment (whether measured in prescriptions, infusions, and/or sales of Remicade and/or Simponi ARIA or the revenue and/or income You earned from prescriptions, infusions, and/or sales of Remicade and/or Simponi ARIA) related to the amount You spent providing the IOI Support to IOI Customers (through ABSs and/or Outside Consultants)?  Describe how You measured Your return on investment on the amount that You spent providing the IOI Support to IOI Customers (through ABSs and/or Outside Consultants)?

*Relevant time period*: From the creation of the strategy to provide the IOI Support to IOI Customers to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 2(d):**

In addition to the foregoing General Objections, Janssen objects to this Deposition Question as outside the scope of this phase of discovery under the Phased Discovery Order to the extent it seeks information from before October 28, 2006.  Janssen further objects to this Deposition Question as vague and ambiguous in its use of the terms "amount You spent" and

"return on investment."  Janssen also objects to this Deposition Question as overly broad, unduly

burdensome, and not proportional to the needs of the case, as it seeks detailed information about

Janssen's activities related to more than 36 unique Educational Presentations and amounts spent

on all aspects of the activities, which could be construed to include incidental costs and

individualized salaries, over a 15-year period.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to

the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent

they imply that Area Business Specialists or trained third-party contractors were providing

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to

the extent the Definitions imply that Janssen provided educational presentations beyond the

information contained in the educational resources approved by Janssen's Promotional Review

Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of

care, or other places in which infusions occurred ("Educational Presentations").  Janssen

construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker

programs in which an ABS or third-party contractor presented one or more of the PRC-approved

resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that based on

a reasonably diligent inquiry, it is not feasible to determine the approximate amount Janssen

spent each year providing the Educational Presentations to IOI Customers.  While ABSs received

an annual salary and could also earn incentive compensation, there is no accurate way to

determine how much of an ABS's compensation was attributable to providing the Educational

Presentations to IOI Customers because ABSs had various other responsibilities.  For example,

in addition to providing PRC-approved Educational Presentations to IOI Customers, ABSs

40

provided PRC-approved Educational Presentations to hospitals and alternative sites of care.  *See, e.g.*, JANSSENBIO-013-00007053 (job description for Senior Executive ABS stating the ABS is "[r]esponsible for securing and preserving patient access to Remicade in the optimal site of care: the physician's office, HOPD, ASOC or ITP"); JANSSENBIO-064-00006588 (identifying that 50% of the ABS role was working with In-Office Infusion (IOI), Hospital Outpatient Department (HOPD), and Alternate Site of Care (ASOC) customers).  It is thus not possible to determine or calculate how much of ABSs overall compensation could be attributed to provision of the Educational Presentations to IOI Customers.

As Janssen stated in its response to Topic 1(h), Janssen also provided some of the Educational Presentations through the third-party vendors Xcenda and Akin Gump.  Janssen's response to Topic 1(h) sets forth the amounts that Janssen agreed to pay Xcenda for delivery of Educational Presentations.  It also sets forth the amounts that Janssen agreed to pay Akin Gump for the provision of various services, which included the delivery of the "Akin Gump teleconferences."  As Janssen noted above, the contracts with Akin Gump often wrap several services into a single description or price, so Janssen is unable to discern the precise amount paid to Akin Gump specifically for the provision of the teleconferences.  Further, since the Educational Presentations provided by Xcenda and Akin Gump were available to all customers, including physician offices, hospitals, alternative sites of care, and other settings in which infusions occurred, it is not possible to determine the precise amount paid for the provision of Educational Presentations to IOI Customers specifically.

Finally, Janssen further responds that it did not "measure[] [a] return on investment on the amount that [it] spent providing the IOI Support to IOI Customers."  Janssen therefore cannot

41

provide any return-on-investment results, as it did not engage in this kind of analysis as it relates to expenditures attributable to the Educational Presentations provided.

**DEPOSITION QUESTION 2(e):** For the IOI Support as a whole, provide the following information: Did You provide the IOI Support to IOI Customers for free?  If You charged IOI Customers for the IOI Support, how much did you charge?  And if You charged IOI Customers for the IOI Support, was the fee for the IOI Support paid by IOI Customers separately from the amount paid for Remicade and/or Simponi ARIA, or was the fee You charged for the IOI Support included in the price of Remicade and/or Simponi ARIA?  If the fee You charged for the IOI Support was included in the price of Remicade and/or Simponi ARIA, was that fee disclosed to patients, health care providers, and patients' insurers including Medicare and where and how was the fee disclosed?[8]

*Relevant time period*: From the creation of the strategy to provide the IOI Support to IOI Customers to until February 19, 2016.

**RESPONSE TO DEPOSITION QUESTION 2(e):**

In addition to the foregoing General Objections, Janssen objects to this Deposition

Question as outside the scope of this phase of discovery under the Phased Discovery Order to the

extent it seeks information from before October 28, 2006.  Janssen further objects to this

Deposition Question as vague and ambiguous in its use of the term "substantive equivalent."

Janssen also objects to this Deposition Question as overly broad, unduly burdensome, and not

proportional to the needs of the case, as it seeks detailed information about Janssen's activities

related to more than 36 unique Educational Presentations over a 15-year period of time.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to

the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent

they imply that Area Business Specialists or trained third-party contractors were providing

consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to

the extent the Definitions imply that Janssen provided educational presentations beyond the

---

[8] 2(e) is incorrectly labeled as 2(f) on Relator's July 3, 2024 list of Deposition Questions To Be Answered in Writing by Defendant.

information contained in the educational resources approved by Janssen's Promotional Review

Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of

care, or other places in which infusions occurred ("Educational Presentations"). Janssen

construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker

programs in which an ABS or third-party contractor presented one or more of the PRC-approved

resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that it did not

"charge[] IOI Customers for the Program." Rather, Janssen provided the Educational

Presentations relating to Remicade and Simponi ARIA at no cost to the customers. The

Educational Presentations relating to Remicade and Simponi ARIA were provided for free to all

customers at all sites of care, including hospital outpatient departments and IOIs at rheumatology

and gastroenterology physician practices.

DEPOSITION QUESTION NO. 16

**DEPOSITION QUESTION 16:** For the period beginning when You began providing the IOI
Support to IOI Customers to until February 19, 2016:

(a)     Describe each component of ABSs' compensation and what percentage of ABSs'
        overall compensation that component constituted. If the percentage allocated to a
        component changed over time, describe the changes accordingly.

(b)     Which positions or roles decided the ABSs' compensation system? If different
        positions were responsible for ABS compensation over time, list all positions or
        roles.

(c)     What was the Management By Objectives (also known as Management By
        Objective) ("MBO") system as it related to ABSs' compensation?

(d)     What percentage of ABSs' compensation was based upon the MBO system? If the
        percentage changed over time, describe the changes accordingly. Explain how
        this component of ABSs' compensation was calculated.

(e)     What percentage of ABSs' compensation was based upon (whether in whole or in
        part) the volume of sales, prescriptions, and/or infusions of Remicade and/or
        Simponi ARIA by IOI Customers to which the ABSs provided IOI Support? If

43

the percentage changed over time, describe the changes accordingly.  Explain how this component of ABSs' compensation was calculated.

(f)     Did ABSs participate in sales contests related to Simponi ARIA and/or Remicade?  If so, describe the rules of the contests, the approximate dates of the contests, and the awards ABSs received through the contests.

(g)     Were ABSs paid bonuses and/or awards for assisting, educating, and/or advising rheumatology and/or gastroenterology practices with opening an IOI?  If so, what activity and/or conduct by an ABS constituted or qualified as "opening" an IOI?

## RESPONSE TO DEPOSITION QUESTION 16:

In addition to the foregoing General Objections, Janssen objects to this Deposition Question as overly broad, unduly burdensome, not proportional to the needs of the case, and exceeding of the scope of discoverable matters under Federal Rule of Civil Procedure 26. Janssen further objects to this Deposition Question as outside the scope of this phase of discovery under the Phased Discovery Order to the extent it seeks information from before October 28, 2006.  Janssen also objects to this Deposition Question as cumulative and duplicative of requests for documents and written discovery that Janssen has provided.

Janssen further objects to this Deposition Question as vague and ambiguous in its use of the terms "compensation system," "sales bonuses," and "contests."  Janssen also objects to this Deposition Question as overbroad and unduly burdensome to the extent it seeks testimony about individual bonus and incentive compensation contests implemented over a 15-year period.

For avoidance of doubt, Janssen repeats here General Objection 13:  Janssen objects to the Definitions of "IOI Customers," "IOI Support," "Programs," and "Services" to the extent they imply that Area Business Specialists or trained third-party contractors were providing consultative services to Phase 1 Accounts or other physician practices.  Janssen further objects to the extent the Definitions imply that Janssen provided educational presentations beyond the information contained in the educational resources approved by Janssen's Promotional Review

44

Committee ("PRC") to Phase 1 Accounts, other physician offices, hospitals, alternative sites of care, or other places in which infusions occurred ("Educational Presentations").  Janssen construes the Definitions, and uses the defined terms herein, to refer to meetings or speaker programs in which an ABS or third-party contractor presented one or more of the PRC-approved resources to a Phase 1 Account.

Subject to and without waiving the foregoing objections, Janssen responds that ABSs within Janssen Immunology received a base salary plus benefits for their work providing education related to Remicade and Simponi ARIA to customers in physician offices, hospitals, alternative sites of care, and other settings.[9]  In addition, beginning in 2005, qualifying ABSs could earn incentive compensation for their work providing education related to Remicade and Simponi ARIA to customers in physician offices, hospitals, alternative sites of care, and other settings.  *See, e.g.*, JANSSENBIO-066-00021452 at 21455.  At times, ABSs could also receive additional incentive compensation through sales contests.  *Id.*

Janssen maintained HCC policies governing the development, review, and approval of incentive compensation and contests.  *See, e.g.,* JANSSENBIO-018-00000936 (HCC Policy entitled "Field Compensation Review and Approval" effective February 27, 2014).  Incentive compensation programs were developed according to compliance guidelines, including those stating that "[t]he amount of compensation and the relevant measures that determine the different levels of compensation awarded should be reasonable and aligned with the activity and the

---

[9] The base salaries paid to Janssen employees are reflected in Workday files, which Janssen pulled for certain employees and produced to Relator at JANSSENBIO-001-00000001 to JANSSENBIO-001-00000333 and JANSSENBIO-016-00000001 to JANSSENBIO-016-00000015.  In addition, the base salaries that Janssen paid to Julie Long between 2014 and 2016 are reflected in Appendix A to JANSSENBIO-035, which Janssen produced to Relator on March 25, 2022.

results achieved," and that plans must not incentivize employees to behave in a manner that is

inconsistent with compliance policies relating to product promotion or customer targeting.  *Id.* at

938.

Janssen generally developed incentive compensation plans for ABSs on an annual basis,

though modifications could occur at any time throughout the year.  *See, e.g.*, JANSSENBIO-040-

00001237; JANSSENBIO-011-00001969.  The files that Janssen produced to Relator in this

case, including training slide decks used at ABS workshops, national sales meetings, and plan of

action ("POA") meetings, contain the details and elements of ABS incentive compensation plans.

Based on a reasonable and diligent search of these documents, Janssen has identified the

following documents that present details about the incentive compensation plans in effect for

ABSs each year from 2005 through 2016.

### ABS Incentive Compensation Plans:  2005 – 2016

| Year | Bates |
|---|---|
| 2005 | JANSSENBIO-040-00001141 |
|  | JANSSENBIO-040-00001237[10] |
| 2006 | JANSSENBIO-040-00004811 |
| 2007 | JANSSENBIO-011-00014196 |
| 2008 | JANSSENBIO-010-00005544 |
| 2009 | JANSSENBIO-011-00008669 |
| 2010 | JANSSENBIO-011-00001395 |
| 2011 | JANSSENBIO-003-00011423 |
| 2012 | JANSSENBIO-011-00001685; |
|  | JANSSENBIO-011-00001969[11] |
| 2013 | JANSSENBIO-060-00001724 |
| 2014 | JANSSENBIO-018-00005511 |
| 2015 | JANSSENBIO-015-00003538 |
| 2016 | JANSSEN.013.0111748 |

---

[10] In the second half of 2005, Janssen implemented a modified version of the incentive
compensation plan for ABSs.

[11] In the second half of 2012, Janssen implemented a modified version of the incentive
compensation plan for ABSs.

From 2005 to 2016, Janssen maintained an annual target bonus for ABS incentive compensation that ranged from $35,000 to $44,500, not including the cash awards that ABSs could earn through contests.  ABSs received incentive compensation bonuses on a quarterly basis.  The approximate amounts that ABSs received pursuant to incentive compensation plans can be ascertained from reviewing Incentive Compensation Scorecards, which Janssen produced for ABS custodians Julie Long, Mark Cossu, Ski Bennof, and Dana Griffith.  *See, e.g.*, JANSSENBIO-005-00005137 (October 2011 Incentive Compensation Scorecard for Julie Long).

Although ABS incentive compensation plans varied from year to year, from 2005 to 2016, ABSs could generally earn incentive compensation bonuses based on (1) a component that measured territory sales performance, and (2) a component that measured ABS performance using Management By Objectives ("MBOs"), a system that evaluated ABS performance against national, regional, and account-specific objectives.  The sales-based component and the MBO component of ABS compensation were measured separately and typically paid to ABSs on a quarterly basis.  From 2005 to 2016, each of these components accounted for approximately 50% of the incentive compensation bonus that an ABS could earn.  *See, e.g.*, JANSSENBIO-003-00011423.  As such, of the annual target bonus amount for ABS incentive compensation, the portion that was related to sales ranged from $17,500 to $22,250.

Between 2005 and 2016, the sales-based component of ABS incentive compensation was determined based on calculations involving sales of Remicade and, starting in 2013, sales of Remicade and sales of Simponi ARIA.  For example, in 2011, the sales-based component accounted for 50% of the ABS incentive compensation bonus and was calculated based on two metrics:  absolute volume growth of Remicade and percent change in growth of Remicade as measured against a baseline (*i.e.*, the same period from the prior year).  *See* JANSSENBIO-003-

47

00011423 at 11426.  Additional details about the calculations that Janssen used to determine the sales-based component of ABS incentive compensation are reflected in the slide decks identified above, as well as in similar versions of these slide decks, which are contained in the custodial files that Janssen has produced to Relator.

The sales-based component of ABS incentive compensation was calculated based on Remicade (and later Simponi ARIA) sales data at a defined set of accounts in an ABS's geographical territory.  For example, in 2011, the sales-based component was based upon Remicade sales data in a given ABS territory at Rheumatology practices, Gastroenterology practices, and ASOC/Mixed accounts.  *See id.*  The territory on which an ABS's incentive compensation was based was a "shared" territory, insofar as it included customers who were managed by other representatives in Janssen's Immunology franchise, including ISGs and ISRs, in addition to the ABS.  *See, e.g.*, JANSSENBIO-011-00001395 ("You Are Paid On . . . All prescribers and institutions within designated specialties/channels within all zip codes in your territory.").  Accordingly, the sales-based component of ABS incentive compensation factored in all Remicade and Simponi ARIA sales that occurred in a given ABS's territory, regardless of whether the ABS interacted with an account directly.  This component of the incentive compensation was earned without regard to or consideration of the effect, if any, that a particular ABS's activity had on any sales or prescribing decisions.

The MBO portion of ABS incentive compensation measured ABS performance against national, regional, and account-specific objectives.  The objectives forming the basis for MBOs varied over time.  For example, in 2007, 40% of MBOs were tied to pre-identified national objectives and 60% of MBOs were tied to account-specific objectives, which an ABS developed in collaboration with his or her RBM.  *See* JANSSENBIO-009-00010370 (2007 ABS MBO

48

Worksheet).  By 2010, MBOs were comprised of territory-specific objectives, account-specific objectives, and miscellaneous job requirements that included, for example, timely submission of expense reports, timely entry of field time, and completion of mandatory training.  *See* JANSSENBIO-012-00005337 (2010 MBO Instruction Document).

On a monthly basis, ABSs completed MBO Worksheets—sometimes referred to as Account Action Worksheets or Territory Action Worksheets—describing the strategies and tactics that ABSs used in accounts to accomplish the objectives set out in their MBOs.  *See, e.g.*, JANSSENBIO-009-00010370; JANSSENBIO-021-00006082.  RBMs evaluated ABSs's performance in MBOs by scoring ABSs's efforts to meet objectives.  The method of scoring MBOs varied year to year.  For example, in 2007, MBOs were scored according to a "percent attainment" system whereby ABSs received a percentage score (from 0 to 100%) for each individual objective and a weighted average total percentage score.  *See* JANSSENBIO-009-00010370.  By 2010, Janssen used a points system to assign ABSs a score of 0, 1, 2, or 3 for the strategies they used to accomplish objectives.  *See* JANSSENBIO-012-00005337, at 5340-41.  These points were then added together for a total MBO score.  *Id.*  Additional detail about the elements that went into MBOs and the manner in which they were scored are contained and reflected in the slide decks identified above, as well as in the MBO Instruction Documents, ABS MBO Worksheets, Account Action Worksheets and Territory Action Worksheets that Janssen has produced to Relator.

Janssen further responds that, from 2004 to 2016, Janssen implemented contests that allowed ABSs to earn additional bonuses and non-monetary awards based on their performance as measured by Remicade and Simponi ARIA sales growth in the territory they shared with other

Immunology representatives.   As an example, according to the ABS incentive compensation plan for 2015 (JANSSENBIO-015-00003538), available contests included:

- **President's Circle**:  Awarded to the top 10% of each sales force based on final 2015 rank; there was no cash award, instead, awardees were invited to attend a President's Circle trip.

- **Chairman's Club**:  Awarded to President's Circle awardees who were also awarded a President's Circle award in the last four years; awardees receive $10,000.

- **Chairman's Club Elite**:  Awarded to Chairman's Club awardees who receive an additional President's Circle award within three years; awardees receive a jewelry award.

- **Team Award**:  Awarded to the top performing districts in each franchise based on overall year-to-date weighted ranking; members of the team receive $3,800.

The contests made available to ABSs changed each year, and the details of those contests are contained and reflected in the slide decks identified above.

Janssen offered incentive compensation only to ABS employees who met eligibility guidelines associated with each year's plan and who were in compliance with company policies, including HCC policies.  *See* JANSSENBIO-018-00000936, at 938 ("Prior to awarding compensation, employee performance should be reviewed to ensure that they are in compliance with company policies and procedures prior to payment of compensation").  The eligibility guidelines that applied each year are contained and reflected in the slide decks identified above.

**<u>VERIFICATION</u>**

I am the Vice President, Immunology Patient Experience at Johnson & Johnson

Healthcare Systems.  I am authorized to make this verification on behalf of Defendant Janssen

Biotech, Inc.  I have read Janssen's foregoing Objections and Responses to Plaintiff-Relator Julie

Long's Deposition Questions To Be Answered in Writing.  I swear under penalty of perjury that

the information provided is true and accurate to the best of my knowledge, information, and

belief.

Executed on August 2, 2024.

*Brian Smith*

_____

Brian Smith

**AS TO OBJECTIONS AND RESPONSES:**

Dated:  August 2, 2024

_s/ Jason C. Raofield_

Jason C. Raofield (BBO No. 641744)
Matthew F. Dunn (admitted _pro hac vice_)
Nicholas Pastan (admitted _pro hac vice_)
Alison S. DiCiurcio (admitted _pro hac vice_)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
jraofield@cov.com
mdunn@cov.com
npastan@cov.com
adiciurcio@cov.com

_Attorneys for Defendant Janssen Biotech, Inc._

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served by electronic mail on August 2, 2024, to the following counsel of record:

Theodore J. Leopold
Leslie M. Kroeger
Diana L. Martin
Poorad Razavi
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com
dmartin@cohenmilstein.com
prazavi@cohenmilstein.com

Casey M. Preston
Gary L. Azorsky
Jeanne A. Markey
Adnan Toric
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th Street, Suite 1820
Philadelphia, PA 19103
cpreston@cohenmilstein.com
gazorsky@cohenmilstein.com
jmarkey@cohenmilstein.com
atoric@cohenmilstein.com

*s/ Alison DiCiurcio*
Alison DiCiurcio (admitted *pro hac vice*)
Covington & Burling LLP