UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* JULIE LONG,<br><br>        *Plaintiffs,*<br><br>v.<br><br>JANSSEN BIOTECH, INC.,<br><br>        *Defendant.* | Civil Action No. 16-CV-12182-FDS |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER CONCERNING RELATOR'S 30(b)(6) DEPOSITION NOTICE**

## INTRODUCTION

Janssen's motion established good cause for entry of a protective order on specific topics that explicitly and improperly seek privileged information or that do not come close to meeting the reasonable particularity requirement of Rule 30(b)(6), making it impossible for Janssen to adequately prepare a witness.  As discussed below, Relator's opposition brief confirms both points.

## ARGUMENT

**I.      Janssen Met and Conferred With Plaintiff Regarding the Issues Raised in its Motion.**

Contrary to Relator's assertion that Janssen did not satisfy its meet and confer obligations, her own brief and exhibits confirm that Janssen conferred with Relator twice, for multiple hours, and exchanged numerous emails in an effort to resolve this dispute.  *See, e.g.*, ECF No. 454 at 17 ("Opp. Br.") ("During the two lengthy meet and confer sessions concerning the matters for examination . . . ."); Opp. Br. Ex. 3.  It is also undisputed that during the meet and confers and in other dialogue between the parties, Janssen clearly expressed its concern that "many of [Relator's] topics are impermissible" because they seek "extremely detailed information about at least 36 programs over a 15-year period."  Opp. Br. Ex. 3 at 12.  Relator recognized this when, after the first meet and confer, Relator's lead counsel emailed counsel for Janssen separately: "I had not drilled down on the 30b6 notice.  Let me go through it.  I hear and see the issues.  Many of these can be addressed in other ways."  Janssen Reply Br. Ex. A.

Despite the obvious problems, Janssen served written responses and objections that still offered to provide a witness on *every* topic, but with appropriate limitations.  Relator's response was a single sentence: "We believe that the asserted objections lack merit."  Opp. Br. Ex. 3 at 5.  Now, however, Relator has openly conceded that was not true by withdrawing three of the disputed topics entirely.  That only happened because, faced with Relator's insistence that "absent a

1

protective order or Relator's agreement, [Relator] will examine Janssen's representative(s) concerning *all topics/subtopics* . . . as they are currently stated," Opp. Br. Ex. 3 at 7, Janssen filed the present motion. Janssen had no choice but to file this motion given the potentially draconian results of presenting a 30(b)(6) witness without first seeking a protective order. *See, e.g.*, *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007) ("Put simply and clearly, absent agreement, a party who for one reason or another does not wish to comply with a notice of [a 30(b)(6)] deposition must seek a protective order.") .

**II.     Relator's Continued Attempt to Breach Privilege Provides More Than Good Cause to Grant a Protective Order as it Pertains to Topics Seeking Privileged Information.**

Relator attempts to recharacterize its topics as seeking non-privileged information while tangentially raising privileged issues which Janssen should resolve by asserting privilege during the depositions. This ignores reality. As Relator knows, Janssen used lawyers to assess legal issues, such as the AKS. Janssen Reply Br. Ex. C, Jiminez Dep. Tr. at 93:2-93:8 (Q. "Would having input as to the antikickback or false claims implications as it pertains to ABS promotional strategies fall within the responsibility of the legal member or members of the PRC?" A. "Yes.")

Yet, despite Janssen's consistent and emphatic statements that it is neither asserting an advice of counsel defense nor waiving privilege, Relator has filed multiple motions seeking disclosure of Janssen's privileged communications, both of which have been denied by the Court. *See* ECF Nos. 303, 435. Relator has not given up. Indeed, in opposing this motion Relator makes its position clear once again: "Plaintiff is entitled to obtain discovery regarding how Janssen evaluated the legality of providing the IOI Support. Plaintiff is similarly entitled to know how Janssen reached its understanding of the law and its decision to provide the alleged illegal remuneration – was its understanding obtained from or influenced by its attorneys or was it based on information and advice from non-attorneys." *See* Opp. Br. at 11. Worse, very recently—and

without a shred of evidence—Relator served amended discovery responses purportedly identifying the following as *evidence* that Janssen acted "acted knowingly and willfully":

> Defendant is asserting the attorney-client privilege to prevent disclosure and review of its attorneys' legal analyses and the legal advice the attorneys provided regarding whether providing the IOI Support to physician practices violated the Anti-Kickback Statute; Plaintiff **believes** that Defendant is asserting the attorney-client privilege to prevent disclosure and review of its attorneys' legal analyses and legal advice because the analyses and advice show that Defendant knew that providing the IOI Support services and related programs to IOI accounts was unlawful[.]

Janssen Reply Br. Ex. B. at 28 (emphasis added).

Relator's attempt to recharacterize its topics as primarily directed at non-privileged information is belied by the topics themselves. For example, Topic 1(p) seeks: "***All actions [Janssen] took to determine whether providing the Program to IOI customers violated the AKS and/or FCA.***" Another topic, Topic 2(j), is nearly identical. There is simply no way to interpret this request as seeking anything other than privileged legal advice from Janssen's attorneys. Those topics *only* seek privileged information.

Likewise, Topic 1(q), and similarly topic 2(k), ask Janssen:

> Whether [every at-issue] Program was reviewed by Your legal department separate and apart from any review conducted by an attorney in connection with a Promotional Review Committee (or equivalent committee) review. Included in this topic are the review process, the approximate dates of the reviews, and persons from the legal department who performed the reviews.[1]

This topic *explicitly* requests information related to the review of at-issue programs by Janssen's "legal department." Similarly, Topics 1(r) and 2(l) ask for Janssen's "belief and knowledge" regarding whether providing the programs "violated the AKS and the basis for such belief." Every other topic disputed on the basis of privilege carries the same defect. Together, these topics

---

[1] Though topics 1(q) and 2(k) fail on privilege grounds for the reasons stated in this section, they also fail for the reasons stated in Section III, *infra* at 5, because they do not identify the specific information they seek with reasonable particularity, and instead seek encyclopedic information about dozens of programs over a period of two decades.

3

demonstrate that Relator continues to place legal review of at-issue programs front and center in its discovery pursuits.

Nonetheless, despite insisting that Janssen must provide witnesses on all topics "as they are currently stated," Opp. Br. Ex. 3 at 7, Relator now seeks to save the topics by recasting them as merely seeking scienter-related information and advice from *non-lawyers*. *See* Opp. Br. at 11 (contending that the topics only seek "advice, evaluations, or information Janssen received from employees who were not acting in the capacity of corporate counsel[.]"); *id*. (maintaining, without citing a single document in support, that "[d]iscovery in this case strongly indicates that Janssen received analyses and information concerning whether providing the IOI Support to select IOI customers complied with the law and its internal policies from non-lawyers in addition to lawyers."). If that were true, Relator had every opportunity to cite that "discovery" in her brief. Janssen has established good cause for a protective order because the topics explicitly call for privileged legal advice, and Relator's need for *non-privileged* scienter-related evidence does not allow her to intrude on Janssen's attorney-client privilege. That is the dispute that forced Janssen to seek a protective order on this basis.

Finally, Relator suggests that Janssen should be forced to bear the enormous expense of preparing a witness on these improper topics and then show up and assert privilege and instruct the witness not to answer. According to Relator, this is the "normal deposition process[.]" *Id*. at 12. But this is a 30(b)(6) deposition, and there is nothing normal about Relator's topics. It is not normal to ignore multiple court orders and notice topics that explicitly seek privileged information. This is the exact type of undue burden Rule 26(c) is intended to prevent. *See Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492, at *5 (D. Mass. Sept. 24, 2014) (finding, consistent with prior court order, that Rule 30(b)(6) topic called for privileged information and

therefore the noticing party was "not entitled to seek deposition testimony on th[e] topic[.]"). Janssen should not be subjected to a deposition on facially inappropriate topics just because Relator claims she might strike on a handful of unidentified, non-privileged questions to ask—none of which have been identified with particularity so that Janssen could reasonably prepare a witness solely on such non-privileged information.[2]

The Court should reject Relator's attempt to put privileged information at issue yet again under the guise of seeking "scienter-related" information and use its authority under Rule 26(c) to prevent Relator's inquiry into topics 1(l), 1(m), 1(p), 1(q), 1(r), 2(g), 2(j), 2(k), 2(l), 4, 5, 6, 8, 10.

### III. A Protective Order is Appropriate and Necessary to Protect Janssen from the Extraordinary Burden Posed by Relator's Extremely Broad Topics.

Relator's opposition demonstrates either purposeful ignorance or a fundamental misunderstanding of Janssen's motion. Relator consistently argues that the noticed topics are justified because they are relevant, but Janssen is not moving for a protective order on relevance grounds. Instead, Janssen seeks a protective order because (1) the noticed topics are not reasonably particular; and, in turn, (2) the amount of information put at issue by the unreasonable topics creates an impossible task for Janssen to prepare its witnesses. In short, human beings are not computers, and they are not expected to be.

Even if, hypothetically, every aspect Relator's topics were relevant, Janssen would *still* be entitled to a protective order because Rule 30(b)(6) does not require a corporate witness to be an

---

[2] Relator states that the Court previously permitted discovery of Janssen's "review of the legality of the IOI Support strategy" and ordered "that any unprivileged documents and information must be disclosed." Opp. Br. at 12-13. The Court's prior orders were explicitly limited to nonprivileged documents in the files of three legal custodians. ECF No. 282 at 16. Janssen not only complied with those orders, but it produced one of those attorneys for a full day of deposition testimony. Relator is now reaching far beyond the Court's three-custodian limit and seeking information regarding the knowledge of all of Janssen's lawyers.

5

AI chatbot, where millions of documents[3] and nearly twenty deposition transcripts (not to mention additional preparatory interviews) are fed into a system capable of regurgitating an answer to any question Relator might choose to ask.  Relator makes it very clear that this is what she is demanding when she points to Janssen's enormous document productions and the extensive deposition record to suggest that "Janssen should have already compiled and refreshed its memory concerning the information" sought by the 30(b)(6) notice.  Opp. Br. at 15.

Rule 30(b)(6) imposes a responsibility on parties to describe topics with "reasonable particularity" such that a noticed party can effectively prepare its corporate representative to respond.  *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008) ("To allow Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."); *Newman v. Borders, Inc.*, 257 F.R.D. 1, 3 (D.D.C. 2009) ("There is . . . a concomitant responsibility upon the party who had noticed the 30(b)(6) deposition to define as clearly as possible the topics for the deposition.").

This makes good sense.  As Relator's own cited caselaw explains, if "the noticing party does not describe the topics with sufficient particularity . . ., the responding party is subject to an impossible task" and "compliant designation is not feasible." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 2017 WL 8236153, at *2 (D. Mass. Oct. 13, 2017); *see CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 362 (N.D. Iowa 2017) (reviewing granular questions from 30(b)(6) deposition and stating that a "good-faith effort to prepare a corporate designee does not contemplate preparation to the level of specificity or breadth reflected in plaintiffs' counsel's

---

[3] To date, Janssen has produced 3.4 million pages of documents from the custodial files of over 80 current and former employees, and additional voluminous databases.  *See* ECF No. 449 at 2.

quizzing. What these examples also show is that if plaintiffs sought answers to such specific areas of information, then their Rule 30(b)(6) notice failed to 'reasonably particularize the subjects' about which it would inquire in the examination." (citation omitted)).

Relator's brief makes clear how the noticed topics subject Janssen to an impossible task in preparing for this 30(b)(6) deposition, and for at least three reasons the Court should reject Relator's demand that Janssen be required to present a witness on the topics as written.

First, Relator incorrectly insists its subtopics are "precise" and do "not seek[] information that is 'extremely detailed.'" Opp. Br. at 14. In doing so, Relator, for the first time, adds three limitations to her topics that fundamentally conflict with the face of the notice, and which Relator's counsel expressly *rejected* as "*without merit*." Her addition of these *new* limitations is evidence that Relator's topics were not written with the "reasonable particularity" required.

For example, Relator now claims she is not "seeking information concerning decisions ABSs made about which specific IOI Support programs were provided to particular accounts or the specific occasions or meetings during which she or outside consultants delivered the programs and services to select IOI customers." Opp. Br. at 14. Yet, Relator rejected as "without merit" Janssen's objection that "by its terms, subtopic [1](e) seeks testimony about factors considered by all individuals and entities within and outside of Janssen in determining whether to provide the programs at issue, including individual ABSs and third party physicians." ECF No. 451 ("Janssen Br.") Ex. B. Likewise, Relator now claims she is not "seeking information about each separate iteration or version of written materials Janssen used as visual aides to present practice management and infusion business information[.]" Opp. Br. at 14. Yet, Relator rejected as "without merit" Janssen's objection that "by its terms, subtopic [2](c) seeks testimony about the purposes and objectives underlying each of the individual programs at issue." Janssen Br. Ex. B.

Finally, Relator now asserts that "[s]ome topics, such as 1(i), merely require a 'yes' or 'no' answer." Opp. Br. at 15. For this, Janssen objected on both burden and relevance grounds because Janssen's Oncology division is not part of this case and has not been subject to discovery. Notwithstanding the lack of relevance, if Relator is truly only asking for a "yes or no" answer to this or any other question, Janssen is open to withdrawing its objections. However, Janssen doubts Relator would have been satisfied if a witness had merely been prepared to answer "yes" or "no" to any topic.

Second, Relator does not meaningfully[4] rebut that her topics will require extreme and burdensome efforts. In fact, she clearly understands the extreme quantity of information at issue:

> The fact that Janssen provided a large number of different IOI Support programs to select IOI customers in Central Pennsylvania and other territories across the country, combined with the fact that Janssen provided the IOI Support programs over a long of period time, combined with the fact that Janssen devoted substantial resources and manpower to developing and executing this strategy, makes it unavoidable that Janssen's designee(s) must be prepared to provide a significant amount of information.

Opp. Br. at 18. Despite this, Relator summarily dismisses the burden involved as "unavoidable," insisting that Janssen's corporates witnesses must be prepared to provide the "significant amount of information" she describes simply because the information is relevant. *Id*.; *see id*. (noting in the next sentence that although "Plaintiff is seeking a significant amount of information, all of which is highly relevant, [this] does not render topics 1(i)-1(j), 1(l)-1(r), 2(c), 5, 13, 14, and 17 overly broad or make it impossible to provide full, complete, and unevasive answers[.]").

---

[4] Relator's only attempt to address burden is a conclusory assertion that "Janssen presents no evidence" that the burden involved exceeds the general obligation to prepare a corporate witness, or that Janssen would need to spend "hundreds of thousands of dollars" to do so. Opp. Br. at 16-17. This is nonsense. It is self-evident that the combination of the exceptionally overbroad topics and over 3 million pages of documents along with a massive amount of other data—including enormous databases concerning the programs—spanning nearly 25 years will require Janssen to undergo a herculean effort to prepare its corporate witnesses.

Courts frequently limit Rule 30(b)(6) testimony because the noticed topics are too broad and/or cover too many documents to possibly prepare a corporate witness. *See, e.g.*, *Trustees of Bos. Univ.*, 2014 WL 5786492, at *3 ("Here [seven topics] are not described with sufficient particularity, and are vague and/or overly broad."); *CMI Roadbuilding*, 322 F.R.D. at 362 ("In addition to other broad and ambiguous categories, plaintiffs' notice generally sought information regarding defendant's entire library of engineering documents and over six years' worth of communications with customers and vendors. Absent from the notice was plaintiffs' apparent expectation that King would be able to list every blueprint and recall every email. Information of such breadth and detail exceeds the scope of any designee's ability to properly prepare, particularly when the notice was not more specific." (internal quotations omitted)); *U.S. ex rel Fago v. M & T Mort. Corp.*, 235 F.R.D. 11 (D.D.C. 2006) (denying motion to compel on grounds that "[a]lthough Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide. Without a photographic memory, [the corporate witness] could not reasonably be expected to testify as to the loan numbers (and whatever other identifying information about which plaintiff would question the witness) for sixty-three different loans.").

As Janssen explained in its opening brief, Relator has noticed 51 topics about 36 distinct programs and presentations over nearly 25 years. Janssen Br. at 5. To give Janssen a chance to meaningfully comply with the notice, this Court should issue a protective order allowing Janssen to prepare its witnesses to testify about the at-issue programs collectively, rather than on an individual basis, and to testify about corporate records, policies, and practices on a general basis, rather than as to every single record, policy, or practice that falls within the topics identified.

9

Third, and finally, Relator's contention that the temporal scope of her noticed topics are not unduly burdensome fails on its face. Opp. Br. at 15-16. Relator's brief asserts that "discovery is permitted going back to January 2000," *id*. at 16, and her topics reflect this. For all but one topic, the demanded time period is "from the creation of the strategy to provide the IOI Support and Programs to IOI Customers to until February 19, 2016." Janssen Br. at 5. The earliest at-issue program was provided as early as April 2002, and at least 15 of the 36 programs began before 2010. Janssen Reply Br. Ex. D. Rather than address the burden this creates, Relator maintains that if "Janssen is aware of relevant non-privileged information . . ., it is obligated to disclose it." Opp. Br. at 15. Relator again, without any legal citations, simply suggests that relevance completely overrides any consideration of the burden of preparing a 30(b)(6) witness and the practical limitations on doing so. Relator's temporal arguments should not be credited.[5]

## CONCLUSION

For the foregoing reasons, the Court should enter a protective order holding that (1) Relator may not seek information protected by the attorney-client privilege or work product protection; and (2) Janssen may provide a witness to testify about the programs at issue collectively, rather than on an individual basis, and to testify about corporate records, policies, and practices on a general basis, rather than as to every single record, policy, or practice that falls within the topics.

---

[5] Relator's attempts to distinguish two of Janssen's cited cases fall flat. Relator claims that unlike the topic at issue in *W Holding Co. v. Chartis Ins. Co. of Puerto Rico*, 300 F.R.D. 43 (D.P.R. 2014), which sought testimony related to all "policies and regulations" governing the FDIC, none of Relator's "topics seek such a limitless quantum of information." Opp. Br. at 19. However, many of Relator's topics do just that, such as topic 1(j), which asks for "[a]ll Your purposes and objectives in providing [a] program to IOI Customers." As to *Ameristar Jet Charter, Inc. v. Signal Composites*, 244 F.3d 189 (1st Cir. 2001), Relator argues that the case "does not lend any support to Janssen's request to be able to merely provide 'general' answers." Opp. Br. at 19. However, *Ameristar* is cited for a different proposition: "that a party has no obligation to present a witness to summarize evidence it has already produced in other forms." Janssen Br. at 10.

Dated:  August 27, 2024                                Respectfully Submitted,

/s/ *Jason C. Raofield*
Jason C. Raofield (BBO No. 641744)
Ethan M. Posner (admitted *pro hac vice*)
Matthew F. Dunn (admitted *pro hac vice*)
Nicholas O. Pastan (admitted *pro hac vice*)
Alison S. DiCiurcio (admitted *pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
(202) 662-6000
jraofield@cov.com
eposner@cov.com
mdunn@cov.com
npastan@cov.com
adiciurcio@cov.com

*Attorneys for Defendant Janssen Biotech, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify on this 27th day of August, 2024, that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                /s/ Jason C. Raofield
                                                Jason C. Raofield (BBO No. 641744)