<pre>
 1                     UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    THE UNITED STATES OF AMERICA,    )
      ex rel.                          )
 4    JULIE LONG,                      )  Civil Action
                                       )
 5                     Plaintiffs      )  No. 16-12182-FDS
                                       )
 6                                     )
      vs.                              )
 7                                     )
      JANSSEN BIOTECH, INC.,
 8                     Defendant

 9

10    BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

11

12               STATUS CONFERENCE CONDUCTED BY ZOOM

13

14

15           John Joseph Moakley United States Courthouse
                          1 Courthouse Way
16                        Boston, MA 02210

17

18                        March 14, 2025
                             2:00 p.m.
19

20

21

22

23             Valerie A. O'Hara, FCRR, RPR
                     Official Court Reporter
24        John Joseph Moakley United States Courthouse
                          1 Courthouse Way
25                        Boston, MA 02210
                    E-mail: vaohara@gmail.com
</pre>

1    APPEARANCES VIA ZOOM:

2    For The Relators:

3        Cohen Milstein Sellers & Toll PLLC, by GARY L. AZORSKY,
     ESQ., 1717 Arch Street, Suite 3610, Philadelphia, Pennsylvania
4    19103;

5        Cohen Milstein Sellers & Toll, PLLC,
     THEODORE JON LEOPOLD, ESQ., POORAD RAZAVI, ESQ., and
6    DIANA L. MARTIN, ATTORNEY, 11780 US Highway One, Suite 200,
     Palm Beach Gardens, Florida 33408;
7
         Cohen Milstein Sellers & Toll PLLC, by
8    CASEY M. PRESTON, ESQ., and ADNAN TORIC, ESQ.,
     Two Logan Square, 100-120 N. 18th Street, Suite 1820
9    Philadelphia, Pennsylvania 19103;

10   For the Defendant:

11       Covington & Burling LLP, by MATTHEW F. DUNN, ESQ.,
     JASON C. RAOFIELD, ESQ., 850 Tenth Street, NW,
12   Washington, D.C. 20001-4956.

13       **Covington & Burling LLP, NICHOLAS PASTAN, ESQ.,
     One CityCenter, 850 Tenth St., NW**
14   **Washington, DC 20001.**

15   **ALSO PRESENT:  Thomas McCann, Esq.**

16

17

18

19

20

21

22

23

24

25

<u>**PROCEEDINGS**</u>

1

2        THE CLERK:  Court is now in session in the matter

3    of United States vs. Janssen Biotech, Inc., Civil Action

4    Number 16-12182.

5        Participants are reminded that photographing,

6    recording or rebroadcasting of this hearing is prohibited,

7    and it may result in sanctions.

8        Would counsel please identify themselves for the

9    record, starting with the plaintiffs.

02:02PM 10        MR. LEOPOLD:  Good afternoon, your Honor, Ted

11    Leopold on behalf of the relator plaintiff.

12        MR. RAZAVI:  Poorad Razavi on behalf of relator

13    plaintiff.

14        THE COURT:  Good afternoon.

15        MR. PRESTON:  Casey Preston on behalf of the

16    relator.

17        THE COURT:  Good afternoon.

18        MS. MARTIN:  Diana Martin on behalf of the

19    relator.

02:02PM 20        MR. AZORSKY:  Gary Azorsky on behalf of the

21    relator.

22        THE COURT:  Good afternoon.

23        MR. TORIC:  Adnan Toric on behalf of the relator.

24        THE COURT:  Good afternoon.  All right.  For

25    Janssen.

1          MR. RAOFIELD:  Good morning, your Honor,

2     Jason Raofield for Janssen.  I think we also have on the

3     line my colleagues, Matthew Dunn, Nicholas Paston, and

4     Thomas McCann.

5          THE COURT:  Good afternoon, all.  This is a

6     status conference in this case.  We're holding this by

7     video.  I have pending and have had pending for some time

8     a couple of discovery motions, relator's motion for

9     in-camera review, and defendant's motion for a protective

02:03PM 10     order concerning a 30(b)(6) deposition.

11          I'm happy to -- if either of you want to briefly

12     address those, that's fine.  I think I'm fairly familiar

13     with it at this point.  I think at this point it's

14     important from my standpoint to get those opinions out and

15     to get this on track, but let me put that to one side for

16     the moment and ask where are we?  What do we heed to get

17     this case on track?  And also is there anything about this

18     case that is affected by the First Circuit's *Regeneron*

19     decision that requires any attention on my end?

02:03PM 20          Mr. Leopold, I guess if you're taking the lead,

21     I'll start with you.

22          MR. LEOPOLD:  Yes, your Honor, thank you.  Again,

23     nice to see you.  Thank you for your time today.  Your

24     Honor, addressing a couple of issues that you raised.  The

25     first two, of course, are the 30(b)(6) issue and the

1    matter we have of a protected privilege document log.

2        Just so your Honor knows, we have culled down,

3    and although there are a lot of documents that we are

4    contesting on the log, we've suggested maybe a sampling of

5    some of those documents with the Court to review or

6    magistrate judge or however the Court wants to do that to

7    make it hopefully easier for the Court, but those two

8    things are important.

9        As it relates to the *Regeneron* opinion --

02:04PM 10        THE COURT:  Before I forget the thought, I would

11    be delighted to review a sample rather than 300 documents,

12    and is that something that has been formalized?  In other

13    words, do you have an agreement that these -- actually you

14    can't have an agreement.

15        MR. LEOPOLD:  Right.

16        THE COURT:  Well --

17        MR. LEOPOLD:  We don't have an agreement, your

18    Honor, and I'm not sure -- we tried to whittle down it as

19    much as we could for the ease of the Court.  We can

02:05PM 20    certainly try to do that more because I understand the

21    burden that we put on the Court on those, but from our

22    perspective, of course, I'm sure the Court can appreciate

23    it's an important issue, so although we can whittle it

24    down, I think we want to give the Court a fair sampling of

25    the documents so that the Court can make a reasonable

1    review of them.  I think that would be fair to everybody.

2         THE COURT:  Okay.  I'm sorry, you started talking

3    about Regeneron?

4         MR. LEOPOLD:  Yes, your Honor.  In light of the

5    Regeneron opinion, I sort of -- if the Court doesn't mind,

6    not that I want to throw it back to the Court, but, as the

7    Court knows, a little bit of the history of this case in

8    terms of the phase aspects that we have done discovery, in

9    light of the *Regeneron* opinion, I guess I'd really like to

02:05PM 10    ask the Court how the Court wants us to proceed at this

11    point in time, and by that I mean the discovery that we

12    have taken, although it was quote, unquote, "regional," it

13    really has, and I don't think there's a dispute about

14    this, really has informed us that the program of the ADS

15    managers was a national program, so we only really need

16    one aspects of future discovery for us to put on what I

17    would say a case going down on the avenue in *Regeneron* of

18    the self-certification aspect, which is where we believe

19    that we are going to pursue this matter, and we would need

02:06PM 20    some additional discovery.

21         And then the question becomes, A, does the Court

22    want to have more of a regional type of trial or want to

23    have in essence one case that we put on the national

24    aspect and the damages aspect?  That's really where we're

25    at this point.

1          We have done all of the regional discovery, if

2     you will, that we believe that we need.  We need some

3     additional information from Janssen in order to take care

4     of the expert issues, but we believe we are ready to go.

5     We'd like to get a trial date, and we can pursue this

6     following the avenues set forth in *Regeneron*.

7          THE COURT:  Mr. Raofield.

8          MR. RAOFIELD:  Yes, your Honor.  So, first, to

9     respond to Mr. Leopold's comment in response to your

02:07PM 10     Honor's question about the in-camera review motion, I

11     apologize if I get anything wrong, but my understanding is

12     that I just want to make sure there is no ambiguity.

13          I think the 300 documents that your Honor

14     referred to was identified in their motion as a sample

15     that would potentially lead to then further review, and we

16     have not discussed or talked about a narrowing of that

17     sample group that the plaintiff proposed, so maybe that

18     was clear, but I just wanted to make sure that was clear.

19          THE COURT:  It was not clear.  All right.

02:07PM 20          MR. RAOFIELD:  So, your Honor, the current

21     schedule that was entered by the Court, you know, with

22     agreement of the parties takes us through expert

23     discovery, all of which starts 30 days after the, you

24     know, it starts after we finish the 30(b)(6), which is

25     30 days after the Court's order on that issue, as your

1    Honor knows.

2         And the parties have conferred briefly just in

3    theory, you know, primarily about what a summary judgment

4    briefing schedule would look like for Phase I summary

5    judgment after expert discovery is closed.

6         And so we think that will take us through expert

7    discovery and summary judgment on sort of the current

8    schedule and the agreed upon briefing schedule that we've

9    talked about, haven't finalized, but we can do that and

02:08PM 10    then submit.

11         As your Honor knows, causation discovery was

12    stayed pending the *Regeneron* ruling.  Janssen's position

13    throughout this case has been that relator would have to

14    prove but-for causation.  Relator disagreed with that,

15    asked for, and ultimately there was a stay of the but-for,

16    you know, the causation discovery from practices in

17    particular pending a determination about whether but-for

18    causation would be required, and Regeneron says it is

19    required for claims under the 2010 amendment, and

02:09PM 20    relator's complaint does allege such claims.

21         So we had a meet and confer with relator, and

22    they told us three things:  They told us, Number 1, that

23    even though Regeneron said but-for causation is required

24    for some of their claims, they're not seeking -- they've

25    decided not to seek, I think, third-party causation

1    discovery from the practices because if I understood what

2    they were saying, they thought they could prove some sort

3    of, you know, an AKS base claim given some sort of

4    negligence standard that I don't understand.

5         We have no idea why Regeneron would make evidence

6    from the practices irrelevant since the practices are

7    alleged to have accepted the kickback, but, obviously,

8    relator can make their own determination about that.

9         The second thing they told us is that they might

02:10PM 10    have a causation expert of some type.  We're not sure what

11    that will be, and also that relator was interested in

12    setting a trial date at the end of Phase I summary

13    judgment.

14         Janssen's position, your Honor, is, and it sounds

15    like Mr. Leopold is raising that for consideration,

16    Janssen's position is there would be many problems setting

17    a trial date immediately after Phase I discovery.

18         I wasn't quite clear.  Mr. Leopold mentioned that

19    maybe they do need some Phase II discovery, but that, of

02:10PM 20    course, was always the plan was that following Phase I

21    summary judgment, if the claims survive, we'd get a Phase

22    II discovery.

23         Relator alleged from the very beginning of the

24    case, your Honor, that there was a nationwide program but

25    Julie Long was obviously only a part of one state, she

1    operated in one state, and until now the case has been

2    focused on relator's allegations, but Janssen has always,

3    as your Honor knows, disputed those allegations, and

4    discovery has now profoundly undermined those allegations.

5         Relator herself confirmed under oath that she,

6    you know, despite operating as an ABS delivering the

7    alleged kickbacks for 15 years, she never thought she was

8    doing anything wrong, never thought she was violating the

9    law, never thought she was doing anything wrong, and she

02:11PM 10    said that was true even though she described herself as a

11    healthcare compliance officer at Janssen.

12         Relators now decided they're not even going to

13    seek discovery of the practices that allegedly received

14    the kickbacks, and I think it's important.

15         THE COURT:  Let me stop you there because, you

16    know, if you go down this path and Mr. Leopold is going to

17    respond and you're going to respond to him, and it's kind

18    of like a mini summary judgment argument.

19         MR. RAOFIELD:  Okay.

02:11PM 20    THE COURT:  We'll get to these issues.  Unless

21    someone convinces me, and I know Mr. Leopold has been

22    trying to convince for me for what feels like 10 years

23    now, must be less than that not but not much, to get off

24    my plan, which is Phase I phase discovery, a relatively

25    narrow subset, expert discovery, summary judgment, we see

1    what the case looks like.  If the whole thing survives,

2    maybe we open it up to national discovery or not, and I

3    don't like setting a trial date until I know what the case

4    is going to look like, and I want to set a real trial

5    date, so, you know, is this going to be a one-day trial?

6    Is it going to be a 12-month trial?

7        Those are both jokes, but, you know, it's a lot

8    harder to schedule a two-week trial than a one-week trial,

9    a three-week trial than a two-week trial and so on, and if

02:12PM 10   we're going to have a trial, I do need to set it pretty

11   far out given my schedule and all of your schedules.

12       I'm not going to be able to turn on a dime on

13   this, but I do think we need to go through summary

14   judgment first and say, okay, what does this case look

15   like?  And to get to summary judgment, we need to complete

16   discovery, and I'm sure that, you know, my -- I'm as much

17   to blame here as anyone for having this case kind of

18   bogged down, and I want to get it unbogged, and I want to

19   issue these two rulings, I want to complete fact discovery

02:13PM 20   on Phase I, I want to do experts if that's relevant to

21   summary judgment, it sounds like it is, I want to do

22   summary judgment, you know, boom, boom, boom, and what I'd

23   like to do is to revive the practice of seeing you every

24   30 days or so, you know, just to make sure that we're on

25   track and so I know what's happening at each stage of the

1    game.

2          I think, you know, as a practical matter, it's

3    hard for me to imagine I could set a trial date, you know,

4    quicker than let's say a year from now.  I don't know.  I

5    don't know what this thing is going to look like, I don't

6    know how big or small it is going to be, what the issues

7    are going to be, but for causation, you know, in the

8    actual *Regeneron* case where I did the District Court

9    ruling, one of the arguments made against it is we'd have

02:14PM 10   to have a parade, every single doctor from every single

11   practice would have to, you know, talk about his or her

12   prescribing practices to make that work.

13          I have no idea whether it's true or not, but it

14   could be true at some level and, you know, that would

15   lengthen things considerably, so, again, my plan, hope,

16   desire is get these two things off my desk.  If I'm going

17   to do an in-camera review, I'm going to do it, and we'll

18   wrap up fact discovery on Phase I.  It may be something

19   less than perfect and get into expert discovery, and then

02:15PM 20   you'll have an opportunity obviously to move for summary

21   judgment or partial summary judgment, you know, or however

22   it is you want to approach the case, and maybe some of it

23   gets whittled down, maybe not.

24          Usually along the way at least some things wind

25   up, you know, getting dropped, the claim for intentional

1    interference with prospective business relations, those

2    things have a way of falling by the wayside.

3         And, again, I think that's what I want to do.  So

4    good news is I won't be Chief Judge after July, and so

5    I'll immediately remove 50 percent of my workload, so that

6    will give me more time to pay attention to my full-time

7    cases.  Go ahead.

8         MR. LEOPOLD:  Your Honor, may I?

9         THE COURT:  Yes.

02:15PM 10        MR. LEOPOLD:  That all sounds fine by us.  I

11   guess where we're at at this point in time is we on the

12   plaintiff's side, not knowing what the summary judgment is

13   going to be, do not believe that we need any more factual

14   discovery.

15        As I mentioned, a little bit ago, we intend to

16   pursue this case on the false certification theory.

17        THE COURT:  Other than whatever -- if I agree

18   with you that these were improperly withheld on privileged

19   grounds, there's going to be some follow-up, I assume, on

02:16PM 20   that.

21        MR. LEOPOLD:  Right.  I was going to say at this

22   point, depending on how the Court rules on the privilege

23   document, there may be some follow-up, on how the Court

24   rules on the 30(b)(6), there's going to be one or two

25   depositions taken there.  Absent that, really the only

1      thing we, I guess, need to address is whether or not we

2      need to do any causation issues.  We really don't, again,

3      that's not going to be our theory of the case if every

4      doctor has to be deposed, et cetera, so we only need to

5      know whether or not the defendant is going to move on

6      summary judgment on some sort of damages issue, which if

7      that's the case, we'd like to have what we consider sort

8      of this regression, it's a small piece of information we

9      would need from the defendants that is not a deposition,

02:17PM 10   it's just them getting us some data information.

11          Other than that, we're done.  We would like to

12     get a schedule where they would have to file their summary

13     judgment within, I don't know, 60, 90 days, whatever it

14     may be, just so we can get it on schedule and move

15     forward.

16          THE COURT:  I certainly think we would need to

17     set a schedule.  I will add somewhat sardonically but

18     awfully close to the truth that from the time I was a

19     first-year associate, probably a law firm summer clerk

02:17PM 20   before that, every time someone says we just need a small

21     bit of discovery, just need a couple of things, it's never

22     quite played out like that, but, you know, and yes, I want

23     to set a timetable.  I don't think I'm quite ready to do

24     it yet, but I need to rule on these motions, get that out

25     the door, see what comes from that.  I don't know how many

1    experts we're going to have and on what topics but a

2    timetable that is adhered to within reason I think is

3    highly desirable and I would like to get to that point

4    quickly.  I'm not sure I'm quite ready to do it today.

5         I've extended the fact discovery deadline

6    multiple times, and, you know, we do have a deadline

7    coming up, but I would like to move this from the very

8    back burner to the front burner.

9         MR. RAOFIELD:  Your Honor, Jason Raofield.  So

02:18PM 10    the Court may be aware of this, but just to make clear,

11    the schedule that was entered a month and a half ago or so

12    by agreement of the parties and that the Court entered,

13    that schedule as it stands, it's triggered off the Court

14    rulings on the 30(b)(6).

15         THE COURT:  Yes.  30 plus 30 plus 30, yes.

16         MR. RAOFIELD:  Exactly.  And so that takes us

17    into probably around November, and then the parties, as I

18    mentioned, have started conferring, and we can easily

19    confer and set immediately after the experts a summary

02:19PM 20    judgment briefing schedule similarly tied off at the end

21    of that, and that would take us through summary judgment.

22    I just wanted to make clear the immediate schedule has

23    already been set.

24         THE COURT:  Well, all right.  And it may be that

25    that winds up being the schedule.  It would be desirable

1      from my standpoint if instead of November that were

2      October or September.  I don't know if that's realistic or

3      not, I just don't have a good enough handle on where we

4      are and what needs to be done, and the case has been

5      around for just a little while.

6              I don't think I had any gray hair when it

7      started, and we need this on a track toward some kind of

8      resolution.  What I'd like to do is set a further status

9      for roughly mid-April.  I'd like to keep meeting every

02:19PM 10   30 days.  I want to get these two things off my plate so

11     you can all get going on that.  I'll turn that around as

12     quickly as I can, and I apologize for not having done that

13     long ago, and if further discovery flows from that,

14     whether documents designated privileged or further

15     30(b)(6) or whatever, you know, so be it, but don't assume

16     I may not tighten the schedule because I might.

17             MR. LEOPOLD:  Your Honor, just two housekeeping

18     matters, if I could.  One is, and Mr. Preston may know

19     this, I just don't, but how would the Court like us to get

02:20PM 20   these documents to you?

21             THE COURT:  First off, I need to rule whether I'm

22     going to do an in-camera review at all, and, if so, you

23     can do it however you want, I guess.  You know, probably a

24     disk or something, I don't know, maybe some, you know,

25     in-camera under seal PDF might work, I don't know.  It

1    depends on the volume and all of that.

2            MR. LEOPOLD:  Okay.  The other aspect is, and I'm

3    not saying it's going to be necessary, but the Court may

4    remember the causation issue for purposes of our phased

5    discovery has sort of been off to the side not knowing

6    what they're going to do on summary judgment, again, we

7    may not need to, but we sort of addressed this many, many,

8    a while ago at a hearing, that if something comes up in

9    summary judgment where we haven't done discovery, the

02:21PM 10   Court may be open if we make an appropriate motion to

11   allow us.

12           THE COURT:  I'll be open to reason, I'll leave it

13   that way.

14           MR. LEOPOLD:  That's what I wanted to raise.

15           THE COURT:  Also just because you can take

16   discovery on something or that you haven't doesn't mean

17   I'll allow it.  It kind of depends.

18           MR. LEOPOLD:  Yes, sir.

19           THE COURT:  One disadvantage of, again, I was a

02:21PM 20   young man when this case started, but I'm now getting

21   pretty old.  I do remember the days when we had very

22   little discovery on a lot of things, criminal cases, none

23   at all, and it might not be as perfect as you want it to

24   be.

25           MR. LEOPOLD:  I understand.

1          MR. RAOFIELD:  Your Honor, can I just make one

2     comment?

3          THE COURT:  Yes.

4          MR. RAOFIELD:  Notwithstanding what I'm about to

5     say, since we're going to be having regular conferences, I

6     think we can address it at that point.  This is the first

7     time I've heard -- I'm not really following what

8     Mr. Leopold has been describing.  The causation discovery

9     that was stayed was very clearly stated as third-party

02:22PM 10     causation discovery, the doctor discovery, as we sometimes

11     refer to it.

12          THE COURT:  Yes.

13          MR. RAOFIELD:  I can't tell if Mr. Leopold is

14     talking about reopening discovery as to Janssen, but that

15     was decided by the Court that -- okay.  He's shaking his

16     head no.

17          MR. PRESTON:  Let me weigh in here, Ted.  I think

18     though that, you know, Jason, what you're overlooking is

19     the discovery that we would be seeking would relate to

02:22PM 20     discovery that an expert needs in order to conduct a

21     regression analysis, and that likely requires discovery

22     of, you know, provision of the alleged kickbacks to

23     physicians nationwide in order to conduct the regression

24     analysis, so in order for us to present expert testimony

25     on causation, we do need some additional discovery that

1    would be from Janssen.

2         THE COURT:  All right.  I express no opinion

3    about whether you're going to get that or whether, you

4    know, a regression analysis on middle Pennsylvania or

5    Pennsylvania isn't good enough for these purposes.  As far

6    as I'm concerned anyway, those issues are up in the air.

7         MR. PRESTON:  And, your Honor, is that an issue

8    you want us to discuss at the next conference because I

9    think for our purposes, we'd like clarity on this issue so

02:23PM 10    we can have the expert to start working or we can start

11    working with counsel on obtaining the data that is needed

12    to conduct the regression analysis.

13         THE COURT:  All right.  If you think you need

14    something and you don't have it, it would be best to file

15    a motion.  I don't want to do things on the fly.  This is

16    way too complicated, you know, for me to do that.  I

17    retain my view stubbornly that I wanted this to be not a

18    nationwide case with nationwide discovery, at least in

19    this phase until it is -- until we have tested some of

02:24PM 20    these claims and this narrower window, and we may get

21    there eventually, we may not, I don't know, but I know

22    plaintiffs have been seeking to expand this case,

23    defendants are seeking to narrow it, I want to keep it

24    reasonably narrow unless someone very compellingly

25    convinces me otherwise, not as a final decision but as a

1    practical matter of managing this thing.

2            MR. PRESTON:  Understood, your Honor.

3            THE COURT:  I made no decisions on anything.  If

4    you want me to rule in some particular way, yes, you get

5    discovery, no, you don't, file a motion.

6            MR. PRESTON:  Understood.

7            MR. LEOPOLD:  Your Honor, if I can ask?

8            THE COURT:  Yes.

9            MR. LEOPOLD:  I'm clearly not asking for an

02:25PM 10   advisory opinion or anything of that sort, I'm just trying

11   to understand in terms of what Mr. Raofield had to say in

12   terms of our theory of the case in terms of either false

13   certification or but-for, I guess at the end of the day,

14   we'll respond to their summary judgment on what the

15   established case law is and go from there.  I don't

16   understand -- I have a hard time understanding that we're

17   isolated to a but-for rule, and cases don't say that, but

18   I'm just trying to -- we've been up in the air a little

19   bit juggling what the law is, and it seems like we still

02:26PM 20   have a battle with the law.  I'm not supposed to respond

21   to the summary judgment.

22            THE COURT:  Unlike the benighted Third Circuit,

23   you know, the law is clear in this circuit, anyway, it's

24   but-for causation, so at least that has been established.

25            And when I say benighted Third Circuit, I mean a

1    circuit dominated by Eagles fans in many respects, which

2    is a problem.  Yes, go ahead.

3              MR. RAOFIELD:  I think, your Honor, it sounds

4    like there's some uncertainty on Mr. Leopold's part.  I

5    will also say there's uncertainty on Janssen's part, but I

6    think what's clear is through the expert discovery

7    process, through the summary judgment briefing, everyone

8    is going to get a lot of clarity.

9              THE COURT:  Well, hopefully that's true.  Clarity

02:27PM 10    would be good, but we'll take it a step at a time.

11              Matt, can you give me a conference date?

12              THE CLERK:  How about, Tuesday April 15th at

13    3:30?

14              THE COURT:  Tuesday, April 15th at 3:30 by Zoom.

15    You can always appear in person if you want or we can do

16    it hybrid, but the default will be Zoom.

17              MR. LEOPOLD:  Thank you.

18              MR. RAOFIELD:  That works, your Honor, thank you.

19              THE COURT:  All right.  Let's do that then, and

02:27PM 20    we'll get these things out the door one way or the other,

21    and we'll take it from there.

22              MR. LEOPOLD:  Thank you, your Honor.  Thank you

23    for your time.

24              THE COURT:  Thank you.

25

1          (Whereupon, the hearing was adjourned at

2     2:27 p.m.)

3                    C E R T I F I C A T E

4

5     UNITED STATES DISTRICT COURT )

6     DISTRICT OF MASSACHUSETTS ) ss.

7     CITY OF BOSTON )

8          I do hereby certify that the foregoing transcript,

9     Pages 1 through 22 inclusive, was recorded by me

10    stenographically at the time and place aforesaid in Civil

11    Action No. 16-12182-FDS, THE UNITED STATES OF AMERICA ex rel.

12    JULIE LONG vs. JANSSEN BIOTECH, INC., and thereafter by me

13    reduced to typewriting and is a true and accurate record of the

14    proceedings.

15          Dated March 20, 2025.

16                         s/s Valerie A. O'Hara
                           _____
17                         VALERIE A. O'HARA
                           OFFICIAL COURT REPORTER
18

19

20

21

22

23

24

25