UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE UNITED STATES of AMERICA, et al., )<br>*ex rel.* JULIE LONG,                         )<br>                                                        )<br>            Plaintiffs,                            )<br>                                                        )<br>            v.                                         )<br>                                                        )<br>JANSSEN BIOTECH, INC.,                  )<br>                                                        )<br>            Defendant.                          )<br>                                                        ) | Civil Action No.<br>16-12182-FDS |

MEMORANDUM AND ORDER CONCERNING *IN CAMERA*
REVIEW OF DEFENDANT'S DOCUMENTS WITHHELD
ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE

**SAYLOR, C.J.**

This is a *qui tam* action alleging that a pharmaceutical company unlawfully provided free services to physicians who prescribed its medications. Relator Julie Long sued defendant Janssen Biotech, Inc., a company that manufactures and sells Remicade and Simponi ARIA, two infusible medications used to treat various conditions. She contends that the services constituted kickbacks in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), which in turn resulted in the payment of false claims in violation of the False Claims Act, 31 U.S.C. § 3729(a).

In connection with the ongoing discovery process, relator moved for an *in camera* review of approximately 300 documents that were withheld or redacted by defendant on the basis of attorney-client privilege. Relator contends that defendant had not sufficiently demonstrated that the documents at issue were privileged.

The Court granted the motion and conducted an *in camera* review of the challenged

documents. Although several of those documents are indeed privileged, others do not appear to be. Accordingly, and for the following reasons, defendant will be directed to produce the documents listed in Appendix A of this order. Entry of this order will, however, be stayed for 14 days to permit defendant an opportunity to seek a further stay pending interlocutory appellate review.

## I.    Analysis

The attorney-client privilege attaches to communications "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*, 649 F.3d 5, 30 (1st Cir. 2011) (quoting *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002)). The privilege "protects 'only those communications that are confidential and are made for the purpose of seeking or receiving legal advice,'" although the request for legal advice need not be explicit. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (quoting *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)); *Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, 2018 WL 1532614, at *4 (D. Mass. Mar. 28, 2018). The privilege applies when the client is a corporation and protects communications between its employees and counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981).

Here, several challenged documents reflect communications made between defendant's employees and counsel for the purpose of seeking legal advice, either explicitly or implicitly. There is no question that those documents are privileged and thus not discoverable. However,

2

the privilege does not appear to extend to two categories of documents that were initially withheld or redacted.

First, multiple communications at issue were directed to, or shared with, third parties. In general, "disclosing attorney-client communications to a third party undermines the privilege" because it "destroys the confidentiality upon which the privilege is premised." *Cavallaro*, 284 F.3d at 246-47; *Lluberes*, 663 F.3d at 24. The inclusion of external consultants, marketing agents, and advisors on emails—even those containing otherwise-privileged communications—will normally amount to a waiver of the attorney-client privilege as to those documents.

Defendant asserts that the challenged third-party communications are nonetheless privileged under the "functional-equivalent doctrine." (ECF No. 449 at 15). Relying principally on an articulation of that doctrine by the *Lynx* court, defendant contends that "certain third-party agents of corporate entities, such as consultants, can be considered the 'functional equivalent' of corporate employees by virtue of their close connection to the corporate entity," thereby "allow[ing] communications between such agents and corporate counsel to fall within the scope of [the privilege]." 2018 WL 1532614, at *2.

In determining whether a third party is sufficiently connected to the corporation such that the functional-equivalent doctrine applies, the *Lynx* court considered multiple factors, including (1) whether the third party had a longstanding relationship with the corporate client; (2) whether he or she interacted with the corporation's employees on a daily basis; (3) whether he or she was "intimately involved in the single objective for which the company was created"; (4) whether he or she worked from the client's office; (5) whether he or she was obligated to work exclusively for the company; and (6) whether he or she acted as the company's sole representative at public events, such that "[t]here was no principled basis to distinguish [the consultant's] role from that

of an employee." *Id.* at *2-4 (citing *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994)).  Here, defendant asserts that its third-party marketing agents and consultants acted as functional equivalents of its marketing and sales employees because they held the same types of roles and worked toward the same set of objectives.  (ECF No. 449 at 15).

As the *Lynx* court noted, the First Circuit has not adopted the functional-equivalent doctrine.  2018 WL 1532614, at *4.  This Court will nevertheless assume that under certain circumstances, third-party agents may essentially operate as employees, and that the disclosure to them of otherwise-privileged communications will not waive the privilege.  That may be particularly plausible in the health-care, medical-device, and pharmaceutical industries, where the activities of the company may be subject to complex legal requirements; external agents and consultants may, in some circumstances, perform functions that are indistinguishable from those of employees.

However, the burden of showing that third-party communications are privileged "rests with the party asserting the privilege."  *See In re Keeper of the Records*, 348 F.3d at 21.  Although defendant has asserted that its external advisors functioned as employees, it has provided minimal evidence, at best, to establish that the assertion is in fact true.  *See Lynx*, 2018 WL 1532614, at *4 (noting that the party asserting attorney-client privilege must "provide [] affirmative factual support for its contention").  Defendant has not, for example, submitted affidavits attesting that its external advisors interacted with its employees on a daily basis; that they were obligated to work exclusively for defendant; that they operated from defendant's offices; that they represented defendant in external contexts; or that they were essentially indistinguishable from its employees.  And defendant has not identified any specific individuals who performed such roles.

In its opposition memorandum, defendant did provide brief excerpts from three employee deposition transcripts. Those employees testified that they worked with unidentified "external partners" who provided them with "strategic support and tactical support" and whose responsibilities at times were an "extension" of those assigned to defendant's employees. (ECF No. 449 Ex. E, F, G). The excerpts certainly suggest that defendant's employees worked closely with some external advisors on various projects. But close collaboration is not enough to invoke the functional-equivalent doctrine. It is incumbent on the party asserting the privilege to put forth sufficient evidence to demonstrate that specific third-party individuals did in fact function as employees at the relevant time, and defendant has not done so here. Accordingly, defendant will be directed to produce those communications that were disclosed to third parties, as set forth in Appendix A.

The second category of documents that do not appear to be privileged are email attachments. Attachments to email communications, standing alone, are not privileged unless the attachments themselves contain confidential communications intended to seek legal advice from counsel. Indeed, "attachments which do not, by their content, fall within the realm of the privilege cannot be privileged by merely attaching them to a communication with the attorney." *America's Growth Cap., LLC v. PFIP, LLC*, 2014 WL 1207128, at *3 (D. Mass. Mar. 24, 2014). That means, for example, that "attachments containing business, not legal information, cannot be privileged." *Id.*

To be clear, an email sent to counsel seeking confidential legal advice is privileged, whether it contains an attached document or not. And it is true that the mere selection of a non-privileged document for disclosure to an attorney could, in some circumstances, implicate the privilege. But documents do not become privileged simply because they have been attached to

5

an email sent to counsel. And absent special circumstances, the discoverability of an attached document must be analyzed independently from that of the email communication.

Here, multiple documents that have been withheld or redacted are attachments to email communications with counsel. Some of those attachments are clearly privileged. For example, some of the attachments are draft memoranda containing legal advice, or requests for legal advice, that fall squarely within the scope of privileged communications.

The remaining attachments, however, are not independently privileged—that is, they do not themselves constitute an attorney-client communication. And as to those attachments, defendant has not demonstrated that they are otherwise privileged based on the context of the email communications to which they are attached. Nor has defendant established that the privilege analysis changes simply because the attachments at issue were previously listed on its privilege log. Accordingly, defendant will be directed to produce those email attachments that are not independently privileged, as set forth in Appendix A.

## II.     Conclusion

For the foregoing reasons, the Court finds that the documents listed in Appendix A of this order are not privileged, and that they are therefore discoverable. The production of documents compelled by this order will be stayed for 14 days (that is, until July 4, 2025) to permit defendant an opportunity to seek a further stay pending interlocutory appellate review.

**So Ordered.**

Dated:  June 20, 2025

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

# APPENDIX A

## I. Third-Party Communications

| Row | Privilege-Log Number | Starting Bates # | Ending Bates # |
|---|---|---|---|
| 61 |  | JANSSENBIO-021-00005555 | JANSSENBIO-021-00005559 |
| 62 |  | JANSSENBIO-021-00005562 | JANSSENBIO-021-00005562 |
| 857 | JANSSENBIO-PL_2-0000627 |  |  |
| 858 | JANSSENBIO-PL_2-0000628 |  |  |
| 859 | JANSSENBIO-PL_2-0000629 |  |  |
| 860 | JANSSENBIO-PL_2-0000630 |  |  |
| 861 | JANSSENBIO-PL_2-0000631 |  |  |
| 939 |  | JANSSENBIO-064-00010697 | JANSSENBIO-064-00010698 |
| 1136 | JANSSENBIO-PL_2-0000900 |  |  |
| 1137 | JANSSENBIO-PL_2-0000901 |  |  |
| 1310 | JANSSENBIO-PL_2-0001072 |  |  |
| 1311 | JANSSENBIO-PL_2-0001073 |  |  |
| 1465 |  | JANSSENBIO-064-00000990 | JANSSENBIO-064-00000993 |
| 1957 | JANSSENBIO-PL_2-0001691 |  |  |
| 1961 |  | JANSSENBIO-064-00002539 | JANSSENBIO-064-00002540 |
| 1986 | JANSSENBIO-PL_2-0001718 |  |  |
| 1987 | JANSSENBIO-PL_2-0001719 |  |  |
| 1988 | JANSSENBIO-PL_2-0001720 |  |  |
| 2119 | JANSSENBIO-PL_2-0001850 |  |  |
| 2120 | JANSSENBIO-PL_2-0001851 |  |  |
| 2125 | JANSSENBIO-PL_2-0001856 |  |  |
| 2895 | JANSSENBIO-PL_2-0002609 |  |  |
| 3156 | JANSSENBIO-PL_2-0002868 |  |  |
| 3605 | JANSSENBIO-PL_2-0003306 |  |  |
| 4102 | JANSSENBIO-PL_2-0003791 |  |  |
| 4284 |  | JANSSENBIO-017-00052328 | JANSSENBIO-017-00052329 |
| 4322 |  | JANSSENBIO-063-00001583 | JANSSENBIO-063-00001660 |

## II.   Email Attachments

| Row | Privilege-Log Number |
|-----|----------------------|
| 9 | JANSSENBIO-PL_2-0000003 |
| 10 | JANSSENBIO-PL_2-0000004 |
| 11 | JANSSENBIO-PL_2-0000005 |
| 12 | JANSSENBIO-PL_2-0000006 |
| 13 | JANSSENBIO-PL_2-0000007 |
| 14 | JANSSENBIO-PL_2-0000008 |
| 15 | JANSSENBIO-PL_2-0000009 |
| 16 | JANSSENBIO-PL_2-0000010 |
| 17 | JANSSENBIO-PL_2-0000011 |
| 18 | JANSSENBIO-PL_2-0000012 |
| 19 | JANSSENBIO-PL_2-0000013 |
| 20 | JANSSENBIO-PL_2-0000014 |
| 21 | JANSSENBIO-PL_2-0000015 |
| 22 | JANSSENBIO-PL_2-0000016 |
| 114 | JANSSENBIO-PL_2-0000089 |
| 115 | JANSSENBIO-PL_2-0000090 |
| 116 | JANSSENBIO-PL_2-0000091 |
| 117 | JANSSENBIO-PL_2-0000092 |
| 156 | JANSSENBIO-PL_2-0000121 |
| 157 | JANSSENBIO-PL_2-0000122 |
| 201 | JANSSENBIO-PL_2-0000157 |
| 202 | JANSSENBIO-PL_2-0000158 |
| 203 | JANSSENBIO-PL_2-0000159 |
| 204 | JANSSENBIO-PL_2-0000160 |
| 205 | JANSSENBIO-PL_2-0000161 |
| 206 | JANSSENBIO-PL_2-0000162 |
| 211 | JANSSENBIO-PL_2-0000167 |
| 372 | JANSSENBIO-PL_2-0000313 |
| 373 | JANSSENBIO-PL_2-0000314 |
| 374 | JANSSENBIO-PL_2-0000315 |
| 375 | JANSSENBIO-PL_2-0000316 |
| 376 | JANSSENBIO-PL_2-0000317 |
| 451 | JANSSENBIO-PL_2-0000391 |
| 452 | JANSSENBIO-PL_2-0000392 |
| 658 | JANSSENBIO-PL_2-0000504 |
| 761 | JANSSENBIO-PL_2-0000570 |
| 1523 | JANSSENBIO-PL_2-0001267 |
| 1524 | JANSSENBIO-PL_2-0001268 |

| | |
|---|---|
| 1525 | JANSSENBIO-PL_2-0001269 |
| 1526 | JANSSENBIO-PL_2-0001270 |
| 1527 | JANSSENBIO-PL_2-0001271 |
| 1528 | JANSSENBIO-PL_2-0001272 |
| 1529 | JANSSENBIO-PL_2-0001273 |
| 1530 | JANSSENBIO-PL_2-0001274 |
| 1531 | JANSSENBIO-PL_2-0001275 |
| 1657 | JANSSENBIO-PL_2-0001399 |
| 1658 | JANSSENBIO-PL_2-0001400 |
| 1744 | JANSSENBIO-PL_2-0001485 |
| 1745 | JANSSENBIO-PL_2-0001486 |
| 1746 | JANSSENBIO-PL_2-0001487 |
| 1747 | JANSSENBIO-PL_2-0001488 |
| 1748 | JANSSENBIO-PL_2-0001489 |
| 1781 | JANSSENBIO-PL_2-0001521 |
| 1782 | JANSSENBIO-PL_2-0001522 |
| 1783 | JANSSENBIO-PL_2-0001523 |
| 1784 | JANSSENBIO-PL_2-0001524 |
| 1785 | JANSSENBIO-PL_2-0001525 |
| 1786 | JANSSENBIO-PL_2-0001526 |
| 1788 | JANSSENBIO-PL_2-0001528 |
| 1789 | JANSSENBIO-PL_2-0001529 |
| 1791 | JANSSENBIO-PL_2-0001531 |
| 1792 | JANSSENBIO-PL_2-0001532 |
| 1793 | JANSSENBIO-PL_2-0001533 |
| 2065 | JANSSENBIO-PL_2-0001796 |
| 2066 | JANSSENBIO-PL_2-0001797 |
| 2067 | JANSSENBIO-PL_2-0001798 |
| 2068 | JANSSENBIO-PL_2-0001799 |
| 2120 | JANSSENBIO-PL_2-0001851 |
| 2183 | JANSSENBIO-PL_2-0001913 |
| 2584 | JANSSENBIO-PL_2-0002313 |
| 2585 | JANSSENBIO-PL_2-0002314 |
| 2586 | JANSSENBIO-PL_2-0002315 |
| 2587 | JANSSENBIO-PL_2-0002316 |
| 2588 | JANSSENBIO-PL_2-0002317 |
| 2589 | JANSSENBIO-PL_2-0002318 |
| 2590 | JANSSENBIO-PL_2-0002319 |
| 2591 | JANSSENBIO-PL_2-0002320 |
| 2592 | JANSSENBIO-PL_2-0002321 |

| | |
|---|---|
| 2593 | JANSSENBIO-PL_2-0002322 |
| 2594 | JANSSENBIO-PL_2-0002323 |
| 2595 | JANSSENBIO-PL_2-0002324 |
| 2962 | JANSSENBIO-PL_2-0002676 |
| 3081 | JANSSENBIO-PL_2-0002795 |
| 3083 | JANSSENBIO-PL_2-0002797 |
| 3084 | JANSSENBIO-PL_2-0002798 |
| 3086 | JANSSENBIO-PL_2-0002800 |
| 3087 | JANSSENBIO-PL_2-0002801 |
| 3664 | JANSSENBIO-PL_2-0003354 |
| 3665 | JANSSENBIO-PL_2-0003355 |
| 3754 | JANSSENBIO-PL_2-0003443 |
| 3755 | JANSSENBIO-PL_2-0003444 |
| 3756 | JANSSENBIO-PL_2-0003445 |
| 3757 | JANSSENBIO-PL_2-0003446 |
| 3758 | JANSSENBIO-PL_2-0003447 |
| 3759 | JANSSENBIO-PL_2-0003448 |
| 3776 | JANSSENBIO-PL_2-0003465 |
| 3777 | JANSSENBIO-PL_2-0003466 |
| 3778 | JANSSENBIO-PL_2-0003467 |
| 3779 | JANSSENBIO-PL_2-0003468 |
| 3952 | JANSSENBIO-PL_2-0003641 |
| 4070 | JANSSENBIO-PL_2-0003759 |
| 4071 | JANSSENBIO-PL_2-0003760 |
| 4103 | JANSSENBIO-PL_2-0003792 |
| 4104 | JANSSENBIO-PL_2-0003793 |
| 4105 | JANSSENBIO-PL_2-0003794 |
| 4106 | JANSSENBIO-PL_2-0003795 |
| 4107 | JANSSENBIO-PL_2-0003796 |
| 4108 | JANSSENBIO-PL_2-0003797 |
| 4109 | JANSSENBIO-PL_2-0003798 |
| 4110 | JANSSENBIO-PL_2-0003799 |
| 4111 | JANSSENBIO-PL_2-0003800 |
| 4112 | JANSSENBIO-PL_2-0003801 |
| 4113 | JANSSENBIO-PL_2-0003802 |
| 4114 | JANSSENBIO-PL_2-0003803 |
| 4115 | JANSSENBIO-PL_2-0003804 |
| 4116 | JANSSENBIO-PL_2-0003805 |
| 4117 | JANSSENBIO-PL_2-0003806 |
| 4118 | JANSSENBIO-PL_2-0003807 |

| 4119 | JANSSENBIO-PL_2-0003808 |
| --- | --- |
| 4120 | JANSSENBIO-PL_2-0003809 |
| 4121 | JANSSENBIO-PL_2-0003810 |
| 4122 | JANSSENBIO-PL_2-0003811 |
| 4123 | JANSSENBIO-PL_2-0003812 |
| 4124 | JANSSENBIO-PL_2-0003813 |
| 4125 | JANSSENBIO-PL_2-0003814 |
| 4126 | JANSSENBIO-PL_2-0003815 |
| 4127 | JANSSENBIO-PL_2-0003816 |
| 4128 | JANSSENBIO-PL_2-0003817 |
| 4129 | JANSSENBIO-PL_2-0003818 |
| 4130 | JANSSENBIO-PL_2-0003819 |
| 4131 | JANSSENBIO-PL_2-0003820 |
| 4132 | JANSSENBIO-PL_2-0003821 |
| 4335 | JANSSENBIO-PL_2-0003957 |
| 4352 | JANSSENBIO-PL_2-0003973 |