UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, et al., ex rel. JULIE LONG, <br><br> Plaintiffs, <br><br> v. <br><br> JANSSEN BIOTECH, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br> Civil Action No. <br> 16-12182-FDS |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO STRIKE SUPPLEMENTAL EXPERT REPORTS

**SAYLOR, J.**

This is a *qui tam* action alleging that a pharmaceutical company unlawfully provided certain services to physicians who prescribed its medications. Relator Julie Long sued defendant Janssen Biotech, Inc., a company that manufactures and sells Remicade and Simponi ARIA, two infusible medications used to treat various conditions. She contends that the services constituted kickbacks in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), which in turn resulted in the payment of false claims in violation of the False Claims Act, 31 U.S.C. § 3729(a).

On February 20, 2026, defendant filed a motion to strike the supplemental expert report of Dr. Meredith Rosenthal, one of relator's experts. (Dkt. Nos. 551, 552). On March 5, 2026, defendant filed an "Emergency Motion to Bar Relator from Serving a Second Out-of-Time Expert Report and to Compel Relator to Seek Leave of Court Prior to Expanding Court-Imposed Deadlines." (Dkt. No. 570). Both motions object to certain amendments to Dr. Rosenthal's expert report that relator served following the taking of her deposition.

In essence, the amendments sought to correct certain errors that Dr. Rosenthal made in her damages calculations in her initial report. The mistakes involved both incorrectly including certain physician practices in a control group and using the incorrect timing for when the treatment began. (*See* Dkt. Nos. 571-1, 571-2). Defendant contends that these corrections are not minor or technical, but are instead improper attempts to supplement Dr. Rosenthal's opinions after defendant pointed out the errors at her deposition.

Two somewhat countervailing principles are at issue here. On the one hand, Rule 26(e) does not merely permit, but in fact requires, a party to "supplement or correct" an expert report that is "incomplete or incorrect." Fed. R. Civ. P. 26(e). At the same time, however, a party cannot use a "supplemental" expert disclosure as a means to strengthen an expert's opinion following potentially damaging deposition testimony. *See, e.g.*, *Martinez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 283-84 (1st Cir. 2009).

Under the circumstances presented here, and despite considerable misgivings, the Court will permit the supplementation and will not order that it be struck. Nonetheless, defendant will be given a fair opportunity to cure any resulting prejudice, with reasonable attorney's fees and expenses to be borne by relator.

**I.      Background**

Dr. Meredith Rosenthal is a professor of health economics and policy at the Harvard T.H. Chan School of Public Health. (Dkt. No. 561-4 at 7). She was retained by relator to provide expert testimony concerning causation—that is, whether the allegedly unlawful services that defendant provided to certain medical practices caused them to prescribe more of defendant's products. She also provided expert testimony as to the value of the claims for those products that were submitted to Medicare and the damages the government allegedly suffered as a result. (*Id.* at 8).

As relevant here, the deadline for relator to designate her experts and provide their reports was July 7, 2025, and the deadline for relator to designate any rebuttal experts and provide their reports was November 26, 2025.  (Dkt. Nos. 473, 480).  Dr. Rosenthal's report was served on July 7, 2025.  (Dkt. No. 552 at 2).

Dr. Rosenthal was deposed by defendant on January 22, 2026.  (*Id.*).  At the deposition, defendant's counsel pointed out several errors in her calculations.  (Dkt. No. 552-1 at 5-6, 8).

The first error "relates to two practices that [Dr. Rosenthal] now [understood] received more than two of the allegedly unlawful site of care programs, thereby making them ineligible to be part of the control group in [her] model."  (Dkt. No. 571-1 ¶ 2).[1]  The second error was that her model apparently treated a practice as being "tainted"—that is, to have been the subject of the alleged kickbacks—as of the quarter in which it received its first ABS call from defendant, when she intended the model to treat a practice as "tainted" as of the quarter in which it received its *second* ABS call from defendant.  (*Id.* ¶ 3).  Correcting those errors also led Dr. Rosenthal to revise her estimate for the size of the treatment effect and for total damages.  (*Id.* ¶¶ 4-5).  The cumulative effect of the two errors was substantial.

On  February 11, 2026, relator served an amendment to Dr. Rosenthal's initial report, which corrected the two errors.  (Dkt. No. 571-1 at 3).

On February 20, 2026, defendant filed a motion to strike the amendments to the expert report on the ground that they were untimely and improper under Rule 26.  (Dkt. Nos. 551, 552).

On March 5, 2026, relator served a second amendment to Dr. Rosenthal's report.  (Dkt. No. 571-2).  The second amendment sought to correct a further error that was introduced in Dr.

---

[1] In her second amendment, Dr. Rosenthal indicated that this should have read "two or more of the allegedly unlawful site of care programs," the result of a "typographical error" on her part.  (Dkt. No. 571-2 ¶ 1).

Rosenthal's first amendment to her report; she had calculated her damages estimate for two practices beginning from the first date they received any Site of Care program, rather than the first date they received an at-issue Site of Care program. (*Id.* ¶ 2). Correcting that error led Dr. Rosenthal to adjust downward her damages estimates. (*Id.* ¶¶ 4-5).

Also on March 5, 2026, defendant filed an emergency motion to bar relator from serving Dr. Rosenthal's second amended report. (Dkt. No. 570). Relator opposed both motions on March 6, 2026, and defendant filed a reply in support on March 10, 2026. (Dkt. Nos. 571, 572).

## II.   Legal Standard

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert testimony. "[A] party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence . . . ." Fed. R. Civ. P. 26(a)(2)(A). If the witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the party must also submit a "written report" with numerous detailed facts, data, exhibits, and other items. Fed. R. Civ. P. 26(a)(2)(B).

"A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). As with all disclosures made under Rule 26(a), parties must "supplement or correct" their expert disclosures "in a timely manner" if a party learns of an omission or error unknown to the other party or "as ordered by the court." Fed. R. Civ. P. 26(e)(1). "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

## III.   Analysis

The issue here is whether Dr. Rosenthal's two amendments are properly considered mere supplemental reports, which would be permissible as long as they were provided "in a timely

manner," or whether they are instead substantively new (and untimely) reports that should be struck.

It is certainly true that Rule 26(e) does not give parties the freedom to modify expert reports at will.

> Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment. Courts distinguish "true supplementation" (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by "supplementing" an expert report with a "new and improved" expert report.

8A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2049.1 (3d ed. 2026) (quoting *Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 630-31 (E.D.N.C. 2008)). Stated otherwise, "Rule 26(e) is not a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 451 (S.D.N.Y. 2017) (citation modified); *see also Martinez-Serrano*, 568 F.3d at 282-84 (upholding district court's decision to exclude expert opinion first disclosed in "final addendum" provided after expert's deposition).

On the other hand, courts have found that updates to expert reports that merely "correct[] mathematical errors that . . . have only a minor impact on the results and do not change the substantive conclusions" do not violate Rule 26. *See Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1239-40 (W.D. Wash. 2018) (citation modified). The First Circuit has suggested that the dividing line lies between "the propagation of a brand-new theory" in a supplemental report, where "preclusion [is] well within the ambit of the district court's discretion," and "a refinement of an existing theory," where it may not be. *Martinez-Serrano*, 568 F.3d at 283-84. Thus, whether the supplemental reports at issue here are permissible largely turns on whether

5

they are better viewed as "refinement[s]" of Dr. Rosenthal's initial report or whether they are, in substance, the introduction of an entirely new opinion. *Id.*

The amendments to Dr. Rosenthal's calculations are not simply corrections to arithmetical calculations. The amendments include removing some sites from the control group and changing the dates from when the treatment effects began to be calculated, both of which are key elements of the econometric model she created. But they reflect a correction to inputs only; they are not alterations to her methodology. As a result, in the Court's view, the amendments are closer to "corrections of mathematical errors" than to fundamental changes in her opinions. *See Moussouris*, 311 F. Supp. 3d at 1239. And that is true despite the fairly large bottom-line impact of the errors. Accordingly, this does not appear to be a situation in which relator is engaging in "gamesmanship" in order to avoid summary judgment. 8A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2049.1 (3d ed. 2026).

That view is strengthened by the similar decision of another district court under analogous circumstances. In that case, the plaintiff's damages expert produced an initial report that calculated that the plaintiff had suffered a particular amount of damages as a result of the defendant's breach of contract. *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 34, 37 (D.D.C. 2009). Following the defendant's deposition of the plaintiff's expert, the plaintiff informed the defendant that the expert "was revising his calculation and would submit a revised report." *Id.* at 38. The revised report changed "the inputs and calculations within the damage model" while keeping the model structure the same. *Id.* After the defendant challenged the revised report as an improper supplementation, the court declined to exclude the expert report as untimely. *Id.* at 39-40. It reasoned that the report was a proper supplementation under Rule 26(e) because the expert "did not wholly rework his damages claim," but instead "used the same

methodology" and simply "changed the inputs and calculations to produce a more complete and accurate report." *Id.* at 39.  The court also found it relevant that the defendant "had the opportunity to depose [the expert] on his supplemental report and submit a rebuttal report." *Id.*

As in *Capitol Justice*, the amendments at issue here were not changes to methodology, but corrections to inputs into Dr. Rosenthal's model—whether certain practices qualified for inclusion in the control group and from what point in time the treatment effect of her model should be calculated—and revisions to her calculations as a result.

Furthermore, the amendments are likely not so significant that exclusion of the updated calculations would be warranted at trial.  As discussed, although the First Circuit has upheld exclusion of expert testimony where an expert's opinion was not disclosed until a "final addendum" to the expert's report, it has not found that exclusion was warranted where an expert makes more minor amendments to her report.  *See Martinez-Serrano*, 568 F.3d at 282-83.  And the First Circuit has declined to require the exclusion of expert testimony even under more extreme circumstances, such as where a defendant designated a new expert three months before trial, following the death of its original expert, and defendant failed to serve a supplemental expert report.  *See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 10-11 (1st Cir. 2001).  It is thus unlikely that Dr. Rosenthal would be barred from referring to the updated calculations at trial.

To be sure, the circumstances presented here are troubling.  Dr. Rosenthal made two substantial errors, and a third after she amended her report for the first time.  The defense, not relator's counsel or Dr. Rosenthal herself, discovered her negligence.  And instead of suffering an adverse consequence, or such as exclusion of the amendments, she is being permitted to fix the problems.  Nonetheless, the Court concludes that the amendments should be considered

supplemental disclosures covered by Rule 26(e). Furthermore, because relator provided the amendments within several weeks of the deposition at which Dr. Rosenthal learned that there were errors in her initial report, and in any event before the parties' pretrial disclosures are due, the Court finds that the report was supplemented "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A), (e)(2). As a result, the Court will not strike the amendments.

Nonetheless, there is obvious prejudice to defendant in terms of inconvenience and expense, as well as potential prejudice in terms of disruption and delay. In fairness, therefore, defendant should have an opportunity to cure any prejudice that will result from the supplementation. That may include redeposing Dr. Rosenthal about the amendments; having an opportunity to supplement defendant's own expert reports to account for the changes to her report; or undertaking any other measures that are reasonably calculated and proportionate to cure any prejudice resulting from the amendments. In addition, of course, defendant will be permitted to cross-examine her at the trial as to her lack of diligence.

Furthermore, because defendant is likely to incur additional expenses, such as attorney's fees and expert-witness fees, fairness dictates that those expenses should be borne by relator to the extent they are reasonable under the circumstances. Other courts have similarly required a party that supplements an expert report following the close of discovery to pay any costs borne by the opposing party in responding to that supplement. *See Evans v. Krook*, 680 F. Supp. 3d 1080, 1109 (D. Minn. 2023); *Richardson v. Korson*, 905 F. Supp. 2d 193, 201 (D.D.C. 2012). Relator must also, of course, ensure that the materials supporting Dr. Rosenthal's amendments, including the underlying data and code, have been provided to defendant.[2]

---

[2] The Court does not have sufficient information before it to determine how the amendments to Dr. Rosenthal's report might impact the ongoing summary judgment briefing schedule. The Court is willing to entertain proposals for modifications to the briefing schedule, including potentially allowing supplemental briefs, if either party is able to demonstrate that they are necessary or appropriate.

## IV. Conclusion

For the foregoing reasons, defendant's "Motion to Strike Supplemental Expert Report of Dr. Meredith Rosenthal" (Dkt. No. 551) and defendant's "Emergency Motion to Bar Relator from Serving a Second Out-of-Time Expert Report and to Compel Relator to Seek Leave of Court Prior to Expanding Court-Imposed Deadlines" (Dkt. No. 570) are hereby DENIED subject to the conditions outlined in this order.

**So Ordered.**

Dated:  March 16, 2026

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge