**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA *et al.* *ex rel.* JULIE LONG, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 16-CV-12182-FDS |
| v. | ) ) ) | |
| JANSSEN BIOTECH, INC., | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF-RELATOR'S MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL FULL DISCLOSURE OF LEGAL REVIEWS OR, IN THE**
**ALTERNATIVE, TO PRECLUDE RELIANCE ON PRC APPROVAL**

Plaintiff-Relator Julie Long ("Relator") respectfully moves to compel Defendant Janssen Biotech, Inc. ("Janssen") to produce attorney-client communications and legal analyses concerning whether its provision of the remuneration at issue, free business advisory services, to physician practices to induce prescriptions and federally reimbursable claims for two of its products complied with the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b. The Court previously instructed that although it found no waiver of attorney-privilege during discovery, "when and if" Janssen attempts to use the Promotional Review Committee ("PRC") approvals to suggest lawyer approval, the Court will address the issue. *See* Feb. 29, 2024 Order (Doc. No. 435) at 4-5. When and if are now upon us. This motion is ripe and necessary because Janssen is now affirmatively relying on its PRC approvals as evidence that its conduct was legal. Janssen's PRC Standard Operating Procedures, which Janssen cites in support of its Summary Judgment Motion, as well as other evidence, make clear the PRC's review of the SOC Program materials for AKS compliance was at its core a legal review: the PRC's legal member was specifically responsible for ensuring compliance with "fraud and abuse laws" including the AKS, while the other PRC members were tasked with FDA regulatory compliance, medical accuracy, and internal

company policies. *See* Doc. No. 539-69 at JANSSENBIO-018-00001269. Janssen cannot implicitly present the PRC's approval as evidence of legal compliance while simultaneously shielding the legal advice that was the foundation of that approval. How can the truth-seeking process tolerate a defendant telling a jury that a committee reviewed and approved its conduct while concealing the actual reviews that gave that approval meaning? Relator respectfully requests that the Court prohibit any such attempt by Janssen.

## I.  INTRODUCTION

This motion presents the precise issue the Court previously reserved but did not decide: whether Janssen may affirmatively rely on its PRC approvals and process as evidence of compliance with the law, while simultaneously withholding the underlying legal advice that gave that "approval" its meaning.

In its prior rulings, the Court denied Relator's earlier motions to compel PRC-related attorney-client communications without prejudice, holding only that Janssen's mere production of PRC approvals in discovery, without more, did not constitute an express or implied waiver of attorney-client privilege. *See* Feb. 29, 2024 Order (Doc. No. 435) at 4-5; Apr. 7, 2022 Order (Doc. No. 303) at 4. The Court emphasized that those rulings were limited to the discovery context and made clear that "[t]he use of the PRC documents … is a different question, which the Court does not now decide," recognizing "[i]t is certainly arguable … that offering documents in evidence at trial that show that (1) the PRC approved the program, and (2) the PRC included lawyers, would have the practical effect of suggesting to the jury that lawyers had approved the programs." Feb. 29, 2024 Order (Doc. No. 435) at 5. As the Court instructed, "[t]hat, in turn, might constitute an implied waiver, requiring the production of otherwise-privileged information." *Id*. The Court committed to "address that issue when and if it arises." *Id.* The issue has now arisen.

Equally significant, the Court's February 29, 2024 Order credited a series of explicit representations Janssen made to avoid waiver. Janssen represented, *inter alia*, that it "is not, and has no intention of ever … asserting or implying that its attorneys determined the programs were

legal." Feb. 29, 2024 Order (Doc. No. 435) at 4. As shown below, Janssen has now done precisely what it told the Court it would "never" do: it is using PRC approvals to imply that its attorneys reviewed the SOC Programs and determined they were legal. In its summary-judgment briefing and expert opinions, Janssen repeatedly invokes PRC approval as affirmative evidence that the materials and programs at issue were vetted and approved before use. *See, e.g.,* Doc. No. 539 at ¶¶ 29, 75. Those assertions are not neutral. By Janssen's own policies, which Janssen also presents in support of its summary judgment motion, PRC approval regarding the issues in this case relies heavily, if not exclusively, on the review and determination of a legal representative responsible for ensuring compliance with the AKS. Janssen thus seeks to present to the Court, and ultimately the jury, the fact of legal compliance approval while withholding the legal analyses, communications, and conclusions that purportedly support the approvals (or cast doubt on them).

Janssen attempts to avoid the consequences of this tactic by disclaiming reliance on advice of counsel. *See* Doc. No. 539 at ¶ 1 n.1. But labels do not control. As this Court has recognized, the critical question is not whether a defendant formally invokes an "advice of counsel" defense, but whether the defendant's approach has "the practical effect of suggesting to the jury that lawyers had approved" the challenged conduct. Feb. 29, 2024 Order (Doc. No. 435) at 5. The question is whether Janssen is using evidence in a way that implies legal approval while preventing Relator from testing that implication. It is. By invoking PRC approval as evidence of compliance and to negate scienter, Janssen necessarily invites the inference that its lawyers approved the legality of the challenged conduct – an inference supported by the PRC's structure and operating procedures. At the same time, Janssen seeks to block any inquiry into what its lawyers were told, what they analyzed, what risks they identified, or what conclusions they actually reached. The practical effect of this sword-and-shield approach is to allow Janssen to claim the benefit of legal approval without subjecting the substance of that approval to any scrutiny. Critically, a defendant need not formally assert an "advice of counsel" defense to trigger waiver. Where a "defendant seeks to introduce evidence, or argue to the jury, that the advice or

3

involvement of a lawyer tended to negate his *mens rea*," while not "a formal advice-of-counsel defense . . . may serve as a waiver of the attorney-client privilege." *United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014) (Saylor, J.).

The governing principles are straightforward, and "[t]he touchstone is fairness. . . ." *Id*. "[A] defendant cannot put his attorney's advice or involvement at issue in a case and then claim a privilege as to the details of that advice or involvement." *Id*. Indeed, as the First Circuit has emphasized, permitting such selective disclosure would allow a party to "selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003). This presents a fork in the road for Janssen. If Janssen wishes to rely on PRC approval as evidence that its conduct complied with the law, it must produce the legal advice and analyses that form the basis for that approval. If it chooses to maintain privilege, it must forgo any reliance on PRC approval as evidence of compliance.

Relator therefore respectfully requests that the Court order Janssen to produce the attorney-client communications and analyses concerning PRC review and approval of the SOC Programs and related materials, or, in the alternative, preclude Janssen from relying on PRC approval in support of its defenses.

## II.  BACKGROUND

### A.    Summary Of Relator's Allegations

Relator brings this qui tam action on behalf of the United States, alleging that Janssen caused significant damages to Medicare through an unlawful kickback scheme. Specifically, Janssen provided valuable business services and operational support to targeted physician practices at no cost to induce orders and sales of Remicade and Simponi ARIA, two drugs administered by infusion.[1]

---

[1] Infusible drugs, such as Remicade and Simponi ARIA, create a revenue opportunity for physician practices because when doctors infuse drugs in their offices they can earn a profit or

To maintain and grow sales of these drugs, Janssen employed Area Business Specialists ("ABSs") and outside consultants, including Xcenda and Akin Gump, to help rheumatology and gastroenterology practices open in-office infusion suites ("IOIs"), optimize their operations, and increase profitability. *See* Second Am. Compl. ("SAC") (Doc. No. 55) at ¶¶122-23, 135. Janssen provided this free practice management and infusion business support on an ongoing basis through consultative meetings known as "SOC Programs." *See id.* at ¶¶145-66. These programs addressed a wide range of topics, including billing and coding, regulatory compliance, payer contracting, scheduling, staffing, and infusion suite setup and optimization. *See* Relator's Response to Interrog. No. 2 (Doc. No. 539-37) at 9-11.

Because the SOC Programs helped physicians open, maintain, optimize, and grow their IOIs where they infused multiple drugs, not just Janssen's products, the services provided significant value extending well beyond Remicade and Simponi ARIA. *See* SAC at ¶¶8, 165-66, 173, 177-85. Nevertheless, Janssen's purpose in providing these free services was to induce physicians to prescribe and purchase its drugs. *See id.* at ¶¶186-88. By knowingly and willfully providing this unlawful valuable remuneration free of charge to induce prescriptions and sales of its drugs paid for by Medicare, Janssen violated the AKS. Because Medicare does not cover items or services resulting from an AKS violation, the bills for reimbursement for Remicade and Simponi ARIA submitted to Medicare by physicians who received the SOC Programs constituted false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729. In violation of the FCA, each such bill was accompanied by a false representation that the bill complied with the AKS. And because Janssen, through this kickback scheme, caused the submission of the false claims and accompanying false certifications of AKS compliance, it violated §§ 3729(a)(1)(A) and (B) of the

---

spread on each vial of medication infused (*i.e.*, the difference between the price the doctors pay to purchase the drug and the amount insurers, including Medicare, reimburse for the drugs), and the physicians can also charge patients and their insurers a fee for the infusion service. When physicians prescribe similar drugs that patients self-administer or take at home, the physicians earn no spread and cannot charge a service fee for infusing the drugs.

FCA.

**B.    Janssen Is Asserting The Attorney-Client Privilege To Block Disclosure And Examination Of The Legal Advice It Received Concerning The Legality Of Providing The SOC Programs To Physicians Free Of Charge To Induce Sales Of Remicade And Simponi ARIA**

To establish that Janssen violated the AKS, Relator is required to prove it acted willfully in providing remuneration to induce prescriptions of Remicade and Simponi ARIA paid for by Medicare. *See* 42 U.S.C. § 1320a-7b(b)(2). That is, Relator must show that Janssen knew that providing the SOC Programs to physician practices for free to induce sales of Remicade and Simponi ARIA was unlawful. *See United States v. Bay State Ambulance & Hosp. Rental Serv*., 874 F.2d 20, 33 (1st Cir. 1989) ("Willfully means to do something purposely, with the intent to violate the law, to do something purposely that law forbids.").[2]

In defending against Relator's allegation that it knew that providing the SOC Programs to induce sales of Remicade and Simponi ARIA was unlawful, Janssen has invoked the attorney-client privilege to prevent Relator from obtaining and examining the legal analyses relevant to this critical issue. Likewise, to avoid discovery of the legal advice it received concerning the legality of providing the SOC Programs for free to induce prescriptions and federally reimbursable claims, Janssen has represented that it is not going to present a defense regarding Janssen's subjective belief concerning whether the provision of the remuneration at issue was lawful or unlawful. *See* Feb. 29, 2024 Order (Doc. No. 435) at 4. In sum, Janssen is invoking the privilege as a shield to block discovery of highly relevant evidence that goes directly to a key issue in the case. **By doing so, Janssen should not be permitted to present any evidence or make any assertions that would imply or create an inference that it believed it was lawful to provide the SOC Programs**, **such as assertions that the programs and materials used in providing the programs were PRC approved.** Allowing Janssen to engage in such a tactic would unfairly

---

[2] The AKS expressly provides that a defendant "need not have actual knowledge of [the statute] or specific intent to" violate it. 42 U.S.C. § 1320a-7b(h).

distort the evidentiary record and mislead the factfinder while preventing Relator from obtaining the actual evidence that may show Janssen knew the conduct at issue violated the law.

**C.    Janssen Disclosed Fragments Of Legal Advice While Blocking Relator From Discovery Of That And Other Legal Advice It Received And Is Now Unfairly Using The Legal Advice In An Attempt To Gain A Benefit**

In providing each SOC Program, ABSs and Xcenda utilized written materials, typically a slide deck or iPad presentation, to facilitate the presentation of the business advice services provided during the programs. Under Janssen's policies, before these materials could be used during the presentation of the SOC Programs to customers, they had to be reviewed and approved by an internal committee referred to as the PRC. The PRC was comprised of employees in different functional areas of the company, including at least one attorney from the legal department. Under Janssen's policies and procedures, the legal reviewer is responsible for ensuring that proposed materials and programs comply with applicable Medicare requirements and federal fraud and abuse laws, including the AKS and FCA. *See, e.g.,* Doc. No. 539-69 at JANSSENBIO-018-00001269. Thus, when the PRC approved a slide deck or iPad presentation that the ABSs or outside consultants used in providing SOC Programs, that document or visual aid was approved by an attorney from Janssen's legal department.

During discovery, Janssen produced numerous PRC approval forms reflecting the attorney member's approvals of the SOC Programs. Examples of the PRC approval forms showing the attorney member's approvals were presented as exhibits to Relator's January 24, 2024 Motion to Compel. *See, e.g.,* Exhibits 4 - 15 to Relator's Mem. in Support of Mot. to Compel (Doc. No. 427) (filed under seal). Those forms reported the attorney's ultimate advice (his or her approval to use the materials) but did not include the underlying review or reasoning.

Recognizing that Janssen was selectively disclosing legal advice that would unfairly create the appearance that the company and its counsel believed that providing the SOC Programs was lawful, during Phase I discovery Relator moved to compel full disclosure of all legal analyses regarding the lawfulness (or unlawfulness) of providing the SOC Programs. *See* Jan. 24, 2024

Mot. to Compel (Doc. No. 426); Jan. 28, 2022 Mot. to Compel (Doc. No. 263). The Court denied those motions without prejudice, giving significant weight to the fact that Janssen had at that point merely **disclosed** the PRC approvals through discovery, including documents showing the attorney PRC member's approvals, but had not **used** the approvals to gain an unfair advantage. *See* Feb. 29, 2024 Order (Doc. No. 434) at 4-5; Apr. 7, 2022 Order (Doc. No. 303) at 4. In essence, the Court found that Relator's earlier complaints concerning Janssen's selective disclosure of privileged information were premature, while making clear that the use of PRC approvals as substantive evidence presented "a different question, which the Court does not now decide." Feb. 29, 2024 Order (Doc. No. 435) at 5.

The case is now at the summary judgment stage, and it is clear from Janssen's repeated assertions in support of it summary judgment motion that the SOC Program materials were approved by the PRC that it is now affirmatively and unfairly using the attorney PRC member's legal advice for its benefit – to imply or create an inference that Janssen's attorneys believed it was lawful to provide the SOC Programs. Consequently, the unfairness of Janssen's use of the privilege as a sword and shield is now obvious and must be remedied to prevent unfairness and substantial prejudice.

### III.  ARGUMENT

It is well-established that the attorney-client privilege is not limitless. "The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)* ("*XYZ Corp.*"), 348 F.3d 16, 22 (1st Cir. 2003) (citations omitted). As a result, "[w]hen otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *Id.* (citation omitted).

The First Circuit has instructed that, "because it presents a considerable obstacle to 'the search for truth,' courts must construe the privilege 'narrowly.'" *United States v. Spinefrontier, Inc.*, 160 F.4th 212, 220 (1st Cir. 2025) (quoting *XYZ Corp.*, 348 F.3d at 22). The privilege may be

waived expressly or impliedly. *See id.*; Feb. 29, 2024 Order (Doc. No. 435) at 2. An express waiver occurs through a "deliberate disclosure of a privileged communication, where no privilege protects this further disclosure ..." Feb. 29, 2024 Order (Doc. No. 435) at 2 (quoting *United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998)). An implied waiver results when "the party asserting the privilege place[s] protected information in issue for personal benefit through some affirmative act, and the court [finds] that to allow the privilege to protect against disclosure of that information would [be] unfair to the opposing party." Feb. 29, 2024 Order (Doc. No. 435) at 2 (quoting *XYZ Corp.*, 348 F.3d at 24); *Spinefrontier*, 160 F.4th at 220. "'Logic and fairness' are the touchstones of an implied-waiver analysis." *Spinefrontier*, 160 F.4th at 220. Critically, under this framework, "it is not necessary for purposes of proving the reliance element to show that the defendant has stated an intent to introduce or use evidence of attorney communications at trial. Rather, it is sufficient if the defendant's defense relies on certain facts that can only be tested or rebutted if the adversary is given access to the privileged material." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 276 (D. Mass. 2015) (citing *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)). When a defendant invokes the attorney-client privilege to suppress evidence concerning a critical issue while concurrently placing the nature of its lawyers' advice in issue, an implied waiver is required to ensure fairness. Otherwise, defendants would be able to "kidnap the truth-seeking process" by "selectively disclos[ing] fragments helpful to its cause [while] entomb[ing] other (unhelpful) fragments." *XYZ Corp.* 348 F.3d at 24; Feb. 29, 2024 Order (Doc. No. 435) at 2. While implied waivers most commonly arise when an advice of counsel defense is asserted, they also arise whenever the privilege is used as both a sword and shield in an attempt to gain an unfair advantage and impede the truth-seeking process.

Whether there has been an implied waiver can turn on whether the defendant is raising an objective or subjective defense. Where a defendant argues that its conduct was *actually* lawful, which is an objective defense, a waiver may not be warranted because such a defense depends on objective facts rather than counsel's advice. *See Bacchi*, 110 F.Supp. 3d at 277 (citing *Banco*

*do Brasil, S.A. v. 275 Washington Street Corp.*, No. 09–11343, 2011 WL 3208027, *3 (D. Mass. July 27, 2011) ("finding no waiver where bank's counsel intended to testify as to the steps he took to obtain regulatory approval because, on those facts, bank's defense was not that it was excused from performing an obligation because it relied on advice of counsel, but rather that it actually had performed what it was required to do"); *Henry v. Quicken Loans*, 263 F.R.D. 458, 469 (E.D. Mich. 2008) ("distinguishing argument that conduct actually was legal, which would not result in any waiver, from argument that party acted in good faith belief that its actions were legal"). But where a defendant invokes the involvement of counsel to support a claim that it *believed* its conduct was lawful, which is a subjective defense, the analysis changes fundamentally because the defendant's statement of mind, informed by counsel's advice, becomes directly relevant. *See id*. Janssen's defense falls squarely into the latter category: it invokes PRC approval not merely to argue that its conduct was objectively lawful, but to negate the scienter element of the AKS by showing that Janssen did not *know* its conduct was unlawful. That is a subjective defense that necessarily implicates what Janssen's lawyers analyzed and concluded.

In Janssen's summary judgment motion, it uses fragments of legal advice, *i.e.*, the PRC's approvals of the materials ABSs and outside consultants both utilized in providing the SOC Programs, which create the appearance that an attorney approved the SOC Programs after reviewing them for compliance with the AKS and correspondingly that Janssen and its attorneys believed that providing the SOC Programs was lawful. In its Statement of Undisputed Material Facts submitted in support of its summary judgment motion, Janssen makes the following assertions, as well as many others, concerning the PRC approvals:

- "Janssen utilized compliance policies that required all promotional materials (including the slideshow presentations used during the SOC Programs) to be reviewed and ***approved by the Promotional Review Committee*** for compliance with Janssen's HCC policies before they were used with customers. Ex. 69 (July 27, 2010 SOP – Submission, Review, and Approval of Promotional Materials, JANSSENBIO-018-00001266) at -1270; Ex. 17 (Long Dep.) at 72:25-73:15; Ex. 31 (Walls Dep.) at 107:9-108:2; Ex. 64 (Zalesky Dep.) at 355:25-356:4; Ex. 70 (Excerpts of Def. Janssen Biotech, Inc.'s Supp. Objs. & Resps. to Pl.-Relator Julie Long's Interrogs. (May 1, 2025)) – Interrog. No. 2." (Def. SUMF (Doc. No. 539) at ¶ 75).

10

- "The slideshow presentations used during the SOC Programs were **approved by Janssen's Promotional Review Committee** ("PRC") for ABS use with health care professionals. Ex. 17 (Long Dep.) at 72:25-73:15; Ex. 21 (Knepp Dep.) at 47:12-48:4." (*Id.* at ¶ 29).

- "Janssen's training stated that ABSs could provide "[g]eneral practice management information" if it was within or based on company **approved** material. Ex. 74 (2011 Compliance Guidelines for Site of Care 360 Speakers) at -331; Ex. 17 (Long Dep.) at 62:18-64:10; Ex. 72 (2014 ABS Speaker Training) at -470; Ex. 76 (2015 CPRA Training) at -603." (*Id.* at ¶ 84).

Janssen similarly repeatedly references the PRC approvals in its memorandum in support of its

motion for summary judgment:

- "The ABS role involved promoting Janssen's drugs and increasing sales by improving patient access to infusions of Janssen's drugs and reducing both pre-needle attrition (i.e., a patient receives a prescription but does not receive the first infusion) and post-needle attrition (i.e., a patient begins but discontinues infusions). (SUMF ¶¶ 21-25). In this role, ABSs (and Xcenda representatives) provided company-**approved** programming utilizing slideshow presentations **approved by a multi-disciplinary Promotional Review Committee** ("PRC"). (SUMF ¶¶ 16, 29, 75, 78-79)." (Def. Mem. in Support of Mot. for Summary Judgment (Doc. No. 538) at 5).

- "Relator's suit fails at every level, and Janssen is entitled to summary judgment. To begin, there is no evidence that ABSs did anything more than provide information that was part of an **approved** slideshow." (*Id.* at 1).

- "Given this factual record, Relator's FCA claims necessarily fail as a matter of law unless she can prove that Janssen violated the AKS when an ABS delivered the substance of certain **approved** slideshow presentations to a medical provider (as noted above, this in-person delivery of at-issue presentations is referred to as the "SOC Programs"). (*Id.* at 9-10).

In total, Janssen references the fact that SOC Program materials were "approved" by its

PRC nine times in its Statement of Undisputed Material Facts (*see* Def. SUMF (Doc. No. 539) at

¶¶ 29, 37, 58, 75, 78, 79, 84, 116, 121), eleven times in its brief (Def. Mem. (Doc. No. 538) at 1,

2, 5, 8, 9, 13), and numerous additional times in its reply in support of Statement of Undisputed

Material Facts.

In support of its assertion in paragraph 75 of the Statement of Undisputed Material Facts

that "Janssen utilized compliance policies that required all promotional materials (including the

slideshow presentations used during the SOC Programs) to be reviewed and **approved by the**

**Promotional Review Committee** for compliance with Janssen's HCC [("health care

compliance")] policies before they were used with customers," Janssen cites to its July 2010

11

Standard Operating Procedure for the PRC's review of promotional materials ("2010 PRC SOP") and submitted a copy of the 2010 PRC SOP in support of its motion. *See* Def. SUMF at ¶ 75 (citing Ex. 69 (July 27, 2010 SOP – Submission, Review, and Approval of Promotional Materials, JANSSENBIO-018-00001266) at -1270)). The 2010 PRC SOP assigns to the "legal" member of the PRC responsibility for ensuring that materials comply with applicable Medicare requirements and federal laws, including "fraud and abuse laws," the FCA, and Medicare requirements, which clearly included compliance with the AKS. *See* Doc. No. 539-69 at JANSSENBIO-018-00001269. The inference naturally drawn from this document, which Janssen *itself uses* to support its summary judgment arguments, is that the attorney PRC member reviewed the SOC Program materials for compliance with the AKS.

Janssen's assertion in paragraph 75 of the SUMF that the SOC program materials were "reviewed and approved by the Promotional Review Committee for compliance with Janssen's HCC policies before they were used with customers" coupled with its use of the 2010 PRC, which states that the legal PRC member "ensures that PRC reviewed materials comply" with HCC policies (in addition to "fraud and abuse laws" and the FCA), further implies that the PRC attorney reviewed the materials for compliance with the AKS. Janssen's HCC policies, some of which are cited by Janssen in support of its motion, are the company's internal standards of conduct that it states employees were required to follow in order for the company to conduct its business in compliance with applicable laws, including the AKS. The internal compliance policies thus reflect Janssen's stated interpretations of conduct that the AKS prohibits. For example, in its Statement of Undisputed Material Facts, Janssen cites the "Policy Document" for "Consulting Services Provided to Customers" that was in effect in July 2011. *See* Def. SUMF at ¶ 73 (citing Ex. 65 (Doc. No. 539-65)). This relevant policy "applie[d] to product related items and services that are available to all Health Care Professionals (HCPs) free of charge …." and set forth the criteria that Janssen stated must be met in order for employees to be able to provide "product-related items and services." Doc. 539-65 at JANSSENBIO-018-00000521. This policy clearly relates to the AKS

and the U.S. Health & Human Services Office of Inspector General's ("OIG") guidance concerning the provision of "product support services," in which the OIG instructs that such services raise kickback concerns if they have substantial independent value to health care providers. *See* OIG Compliance Program Guidance for Pharmaceutical Manufacturers 68 Fed. Reg. 23731, 23735 (May 5, 2003). Additionally, with regard to "Law Department Review," the policy states:

> Law Department review and approval is required whenever the company:
>
> - Seeks to offer a new product-related item or service or modifies an existing product-related items or service
>
> - Offers multiple product-related items or services that must be evaluated as a whole.
>
> The company may not offer additional product-related items or services to a customer beyond those approved by the Law Department without further Law Department review and sign-off.

Doc. 539-65 at JANSSENBIO-018-00000524.[3]

Accordingly, by asserting that the SOC Program materials were "reviewed and approved by the Promotional Review Committee for compliance with Janssen's HCC policies before they were used with customers" (*see* Def. SUMF at ¶ 75) and providing the 2010 PRC SOP and HCC policy, Janssen – whether intentionally or not – invites the inference that its lawyer reviewed and approved the SOC Programs for AKS compliance, while blocking Relator from any discovery that could test or rebut that inference.

Additionally, Janssen's expert, Greg Demske, affirmatively invokes and relies upon the PRC approvals. He describes the PRC as a "cross-functional" and "multi-disciplinary group" that reviewed materials "to ensure medical accuracy and regulatory compliance with applicable laws, regulations, and guidelines," while also citing the very same PRC SOP identifying the legal

---

[3] The former Vice President of Johnson & Johnson Health Care Compliance, who created the PRC, testified that the "Law Department review" requirement in the HCC policy concerning providing product-related services to customers was satisfied through the lawyer's PRC review. *See* Christopher Zalesky Dep. (Doc. No. 543-5) at 225:23-227:13 (acknowledging that the "law department review and approve" requirement for product-related services was "in my experience…almost always…the law department member who sat on the…PRC.").

member's responsibility for ensuring compliance with the law that is central to this case.[4] Demske Report (Doc. No. 602-7) at 23-24. Janssen asserted in discovery that it may rely on the PRC to support its asserted "good faith and reasonable efforts to comply with the Anti-Kickback Statute and False Claims Act." Doc. No. 430 at 15. Now, through its summary judgment briefing and expert opinions, Janssen has confirmed it will do exactly that. Consequently, the unfairness of Janssen's use of the privilege as a sword and shield is now obvious and must be remedied to avoid substantial prejudice.

The pattern of Janssen's conduct demonstrates a deliberate strategy to gain the evidentiary benefit of legal review while insulating the substance of that review from scrutiny. Janssen's expert invokes the "cross-functional" and "multi-disciplinary" nature of the PRC while citing the very document that assigns the PRC's legal member with responsibility for determining AKS compliance. This is not inadvertent; it is a calculated effort to suggest to the factfinder that lawyers blessed the SOC Programs without allowing any examination of what those lawyers actually analyzed or concluded. Janssen's selective disclosure triggers waiver. *See XYZ Corp*. 348 F.3d at 24. The remedy is straightforward. Janssen must either produce the legal analyses underlying PRC approval or forgo reliance on that approval.

## A.    The PRC Approvals Constitute Legal Advice

The PRC approvals constitute legal advice. The attorney PRC member's individual approval was a required and integral – if not exclusive – component of the PRC's relevant approvals, and the SOP Janssen relies on assigns that attorney responsibility for ensuring compliance with "fraud and abuse laws," including the AKS and FCA. *See* Def. SUMF at ¶ 75 (citing Ex. 69 (July 27, 2010 SOP – Submission, Review, and Approval of Promotional Materials, JANSSENBIO-018-00001266) at -1269); Doc. No. 539-69 at JANSSENBIO-018-00001269.

---

[4] Demske has not yet been deposed, explaining the lack of any reference to his testimony in any of the filings submitted to the Court.

Because the attorney PRC member's approval was a necessary and integral component of the committee's approval, the committee's approval reflects and constitutes legal advice. Indeed, by asserting privilege over the underlying analyses, Janssen has effectively conceded this.

Nor is this a case in which a defendant has merely disclosed that lawyers happened to be on a committee that reviewed materials. Janssen has gone further and disclosed the *results* of those reviews: the committee's *approvals* of the materials used in providing the SOC Programs. That is legal advice, regardless of whether Janssen labels it as such. A defendant cannot use the fact of legal approval to support its defenses while simultaneously invoking privilege to prevent any examination of what that approval was based on. Janssen wants the jury to draw the favorable inference that lawyers reviewed and blessed its provision of the programs without allowing Relator to test whether that inference has any basis in fact.

Additionally, by referring to the PRC as "multi-disciplinary" and "cross-functional," Janssen is effectively telling the Court and jury that legal was part of the approval. Any factfinder who hears that the SOC Programs were reviewed and approved by a "multi-disciplinary" or "cross-functional" committee (which included a lawyer, regulatory, and HCC reviewer) within the largest pharmaceutical company in the world will naturally infer that lawyers were involved in that approval. And they would not be wrong. It would be pure fiction to present PRC approval to the jury as if it did not include, indeed, as if it did not centrally involve, legal review of the AKS issues at the heart of this case.

Janssen's anticipated rejoinder that it has never told the Court that the PRC included lawyers and that only Relator has made that assertion (*see* Doc. No. 591 at 14-15) cannot withstand scrutiny. The PRC's composition is established by the very documents Janssen itself cites and submits in support of its summary judgment motion. The 2010 PRC SOP that Janssen relies on specifies the PRC's membership and assigns specific responsibilities to the "legal" member including the specific responsibility of "[e]nsur[ing] that PRC reviewed materials comply

15

with applicable federal laws … including, but not limited to, those relating to … Medicare and Medicaid requirements, Health Care Compliance, False Claims Act, [and] … fraud and abuse laws." Doc. No. 539-69 at JANSSENBIO-018-00001269. The remaining PRC members, from Regulatory, Medical, and HCC, were respectively tasked with ensuring compliance with FDA advertising and promotion regulations, medical and scientific accuracy, and adherence to internal J&J policies and guidelines. *Id.* None of those other functions encompassed review of the SOC Program materials for compliance with the AKS and FCA. Accordingly, when Janssen repeatedly touts that the PRC "approved" the SOC Program materials for "compliance," it is necessarily asserting that its lawyer reviewed and approved those programs for compliance with the AKS — the statute at the heart of this case. In sum, PRC review and approval is legal review and approval in the context of the relevant AKS issues in this case.

Janssen cannot invoke PRC approval as evidence of legal compliance while pretending the PRC's attorney members are invisible to the factfinder. The Court anticipated precisely this problem when it observed that "offering documents in evidence at trial that show that (1) the PRC approved the program, and (2) the PRC included lawyers, would have the practical effect of suggesting to the jury that lawyers had approved the programs." Feb. 29, 2024 Order (Doc. No. 435) at 5. Both predicates are now met by Janssen's own summary judgment submissions.

Because Janssen is using the fact that the SOC Program materials were PRC "approved," it cannot conceal that the attorney member of the PRC was integrally involved in the approval decisions, and it must disclose the actual legal analyses that were performed. Janssen's use of the PRC approvals expressly waived or necessitates an implied waiver of the attorney-client privilege.

### B.    Janssen's Use Of PRC Approvals Misleads The Court And, If Permitted, The Jury Into Drawing Unproved Inferences That Janssen's Attorneys Believed It Was Lawful To Provide The SOC Programs

Janssen's deliberate and strategic disclosure and use of legal advice in the form of the PRC approvals is an express waiver of the attorney-client privilege. Alternatively, even if the Court

finds Janssen did not expressly waive the attorney-client privilege by affirmatively using the PRC approvals, an implied waiver is necessary to ensure fairness and remedy the materially misleading and unfair record Janssen has improperly created.

Janssen's repeated touting that the SOC Program materials were "approved" is an obvious attempt to lead the Court and eventually the jury to conclude that Janssen believed that providing the SOC Programs was lawful. Yet while repeatedly extolling PRC approval in its summary judgment papers, Janssen conceals all information concerning the attorney PRC member's approvals by invoking the attorney-client privilege. This is precisely the "sword and shield" approach rejected by the First Circuit. *XYZ Corp*. 348 F.3d at 24. The truth, which Janssen conceals, may be one of many other possibilities, for example: the attorney PRC member did not review the SOC Program materials for compliance with the AKS at all; or the attorney was provided inaccurate or incomplete information about the programs; or the attorney's "approval" was a perfunctory check-the-box exercise involving no substantive AKS analysis; or the attorney expressed concerns about AKS compliance but was overruled or ignored; or the attorney approved the materials based on conditions Janssen disregarded in the field; or the attorney was aware the SOC Programs violated the law and approved the materials anyway.  Because Janssen blocks Relator (and the Court) from examining the actual analyses underlying the attorney PRC member's approvals, Relator has no way to test or disprove Janssen's assertions or the remarkable inferences the jury will draw from them.

If Janssen is permitted to tell the jury it maintains a committee to approve materials before they can be utilized in the field and that the committee approved the use of the materials the ABSs and outside consultants utilized in providing the SOC Programs, there is a strong likelihood that this information concerning the PRC's approvals will prejudice Relator by leading to the following inferences:

(1)    An attorney was on the committee who reviewed the SOC Program materials for compliance with the AKS;

(2)     Because the committee approved the SOC Program materials, the attorney concluded that the SOC Program materials complied with the AKS; and

(3)     Janssen, relying on that approval, reasonably believed the SOC Programs complied with the AKS and therefore did not act knowingly or willfully in violating it.

When the PRC approvals are considered together with information and documents that explain the PRC process, such as the 2010 PRC SOP and HCC compliance policy for "Consulting Services Provided to Customers" discussed above, which Janssen is also using to support its defenses, the likelihood that the Court and jury will draw these unfair inferences becomes a near certainty. Allowing Janssen to use the PRC approvals to enable these inferences to be drawn while depriving Relator of the opportunity to examine the attorney PRC member's legal analyses and other legal advice Janssen received concerning the legality of providing the SOC Programs would be fundamentally unfair and prejudicial.

The only way to remedy this prejudice and ensure fairness is to require Janssen to make full disclosure of the attorney-client communications, including all attorney analyses of the legality of providing the SOC Programs.

Moreover, because Janssen, despite its claims, is relying upon advice of counsel (*i.e.*, the PRC approvals) and thereby has put at issue its privileged communications concerning whether providing the SOC Programs violated the AKS, Janssen has thus waived the attorney-client privilege concerning those communications. Under governing law, "fairness dictates that [Relator] should be able to discover all of the attorney's communications on the particular subject, not just the advice that is helpful to [Janssen]." *Bacchi,* 110 F. Supp.3d at 275 (quoting *Banco do Brasil,* 2011 WL 3208027, at *3). *See also Nitinol Med. Tech., Inc. v. AGA Med. Corp.*, 135 F. Supp.2d 212, 217 (D. Mass 2000) ("the 'deliberate injection of the advice of counsel into a case waives the attorney-client privilege' [because] "a 'party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege.'") (quoting *Mushroom Assoc. v. Monterey Mushrooms, Inc.*, 1992 WL 442892, at *3 (N.D. Cal. 1992)). Accordingly, Janssen must be required to produce all legal

analyses its attorneys performed and all communications with its attorneys concerning whether the provision of the SOC Programs complied with the AKS and/or FCA.

Now that Janssen has affirmatively relied upon PRC approval as substantive evidence supporting its motion for summary judgment, it has put privileged information at issue by making the fact and meaning of legal review relevant, and it is relying on that approval to support its defense that it lacked scienter under the AKS. Janssen's defense is not an objective one; it seeks to use the approval of its PRC, which included a legal member who bore responsibility for ensuring AKS compliance, as evidence that it, subjectively, did not knowingly or willfully violate the AKS. Relator cannot test or rebut this subjective defense without access to the privileged material underlying the PRC approval. Fairness dictates that Relator be given access to such materials because Janssen's defense can only be assessed by examining the attorney communications upon which the PRC approval was based and on which Janssen relied.

## IV.  CONCLUSION

The question before the Court is straightforward: may Janssen invoke PRC "approval" as affirmative evidence that its conduct complied with the law, while simultaneously using the attorney-client privilege to block all inquiry into what that approval actually meant? The answer, under governing law, is no. The touchstone of implied waiver is whether a party's defense "relies on certain facts that can only be tested or rebutted if the adversary is given access to the privileged material." *Bacchi*, 110 F. Supp. 3d at 276 (citing *Erie*, 546 F.3d at 229). Janssen's PRC defense relies on the PRC attorney member's review and approval of the SOC Programs, facts that cannot be tested without access to the underlying legal analyses. Janssen made a deliberate choice to rely on PRC approval as substantive evidence that the SOC Programs were vetted and cleared for compliance, while withholding the actual analyses underlying that approval. That is precisely the unfairness the waiver doctrine prohibits. A party may not place the conclusion of a compliance review before the Court for its own benefit while shielding the basis for that conclusion from scrutiny. Simply put, Janssen cannot have it both ways.

19

Relator, therefore, respectfully requests that the Court order Janssen to produce attorney-client communications and legal analyses concerning review and approval of the provision of the SOC Programs and the SOC Program materials for legal compliance, including compliance with the Anti-Kickback Statute and False Claims Act. In the alternative, the Court should preclude Janssen from relying on PRC approval or making any assertion that the SOC Program materials or SOC Programs were "approved" in support of its defenses.

DATED: April 29, 2026

Respectfully submitted,

 /s/    *Theodore J. Leopold*
Theodore J. Leopold (admitted pro hac vice)
Leslie M. Kroeger (admitted pro hac vice)
Poorad Razavi (admitted pro hac vice)
Diana L. Martin (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com
prazavi@cohenmilstein.com
dmartin@cohenmilstein.com

Casey M. Preston (admitted pro hac vice)
Gary L. Azorsky (admitted pro hac vice)
Jeanne A. Markey (admitted pro hac vice)
Adnan Toric (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
100-120 N. 18th Street, Suite 1820
Philadelphia, PA 19103
(267) 479-5700
cpreston@cohenmilstein.com
gazorsky@cohenmilstein.com
jmarkey@cohenmilstein.com
atoric@cohenmilstein.com

Jonathan Shapiro (BBO No. 454220)
SHAPIRO & TEITELBAUM LLP
55 Union Street, 4th Floor
Boston, MA 02108
(617) 742-5800
jshapiro@jsmtlegal.com

***Counsel for Plaintiff-Relator Julie Long***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 29, 2026, that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Theodore J. Leopold*
Theodore J. Leopold

21