**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| THE UNITED STATES OF AMERICA *et al.* | ) | |
| *ex rel.* JULIE LONG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-CV-12182-FDS |
| | ) | |
| v. | ) | |
| | ) | |
| JANSSEN BIOTECH, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF-RELATOR'S REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL FULL DISCLOSURE OF LEGAL REVIEWS OR, IN**
**THE ALTERNATIVE, TO PRECLUDE RELIANCE ON PRC APPROVAL**

In an effort to downplay its apparent attempt to exploit the attorney-client privilege to mislead the Court and jury by creating unfair and unsubstantiated inferences concerning attorney approval of Janssen's provision of the remuneration at the center of this action, Janssen's opposition fundamentally misconstrues the nature of Relator's waiver argument. Janssen relies on cases where defendants merely mentioned consulting counsel without invoking attorney approval as evidence to negate scienter. But that is not what Janssen has done here. Janssen repeatedly invokes PRC approval in a manner that necessarily invokes legal review as evidence that it did not knowingly violate the Anti-Kickback Statute. Janssen's selective disclosure of legal advice while simultaneously asserting the attorney-client privilege to prevent examination of the company's actual legal reviews is unfair and materially distorts the factual record. Janssen also proposes "safeguards" that confirm the very problem Relator has identified, and advances timing arguments that ignore the Court's prior rulings. As explained below, Janssen's opposition (Doc. No. 638) should be rejected, and the Court should grant Relator's motion.

## ARGUMENT

### A.     Janssen's Case Law Is Inapposite Because Those Defendants Did Not Invoke Attorney Approval to Negate Scienter

The cases Janssen cites share a common feature in that none involve a defendant using a compliance process that invokes legal approval of challenged conduct. In each, the defendant referenced procedures, steps, or consultations without suggesting that counsel had approved the conduct at issue. Janssen, by contrast, repeatedly invokes PRC "approval" in a context where the PRC's legal member was expressly responsible for AKS compliance. That distinction is dispositive.

Janssen relies on *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Company*, 32 F.3d 851 (3d Cir. 1994), but the portion of the decision it relies on actually undermines its position. *Rhone-Poulenc* drew a sharp distinction between 1) merely placing one's state of mind at issue, which, in that court's view, did not waive the attorney-client privilege, and 2) attempting to prove a claim or defense by disclosing or describing attorney-client communications, which waives privilege. The court held that the privilege is not waived "merely because the attorney's advice might affect the client's state of mind in a relevant manner [but is waived when t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id*. at 863 (citations omitted). That is exactly what Janssen has done. By citing the PRC Standard Operating Procedures ("SOP") assigning AKS compliance review to the legal member of the committee, and invoking PRC "approval" as evidence that it did not knowingly violate the AKS, Janssen is attempting to prove its defense by describing the substance and effect of attorney-client communications. Under *Rhone-Poulenc*'s standard, that constitutes waiver.

Janssen's reliance on PRC approval is not incidental. Despite Janssen's claim that it made only a single reference to the PRC in the background section of its summary judgment briefing (Doc. No. 638 at 4), Relator documented that Janssen references PRC approval nine times in its Statement of Undisputed Material Facts (Doc. No. 539 at ¶¶ 29, 37, 58, 75, 78, 79, 84, 116, 121), eleven times in its memorandum in support (Doc. No. 538 at 1, 2, 5, 8, 9, 13), numerous additional times in its reply, and is expressly being relied upon by its expert witness. Janssen's attempt to minimize its reliance on PRC approval is untenable.

*Banco do Brasil, S.A. v. 275 Washington Street Corporation*, No. 09-11343, 2011 WL 3208027 (D. Mass. July 27, 2011), illustrates the difference. There, the defendant bank asserted that it made a good-faith effort to obtain regulatory approval. *Id*. at \*3. The court found no waiver because the bank's defense rested entirely on objective, non-privileged facts in the form of the steps it took, and not on any suggestion that counsel had advised those steps were legally sufficient. *Id*. The bank never invoked attorney approval, never implied that counsel had blessed its conduct, and never relied on the existence of a legal review to negate scienter. But Janssen is doing each of those things.

*DR Distributors LLC v. 21 Century Smoking*, No. 12 CV 50324, 2015 WL 5123652 (N.D. Ill. Sept. 1, 2015), is similarly inapposite. There, the plaintiff merely stated that he had "consulted with" counsel before filing a trademark application, but made clear he would rely solely on his own independent assessment, not on any attorney's legal conclusions, to establish good faith. *Id*. at 4. The court held that this "fine line" did not trigger waiver because the plaintiff did not invoke counsel's approval, did not suggest that counsel had blessed the conduct, and did not use the existence of legal review to negate a scienter-based element. *Id*. at \* 6-7. In short, the plaintiff referenced the fact of consultation but never used counsel's involvement as substantive evidence

3

of legality. *Id*. at *7. Janssen has done the opposite; it invoked PRC approval, where the legal member was expressly responsible for AKS compliance, as affirmative evidence that it did not knowingly violate the law.

*Canon v. Color Imaging*, 227 F. Supp. 3d 1303 (N.D. Ga. 2016), reinforces the same distinction. There, the court permitted limited evidence that the defendant's general business practices included consulting counsel, but only because the defendant did not suggest that counsel had approved the specific conduct at issue. *Id*. at 1309. The court explained the defendant would be required to walk "a tenuous tightrope" in order to avoid waiving the privilege:

> Defendants may not elicit testimony, evidence, or argument that suggests in any manner that their actions in connection with the '012 patent were based on consultations with counsel or information provided by counsel without waiving the attorney-client privilege as relevant communications. Similarly, Defendants may not provide testimony or argument that suggests or implies they thought their challenged infringing actions were legal based on knowledge gleaned from their general or overall consultations with counsel, without waiving the privilege as to the relevant attorney-client communications.

*Id*. *Canon* thus confirms that a defendant may reference the existence of a compliance process but may not invoke that process if doing so would imply legal approval of the challenged conduct while withholding the underlying legal analysis. That is what Janssen is attempting to do here.

The First Circuit's recent decision in *United States v. SpineFrontier*, 160 F.4th 212 (1st Cir. 2025), is directly on point. There, the district court warned that if defendants attempted to "'argue or introduce evidence' at trial 'of their attorneys' involvement to negate the mens rea the government must prove,'" there would be a waiver of the privilege. *Id*. at 216. Although the First Circuit vacated and remanded for further review, it did not disturb the core principle that when a defendant uses attorney involvement to suggest it lacked willfulness, fairness may require disclosure of the underlying communications. *Id*. at 224 (reasoning it would be unfair for defendant to "suggest that outside counsel were 'watching' or 'in the room' while the consulting program

4

was ongoing [because] such a defense would be relevant only if a jury draws the inference that counsel must have approved of [defendant's] conduct in implementing the program"). That is what Janssen is doing here. By invoking the PRC "approval" in a context where the legal member was specifically tasked with AKS compliance, Janssen is implicitly asserting that its attorneys sanctioned the conduct, thereby placing the substance of that legal review squarely at issue.

Janssen has not identified a single case where a court allowed a defendant in a scienter-based claim to invoke a compliance committee's approval, where the committee's legal member was specifically tasked with analyzing the law at issue, while *simultaneously* shielding the underlying legal analyses from review. That is because no such case exists. The reason is obvious: in a case requiring proof of willful or knowing conduct, a defendant cannot concurrently present evidence primarily, if not exclusively, predicated on legal review while concealing what those lawyers actually analyzed or concluded.

Janssen's own evidence confirms that legal review was not incidental but was in fact *central* to the entire PRC approval process. The 2010 PRC SOP that Janssen itself cited assigns to the "legal" member of the PRC the specific responsibility for ensuring compliance with applicable Medicare requirements and "fraud and abuse laws," including the False Claims Act ("FCA") and Anti-Kickback Statute ("AKS"). (Doc. No. 539-69 at JANSSENBIO-018-00001269). The other PRC members (from Regulatory, Medical, and HCC) were tasked with FDA compliance, medical accuracy, and internal policies, respectively. *Id.* None of them were responsible for AKS compliance review. *Id.*

**B.    Janssen's Proposed "Safeguards" Are Actually an Admission of the Core Problem**

Janssen's offer to "work with the Court" to craft "safeguards" for trial, such as redacting references to the legal member's role or stipulating that the jury will not be told the PRC included a lawyer, is a striking admission. (Doc. No. 638 at 18-19). If PRC approval could be presented to a jury without any implication of legal review, no such safeguards would be necessary. The very need for redactions and stipulations confirms that PRC approval, as Janssen seeks to present it, is meaningfully a product of legal review. Janssen's proposed safeguards would create a completely fictional, sanitized, lawyer-free PRC for the jury's consumption, which is precisely the kind of "selective and misleading presentation" that the implied waiver doctrine is designed to prevent. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) (implied waiver prevents a party from "selectively disclos[ing] fragments helpful to its cause [while] entomb[ing] other (unhelpful) fragments"). Janssen cannot redact the legal member out of the PRC narrative while at the same time retaining the benefit of getting to repeatedly tout PRC "approval" as evidence that it did not knowingly violate the AKS, as it unfairly did throughout its summary judgment papers. That is not a safeguard; it is a fiction.

**C.    Janssen's "We Never Mentioned the Lawyer" Argument Is Illogical**

Janssen protests that it "never mentioned or even hinted at attorney involvement in the PRC process." (Doc. No. 638 at 11). This argument is illogical. Janssen cannot disclaim reliance on the legal portions of a document it chose to cite. Janssen cited the 2010 PRC SOP (Doc. No. 539-69) in its Statement of Undisputed Material Facts to establish that SOC Program materials were "reviewed and approved by the Promotional Review Committee for compliance with Janssen's HCC policies[.]" *See* Def. SUMF at ¶ 75. That same document assigns to the "legal" member responsibility for AKS and FCA compliance. (Doc. No. 539-69 at JANSSENBIO-018-00001269).

Excising all reference to a legal review from what was fundamentally a legal review contradicts all notions of fairness and would stage a trial based on fiction. Janssen's footnote disclaimer (which itself underscores the present issue) that it is "not relying on" portions of exhibits that reference the legal department (Def. SUMF at ¶ 1 n.1) cannot change the substance of its own documents. The Court and jury are not obligated to pretend the legal member does not exist when Janssen cites a document that establishes the legal member's central role in the scheme at issue.

**D.      Janssen's "Slippery Slope" Argument Mischaracterizes Relator's Position**

Janssen argues that if Relator's position were correct, "no pharmaceutical company could refer to its compliance process without waiving privilege." (Doc. No. 638 at 17). This mischaracterizes Janssen's evidence and Relator's position. Relator is not arguing that any reference to a compliance process waives privilege, and Janssen has not presented evidence that merely shows that compliance procedures *existed*. Rather, Janssen is presenting evidence of PRC (*i.e.*, compliance) *approval* by an attorney, which goes to the issue of whether Janssen believed its use of the PRC-approved SOC materials was lawful. Thus, under these particular facts, Relator argues that *this* Defendant, in *this* case, is invoking PRC approval on the specific and central legal issue (AKS compliance) that the PRC's legal member was primarily (if not exclusively) tasked with analyzing, in a case where that legal analysis goes directly to the scienter element Relator must prove.

A pharmaceutical company that references a compliance process in a breach of contract case, or one where the legal member's function was unrelated or merely incidental to the claim, is in a completely different posture and should not guide this Court's analysis in this kickback case that requires Relator to prove that Janssen acted knowingly and willfully. Here, by contrast, Janssen created the PRC to defend against this type of lawsuit.  Janssen cannot distance itself from

the compliance structure it deliberately built and now invokes. The PRC was not incidental; it was specifically designed to evaluate conduct in light of AKS and FCA risk, with a legal member(s) expressly charged with ensuring compliance with those statutes. Janssen has previously characterized the PRC's "existence and practices" as evidence of its "good faith and reasonable efforts to comply with the Anti-Kickback Statute and False Claims Act." (Doc. No. 430 at 18). Although Janssen has since "disclaimed an argument that 'its compliance policies show 'good faith,''" (Doc. No. 638 at 11), its continued reliance on PRC approval as a substantive shield against scienter reflects the same underlying strategy. A structure built to manage that exposure, and then offered to the Court as evidence of compliance, cannot be severed from the legal analysis at its core. Janssen cannot wield PRC approval to suggest its conduct was lawful while shielding the very analyses that gave those approvals their meaning.

### E.    Janssen Has Violated the Representations the Court Credited

The Court's February 29, 2024 Order credited Janssen's representation that it "is not, and has no intention of ever: (1) asserting an advice of counsel defense; (2) disclosing any privileged legal advice; (3) relying on any privileged legal advice; (4) *asserting or implying that its attorneys determined the programs were legal*; or (5) *asserting a defense based on its subjective good faith belief that the [marketing] programs were legal*." (Doc. No. 435 at 4) (emphasis added). Janssen now argues that it has "scrupulously honored" these commitments. (Doc. No. 638 at 14-15). The record belies this claim. Janssen has violated both items 4 and 5. While item 4 addresses whether Janssen has asserted that its attorneys *determined* the programs were legal, item 5 independently prohibits Janssen from asserting a defense based on its *subjective belief* that the programs were legal. By invoking PRC approval, a process that, by Janssen's own documents, required the legal member to ensure AKS compliance, as evidence that it did not *knowingly* violate the AKS, Janssen

8

is necessarily implying both that its attorneys determined the programs were legal and that it believed its conduct was legal.

By repeatedly invoking PRC approval, submitting the SOP that assigns AKS compliance responsibility to the legal member, and citing its compliance policies requiring "Law Department review and approval" for product-related services, Janssen has done what it said it would "never" do: it has implied that its attorneys approved the SOC Programs for AKS compliance. The fact that Janssen did not expressly state "lawyers approved the programs" does not change this reality. As this Court has recognized, the question is whether Janssen's approach has "the practical effect of suggesting to the jury that lawyers had approved the programs." (Doc. No. 435 at 5). The answer is yes.

Moreover, Janssen's expert, Greg Demske, affirmatively invokes the PRC process. He describes the PRC as a "cross-functional" and "multi-disciplinary group" that reviewed materials "to ensure medical accuracy and regulatory compliance with applicable laws, regulations, and guidelines," while citing the very same PRC SOP that assigns the legal member responsibility for AKS compliance. Demske Report (Doc. No. 602-7 at 23-24). Janssen dismisses this by noting that Demske "has not even been deposed" and that his report "is not evidence." (Doc. No. 638 at 13). But Janssen's expert's reliance on the PRC process, combined with Janssen's repeated invocation of PRC approval in its own briefing, demonstrates a coordinated strategy to gain the evidentiary benefit of legal review while shielding that review from scrutiny.

**F.      Janssen's "Summary Judgment Isn't Trial" Argument Fails**

Janssen suggests that Relator should wait until trial and raise any concerns through a *motion in limine*, arguing that "summary judgment briefing is not the equivalent of offering documents in evidence at trial." (Doc. No. 638 at 17). This argument is contrary to the Court's prior ruling. The

9

Court is being asked *now* to rule on summary judgment, meaning it must evaluate Janssen's evidence *now*. It is apparent that Janssen is seeking to influence the Court through its repeated use and mention of the PRC approvals in support of its summary judgment arguments. The time to address this issue is *before* the Court relies on PRC approval to decide the case, not after. Moreover, Relator requires timely review of this information prior to trial.

## CONCLUSION

The question before the Court is straightforward: may Janssen invoke PRC "approval" as affirmative evidence that it did not knowingly violate the law, while simultaneously using the attorney-client privilege to block all inquiry into what that approval actually meant? Under governing law, the answer is no. Janssen's cited cases are inapposite because they involve incidental attorney involvement in claims lacking any scienter element. Janssen's proposed "safeguards" are an admission that PRC approval is meaningfully a product of legal review. Janssen's disclaimers cannot excise the legal member from documents it chose to cite. Postponing this motion until trial would allow the Court to rule on summary judgment based on a misleading evidentiary record and would delay review of the necessary information by Relator. And Janssen has violated the very representations the Court credited when it denied Relator's prior motions.

Accordingly, Relator respectfully requests that the Court order Janssen to produce attorney-client communications and legal analyses concerning review and approval of the provision of the SOC Programs/Services for legal compliance, including compliance with the AKS and FCA. In the alternative, the Court should preclude Janssen from relying on PRC approval or

10

making *any assertion* that the SOC Program materials or SOC Programs were "approved" in support of its defenses.


DATED: May 19, 2026                           Respectfully submitted,

                                              /s/   Theodore J. Leopold
                                              Theodore J. Leopold (admitted pro hac vice)
                                              Leslie M. Kroeger (admitted pro hac vice)
                                              Poorad Razavi (admitted pro hac vice)
                                              Diana L. Martin (admitted pro hac vice)
                                              COHEN MILSTEIN SELLERS & TOLL PLLC
                                              11780 U.S. Highway One, Suite N500
                                              Palm Beach Gardens, FL 33408
                                              (561) 515-1400
                                              tleopold@cohenmilstein.com
                                              lkroeger@cohenmilstein.com
                                              prazavi@cohenmilstein.com
                                              dmartin@cohenmilstein.com

                                              Casey M. Preston (admitted pro hac vice)
                                              Gary L. Azorsky (admitted pro hac vice)
                                              Jeanne A. Markey (admitted pro hac vice)
                                              Adnan Toric (admitted pro hac vice)
                                              COHEN MILSTEIN SELLERS & TOLL PLLC
                                              100-120 N. 18th Street, Suite 1820
                                              Philadelphia, PA 19103
                                              (267) 479-5700
                                              cpreston@cohenmilstein.com
                                              gazorsky@cohenmilstein.com
                                              jmarkey@cohenmilstein.com
                                              atoric@cohenmilstein.com

                                              Jonathan Shapiro (BBO No. 454220)
                                              SHAPIRO & TEITELBAUM LLP
                                              55 Union Street, 4th Floor
                                              Boston, MA 02108
                                              (617) 742-5800
                                              jshapiro@jsmtlegal.com

                                              ***Counsel for Plaintiff-Relator Julie Long***

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2026, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Theodore J. Leopold
Theodore J. Leopold

12