**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* JULIE LONG, <br><br> *Plaintiffs,* <br><br> v. <br><br> JANSSEN BIOTECH, INC., <br><br> *Defendant.* | Civil Action No. 16-CV-12182-FDS |

<u>**DEFENDANT JANSSEN BIOTECH, INC.'S REPLY TO INTERVENOR UNITED STATES' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (DKT. NO. 647)**</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT ................................................................................................................................... 2

I.      THE *QUI TAM* PROVISIONS OF THE FCA ARE UNCONSTITUTIONAL .................. 2

        A.      The False Claims Act *Qui Tam* Provisions Violate the Appointments Clause
                ............................................................................................................................... 2

                1.      Relators Exercise Significant Governmental Authority ............................ 2

                2.      Relators Occupy Continuing Positions ...................................................... 4

        B.      The *Qui Tam* Provisions Violate The Vesting And Take Care Clauses ................. 5

II.     ENTERING JUDGMENT FOR JANSSEN IS THE APPROPRIATE REMEDY ............ 8

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayotte v. Planned Parenthood of N. New England*,
    546 U.S. 320 (2006)......................................................................................................................9

*Edmonson v. Leesville Concrete Co., Inc.*,
    500 U.S. 614 (1991)......................................................................................................................3

*United States ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009)......................................................................................................................8

*In re Grand Jury Investigation*,
    916 F.3d 1047 (D.C. Cir. 2019)...................................................................................................4

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
    520 U.S. 939 (1997)......................................................................................................................7

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*,
    575 U.S. 650 (2015)......................................................................................................................5

*Lucia v. SEC*,
    585 U.S. 237 (2018)..............................................................................................................2, 3, 4

*Marsh v. Chambers*,
    463 U.S. 783 (1983)......................................................................................................................6

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
    133 F.4th 395 (5th Cir. 2025) ......................................................................................................4

*Morrison v. Olson*,
    487 U.S. 654 (1988)......................................................................................................................4

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018)......................................................................................................................9

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
    599 U.S. 419 (2023)............................................................................................................1, 6, 10

*United States ex rel. Spicer v. Westbrook*,
    751 F.3d 354 (5th Cir. 2014) .......................................................................................................5

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998)........................................................................................................................6

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021)......................................................................................................9, 10

*United States v. Donziger*,
  38 F.4th 290 (2d Cir. 2022) ...............................................................................................4

*United States v. Germaine*,
  99 U.S. 508 (1879)..........................................................................................................2, 4

*United States v. NEC Corp.*,
  11 F.3d 136 (11th Cir. 1993) ..............................................................................................5

*United States v. Nixon*,
  418 U.S. 683 (1974)............................................................................................................7

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)..................................................................................................3, 6, 7, 8

*Walz v. Tax Comm'n of City of New York*,
  397 U.S. 664 (1970)............................................................................................................6

*Wisconsin Bell, Inc. v. United States ex rel. Heath*,
  604 U.S. 140 (2025)............................................................................................................1

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*,
  751 F. Supp. 3d 1293 (M.D. Fla. 2024).........................................................................2, 4, 6, 7

**Constitutional Provisions**

U.S. Const. art. II ...............................................................................................1, 2, 4, 5, 6, 7

U.S. Const. art. III ...............................................................................................................6

**Statutes**

31 U.S.C. § 3729.............................................................................................................3, 7

31 U.S.C. § 3730.........................................................................................................2, 3, 7, 8

**Other Authorities**

Constitutionality of the Qui Tam Provisions of the False Claims Act,
  13 Op. O.L.C. 207 (1989)..................................................................................................9

S. Rep. No. 99-345 (1986)....................................................................................................9

**INTRODUCTION**

The Government's opposition does nothing to ameliorate the False Claims Act's constitutional infirmities.  The Government does not dispute that *qui tam*'s constitutionality is an open question in the First Circuit.  Nor does the Government address—let alone contest—that three U.S. Supreme Court Justices have observed that "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II."  *See, e.g., United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 442 (2023) (Kavanaugh, J., concurring, joined by Barrett, J.); *id.* at 451 (Thomas, J., dissenting) (similar); *see also Wisconsin Bell, Inc. v. United States ex rel. Heath*, 604 U.S. 140, 167 (2025) (Kavanaugh, J., concurring, joined by Thomas, J.) (similar).  The Government offers no substantive response to courts' and jurists' recent determinations that FCA relators operate as unconstitutionally appointed "officers."  *See* Def. Mot. (Dkt. No. 538) at 44 (citing, *e.g.*, *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293, 1322 (M.D. Fla. 2024), *appeal docketed*, No. 24-13581 (11th Cir. Oct. 30, 2024)).  And the arguments the Government does advance trivialize the extent of the executive authority Relator exercises.

The Government's reliance on the Vesting and Take Care Clauses similarly fails to advance its cause. As the Government has elsewhere conceded, "[i]f Congress's use of the qui tam mechanism were a new development, these features of qui tam actions under the False Claims Act would give rise to substantial questions about whether such actions are consistent with the Vesting and Take Care Clauses."  *See, e.g.*, Brief of Intervenor at 29, *United States ex rel. Penelow v. Janssen Prods.*, No. 25-1818 (3d Cir. Aug. 27, 2025); Reply Brief of Intervenor at 13, *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, Nos. 24-13581, -13583 (11th Cir. Apr. 30, 2025). The Government's submission here does nothing to answer those "substantial questions."

Because the FCA's *qui tam* device violates Article II by vesting unelected, financially

motivated private parties with sweeping executive authority, this Court should enter summary judgment for Janssen.[1]

**ARGUMENT**

### I.     THE *QUI TAM* PROVISIONS OF THE FCA ARE UNCONSTITUTIONAL

#### A.     The False Claims Act *Qui Tam* Provisions Violate the Appointments Clause

The FCA's *qui tam* device violates Article II's Appointments Clause because relators function as unconstitutionally appointed "officers" when they litigate *qui tam* suits. *See* Def. Mot. at 43-44; *see also, e.g.*, *Zafirov*, 751 F. Supp. 3d at 1322 (holding that FCA relators are improperly appointed "officers"). An "officer" is an individual who "exercise[s] significant authority" and occupies a "continuing" position. *Lucia v. SEC*, 585 U.S. 237, 245 (2018); *see also United States v. Germaine*, 99 U.S. 508, 512 (1879). The Government's arguments that relators are not "officers" because their role is "limited in time and scope, confined to a particular case, and fundamentally personal in nature," Gov. Opp. at 3, entirely ignores that relators exercise heartland Executive power—*i.e.*, the power to bring enforcement actions on behalf of the United States.

#### 1.     Relators Exercise Significant Governmental Authority

The Government's attempts to minimize Relator's exercise of significant governmental authority fail. The Government contends (at 6) that *qui tam* suits are "fundamentally personal rather than governmental in nature" because relators "pursue a personal monetary recovery." That wholly disregards the FCA's text and purpose.

Under the FCA, relators bring suit "for" and "in the name of the Government." 31 U.S.C. § 3730(b)(1). The FCA prohibits the submission of false claims to the Government and authorizes

---

[1] Janssen submits this reply pursuant to the Court's December 18, 2020 Scheduling Order, which contemplated a "reply memorandum in response to an opposition to any motion." Dkt. No. 89 at 2.

2

recovery for damages "the Government sustains." 31 U.S.C. § 3729(a)(1), (b)(2).  Indeed, relators only have standing to sue because of the Government's "injury to its sovereignty" and its "proprietary injury resulting from the alleged fraud."  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).  Although the Government argues relators remain private persons despite the ability to bring suit on the Government's behalf (at 6-7), "[t]he fact that the government delegates some portion of [its] power to private litigants does not change the governmental character of the power exercised."  *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 626 (1991).

The Government attempts (at 6-7) to minimize the significance of the fact that relators bring *qui tam* suits "in the name of the Government."  31 U.S.C. § 3730(b)(1).  The Government (at 7) falls back on its authority to review relators' lawsuits before they are unsealed and its ability to intervene in an action and either proceed or dismiss the case.  But Government review and the possibility of intervention do nothing to diminish the fact that relators independently decide whether to commence litigation on behalf of the United States, what defendants to sue, and which legal theories to pursue.  No matter whether the United States ultimately decides to intervene, relators have still forced the Government to investigate and act.  *See* 31 U.S.C. § 3730(b)(1)-(2). And where, as here, the Government decides not to intervene at the outset of the case, relators have complete authority to litigate the case as they see fit, unless and until the government later decides it has good cause to intervene.  Worse still, relators make these decisions backed by the threat of treble damages and civil penalties.

*Lucia* further demonstrates that the Government's ability to review *qui tam* suits does not diminish relators' status as "officers."  In *Lucia*, the Supreme Court held that SEC administrative law judges were "officers" even though the Commission could review their decisions because the

3

Commission could "decide against reviewing a[] [judge's] decision at all." 585 U.S. at 249. The same is true here: the Government's potential involvement does not diminish relators' exercise of significant authority.

### 2.    Relators Occupy Continuing Positions

The Government's argument that relators do not occupy a "continuing position" misunderstands the constitutional nature of an office. Whether a position is "continuing" depends on whether its "tenure" and "duration" are of a "continuing and permanent" nature. *Germaine*, 99 U.S. at 511-12. Relators fill a "continuing and permanent" office because they proceed in the name of the Government and fulfill their duties under the FCA for the compensation the statute provides. An office may be "continuous" "even if it is not continually filled." *Zafirov*, 751 F. Supp. 3d at 1314.

The Government contends (at 4) that relators do not occupy continuing positions because their duties "are limited in time and scope rather than continuing from officeholder to officeholder over time." But that fails to advance the Government's cause: Courts have long recognized independent counsel are Article II "Officers" "even though the position terminates when the counsel 'has completed . . . any investigations or prosecutions undertaken pursuant to'" their appointment. *See, e.g.*, *United States v. Donziger*, 38 F.4th 290, 296 (2d Cir. 2022) (quoting *Morrison v. Olson*, 487 U.S. 654, 664 (1988)). In *Morrison*, for example, it was "clear" that a special counsel was an "Officer," even though she was authorized to investigate and prosecute only a single case. *See* 487 U.S. at 671-72. After *Morrison*, other courts have consistently held that special counsel are "officers," even though their positions are "temporary." *See, e.g.*, *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 411 n.2 (5th Cir. 2025) (Duncan, J., concurring) (listing cases); *see also, e.g.*, *Donziger*, 38 F.4th at 297 (special prosecutor); *In re Grand Jury Investigation*, 916 F.3d 1047, 1052-53 (D.C. Cir. 2019) (similar).

4

The Government tries (at 4) to distinguish *Morrison* and its progeny, arguing the independent counsel role there was different in "the crucial sense that its 'duties' would 'continue' even 'though the person' performing them" changed.  Put differently, the Government claims (at 5) that the role of a relator is not "continuing" because the role is not "passed from one person who occupies the role to the next."  But that argument discounts the many circumstances in which a particular *qui tam* action can be passed to another.  As the Government acknowledges (at 5), a relator's estate may pursue the relator's FCA claims if the relator dies, *see United States v. NEC Corp.*, 11 F.3d 136, 139 (11th Cir. 1993), or becomes bankrupt, *see United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 364 (5th Cir. 2014).  And if a relator's complaint is dismissed on procedural grounds, another relator may raise the same claims.  *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 662-64 (2015).  That the Government cannot replace one relator with another only underscores the significant authority relators possess and the constitutional flaws in the False Claims Act's *qui tam* provisions.  *See supra* at 2-3.

**B.      The *Qui Tam* Provisions Violate The Vesting And Take Care Clauses**

The Government's arguments that the FCA's *qui tam* device does not violate the Vesting and Take Care Clauses fare no better.  As described above and in Janssen's motion for summary judgment, the FCA's *qui tam* provisions permit private parties to exercise core executive power, without providing meaningful mechanisms for presidential supervision or removal.  In response, the Government (at 7-12) places great weight on *qui tam*'s historical roots and argues that "Article II 'does not require Congress to prescribe litigation by the Executive as the *exclusive* means of' protecting the government's interests."  But repeated violations of the Constitution, no matter how longstanding, cannot justify ignoring the Constitution's commands.

History does not alleviate *qui tam*'s constitutional infirmities.  *Cf.* Gov. Opp. at 9-12.  The FCA's *qui tam* provisions trace back to English common law, but the Supreme Court has long

5

made clear that "historical patterns cannot justify contemporary violations of constitutional guarantees," *Marsh v. Chambers*, 463 U.S. 783, 790 (1983), even if those patterns cover "our entire national existence and indeed predate[] it," *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 678 (1970); *see also Polansky*, 599 U.S. at 450 (Thomas, J., dissenting).  That is particularly true where, as here, such patterns conflict with the Constitution's "creation of a separate Executive Branch coequal to the Legislature."  *Polansky*, 599 U.S. at 450 (Thomas, J., dissenting) (citation omitted).  As Justice Thomas explained in *Polansky*, Article II "was a structural departure from the English system of parliamentary supremacy, from which many legal practices like *qui tam* were inherited."  *Polansky*, 599 U.S. at 450 (Thomas, J., dissenting) (citation omitted).

The Government relies (at 9-10) on *Stevens* to argue that *qui tam*'s historical roots are "conclusive" of its constitutionality.  But in *Stevens*, the Supreme Court "express[ed] no view" on "whether *qui tam* suits violate Article II."  529 U.S. at 778 n.8.  Its discussion of history was relevant only to Article III.  And unlike Article II, it is well established that Article III's conception of "Cases" and "Controversies" was directly borrowed from English common law.  *See, e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911)).  Indeed, if the history of *qui tam* statutes were conclusive of their constitutionality for all purposes, there would have been no reason for the *Stevens* Court to have expressly reserved their constitutionality under Article III.  *See* 529 U.S. at 778 n.8.

But even if the history of early *qui tam* statutes were relevant, it fails to establish sufficient support.  At common law, many *qui tam* provisions provided only a bounty or required the relator to be injured to sue.  *See Stevens*, 529 U.S. at 775-77.  An ordinary bounty statute does not authorize the informer to exercise executive power because the informer is motivated by purely individual economic gain.  *See Zafirov*, 751 F. Supp. 3d at 1320.  Similarly, a statute regulating

6

conduct "injurious to both public and private rights that attaches additional remedies to a private cause of action" barely resembles the modern FCA, in which relators are not injured.  *See id.*; *see also Stevens*, 529 U.S. at 773-74.  Other common law *qui tam* provisions allowed private parties to pursue "explicitly punitive" penalties, effectively allowing private parties to engage in criminal prosecution.  *See Zafirov*, 751 F. Supp. 3d at 1321 (citing An Act for the Punishment of Certain Crimes Against the United States, ch. 9, § 16, 1 Stat. 112, 116 (1790) (providing that violators would be "publicly whipped")).  Article II does not abide criminal prosecution by a private individual.  *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." (citation omitted)).

It is no answer that "the False Claims Act's *qui tam* provisions provide greater means for governmental control than the early *qui tam* statutes did."  Gov. Opp. at 11.  Along with providing the Government with additional controls, Congress enacted a host of relator-friendly measures in the 1986 Amendments to incentivize private relators to bring suit.  Most notably, the FCA was amended to provide for treble damages, substantially increase the penalties for each violation, allow for the recovery of attorney's fees, and increase the relator's share of any recovery.  *See* 31 U.S.C. §§ 3729(a), 3730(d). By increasing the monetary awards for relators, Congress greatly increased the likelihood that a relator would litigate claims alleging violations that the Government did not deem worth pursuing.  *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949 (1997) (relators are "less likely than is the Government to forgo an action arguably based on a mere technical noncompliance with reporting requirements that involved no harm to the public fisc").

Nor do statutes with private rights of action support the Government's position. The Government cites (at 8) civil rights and antitrust statutes, attempting to show that Congress has routinely authorized private enforcement of federal statutes. But, as the Government acknowledges (at 8), these statutes meaningfully "differ" from *qui tam* suits because private litigants bring suit on their own behalf to redress their personal injuries—not "for" or "in the name of the Government." 31 U.S.C. § 3730(b)(1); *see also Stevens*, 529 U.S. at 771. And as the Government candidly recognizes (at 8-9), unlike the FCA, suits brought under these civil rights and antitrust statutes do not bind the Government upon entry of final judgment. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 936 (2009). The Government's reliance on these statutes is simply misplaced.

## II.    ENTERING JUDGMENT FOR JANSSEN IS THE APPROPRIATE REMEDY

The Government contends (at 12) that, if the FCA's *qui tam* provisions are unconstitutional, "the appropriate remedy would be to hold invalid—and sever from the rest of the *qui tam* provisions—the statutory constraints on the government's ability to control *qui tam* litigation," rather than enter judgment for Janssen. The Government's proposal, if adopted, would not cure the constitutional problems here. It would also offend the Supreme Court's guidance on severability and fly in the face of Supreme Court precedent.

The Government's proposal would not fix the constitutional issues in this case. The Government proposes (at 12) severing from the FCA the provisions that require the Government to show good cause to intervene after originally declining, *see* 31 U.S.C. § 3730(c)(3), that limit the Government's ability to settle or dismiss an action over a relator's objection, *see* 31 U.S.C. § 3730(c)(2)(A)-(B), and that restrict a relator's participation in the suit after intervention upon a showing by the Government, *see* 31 U.S.C. § 3730(c)(2)(C). Were the Court to sever those provisions here, however, it would do nothing to solve the constitutional problem. This would still

8

be a case that a private relator initiated, the Government declined to intervene in, and Relator unconstitutionally litigated absent Executive oversight for ten years.  Under the Government's proposal, the Government could theoretically take over the case without being required to show "good cause," but it is unclear whether or when that would happen.  Because the unconstitutional provisions still infected these proceedings, severability presents no real solution to the constitutional issue and Janssen is entitled to judgment.

The Government's proposal is also inconsistent with basic tenets of severability doctrine. The Supreme Court has consistently instructed that, if a court determines a portion of a statute is unconstitutional, it must assess whether severing those provisions is consistent with the legislature's intent.  *See, e.g.*, *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330-31 (2006) ("After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?").  The Government offers no argument that striking those provisions would be consistent with Congress's intent, and with good reason:  The legislative record reveals that Congress specifically sought to expand the current iteration of the FCA to encourage private relators to "act[] as a check" on what it considered to be the Executive's underenforcement.  *See* S. Rep. No. 99-345, at 26 (1986); *see also* Constitutionality of the Qui Tam Provisions of the False Claims Act, 13 Op. O.L.C. 207, 209 (1989) (discussing 1986 amendments).  Severability is not appropriate here because it would give the statute a fundamentally different meaning.  *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 481-82 (2018) (rejecting severability when it would "rewrite a statute and give it an effect altogether different from that sought by the measure viewed as a whole" (citation omitted)).

The Government's reliance on *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), is misplaced.  In *Arthrex*, the constitutional defect was that administrative patent judges could issue

final executive decisions without supervision by a properly appointed principal officer. The Supreme Court cured that defect by severing the statutory barrier to supervision. *Id.* at 24-25. Stated differently, *Arthrex* removed a discrete impediment to make the existing scheme constitutional. Here, however, adopting the Government's suggestion would result in an entirely new statutory scheme and expand the Executive's powers beyond what Congress legislated. Indeed, the Government does not attempt to square its proposal with *Polansky*, in which the Supreme Court predicated the Government's ability to dismiss a *qui tam* suit on its formal intervention in the case. *Polansky*, 599 U.S. at 433-36. Eliminating the statute's requirement that the Government must first intervene in a case in order to dismiss it would directly contradict *Polansky*.

## CONCLUSION

For the foregoing reasons, Janssen asks the Court to grant summary judgment in its favor because the *qui tam* provisions of the FCA are unconstitutional under Article II.

10

Dated: June 8, 2026

/s/ Jason C. Raofield
Jason C. Raofield (BBO No. 641744)
Matthew F. Dunn (admitted *pro hac vice*)
Krysten Rosen Moller (admitted *pro hac vice*)
Mark W. Mosier (admitted *pro hac vice*)
Andrew P. Stanner (admitted *pro hac vice*)
Nicholas Pastan (admitted *pro hac vice*)
Alison S. DiCiurcio (admitted *pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
jraofield@cov.com
mdunn@cov.com
krosenmoller@cov.com
mmosier@cov.com
astanner@cov.com
npastan@cov.com
adiciurcio@cov.com

*Attorneys for Defendant Janssen Biotech, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify on this 8th day of June, 2026, that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Jason C. Raofield
Jason C. Raofield (BBO No. 641744)
Covington & Burling LLP